PENNY M. COSTA, (SBN 110373)
costap@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 800
Los Angeles, California  90067-2909
Telephone: (424) 204-4331
Facsimile:  (424) 204-4350

LYNN E. RZONCA (ADMITTED *PRO HAC VICE*)
rzoncal@ballardspahr.com
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103
Telephone: (215) 665-8500
Facsimile:  (215) 864-8990

KATRINA M. QUICKER (ADMITTED *PRO HAC VICE*)
quickerk@ballardspahr.com
**BALLARD SPAHR LLP**
999 Peachtree Street, Suite 1000
Atlanta, GA 30309-3915
Telephone: (678) 420-9300
Facsimile: (678) 420-9301

Attorneys for Plaintiff Graco Children's Products Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Graco Children's Products Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Baby Trend, Inc., <br><br> Defendant. | Case No. 2:10-cv-05897-JST <br><br> **PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES [CONCURRENTLY FILED WITH SEPARATE STATEMENT OF GENUINE DISPUTES AND DECLARATIONS OF ROBERT JOHN ANDERS, TODD SCHOETTELKOTTE, AND KATRINA M. QUICKER]** <br><br> **Date:  Monday, September 19, 2011** <br> **Time:  10:00 a.m.** <br> **Courtroom:  10A** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................... 2

III.    THE LEGAL STANDARD FOR SUMMARY JUDGMENT ...................... 5

IV.     THE LAW OF DESIGN PATENT INFRINGEMENT ................................ 7

V.      MULTIPLE ISSUES OF FACT PRECLUDE SUMMARY
        JUDGMENT ........................................................................................ 8

        A.      Baby Trend's Motion Relies Solely On an Erroneous Decision
                in a Non-Party's Unrelated Administrative Proceeding. ..................... 9

                1.      The Board's Findings Are Wrong Because They Ignore
                        the Rules About Design Patent Drawings.  They Also
                        Show that There Are Genuine Issues of Fact About What
                        Is Shown in the '218 Patent Drawings. ................................. 9

                2.      The Board's Findings Do Not Bind This Court ...................... 13

        B.      There Is an Issue of Material Fact as to Whether the Accused
                Playards Infringe the '218 Patent. ........................................... 15

                1.      The High Degree of Similarity in Overall Appearance
                        Between the Accused Products and the Patented Design
                        Precludes the Requested Summary Judgment. ....................... 16

                2.      The Opinion of Graco's Design Expert Weighs Against
                        Granting the Requested Summary Judgment. ......................... 18

VI.     CONCLUSION ................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144 (1970) ....................................................................... 6

*Allen v. McCurry*,
  449 U.S. 90 (1980) ...................................................................... 13

*Amini Innovation Corp. v. Anthony Cal., Inc.*,
  439 F.3d 1365 (Fed. Cir. 2006) .................................................... 6, 7

*Anderson v. Liberty Lobby Inc.*,
  477 U.S. 242 (1986) ........................................................................ 7

*Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*,
  386 F.3d 1371 (Fed. Cir. 2004) ....................................................... 7

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
  402 U.S. 313 (1971) ...................................................................... 13

*Chemical Eng'g v. Essef Indus.*,
  795 F.2d 1565 (Fed. Cir. 1986) ....................................................... 6

*Cole v. Kimberly-Clark Corp.*,
  102 F.3d 524 (Fed. Cir. 1996) ......................................................... 6

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
  282 F.3d 1370 (Fed. Cir. 2002) ................................................... 7, 10

*Crocs, Inc. v. ITC*,
  598 F.3d 1294 (Fed. Cir. 2010) ....................................... 2, 7, 8, 15

*E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*,
  656 F. Supp. 1343 (D. Del. 1987), *aff'd in part, vacated in part, rev'd in part*, 849 F.2d 1430 (Fed. Cir. 1988) ................................................ 13

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008) .............................................. 7, 8, 15

*Fuji Photo Film Ltd. v. Jazz Photo Corp., Inc.*,
  173 F. Supp. 2d 268 (D.N.J. 2001) ............................................... 14

ii

*Gillette Co. v. Warner-Lambert Co.*,
  690 F. Supp. 115 (D. Mass. 1988) ................................................................ 6

*Graco Children's Prods., Inc. v. Regalo Int'l*,
  77 F. Supp. 2d 660 (E.D. Pa. 1999) ............................................................ 14

*Hoffman v. Impact Confections, Inc.*,
  No. 08-CV-1597, 2010 U.S. Dist. LEXIS 806 (S.D. Cal. Jan. 6, 2010) ........... 12

*Howes v. Med. Components, Inc.*,
  Civ. A. No. 84-4435, 1988 WL 82850 (E.D. Pa. Aug. 8, 1988) ....................... 13

*Imagexpo, L.L.C. v. Microsoft Corp.*,
  281 F. Supp. 2d 846 (E.D. Va. 2003) ............................................................ 6

*In re Blum*,
  374 F.2d 904 (C.C.P.A. 1967) ..................................................................... 10

*In re Freeman*,
  30 F.3d 1444 (Fed. Cir. 1994) .................................................................... 13

*In re Trans Texas Holdings Corp.*,
  498 F.3d 1290 (Fed. Cir. 2007) ................................................................... 12

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
  580 F.3d 1233 (Fed. Cir. 2010) ................................................................. 5, 7

*J.M. Huber Corp. v. Positive Action Tool of Ohio Co., Inc.*,
  881 F. Supp. 279 (S.D. Tex. 1995) ................................................................ 6

*Jet, Inc. v. Sewage Aeration Sys.*,
  223 F.3d 1360 (Fed. Cir. 2000) ................................................................... 13

*Kollmorgen Corp. v. Yaskawa Elec. Corp.*,
  147 F. Supp. 2d 464 (W.D. Va. 2001) .......................................................... 12

*L.A. Gear, Inc. v. Thom McAn*,
  988 F.2d 1117 (Fed. Cir. 1993) .................................................................... 6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................... 6

PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Mondo Polymers Tech., Inc. v. Monroeville Indus. Moldings, Inc.*,
   No. 2:07-cv-1054, 2009 U.S. Dist. LEXIS 102169 (S. D. Ohio Nov. 3,
   2009) ................................................................................................................ 18

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979) ........................................................................................ 13

*Texas Instruments, Inc. v. Linear Tech. Corp.*,182
   F. Supp. 2d 580 (E.D. Tex. 2002) ................................................................... 12

*Tone Bros., Inc. v. Sysco Corp.*,
   28 F.3d 1192 (Fed. Cir. 1994) ........................................................................... 6

*V–Formation, Inc. v. Benetton Group SpA*,
   401 F.3d 1307 (Fed. Cir. 2005) ....................................................................... 12

OTHER AUTHORITIES

37 C.F.R. § 1.152 (2000) ........................................................................................ 11

Fed. R. Civ. P. 56 .................................................................................................... 5

M.P.E.P. § 1503.02 ........................................................................................... 10, 11

U.S. Patent No. D448,218 ....................................................................................... 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<b>MEMORANDUM OF POINTS AND AUTHORITIES</b>

## I.   INTRODUCTION

Sharply disputed issues of material fact preclude summary judgment for Baby Trend.  Not only is Baby Trend not entitled to summary judgment, but the facts show that Baby Trend's playards infringe Graco's patented design for "Curved Legs for a Playard."  Among those facts are the following:

- Graco's '218 Patent covers curved legs for a playard.  The patent does not teach or require that those legs are covered in any way (Anders Decl. at ¶ 10);

- Graco's patent revolutionized the appearance of children's playards.  The new playard was a commercial success that garnered excellence awards and sold millions of units (Schoettelkotte Decl. at ¶ 7);

- Before the new curved-leg playard came on the market, Baby Trend sold playards that had only straight legs and a traditional "boxy" look (*id.* at ¶ 8);

- After Graco's patent issued, Baby Trend changed its playard design to copy the Graco design; and

- The Baby Trend knock-off playards have an appearance that is strikingly similar to the Graco patented design (Anders Decl. at ¶ 7, Ex. A at 52-53).

These facts, at a minimum, preclude entry of summary judgment and entitle Graco to a trial on the merits establishing that the Baby Trend curved-leg playards infringe the Graco patent.

Baby Trend's motion for summary judgment rests entirely on one argument. Baby Trend cites a Board of Patent Appeal and Interferences ("Board") decision that it claims "establishes" that Graco's patent is limited to curved legs for a playard that are "fabric-covered."  Based on this erroneous statement, Baby Trend then asserts that overall appearance of its playards is not deceptively similar to Graco's patented design.  For support, Baby Trend relies exclusively on the declaration of its owner, Denny Tsai.

1

1     Baby Trend's arguments fail.  The Board decision dealt with a patent that is

2  not asserted in this case (and not owned by either party).  It arose from a proceeding

3  to which Graco was not a party.  Its purported "findings of fact" about the Graco

4  patent are based on a misapplication of clear design patent law.  As a matter of law,

5  those "findings of fact" are not binding on this Court.  Moreover, even if the Court

6  here were to accept the Board's erroneous statements, that does not end the

7  analysis.  Under the "ordinary observer" test—a factual inquiry—a patented design

8  is infringed when the overall appearance of the accused product is deceptively

9  similar to the patented design.  *See Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed.

10  Cir. 2010).  Baby Trend's accused playards, with or without a fabric covering, are

11  strikingly similar to Graco's patented design.  For all of these reasons, Baby

12  Trend's motion for summary judgment must be denied.

13  **II.    Statement of Facts[1]**

14     This is a design patent infringement case involving playards for children.

15  Graco owns the patent at issue—U.S. Design Patent No. D448,218.  (Quicker Decl.

16  at Ex. A, C at No. 1.)  Graco sued Baby Trend for infringing the '218 Patent.  Graco

17  and Baby Trend are competitors in the market for juvenile products.  (*Id.* at Ex. C at

18  No. 18.)

19     Graco's '218 Patent is titled "Curved Legs for a Playard."  (*Id.* at Ex. A.)  It

20  was issued on September 25, 2001.  (*Id.*)  It covers an ornamental design for curved

21  legs for a playard.  Reproduced below is Figure 1 from the '218 Patent, showing the

22  design of the curved legs covered by the patent.  The legs have been highlighted in

23  yellow for viewing ease:

24

25  [1] Baby Trend filed its motion for summary judgment despite the fact that no depositions have yet
    been taken and the parties are still exchanging discovery.  Indeed, a hearing on Graco's two
26  motions to compel Baby Trend to comply with its discovery obligations is set for August 23,
    2011 before Magistrate Judge Goldman.  Thus, Baby Trend's motion is premature and deniable
27  on that ground alone.

28

PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1
2
3
4
5
6
7
8



9  As discussed below, Graco's patent covers the appearance of playards with curved

10  legs.  The legs as shown in the patent do not claim any fabric covering.  (Anders

11  Decl. at ¶ 10.)

12      Because the playard with the curved legs was such a departure from the

13  traditional "boxy" look of playards, it was a huge commercial success.

14  (Schoettelkotte Decl. at ¶¶ 7-8 .)  Sales were robust.  (*Id.* at ¶ 5.)  Indeed, the

15  product was in such demand that by November of 2004, Graco had brought to

16  market a version of the patented design that had exposed, curved legs.  (*Id.*)

17      Graco marked both models of the curved-leg playard with the '218 Patent,

18  indicating that it covered both versions.

19      Before 2004, Baby Trend sold only the traditional "boxy" style playards with

20  straight legs.  (*Id.* at ¶ 5.)  It was not until Graco's new design created such a stir

21  that Baby Trend came out with a curved leg playard, having exactly the same

22  curved leg as the Graco product.  Baby Trend now sells twenty-four models of

23  playards that have curved legs.[2]  (Quicker Decl. at Ex. C at No. 32.)  Those twenty-

24

25  [2]  The 24 models are:  PY86992  Deluxe – Nursery /Provence; PY86428 Mojito – Deluxe Nursery
    Center; PY86045 Skylar – Deluxe Nursery Center; PY86091 Mesa – Deluxe Nursery Center;
26  PY86443 Columbia – Deluxe Nursery Center; PY86962 Dakota – Deluxe Nursery Center;
    8065BCC Orange Oak – Deluxe Nursery Center; PY86801 Baby Tech – Deluxe Nursery Center;
27  PY87991 Close N Cozy/Wisteria Lane; PY90918 Twilight – Mini Nursery Center CNC;
    PY87983 All Star – Deluxe Nursery Center; PY90973 Cordova – Mini Nursery Center CNC;
28

(continued...)

PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

four models are the "accused products."  There is a common base frame design for all of the accused products.  (Anders Decl. at ¶ 7, Ex. A at 15-16, 40.)  It bears a striking resemblance to Graco's patented playard leg design.  (*Id.* at 52-53.)  A comparison of the Baby Trend accused products to the Graco patented design shows that that the overall appearance of the Baby Trend product is practically identical to the patented design.  (*Id.*)

As an example, a picture of one of Baby Trend's infringing playards (PY86962 Dakota – Deluxe Nursery Center) is shown below:



Since Baby Trend began selling its curved leg playards, Graco's sales have dropped and it lost retail "slots" with its biggest customer, Babies "R" Us.  (Schoettelkotte Decl. at ¶ 9.)

_____

(...continued)
PY88950 Metropolitan – Deluxe Nursery Center CNC; PY87029 Gabriella – Deluxe Nursery Center CNC; PY87965 Chickadee – Deluxe Nursery Center CNC; PY87915 Northridge Plaid – Deluxe Nursery Center CNC; PY87916 Zulu – Deluxe Nursery Center CNC; PY87906 Chrissy – Deluxe Nursery Center CNC; 8274BCC Deluxe Trend Playard – Havenwood; 8256BCC Serengetti – Deluxe Nursery Center; 8206BCC Malawi – Deluxe Nursery Center; 8207BCC Sun Dance – Deluxe Nursery Center; 8211BCC Chatham – Deluxe Nursery Center; 8263BCC Zanzibar – Deluxe Nursery Center.

Unbeknownst to Graco, in November of 2004, its competitor Kolcraft filed a design patent application that was very unusual. That application used drawings that are virtually identical to Graco's design patent drawings for its '218 Patent, except that the shading/contour lines on the drawings were missing. The timing of the Kolcraft patent application is also curious. By November 2004, Graco had created and sold playards with the patented curved legs—both covered in fabric and exposed. (*Id.* at ¶ 5.) Only after the Examiner mailed an office action citing the '218 Patent as prior art did Kolcraft file an IDS disclosing the '218 Patent. (Dkt. 43-3 at Ex. 1 at 192-97.) Nothing was ever said to the Patent Office about the actual Graco product with curved, exposed legs. Because no depositions have yet been taken in this case, it is not yet known why Kolcraft said nothing.

Initially, the Patent Office refused to give any patent to Kolcraft based on the prior Graco patent. Kolcraft appealed to the Board. The Board issued a decision in which it listed certain findings of fact about the Graco patent drawings. Its findings of fact stated that the drawings in the Graco patent had "what appeared to be lengths of fabric wrapped around the legs," that the lines on the legs in the drawings would be understood as fabric, and that the patent disclosed and claimed only legs that were substantially covered in fabric. The Board discussed only one of the drawings in the Graco patent. It did not discuss the remaining six drawings.

The Board's findings of fact are in direct conflict with the regulations governing design patent drawings.

Graco had no knowledge of this proceeding. Graco was not given any opportunity to participate in the proceeding.

## III.   THE LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be denied when, viewing the evidence in the light most favorable to the non-movant, there is a genuine issue as to any material fact. Fed. R. Civ. P. 56(a). This rule applies in design patent cases, where the issue of infringement is a question of fact. *See Int'l Seaway Trading Corp. v. Walgreens*

5

1   *Corp.*, 580 F.3d 1233, 1237-1238 (Fed. Cir. 2010); *L.A. Gear. Inc. v. Thom McAn*,

2   988 F.2d 1117, 1124 (Fed. Cir. 1993).  The party moving for summary judgment

3   bears the burden of proving that there is no genuine issue about the material facts.

4   That burden is a heavy one.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157-59

5   (1970).

6         The Federal Circuit has cautioned that a "district court should approach a

7   motion for summary judgment on the fact issue of infringement with great care."

8   *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 528 (Fed. Cir. 1996).  Indeed,

9   summary judgment is rarely appropriate in patent infringement actions.  *See*

10  *Chemical Eng'g v. Essef Indus.*, 795 F.2d 1565, 157 (Fed. Cir. 1986); *J.M. Huber*

11  *Corp. v. Positive Action Tool of Ohio Co., Inc.*, 881 F. Supp. 279, 282-83 (S.D.

12  Tex. 1995); *see also Gillette Co. v. Warner-Lambert Co*., 690 F. Supp. 115 (D.

13  Mass. 1988) ("[S]ummary judgment is usually inappropriate in patent infringement

14  cases, which are usually dominated by factual issues."); *Amini Innovation Corp. v.*

15  *Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("Conclusions about

16  reasonable jurors are difficult to make on an issue of this factual dimension.").  The

17  authors of Federal Practice and Procedure, Charles Alan Wright and Arthur Miller,

18  agree.  They write that "patent actions are by their very nature poorly suited for

19  disposition by summary judgment." 10B CHARLES ALAN WRIGHT &

20  ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2732.1

21  (2011).  Moreover, summary judgment is especially inappropriate in the face of

22  divergent expert opinions.  *See Imagexpo, L.L.C. v. Microsoft Corp*., 281 F. Supp.

23  2d 846, 849 (E.D. Va. 2003).

24        If a reasonable jury could decide a question of fact in favor of the non-

25  movant, a genuine issue exists.  *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1196

26  (Fed. Cir. 1994).  In viewing the record evidence, the trial court must resolve all

27  reasonable inferences in the non-movant's favor.  *Matsushita Elec. Indus. Co., Ltd.*

28  *v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Therefore, the central issue on a

1  motion for summary judgment is "whether the evidence presents a sufficient

2  disagreement to require submission to a jury, or whether it is so one-sided that one

3  party must prevail as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S.

4  242, 251-52, (1986).

5  **IV.    THE LAW OF DESIGN PATENT INFRINGEMENT**

6          Whether a design patent is infringed is a question of fact. *Int'l Seaway*, 580

7  F.3d at 1237-1238.  Infringement is determined in a two-step process:  the design

8  patent claim is construed, then it is compared to the accused device using the

9  ordinary observer test. *See Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665,

10 678-79 (Fed. Cir. 2008) Because the claim of a design patent is only what is shown

11 in its drawings, claim construction must be adapted to a pictorial setting. *See*

12 *Contessa Food Prods., Inc. v. Conagra, Inc*., 282 F.3d 1370, 1377 (Fed. Cir. 2002).

13 "It is the drawings in the patent, not just one feature of the claimed design, that

14 define the patented design." *Amini Innovation*, 439 F.3d at 1371.  Consequently,

15 trial courts do not have "to provide a detailed verbal description of the claimed

16 design, as is typically done in the case of utility patents." *Egyptian Goddess,* 543

17 F.3d at 679  (holding that "the preferable course ordinarily will be for a district

18 court not to attempt to 'construe' a design patent claim by providing a detailed

19 verbal description of the claimed design"). "As a rule, the illustration in the drawing

20 views is its own best description." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d

21 1294, 1302 (Fed. Cir. 2010).

22          The ordinary observer test is a ***factual inquiry***, *to be undertaken by the fact*

23 *finder* after the design patent's claim has been construed. *See Bernhardt, L.L.C. v.*

24 *Collezione Europa USA, Inc.*, 386 F.3d 1371, 1383 (Fed. Cir. 2004).  In *Egyptian*

25 *Goddess*, the Federal Circuit announced a return to the ordinary observer test for

26 design patent infringement, originally established by the Supreme Court in *Gorham*

27 *Co. v. White*. *Egyptian Goddess*, 543 F.3d at 678.  The Court set forth the test:

28

1        [I]f, in the eye of an ordinary observer, giving such attention as a

2        purchaser usually gives, two designs are substantially the same, if the

3        resemblance is such as to deceive an observer, inducing him to

4        purchase one supposing it to be the other, the first one patented is

5        infringed by the other.

6    *Id.* Under *Egyptian Goddess*, the ordinary observer test is the *only* test for

7    determining design patent infringement. *See id.* Therefore, to prove design patent

8    infringement, a patentee must show that an ordinary observer familiar with the prior

9    art would be deceived into believing that the accused product is the same as the

10   patented design. *See id.* at 681. Key to the analysis is that the test is one of *overall*

11   *appearance*, and applies to the claimed design in its entirety. *See Crocs*, 598 F.3d

12   at 1303 ("'[T]he deception that arises is a result of the similarities in the overall

13   design, not of similarities in ornamental features in isolation.'") (quoting *Amini*

14   *Innovation*, 439 F.3d at 1371)).

15   **V.    MULTIPLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT**

16       Baby Trend's sole support for its motion for summary judgment is the

17   existence of a design patent issued to its competitor Kolcraft, who is not a party to

18   this case. The Kolcraft patent on which Baby Trend relies claims "exposed legs

19   for a playard." (Dkt. 43-3, Ex. 2 at 211.) The drawings in the Kolcraft patent

20   appear to be copies of the Graco '218 Patent drawings, with the shading/contour

21   lines on the curved legs erased. (*Id.* at 211-16.)

22       Baby Trend claims that the Kolcraft design patent covers "curved, exposed

23   playard legs," and therefore Graco's '218 Patent cannot cover curved, exposed legs.

24   It points to an *ex parte* decision of the Board of Patent Appeals in which the Board

25   reviewed the Graco patent (without the benefit of any input from Graco) and made

26   three "findings of fact" about the meaning of the Graco patent drawings. Far from

27   presenting any ruling that is dispositive in this case, the Board's "findings of

28   fact"—which are neither correct nor binding on this Court—defeat Baby Trend's

8

PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1   own motion because they identify exactly some of the facts that are now in genuine

2   dispute and must be tried.

3   **A.   Baby Trend's Motion Relies Solely On an Erroneous Decision in a**

4   **Non-Party's Unrelated Administrative Proceeding.**

5   Baby Trend's entire motion is based solely on the Board's statements in a

6   third-party's *ex parte* patent proceeding.  As discussed below, those statements

7   about Graco's patent drawings are wrong, they cannot bind this Court, and they

8   demonstrate that there are key issues of material fact that must be tried.

9   **1.   The Board's Findings Are Wrong Because They Ignore the**

10   **Rules About Design Patent Drawings.  They Also Show that**

11   **There Are Genuine Issues of Fact About What Is Shown in**

12   **the '218 Patent Drawings.**

13   When the Patent Office first examined Kolcraft's design patent application

14   purporting to claim "exposed" curved playard legs, it said that Kolcraft was not

15   entitled to a patent.  It based its decision on Graco's prior patent.  Kolcraft appealed

16   the Patent Office's ruling to the Board.  The Board reviewed the Graco patent[3] and

17   made three findings of fact on which Baby Trend rests its Motion.  The Board

18   found: 1) the curved legs of the '218 Patent "have what appear to be lengths of

19   fabric wrapped around the legs to cover the legs"; 2) "broken lines representing the

20   leg members appear immediately adjacent to the fabric covering, which would be

21   understood by persons or ordinary skill in the art as connoting that the fabric

22   closely follows the contour of the leg disposed inside"; and 3) the '218 Patent

23   ───────────────

[3]  The Board does not appear to have read the prosecution history for the Graco patent.  As Baby

24   Trend admits in its Motion, a patent's prosecution history provides evidence of how the Patent
Office understood a particular patent.  (Dkt. 43 at 1.)  Had the Board (or Baby Trend) studied the

25   prosecution history of Graco's Patent, it would have seen that not once in the approximately 100
page file history is the word "fabric" ever used.  (*See* Quicker Decl. at Ex. B.)  At no point did the

26   '218 Patent ever address fabric covered legs, nor did the Examiner ever raise the issue of fabric
covering.  (*See id.*)  This is fully consistent with the drawings of the Graco patent.  (*See id.* at Ex.

27   A.)  It shows that the Patent Examiner, and thus the Patent Office, understood the '218 Patent as
simply directed to curved legs for a playard without any fabric covering.

28

PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1   "discloses and claims only play yard legs which are substantially completely

2   covered in fabric."  (Dkt. No. 43, Ex. 1 at 19.)

3        Each of these findings is factually flawed and not consistent with the law.

4   The findings improperly add a design element—fabric—where no such element

5   appears in the patent drawings.  (Anders Decl. ¶¶ 9-11.)

6        The Board's findings of fact about the Graco patent drawings are based on a

7   misinterpretation of the lines on the legs in the drawing.  Compounding its error,

8   despite the fact that there are seven drawings in the Graco patent, the Board

9   specifically identified only one.[4]

10       Three important rules govern the use of lines in patent drawings:

11           1.  solid lines are used to show what is claimed as the invention;

12           2.  anything shown in broken lines is "unclaimed" and not part of the

13   invention; and

14           3.  surface shading lines are used to show the contour of an item, such as

15   whether a leg is round or square, or has raised elements.

16   *See* M.P.E.P. § 1503.02, Anders Decl. ¶¶ 8, 10.

17       Each of these rules is set forth in Section 1503.02 of the Patent Office's

18   "Manual of Patent Examining Procedure" (the "M.P.E.P.").  The rules as to solid

19   lines is that they must be used for, and are the only type of lines that designate, the

20   *claimed* ornamental design.  *See* M.P.E.P. § 1503.02 at ¶ 15.50.

21       The rule as to broken lines is they are used to illustrate the "context" or

22   "environment" of the invention, and they show what is not claimed:

23           *Unclaimed* subject matter may be shown in *broken* lines for the

24           purpose of illustrating the environment in which the article embodying

25   _____

26   [4]  This is contrary to the requirement that a proper analysis must necessarily consider all of the
     drawings in a design patent.  *See Contessa*, 282 F.3d at 1379 ("[T]he 'ordinary observer' analysis
27   is not limited to a subset of the drawings, but instead must encompass the claimed ornamental
     features of all figures of a design patent.").

28

1  the design is used.  Unclaimed subject matter must be described as
2  forming no part of the claimed design or the specified embodiment.
3  M.P.E.P. 1503.02 (emphasis added), Anders Decl. at 8.

4  The rule as to surface shading lines is that the patent drawings must be
5  shaded to clearly show the character or contour of the surfaces represented.  This is
6  important because the drawings are depicting three-dimensional articles:

7  The drawing figures *should be appropriately and adequately shaded to*
8  *show* clearly the character and/or *contour of all surfaces represented*.
9  *See* 37 C.F.R. 1.152.  This is of particular importance in the showing
10  of three (3) dimensional articles where it is necessary to delineate
11  plane, concave, convex, raised, and/or depressed surfaces of the
12  subject matter, and to distinguish between open and closed areas.

13  M.P.E.P. § 1503.02 "II. Surface Shading" (8th ed. 2001) (emphasis added).  This
14  rule is reinforced by 37 C.F.R. § 1.152, which requires that:

15  Appropriate and adequate surface shading should be used to show the
16  character or contour of the surfaces represented. Solid black surface
17  shading is not permitted except when used to represent the color black
18  as well as color contrast.  *Broken lines may be used to show visible*
19  *environmental structure, but may not be used to show hidden planes*
20  *and surfaces that cannot be seen through opaque materials*.

21  37 C.F.R. § 1.152 (2000) (emphasis added).

22  Graco's patent drawings followed these rules.  Each of the appropriate types
23  of lines were included to show what was claimed (the curved legs, shown in solid
24  lines), the contours of what was claimed (the rounded cross-sectional shape of the
25  legs, shown in surface shading lines), and what was not claimed (everything other
26  than the curved legs).  Figure 1 of the Graco patent shows the use of each type of
27  line.

28

(Anders Decl. ¶ 14.)

The only solid lines in the Graco patent drawings are those showing the curved legs.  (*Id.* at ¶ 10.)  Because only the legs are drawn in solid lines, that is all that is claimed in the patent.  (*Id.*)  A fabric covering does not form any part of the drawings.  (*Id.* at ¶ 9.)  Thus fabric does not form any part of the claimed design. (*Id.*)  For this reason, it was a factual error for the Board to "read into" the Graco design patent drawings design elements—fabric coverings—that the drawings clearly show were never claimed.  (*Id.* at ¶¶ 9-11.)

While Baby Trend argues in its motions that the surface shading lines in the Graco drawings are "broken lines," at least one district court has addressed the argument, and rejected it.  In *Hoffman v. Impact Confections, Inc.*, a design patent infringement case pending in the Southern District of California, the defendant argued that the lines shown in the patent figures were "broken lines" and thus, designated areas of the design were excluded from patent protection.  *Hoffman v. Impact Confections, Inc.,* No. 08-CV-1597, 2010 U.S. Dist. LEXIS 806, at *2-3 (S.D. Cal. Jan. 6, 2010).  The court disagreed, holding that the lines were merely used to provide surface shading—to show context or environment of the claimed design.  *Id.* at *4.  Without those lines, the court noted that "there would be confusion as to whether certain parts of the design are lower or higher than others." *Id.*

1    For all of these reasons, the Board's findings of fact about the Graco patent

2    drawings are incorrect and in direct contravention of the rules governing patent

3    drawings.  Far from supporting Baby Trend's request for summary judgment, the

4    issues raised by the Board's statements require that summary judgment be denied

5    based on the factual issues of what the Graco patent drawings show.

6    ## 2.    The Board's Findings Do Not Bind This Court

7    The Board's statements about the drawings of the '218 Patent, made in the

8    context of a decision about a different patent in a third-party's *ex parte* proceeding,

9    are not binding on this Court.  While related judicial holdings can be appropriate

10   extrinsic evidence in a claim construction analysis, they are not binding on the

11   district court.  *See V–Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312

12   (Fed. Cir. 2005) ("The district court properly referred to a related, non-binding

13   judicial opinion to support its independent conclusion in this case.").  *See also*

14   *Texas Instruments, Inc. v. Linear Tech. Corp*.,182 F. Supp. 2d 580, 589 (E.D. Tex.

15   2002) (court declined to apply an earlier claim construction by another judge in the

16   same jurisdiction); *Kollmorgen Corp. v. Yaskawa Elec. Corp*., 147 F. Supp. 2d 464,

17   466 (W.D. Va. 2001) (court declined to apply an earlier claim construction by a

18   court in a different jurisdiction); *see also In re Trans Texas Holdings Corp*., 498

19   F.3d 1290, 1296-97 (Fed. Cir. 2007) (holding that the PTO during reexamination is

20   not bound by a district court's claim construction).

21   This is especially true where, as here, Graco had no notice that its patent was

22   being discussed by Kolcraft, and therefore had no opportunity to participate in the

23   proceeding.  "It is a violation of due process for a judgment to be binding on a

24   litigant who was not a party or a privy and therefore has never had an opportunity

25   to be heard." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979).  Graco

26   was not a party to the *ex parte* proceedings at the PTO and therefore cannot be

27   bound by its outcome.  *See Jet, Inc. v. Sewage Aeration Sys*., 223 F.3d 1360, 1365-

28   66 (Fed. Cir. 2000).  Graco as "the party against whom the earlier decision is

1  asserted" thus must have been accorded "a 'full and fair opportunity' to litigate that
2  issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95, (1980); *In re Freeman*,
3  30 F.3d 1444, 1467 (Fed. Cir. 1994).

4  Graco can find no case in which the Federal Circuit applied issue preclusion
5  *against* a non-party to an *ex parte* PTO proceeding. In fact, the Supreme Court has
6  specifically held that "litigants . . . who never appeared in a prior action[ ] *may not*
7  *be collaterally estopped without litigating the issue*. . . . Due process prohibits
8  estopping them despite one or more existing adjudications of the identical issue
9  which stand squarely against their position." *Blonder-Tongue Labs., Inc. v. Univ.*
10  *of Ill. Found.*, 402 U.S. 313, 329, (1971) (emphasis added).

11  To afford the Board's decision preclusive effect when the *ex parte*
12  proceeding did not provide Graco with the procedural, substantive, and evidentiary
13  safeguards necessary to meet the requirement that there be a "full and fair
14  opportunity" to litigate the issue would be "absurd." *E.I. Du Pont De Nemours &*
15  *Co. v. Phillips Petroleum Co*., 656 F. Supp. 1343, 1352–53 (D. Del. 1987), *aff'd in*
16  *part, vacated in part, rev'd in part*, 849 F.2d 1430 (Fed. Cir. 1988). *See also*
17  *Howes v. Med. Components, Inc*., Civ. A. No. 84-4435, 1988 WL 82850, *7 (E.D.
18  Pa. Aug. 8, 1988) ("court will not give reexamination decision preclusive effect
19  because the reexamination proceeding did not provide the procedural, substantive
20  and evidentiary safeguards of a trial"). One court commented:

21     There is no question that, by instructing courts to decide issues of
22     claim construction in patent cases, the Court in *Markman* recognized
23     the importance of uniformity in the treatment of a given patent.
24     However, the Court in *Markman* did not guarantee that collateral
25     estoppel would apply in every case, and this Court will not extend the
26     Supreme Court ruling to mean as much, especially where, as here, the
27     circumstances of the instant action require that a different result be
28     reached.

14

PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Graco Children's Prods., Inc. v. Regalo Int'l*, 77 F. Supp. 2d 660, 663 (E.D. Pa. 1999) (internal citations omitted).  The *Graco v. Regalo* Court further noted that as a matter of policy, granting preclusory effect to claim construction would encourage more appeals and discourage settlement because a plaintiff who obtained a favorable verdict might be compelled to file an appeal rather than be content with winning the lawsuit or settling the case, merely in order to correct a seemingly unduly narrow claim construction.  *See id.  See also Fuji Photo Film Ltd. v. Jazz Photo Corp., Inc.*, 173 F. Supp. 2d 268, 274 (D.N.J. 2001) ("the findings and opinions rendered by the . . . ITC, as well as . . . by the Federal Circuit on appeal from the ITC . . . serve a persuasive value, they do not receive any deferential treatment nor do they have a preclusive effect on any findings and opinions rendered." (citations omitted)).

For all of these reasons, this Court is not bound by the Board's "findings of fact" about what the '218 Patent drawings show.  The trier of fact is entitled to review the evidence and make its own decision, and this Court is free to render its claim construction of the '218 Patent.

## B.   There Is an Issue of Material Fact as to Whether the Accused Playards Infringe the '218 Patent.

In addition to the issues of fact regarding what the lines of the '218 Patent drawing shown, there is yet another issue of material fact precluding summary judgment:  the issue of infringement itself.  Because the Baby Trend products are so strikingly similar in overall appearance to the '218 patented design, a reasonable jury could easily determine that Baby Trend's accused playards infringe Graco's '218 Patent and that the accused playards are deceptively similar to the '218 Patent in the eyes of an ordinary observer conversant with the prior art.

1      **1.     The High Degree of Similarity in Overall Appearance**

2              **Between the Accused Products and the Patented Design**

3              **Precludes the Requested Summary Judgment.**

4      As noted above, ***infringement of a design patent is a question of fact***.

5 *Catalina Lighting, Inc.* 295 F.3d at 1287.  Employing the ordinary observer test, a

6 design patent is infringed when an ordinary observer familiar with the prior art

7 would be deceived into believing that the accused product is the same as the

8 patented design.  *Egyptian Goddess*, 543 F.3d at 681.  The test is one of overall

9 appearance, and applies to the patented design in its entirety as claimed.  *Crocs*, 598

10 F.3d at 1303.  "'[T]he deception that arises is a result of the similarities in the

11 overall design, not of similarities in ornamental features in isolation.'"  *Id.* (quoting

12 *Amini Innovation Corp.*, 439 F.3d at 1371).

13      Comparing the curved legs claimed in the '218 Patent to Baby Trend's

14 accused playards, it is clear that the overall appearance of the claimed design is

15 deceptively similar to the infringing design of Baby Trend's playards.

16 Conveniently, in its Motion for Summary Judgment, pictures of Baby Trend's

17 accused playards never appear on the same page as the figures from the '218 Patent.

18 Conducting a side-by-side comparison of the design drawings contained in the '218

19 Patent and the accused products, such as the comparison conducted by the Federal

20 Circuit in *Crocs*, reveals why, as it leaves no doubt as to the similarity of the two

21 designs.  The two playards are nearly identical.

22

23

24

25

26

27

28

1
2
3
4
5
6
7

 

8    Merely based on the above illustration, a reasonable jury could determine by

9  a preponderance of the evidence that the striking similarity between the overall

10  appearance of the patented design (on the left) and the accused products (on the

11  right) would deceive an ordinary observer, thereby inducing him to purchase the

12  Baby Trend playard supposing it to be the playard covered by the '218 Patent.  This

13  alone should preclude the Court from granting summary judgment of

14  noninfringement in favor of Baby Trend.

15    Indeed, the Supreme Court has found infringement when considering designs

16  less similar than those at issue in this case.  In *Gorham*, the Court held that the two

17  White designs, as shown below, were substantially the same to that of the patented

18  Gorham ornamental design, such that they infringed Gorham's design patent:

19
20
21
22
23
24
25
26
27
28

PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT



'218 Patent

U.S. Patent
D1,440
to Gorham

U.S. Patent
D2,551
to White

U.S Patent
D2,992
to White

Baby Trend
Dakota Playard

*Gorham*, 81 U.S. at 530.  If the designs in *Gorham* were substantially similar, Baby Trend's accused playards must be as well.

### 2.     The Opinion of Graco's Design Expert Weighs Against Granting the Requested Summary Judgment.

The design expert retained by Graco for this litigation, Robert Anders, conducted an infringement analysis of a sampling of the accused Baby Trend playards.  Mr. Anders concluded that an ordinary observer with knowledge of the prior art, when viewing each of the accused products, would find that the overall appearance of the accused products, and the visual impression made, would be substantially the same as the ornamental design disclosed in the '218 Patent. (Anders Decl. at ¶ 7, Ex. A at 52-53.)  According to Mr. Anders, the accused products infringe the design claimed in the '218 Patent.  (*Id.* at 20.)

PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    The Supreme Court in *Gorham* cautioned that when determining design
2    patent infringement it is the deception of the ordinary observer, not the design
3    expert, that is key.  *Gorham*, 81 U.S. at 528.  Expert testimony, however, can
4    support the finding of a factual dispute mandating a denial of "the extraordinary act
5    of granting summary judgment."  *Mondo Polymers Tech., Inc. v. Monroeville*
6    *Indus. Moldings, Inc.*, No. 2:07-cv-1054, 2009 U.S. Dist. LEXIS 102169, at *11 (S.
7    D. Ohio Nov. 3, 2009).  Therefore, here, the opinion of Graco's design expert
8    should also preclude the Court from granting summary judgment of
9    noninfringement in favor of Baby Trend.

10   **VI.   CONCLUSION**

11   Key issues of material fact preclude summary judgment.  Baby Trend has not
12   met its burden of demonstrating the absence of a genuine issue of material fact and
13   therefore is not entitled to summary judgment of noninfringement.  For the reasons
14   stated above, there are genuine issues of material fact that should be properly
15   determined by a jury.  Accordingly, Graco respectfully requests that the Court deny
16   Baby Trend's Motion for Summary Judgment, or in the Alternative, Partial
17   Summary Judgment of noninfringement and the first claim for relief in Baby
18   Trend's counterclaims for declaratory judgment regarding noninfringement.

19

20   DATED:  August 15, 2011          BALLARD SPAHR LLP

21
                                      s/ Penny M. Costa
22                                    Penny M. Costa
                                      2029 Century Park East, Suite 800
23                                    Los Angeles, California 90067
                                      Telephone:  (424) 204-4400
24                                    Facsimile:  (424) 204-4350
                                      Email:    costap@ballardspahr.com
25

26

27

28

PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lynn E. Rzonca *(admitted pro hac vice)*
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
E-mail:   rzoncal@ballardspahr.com

and

Katrina M. Quicker *(admitted pro hac vice)*
Ballard Spahr LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309-3915
Telephone: (678) 420-9300
Facsimile: (678) 420-9301
E-mail:   quickerk@ballardspahr.com

PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2011, I electronically filed a true and correct copy of the foregoing PLAINTIFF GRACO'S OPPOSITION TO BABY TREND'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES [CONCURRENTLY FILED WITH SEPARATE STATEMENT OF GENUINE DISPUTES AND DECLARATIONS OF ROBERT JOHN ANDERS, TODD SCHOETTELKOTTE, AND KATRINA M. QUICKER] through the Court's CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| rtache@swlaw.com | J. Rick Tache, Esq. |
| dmallgrave@swlaw.com; dmwilliams@swlaw.com | Deborah S. Mallgrave, Esq. |
| mreynolds@swlaw.com | Michael B. Reynolds, Esq. |
| jyang@swlaw.com; kcollins@swlaw.com | Jasmin Yang, Esq. |

                                    /s/ Monica Patanian