1

1        UNITED STATES DISTRICT COURT

2

3        CENTRAL DISTRICT OF CALIFORNIA

4        WESTERN DIVISION

5

6
GRACO CHILDREN'S PRODUCTS,     )
7   INC.,                           )
                                   )
8                                  )
        PLAINTIFF,                 )
9                                  ) CASE NO. CV 10-5897-JST(MLGX)
                                   )
10                                 ) SANTA ANA, CALIFORNIA
                                   )
11  BABY TREND, INC.,              ) AUGUST 23, 2011
                                   )
12                                 ) (10:02 A.M. TO 11:20 A.M.)
        DEFENDANT.                 )
13  _____)

14
                          HEARING
15        BEFORE THE HONORABLE MARC L. GOLDMAN
             UNITED STATES MAGISTRATE JUDGE
16

17

18
    APPEARANCES:          SEE NEXT PAGE
19
    COURT REPORTER:       RECORDED; COURT SMART
20
    COURTROOM DEPUTY:     STEPHEN YBARRA
21
    TRANSCRIBER:          DOROTHY BABYKIN
22                        COURTHOUSE SERVICES
                          1218 VALEBROOK PLACE
23                        GLENDORA, CALIFORNIA  91740
                          (626) 963-0566
24
    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1    APPEARANCES:   (CONTINUED)
      FOR THE PLAINTIFF:        BALLARD SPAHR LLP
 2                              BY:   PENNY M. COSTA
                                      ATTORNEY AT LAW
 3                              2029 CENTURY PARK EAST
                                SUITE 800
 4                              LOS ANGELES, CALIFORNIA  90067

 5                              BALLARD SPAHR LLP
                                BY:   LYNN E. RZONCA
 6                                    ATTORNEY AT LAW
                                1735 MARKET STREET
 7                              51ST FLOOR
                                PHILADELPHIA, PENNSYLVANIA  19103
 8
                                BALLARD SPAHR LLP
 9                              BY:   KATRINA M. QUICKER
                                      ATTORNEY AT LAW
10                              999 PEACHTREE STREET NE
                                SUITE 1000
11                              ATLANTA, GEORGIA  30309

12    FOR THE DEFENDANTS:       SNELL & WILMER
                                BY:   DEBORAH S. MALLGRAVE
13                                    ATTORNEY AT LAW
                                600 ANTON BOULEVARD
14                              SUITE 1400
                                COSTA MESA, CALIFORNIA  92626
15

16

17

18

19

20

21

22

23

24

25
```

3

1                         I N D E X
      CASE NO. CV 10-5897-JST(MLGX)              AUGUST 23, 2011
2
      HEARING RE:   PLAINTIFF'S MOTION TO COMPEL RESPONSES TO
3                   INTERROGATORIES NUMBERS 2-16 AND TO PRODUCE
      DOCUMENTS RESPONSIVE TO REQUESTS FOR PRODUCTIONS NUMBERS 2,
4     3, 28 AND 40.
                    PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF
5                   DOCUMENTS RESPONSIVE TO REQUEST FOR PRODUCTION
      NUMBERS 1, 4-27, AND 29-39.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1  SANTA ANA, CALIFORNIA; TUESDAY, AUGUST 23, 2011; 10:02 A.M.

2    THE CLERK:  ALL RISE.  THIS COURT IS NOW IN

3 SESSION.  THE HONORABLE MARC L. GOLDMAN, UNITED STATES

4 MAGISTRATE JUDGE, PRESIDING.

5    THE COURT:  YOU CAN BE SEATED.

6    CASE NUMBER 10-5897, GRACO CHILDREN'S PRODUCTS

7 VERSUS BABY TREND.

8    COUNSEL'S APPEARANCES, PLEASE.

9    MS. COSTA:  GOOD MORNING, YOUR HONOR.

10    PENNY COSTA OF BALLARD SPAHR ON BEHALF OF GRACO

11 CHILDREN'S PRODUCTS.  I HAVE WITH ME TWO OF MY COLLEAGUES

12 LYNN RZONCA AND KATRINA QUICKER.  MS. RZONCA WILL BE

13 PRESENTING GRACO'S ARGUMENTS IN SUPPORT OF ITS MOTIONS.

14    THE COURT:  ALL RIGHT.

15    MS. MALLGRAVE:  DO YOU HAVE A PREFERENCE?

16    THE COURT:  WELL, FOR YOUR NAME YOU CAN SIT OVER

17 THERE BUT -- OR STAND OVER THERE.  BUT FOR ARGUMENT, I'D LIKE

18 YOU AT THE PODIUM.

19    MS. MALLGRAVE:  OKAY.

20    GOOD MORNING, YOUR HONOR.  DEBORAH MALLGRAVE FROM

21 SNELL & WILMER ON BEHALF OF DEFENDANT BABY TREND.

22    THE COURT:  OKAY.  SO, WE HAVE TWO MOTIONS.  AND

23 I'M A LITTLE BAFFLED BY THIS CASE.  THERE'S SO MUCH PAPER.

24 AND IT'S REALLY UNCLEAR TO ME WHAT YOU FOLKS ARE FIGHTING

25 ABOUT.  THIS IS NOT WHAT I WOULD EXPECT IN THIS KIND OF CASE.

1             SO, LET'S DEAL -- LET'S DEAL FIRST WITH THE

2    INTERROGATORY ISSUE, THE MOTION WHICH INVOLVES A NUMBER OF

3    INTERROGATORIES.

4             SO, IT'S YOUR MOTION.  AND WE'RE DEALING WITH A

5    PATENT FOR THIS -- WHAT I USED TO CALL A PLAYPEN -- RIGHT? --

6    PLAYARD.

7             MS. RZONCA:  NOW A PLAYARD.  CORRECT, YOUR HONOR.

8             THE COURT:  ALL RIGHT.  IT USED TO BE A PLAYPEN.

9    AND CURVED LEGS, 45-DEGREE ANGLE.  OKAY.

10            MS. RZONCA:  YOUR HONOR --

11            THE COURT:  SO, WE'VE GOT A CERTAIN NUMBER OF

12   PLAYARDS MADE BY DEFENDANT WITH CURVED LEGS.  MAYBE 45-DEGREE

13   ANGLE, MAYBE NOT.  RIGHT?

14            SO, THAT'S --

15            MS. RZONCA:  YES, YOUR HONOR.  MAY I SET THE STAGE

16   A LITTLE BIT?

17            THE COURT:  SURE, SET THE STAGE.

18            MS. RZONCA:  OKAY.  AND THE STAGE --

19            AND LYNN RZONCA ON BEHALF OF THE PLAINTIFF.  THANK

20   YOU SO MUCH FOR YOUR TIME AND ATTENTION TO THIS MATTER.

21            THIS IS A CASE INVOLVING A DESIGN PATENT. GRACO

22   CHILDREN'S PRODUCTS IS ONE OF THE LEADING CREATORS OF

23   CHILDREN'S PRODUCTS, A VERY INNOVATIVE COMPANY.  AND IT DOES

24   OWN A LOT OF PATENTS.

25            AND YOU'RE CORRECT.  BACK IN THE 50'S AND THE 60'S

6

1   THESE DEVICES USED TO BE CALLED PLAYARDS.  AND THEN THEY GOT

2   VERY TECHNOLOGICALLY ADVANCED.  AND THERE WERE MANY

3   INNOVATIONS INCLUDING IN THE AESTHETIC APPEARANCE -- HENCE,

4   THE DESIGN PATENT COVERAGE FOR THIS PLAYARD.

5            IT IS A HOTLY CONTESTED ISSUE IN THIS CASE WHAT THE

6   SCOPE OF THAT PLAYARD IS, WHETHER OR NOT THERE'S A PARTICULAR

7   ANGLE.  AGAIN, THIS IS A DESIGN PATENT CASE.  WHAT IS COVERED

8   UNDER THE PATENT LAW IS THE AESTHETIC APPEARANCE AND NOT

9   TECHNICAL PERMUTATIONS, WHETHER OR NOT THERE'S A 45-DEGREE

10  ANGLE OR NOT.  SO, I JUST WANT TO MAKE CLEAR THAT IS BABY

11  TREND'S POSITION IN TERMS OF WHAT THE PATENT COVERS.

12           WE COULDN'T AGREE WITH YOU MORE THAT THESE MOTIONS

13  PRESENT A LOT OF PAPERWORK.  AND THE ANOMALY IS THAT THERE'S

14  A LOT OF PAPERWORK IN THESE MOTIONS BECAUSE WE HAVEN'T GOTTEN

15  A LOT OF PAPERS FROM BABY TREND.

16           THIS CASE WAS ORIGINALLY FILED IN A BANKRUPTCY

17  COURT BECAUSE BABY TREND WAS IN BANKRUPTCY.  AND THEN WE

18  MOVED IT -- MOVED TO WITHDRAW THE REFERENCE, AND IT GOT

19  TRANSFERRED TO JUDGE TUCKER.  WE GOT OUR SCHEDULING ORDER IN

20  DECEMBER.  AND AT THE END OF JANUARY WE FILED OUR FIRST ROUND

21  OF DISCOVERY.  AND HERE WE ARE IN AUGUST STILL WITHOUT

22  COMPLETE PRODUCTION, STILL WITH REFUSALS TO PRODUCE.

23           WITH RESPECT TO THE INTERROGATORIES -- AND LET ME

24  SAY, YOUR HONOR, THESE ARE PRETTY STANDARD SETS OF DISCOVERY

25  REQUESTS.  WE HAVE A LOW NUMBER OF INTERROGATORIES, 14

7

1    INTERROGATORIES, 41 REQUESTS FOR DOCUMENTS, ALL GOING TO

2    STANDARD ISSUES IN A DESIGN PATENT CASE.  WHAT ARE THE

3    PLAYARDS THAT YOU'RE SELLING?  HOW MUCH ARE YOU SELLING?  TO

4    WHOM ARE YOU SELLING THEM?  WHAT ARE YOUR COMMUNICATIONS WITH

5    CUSTOMERS ABOUT THEM?  THOSE ARE ALL BASIC ESSENTIAL ELEMENTS

6    OF WHAT WE NEED TO PROVE THIS CASE.

7            THE COURT:  WELL, I MEAN, THERE'S A QUESTION ABOUT

8    THE OVERBREADTH OF YOUR REQUEST.  SO, YOU KNOW, WHETHER IT'S

9    BASIC OR UNBASIC IT'S -- THERE IS LEGITIMATE OBJECTION.

10   WHETHER IT'S A VALID OBJECTION IS ANOTHER QUESTION.

11           MS. RZONCA:  I AGREE.

12           THE COURT:  SO, THIS IS NOT A SLAM-DUNK CASE.  AND

13   JUST BECAUSE YOU DON'T LIKE THE NUMBER OF PAGES YOU RECEIVE

14   DOESN'T MEAN THAT THE DISCOVERY --

15           MS. RZONCA:  WELL --

16           THE COURT:  -- IS INADEQUATE. ALL RIGHT.

17           MS. RZONCA:  I --

18           THE COURT:  SO -- LET ME FINISH.  LET ME FINISH.

19           SO, THAT'S MY PHILOSOPHY ON THIS.  YOU KNOW, YOU

20   GET WHAT YOU NEED TO TRY THE CASE THAT FITS INTO YOUR CASE.

21   AND JUST BECAUSE IT DOESN'T MEET YOUR EXPECTATIONS DOESN'T

22   MEAN THAT THERE'S BEEN WITHHOLDING OR MISCONDUCT.  AND THAT'S

23   THE -- THE TONE OF THE ALLEGATIONS HERE.  ALL RIGHT.

24           SO, I MEAN, IF YOU THINK THERE IS, THAT'S FINE.

25   YOU'VE GOT TO PROVE IT.  ALL RIGHT.  MY DEFAULT IS THAT

8

1  OFFICERS OF THE COURT DO WHAT THEY'RE SUPPOSED TO DO.  THEY

2  DON'T LIE IN PLEADINGS.  THEY DON'T LIE TO OPPOSING COUNSEL.

3  NOW, THEY MAY HAVE A GOOD-FAITH DISPUTE OVER -- OVER WHAT

4  SHOULD BE PRODUCED OR WHAT IS RELEVANT, BUT THERE'S A TONE

5  HERE WHICH INDICATES THAT YOU BELIEVE THAT THEY'RE

6  INTENTIONALLY WITHHOLDING DOCUMENTS.  AND I HAVEN'T SEEN IT

7  YET, SO.

8          MS. RZONCA:  AND, SIR, I ABSOLUTELY AGREE WITH YOU.

9  WE START OUT FROM THE PREMISE THAT WE ARE ALL PROFESSIONALS.

10  WE ALL HAVE ETHICAL OBLIGATIONS --

11          THE COURT:  SO, IS IT YOUR POSITION --

12          MS. RZONCA:  -- TO THE COURT.  AND THAT'S WHERE --

13          THE COURT:  LET ME ASK THE QUESTION.

14          MS. RZONCA:  SURE.

15          THE COURT:  IS IT YOUR POSITION THEY'RE

16  INTENTIONALLY WITHHOLDING DOCUMENTS?

17          MS. RZONCA:  IT IS OUR POSITION THAT THERE HAS BEEN

18  SIGNIFICANT STONEWALLING.  AND THAT HAS BEEN STRATEGIC.

19          AND THE EVIDENCE OF THAT, SIR, IS THAT WE WERE TOLD

20  -- FIRST, WE HAVE REFUSALS TO PRODUCE.  AND THEN WE WERE

21  TOLD MULTIPLE TIMES THERE ARE NO DOCUMENTS -- THERE ARE NO

22  DOCUMENTS.  AND WE ASKED.  AND WE WERE TOLD AGAIN THERE ARE

23  NO DOCUMENTS.  AND THAT DIDN'T STRIKE US AS TRUE BASED ON

24  WHAT WE KNEW OF THE DEFENDANT WITH WHOM WE HAVE TANGLED

25  BEFORE.

1           AND, SO, WE SAID YOU ARE FORCING US TO FILE A

2    MOTION TO COMPEL BECAUSE WE HAVE NO DOCUMENTS.  WE ARE COMING

3    UP UPON THE CLOSE OF DISCOVERY.  WHAT WILL WE ASK OF YOUR

4    WITNESSES.  AND WE UNFORTUNATELY WERE FORCED TO PURSUE THE

5    PATH OF MOTIONS TO COMPEL.  AND IT WAS THEN THAT WE BEGAN TO

6    HEAR THERE ARE DOCUMENTS.  AND DOCUMENTS BEGAN TO TRICKLE IN.

7           AND, SO, SIR, I -- I AGREE.  WE START OUT FROM THE

8    PREMISE THAT ALL ARE PROFESSIONALS AND ALL ARE PLAYING BY THE

9    RULES.

10           THE COURT:  OKAY.  SO, WHAT YOU'RE TELLING ME THAT

11    THEY'RE WITHHOLDING DOCUMENTS.  THAT'S WHAT YOU'RE TELLING

12    ME.  THAT WAS THE EASY ANSWER TO THE QUESTION --

13           MS. RZONCA:  THEY HAVE STALLED.

14           THE COURT:  ALL RIGHT.  SO --

15           MS. RZONCA:  THEY HAVE STALLED.

16           THE COURT:  ALL RIGHT.  SO, LET'S TALK ABOUT THESE

17    INTERROGATORIES --

18           MS. RZONCA:  YES.

19           THE COURT: -- AND WHETHER OR NOT THE

20    INTERROGATORIES EXCEED 25 BECAUSE THAT'S WHAT THE FIRST

21    MOTION IS ABOUT, RIGHT?

22           MS. RZONCA:  THAT'S CORRECT.

23           THE COURT:  ALL RIGHT.

24           MS. RZONCA:  CORRECT.

25           THE COURT:  SO, LET'S DEAL WITH THAT.

1          MS. RZONCA:  VERY GOOD.

2          THE COURT:  IT'S YOUR ARGUMENT.  GO AHEAD.

3          MS. RZONCA:  AGAIN, THE INTERROGATORIES THAT WE

4   SERVED ARE GROUPED IN TERMS OF THEMES.  AND FOR PURPOSES OF

5   CALCULATING THE LIMIT ON INTERROGATORIES -- THAT'S WHAT THE

6   RULES SAY.  YOU LOOK TO WHETHER OR NOT WHAT'S BEING ASKED IN

7   A PARTICULAR INTERROGATORY IS THEMATICALLY OR FACTUALLY

8   RELATED.  AND OURS ARE.

9          OUR FIRST INTERROGATORY ASKS ABOUT THE PLAYARDS

10  THAT THEY MADE, IMPORTED, USED, OFFERED FOR SALE, SOLD, OR

11  DISTRIBUTED.  THAT BASICALLY FOLLOWS THE DEFINITION OF WHAT

12  CONSTITUTES INFRINGEMENT UNDER THE PATENT LAWS.

13         AND THEN WE ASK ABOUT, WELL, AS TO THOSE PLAYARDS,

14  TELL US ESSENTIALLY HOW MANY YOU MADE, IMPORTED, OR SOLD.

15  AND THAT'S WHERE BABY TREND'S ANSWERS STOP.  AND THEY SAID,

16  WELL, WE'RE GOING TO COUNT THESE INTERROGATORIES BASED ON THE

17  NUMBER OF PLAYARDS THAT WE MADE.  AND IT'S SIMPLY NOT

18  SUPPORTABLE IN THE RULES OR IN THE CASE LAW.  ALL OF THESE

19  INTERROGATORIES ARE SPECIFICALLY TAILORED TO ADDRESS THE

20  ELEMENTS THAT WE WILL HAVE TO PROVE IN THIS CASE.

21         THE COURT:  ALL RIGHT.  LET'S STOP HERE FOR A

22  MINUTE.  AND LET ME -- I'M GOING TO ASK -- IT'S MS.

23  MALLGRAVE.  ALL RIGHT.

24         I MEAN, HOW MANY INFRINGING PRODUCTS DO WE HAVE --

25  HOW MANY ALLEGED INFRINGING PRODUCTS DO WE HAVE?

1          YES, HOW MANY ALLEGED INFRINGING PRODUCTS?

2          MS. MALLGRAVE:  UNDER THE COMPLAINT THERE ARE 11

3    ALLEGED INFRINGING PRODUCTS.

4          THE COURT:  OKAY.  NOW, YOU KNOW YOU'RE NOT GOING

5    TO GET AWAY WITH JUST 25, ONE INTERROGATORY PER PRODUCT OR

6    OTHER TYPES OF PRODUCTS.  OKAY.  I MEAN, IF THERE'S 40

7    PRODUCTS, YOU DON'T GET JUST 25 INTERROGATORIES.  YOU KNOW

8    THAT IF THEY CAME IN HERE, WHICH THEY PROBABLY SHOULD HAVE

9    DONE, BUT MAYBE NOT, AND ASKED FOR LEAVE TO INQUIRE ABOUT

10   ADDITIONAL -- OR MAKE ADDITIONAL INTERROGATORY REQUESTS, I

11   WOULD HAVE GRANTED IT.  ALL RIGHT.  IF YOU BASED YOUR

12   ARGUMENT ON -- EVEN THE CASES THAT SUPPORT -- ARGUABLY

13   SUPPORT YOUR DECISION.  SO, THEY'RE GOING TO GET MORE THAN

14   WHAT YOU DEEM TO BE 25 INTERROGATORIES.  YOU JUST CAN'T --

15   YOU JUST CAN'T STOP AT INTERROGATORY NUMBER 1.  ALL RIGHT.

16   THAT'S JUST NOT GOING TO HAPPEN.

17          SO, THEN, THE QUESTION BECOMES SCOPE.  ALL RIGHT.

18   YOU KNOW, I HAVE BETTER THINGS TO DO THAN SIT AND COUNT

19   INTERROGATORIES.  I HAVE MORE IMPORTANT THINGS TO DO THAN SIT

20   AND COUNT INTERROGATORIES.  THE QUESTION IS WHAT ARE THEY

21   ENTITLED TO IN TERMS OF RELEVANCE, IN TERMS OF RULE 26.  SO,

22   THAT'S WHAT I WANT TO GET INTO.

23          NOW, IF WE START WITH THE PREMISE I'M GOING TO GIVE

24   THEM THE INFORMATION THAT THEY NEED TO PROVE THEIR CASE, ARE

25   THERE SIGNIFICANT DISPUTED ISSUES?  ARE THERE THINGS THAT YOU

12

1    TWO CAN GO INTO A ROOM THERE -- OR YOU FOUR CAN GO IN THE

2    ROOM THERE AND RESOLVE YOURSELF?  OR DO I GOT TO GO THROUGH

3    THIS INTERROGATORY QUESTION BY QUESTION.

4            MS. MALLGRAVE:  WELL, YOUR HONOR, WE OFFERED DURING

5    THE MEET AND CONFER PROCESS TO RESPOND TO THE INTERROGATORIES

6    AND PROVIDE THE INFORMATION FOR NOT JUST THE 11 PRODUCTS IN

7    THE COMPLAINT BUT FOR ALL THE CURVED-LEG PRODUCTS OF WHICH I

8    BELIEVE THERE ARE 24.

9            THE PROBLEM AND I THINK THE HEART OF THIS DISPUTE

10   IS THEIR INTERROGATORIES SEEK EVEN MORE INFORMATION THAN

11   THAT.

12           THE COURT:  RIGHT.  I THINK THAT'S WHAT I SAW TOO.

13           SO, THE QUESTION IS, HOW MUCH -- WHAT INFORMATION

14   AND HOW MUCH INFORMATION ARE THEY ENTITLED TO FOR THE

15   STRAIGHT-LEG PRODUCTS.

16           AM I RIGHT?

17           MS. MALLGRAVE:  YES.  THAT'S --

18           THE COURT:  IS THAT THE BIG DISPUTE HERE?

19           MS. MALLGRAVE:  -- THE ULTIMATE QUESTION.

20           THE COURT:  ALL RIGHT.  SO, WHY DON'T WE ADDRESS

21   THAT ISSUE.  OKAY.

22           THEIR ARGUMENT FROM WHAT I CAN TELL IS THAT THEY

23   NEED THE INFORMATION REGARDING THE STRAIGHT-LEG PRODUCTS FOR

24   THE PURPOSES OF EVALUATING WILLFULNESS AND DAMAGES, RIGHT?  I

25   THINK THAT'S WHAT THEIR ARGUMENT IS.

13

1          RIGHT?

2              MS. RZONCA:  YES, SIR.

3              THE COURT:  OKAY.  WHY IS THAT WRONG?

4              AND I GUESS THE NEXT QUESTION IS EVEN IF IT'S NOT

5      WRONG, ARE THEY BEING OVERBROAD IN THEIR REQUESTS AS TO THE

6      STRAIGHT-LEG PRODUCTS.

7              MS. MALLGRAVE:  I THINK THEY ARE WRONG -- WELL, ON

8      BOTH POINTS, YES.  I DO NOT SEE NOR DO I UNDERSTAND HOW

9      INFORMATION RELATING TO THE STRAIGHT-LEG PLAYARDS -- HOW MANY

10     WE SOLD, WHEN WE SOLD THEM, WHEN WE STARTED MANUFACTURE, WHAT

11     OUR SALES ARE FOR THIS PRODUCT -- HOW THAT POSSIBILITY

12     RELATES TO EITHER WILLFULNESS OR TO THEIR DAMAGES.

13             THE COURT:  I THINK THE ARGUMENT IS -- AND I

14     HAVEN'T SEEN IT BEFORE, BUT IT'S ONLY BECAUSE IT HASN'T BEEN

15     RAISED BEFORE.  THE ARGUMENT IS IS THAT IF THEY CAN SHOW --

16     YOU CAN CORRECT ME IF I'M WRONG -- GREATER SALES OF THE

17     CURVED-LEG PRODUCTS OVER THE ALLEGED INFRINGING PRODUCTS

18     VERSUS THE STRAIGHT-LEGGED PRODUCTS MIGHT DEMONSTRATE SOMEHOW

19     -- AN INFERENCE CAN BE DRAWN OF WILLFULNESS.  THAT'S HOW I

20     READ IT.

21             MS. MALLGRAVE:  WELL, THEY'RE WELCOME I GUESS TO

22     ARTICULATE A LITTLE BIT BETTER BECAUSE --

23             THE COURT:  YES.  WELL, YOU KNOW --

24             MS. MALLGRAVE: -- STILL TO ME THAT DOESN'T MAKE

25     SENSE.  THERE ARE TWO DIFFERENT PRODUCTS.  AND IN A PATENT

1   INFRINGEMENT CASE, IN A DESIGN PATENT INFRINGEMENT CASE,

2   YOU'RE LOOKING AT THE PATENT ITSELF AGAINST THE ACCUSED

3   PRODUCTS.

4            THE COURT:  RIGHT.

5            MS. MALLGRAVE:  SO, HOW WHAT'S GOING ON WITH THE

6   STRAIGHT-LEG PLAYARD, WHICH CAN ARGUABLY -- AND EVEN GRACO

7   DOESN'T TRY TO CLAIM INFRINGE THE PATENT, HOW THAT'S GOING TO

8   RELATE TO ANALYSIS OF AN ACTUAL INFRINGEMENT WAS A

9   WILLFULNESS OF THE INFRINGEMENT.  I'M JUST NOT SEEING IT.

10  AND I APOLOGIZE.  I'M NOT SURE I CAN EVEN ARTICULATE ANYMORE

11  HOW TO ME THAT'S NOT -- WE'RE JUST LOOKING AT APPLES AND

12  ORANGES.  WE'RE NOT EVEN IN THE SAME BALLPARK ON THOSE.

13           AND THEN FOR A DAMAGES ANALYSIS, THEY'RE ENTITLED

14  TO EITHER THEIR LOST PROFITS, A REASONABLE ROYALTY FOR A

15  LICENSE FOR THE PATENT THAT'S CLAIMED, THE CURVED-LEG

16  PLAYARD, OR BABY TREND'S LOST PROFIT -- I MEAN, I'M SORRY,

17  BABY TREND'S PROFITS.  THAT DOESN'T RELATE TO A STRAIGHT-LEG

18  PLAYARD.  THEY'RE TWO DIFFERENT PRODUCTS.  WHETHER THERE'S A

19  CURVED-LEG TO A PLAYARD OR NOT, THERE'S GOING TO BE THE

20  STRAIGHT-LEG PLAYARDS.  BOTH ARE BEING MARKETED RIGHT NOW.

21  IT'S NOT LIKE WE STOPPED DOING A STRAIGHT LEG AND SWITCHED

22  OVER TO A CURVED LEG.  STRAIGHT-LEG PLAYARDS ARE STILL BEING

23  SOLD ON THE MARKET TODAY.

24           THE COURT:  OKAY.  LET ME HEAR FROM THE PLAINTIFF.

25           MS. RZONCA:  THERE ARE 39 PLAYARDS THAT BABY TREND

15

1    SELLS IN ALL.  20 OF -- 4 OF THOSE HAVE CURVED LEGS.  THE

2    NUMBER HAS BEEN INCREASING SINCE THE INFRINGEMENT STARTED.

3              THE STRAIGHT-LEG PLAYARDS ARE ABSOLUTELY RELEVANT

4    TO SEVERAL OF OUR BURDENS OF PROOF -- ABSOLUTELY INCLUDING

5    WILLFULNESS.  I MENTIONED SOME OF THOSE DOCUMENT --

6              THE COURT:  WHAT DO YOU WANT IN THE CONTEXT OF THE

7    STRAIGHT-LEG PLAYARDS?

8              MS. RZONCA:  WE WANT TO SEE THEIR SALES HISTORY.

9    WE WANT TO SEE DOCUMENTS THAT DISCUSS WHY THERE WAS THIS

10   CHANGE FROM STRAIGHT LEGS TO CURVED LEGS.  BECAUSE BASED ON

11   THOSE DOCUMENTS THAT I MENTIONED THAT HAVE STARTED TO TRICKLE

12   IN, WHAT WE'VE SEEN ARE A PATTERN OF BABY TREND SAYING WHAT'S

13   GRACO DOING.  COPY WHAT GRACO IS DOING, WHETHER THAT BE FOR

14   --

15             THE COURT:  NOW, WAIT A MINUTE NOW.  IS THERE --

16   YOU'RE SAYING THAT YOU HAVE A SMOKING GUN HERE? -- COPY WHAT

17   GRACO IS DOING.  IS THAT WHAT YOU'RE TELLING ME?

18             (PAUSE IN PROCEEDINGS.)

19             MS. MALLGRAVE:  WELL, I DISPUTE THE

20   CHARACTERIZATION, BUT.

21             MS. RZONCA:  I'M HAPPY TO SHOW YOU AND READ INTO

22   THE RECORD THE DOCUMENT, YOUR HONOR.

23             WHILE MS. QUICKER --

24             THE COURT:  THAT'S ALL RIGHT.  JUST KEEP GOING.

25             MS. RZONCA: -- PULLS THAT DOCUMENT.

1              SO, AS TO THOSE DOCUMENTS, THAT ONLY STARTED TO

2    TRICKLE IN AFTER THESE MOTIONS TO COMPEL.

3              THE COURT:  BUT THAT'S --

4              MS. RZONCA:  THAT'S WHAT WE'RE SEEING.  BUT --

5              THE COURT:  BUT THOSE ARE DIFFERENT TYPES OF

6    DOCUMENTS.  OKAY.

7              MS. RZONCA:  BUT IT'S --

8              THE COURT:  LISTEN TO ME FOR A MINUTE.  DON'T CUT

9    ME OFF.

10             MS. RZONCA:  MY APOLOGIES.

11             THE COURT:  YOU WANT SALES FIGURES, RIGHT.  OKAY.

12   I MEAN, THE DOCUMENTS ARE TOTALLY DIFFERENT.  ALL RIGHT.  I

13   MEAN, I'M TRYING TO FIGURE OUT WHAT EXACTLY -- ASSUMING THAT

14   I FIND THAT THESE ARE SOMEWHAT RELEVANT TO THE ISSUES OF

15   WILLFULNESS AND DAMAGES, WHAT DOCUMENTS DO YOU NEED TO

16   ESTABLISH WILLFULNESS AND DAMAGES WITH RESPECT TO SALES OF

17   THESE STRAIGHT-LEG PLAYARDS.  NOW, THE OTHER DOCUMENTS ARE

18   DIFFERENT.  SO, LET'S TALK ABOUT WHAT YOU ASKED FOR IN THIS

19   -- THERE'S THIS LAUNDRY LIST OF DOCUMENTS RELATING TO THE

20   STRAIGHT-LEG PLAYARDS.  I'M NOT GOING TO GIVE YOU ALL OF

21   THEM.

22             SO, YOU'VE GOT TO TELL ME WHAT IS GOING TO BE --

23   YOU KNOW, WHAT YOU NEED TO PROVE THESE ELEMENTS.  AND THEN

24   I'LL DETERMINE WHICH OF THOSE I'M GOING TO GIVE YOU.  OKAY.

25             MS. RZONCA:  THANK YOU, SIR.

1            THE COURT:  ALL RIGHT.

2            MS. RZONCA:  DOCUMENTS RELATING TO THE CHANGE IN

3    DESIGN FROM THE STRAIGHT-LEG TO THE CURVED-YARD PLAYARDS --

4    CURVED-LEG PLAYARDS --

5            THE COURT:  OKAY.

6            MS. RZONCA:  -- WOULD BE ONE CATEGORY.

7            THE COURT:  ALL RIGHT.  LET'S -- ALL RIGHT.  GO ON.

8            MS. RZONCA:  AS PART OF THE LOST-PROFITS ANALYSIS

9    THAT OUR EXPERT HAS NOT YET BEEN ABLE TO UNDERTAKE FULLY, WE

10   NEED TO SHOW THAT THERE WERE NO NON-INFRINGING SUBSTITUTES.

11           SO, DOCUMENTS ADDRESSING THE STRAIGHT-LEGGED

12   PLAYARDS AND THEIR PERFORMANCE IN THE MARKETPLACE.  AND, FOR

13   EXAMPLE, WHETHER CUSTOMERS LIKED THEM OR STARTED TO SAY WE'RE

14   SEEING THE GRACO CURVED-LEG PLAYARDS.  WE LIKE THAT BETTER.

15   STRAIGHT LEGS ARE PASSE --

16           THE COURT:  I MEAN, WHAT ARE THOSE DOCUMENTS?  I

17   MEAN, WHAT ARE YOU -- I DON'T KNOW WHAT YOU'RE TALKING

18   ABOUT.

19           MS. RZONCA:  SURE.  THOSE, YOUR HONOR, WOULD BE

20   ENCOMPASSED IN COMMUNICATIONS WITH THIRD PARTIES AND

21   CUSTOMERS ABOUT STRAIGHT-LEGGED PLAYARDS.

22           THE COURT:  OKAY.

23           MS. RZONCA:  OBVIOUSLY, THE FINANCIAL DOCUMENTS

24   THAT SHOW NOT ONLY THE SALES THEMSELVES BUT THE PROFITABILITY

25   OF THOSE PARTICULAR PLAYARDS AND DOCUMENTS SHOWING THE

18

1    TRANSITION FROM OR THE ADDITION INTO THE STRAIGHT-LEGGED

2    LINE-UP OF CURVED LEG PLAYARDS.

3             THE COURT:  AND WHAT WOULD THOSE DOCUMENTS BE THAT

4    WOULD SHOW TRANSITION?  WHAT DO YOU MEAN BY THAT?

5             MS. RZONCA:  THOSE WOULD BE, FOR EXAMPLE, INTERNAL

6    MEMORANDA DISCUSSING WHY BABY TREND HAVING SEEN THE GRACO

7    CURVED-LEG PLAYARD --

8             THE COURT:  WELL, THAT IS AN ASSUMPTION IN THAT

9    STATEMENT.

10            MS. RZONCA:   AN ASSUMPTION THAT'S BORNE OUT BY THE

11   DOCUMENTS THAT TRICKLED IN.

12            THE COURT:  OKAY.  WELL, I DON'T KNOW ANYTHING

13   ABOUT THOSE, SO.  ALL RIGHT.

14            DOCUMENTS RELATING TO THE REASONS THAT THE

15   TRANSITION WAS MADE.

16            MS. RZONCA:  CORRECT.

17            IN ADDITION TO THE PROFITABILITY OF THE

18   STRAIGHT-LEG VERSUS THE CURVED-LEG PLAYARD, THE COSTS, THE

19   SALES PRICE, AND THE MARGINS ON THE STRAIGHT LEG AND THE

20   CURVED YARD -- CURVED-LEG PLAYARD.

21            THE COURT:  OKAY.  SO, THAT'S WHAT WE'RE REALLY

22   FOCUSING ON HERE, RIGHT.

23            MS. RZONCA:  YES, SIR.

24            THE COURT:  OKAY.

25            MS. MALLGRAVE:  WELL, FIRST OF ALL, I HEAR THE WORD

19

1    -- IT SEEMS TO ME WE'RE ARGUING BOTH ABOUT DAMAGES AND

2    WILLFULNESS.

3            THE COURT:  RIGHT.

4            MS. MALLGRAVE:  AND, SO, I JUST THOUGHT I WOULD

5    CLARIFY THAT FOR WILLFULNESS, AGAIN, WHEN WE'RE TALKING ABOUT

6    A STRAIGHT-LEG PLAYARD, THAT'S NOT REALLY THE FOCUS OF THE

7    CASE.  THE FOCUS OF THE CASE WHEN WE'RE TALKING WILLFULNESS

8    IS DID BABY TREND KNOWINGLY INFRINGE THE PATENT THAT'S

9    CLAIMED AT ISSUE.

10           THE COURT:  I AGREE.

11           MS. MALLGRAVE:  SO, WHAT'S GOING ON WITH THE

12   STRAIGHT-LEGGED PLAYARD DOESN'T RELATE AT ALL TO --

13           THE COURT:  WELL, I MEAN, SOME OF THIS --

14           MS. MALLGRAVE:  -- AN ANALYSIS OF WILLFULNESS.

15           THE COURT: -- COULD GO TO AN ISSUE OF MOTIVATION,

16   WILLFULNESS.  YOU KNOW, IF YOU'RE NOT MAKING ANY MONEY ON THE

17   STRAIGHT-LEGGED PLAYARDS, THERE'S A -- THERE IS SOME SORT OF

18   INCENTIVE.  YOU KNOW, IT'S NOT GREAT, BUT IT'S THERE.

19           MS. MALLGRAVE:  ALL RIGHT.  YOU'RE TRYING.

20           THE COURT:  AND I'M NOT DECIDING ADMISSIBILITY.

21   RIGHT?  I'M DECIDING --

22           MS. MALLGRAVE:  ALL RIGHT.  I'LL GIVE YOU THAT.

23           THE COURT:  ALL RIGHT.  THANK YOU.

24           SO, IT'S POSSIBLE.

25           MS. MALLGRAVE:  OKAY.  SO, TURNING SPECIFICALLY TO

20

1   THE LIST WE HAVE OF WHAT IS REQUESTED, FOR DOCUMENTS

2   INDICATING A CHANGE FROM A STRAIGHT TO A CURVED-LEG PLAYARD,

3   THOSE DOCUMENTS ARE ALREADY RESPONSIVE TO THE OTHER REQUEST

4   INDICATING -- OR SEEKING DOCUMENTS RELATING TO A CURVED-LEG

5   PLAYARD.  THERE'S A LITANY OF DOCUMENT REQUESTS THAT --

6           THE COURT:  SO, LET ME ASK YOU THIS.  ARE YOU

7   SAYING YOU PROVIDED ALL THOSE DOCUMENTS?

8           MS. MALLGRAVE:  IF THEY EXISTED, WE WOULD HAVE

9   PROVIDED THEM.

10          THE COURT:  OKAY.  I WANT A DECLARATION THAT SAYS

11  THAT.  AND I WANT YOU TO DO ANOTHER SEARCH ON THAT.  I THINK

12  THAT'S IMPORTANT.  OKAY.

13          SO, I'M GOING TO GRANT THE MOTION WITH RESPECT TO

14  ALL DOCUMENTS REFLECTING THE REASONING BEHIND THE CHANGE FROM

15  THE STRAIGHT-LEG PLAYARD TO THE CURVED PLAYARD.  OKAY.

16          SO, WHAT YOU NEED TO DO TO RESOLVE THIS PROBLEM,

17  MS. MALLGRAVE, IS GO BACK TO YOUR CLIENT.  TELL THEM THEY

18  NEED TO DO ANOTHER SEARCH.  THEN, I WANT A DECLARATION FROM

19  YOU AND A PERSON WITH KNOWLEDGE FROM THE COMPANY SAYING A

20  SEARCH HAS BEEN MADE.  AND THIS IS WHAT WE'VE FOUND

21  ADDITIONALLY OR WE HAVE NOT FOUND ANYTHING.  AND THAT PUTS --

22  AND THAT KILLS THIS.  THAT PUTS IT TO REST AS FAR AS I'M

23  CONCERNED UNLESS YOU CAN SHOW THAT -- UNLESS THE PLAINTIFF

24  CAN SHOW THAT THERE'S SOME SORT OF WILLFUL VIOLATION.

25  ALL RIGHT.

21

```
 1              SO, NOW, LET'S GO TO THE SECOND PORTION OF THIS,
 2    WHICH -- THE 10:24:10 NO NON-INFRINGING SUBSTITUTE TO
 3    CATEGORY WHERE THERE'S A SERIES OF DOCUMENTS -- I CAN'T
 4    REMEMBER WHAT THE FIRST ONE -- COMMUNICATIONS WITH --
 5              THAT'S COMMUNICATIONS WITH CUSTOMERS?  IS THAT HOW
 6    WE STARTED OR --
 7              MS. MALLGRAVE:  I HAD CUSTOMERS AND THIRD PARTIES,
 8    CORRECT.
 9              THE COURT:  OKAY.  AND THEN SALES AND
10    PROFITABILITY, COSTS, SALES PRICE, MARGINS.  LET'S GO THROUGH
11    THOSE.
12              AND THEN WE'VE GOT A TIME PROBLEM, DON'T WE? --
13    TIMEFRAME.
14              MS. MALLGRAVE:  YOU MEAN LIKE END OF DISCOVERY OR
15    WHEN WE'RE GOING TO --
16              THE COURT:  YES, IN THE -- THERE'S FROM 2009, 2000,
17    RIGHT?
18              MS. RZONCA:  CORRECT.
19              THE COURT:  OKAY.  SO, LET'S TALK ABOUT THIS SERIES
20    OF -- YOU KNOW, THESE SERIES OF DOCUMENTS.
21              MS. MALLGRAVE:  WELL, STARTING WITH THE PREMISE
22    THAT THESE DOCUMENTS RELATE TO A -- THE EXISTENCE OF A
23    NON-INFRINGING SUBSTITUTE, WE TAKE ISSUE WITH THAT AS WELL.
24    I DON'T THINK THERE'S ANYTHING IN THIS CASE SO FAR THAT WE
25    HAVE SEEN OR THAT GRACO HAS ADVANCED THAT INDICATES A
```

1  STRAIGHT LEG WOULD BE A NON-INFRINGING SUBSTITUTE FOR THE

2  CURVED-LEG PLAYARD.

3          AS THEY'RE MARKETED RIGHT NOW, AGAIN, THEY ARE

4  SEPARATE PLAYARDS.  THEY'RE EVEN DIFFERENT PRICE CATEGORIES.

5  THEY'RE DIFFERENT PRICE POINTS.  THEY HAVE DIFFERENT

6  FEATURES.  SO, IT MAY BE THAT YOU CAN TAKE A CURVED-LEG

7  PLAYARD THAT EXISTS TODAY -- LIKE, FOR BABY TREND IT COULD BE

8  A DELUXE CLOSE AND COZY MODEL.  IT'S GOT A BASSINET ON TOP

9  AND PUT STRAIGHT LEGS ON IT.  BUT THAT PARTICULAR MODEL IS

10  NOT RIGHT NOW MARKETED WITH A STRAIGHT LEG ON IT.  THE

11  STRAIGHT-LEG MODELS ARE DIFFERENT PRICE POINTS AND THEY'RE

12  NOT THE DELUXE MODELS THAT ARE BEING OFFERED.

13          SO, FOR THE INFORMATION THAT'S OUT THERE FOR THE

14  STRAIGHT-LEG PLAYARDS WOULD NOT TRANSFER OVER -- AGAIN, WE'RE

15  TALKING APPLES TO ORANGES IN TERMS OF TAKING A CURVED-LEG

16  PLAYARD AND JUST PUTTING STRAIGHT LEGS ON IT.

17          SO, I DISAGREE WITH THE PROPOSITION THAT THE

18  INFORMATION FOR THE STRAIGHT LEGS AND THE PROFITS AND THE

19  SALES INFORMATION ON THOSE ARE GOING TO CARRY OVER.  AGAIN, I

20  THINK WE'RE TALKING APPLES TO -- APPLES TO ORANGES.

21          THE COURT:  OKAY.

22          MS. MALLGRAVE:  OKAY.  HAVING SAID THAT, AGAIN, I

23  THINK WHEN WE'RE TALKING ABOUT --

24          THE COURT:  WHEN DID YOU START PUTTING OUT -- THESE

25  CURVED-LEG PLAYARDS WENT OUT IN -- WHAT? -- IN OCTOBER OF

23

1   2009.  IS THAT WHAT I READ?

2           MS. MALLGRAVE:  NO.  THAT'S ACTUALLY WHEN --

3           THE COURT:  IS THAT WHEN THE --

4           MS. MALLGRAVE: -- DAMAGES WOULD BEGIN IN THIS CASE

5   BECAUSE OF THE POST-PETITION --

6           THE COURT:  RIGHT.

7           MS. MALLGRAVE: -- DAMAGES FROM BANKRUPTCY.

8           THE COURT:  OKAY.

9           MS. MALLGRAVE:  BABY TREND -- AND I APOLOGIZE.  I

10  DON'T HAVE THE EXACT DATE.

11          THE COURT:  OKAY.

12          MS. MALLGRAVE:  I BELIEVE IT'S MID-2005.

13          THE COURT:  OKAY.

14          MS. MALLGRAVE:  SO, IN TERMS OF A REQUEST THAT GOES

15  BACK TO 2000, WE DON'T EVEN HAVE THAT INFORMATION.  I MEAN,

16  THERE'S NO SALES INFORMATION AVAILABLE BECAUSE WE WEREN'T

17  SELLING THEM UNTIL 2005.  SO, WE'RE REALLY LOOKING AT --

18          THE COURT:  BUT YOU'RE SELLING STRAIGHT-LEG --

19          MS. MALLGRAVE:  -- THAT TIME PERIOD.

20          THE COURT: -- PLAYARDS BEFORE 200- --

21          MS. MALLGRAVE:  YES, IN TERMS OF STRAIGHT-LEG

22  PLAYARDS, I'M NOT SURE OF THE DATE.  BUT, YES, IT WOULD HAVE

23  BEEN --

24          THE COURT:  OKAY.

25          MS. MALLGRAVE:  -- I'M PRETTY SURE BY 2000.

24

1          THE COURT:  ALL RIGHT.

2          MS. MALLGRAVE:  I MEAN, THE COMPANY WAS IN

3   EXISTENCE, SO.

4          THE COURT:  BECAUSE I THINK THAT'S WHAT WE'RE

5   TALKING ABOUT RIGHT NOW.

6          MS. MALLGRAVE:  OKAY.  SO, FOR THE -- PUTTING ASIDE

7   CURVED LEGS, SO JUST LOOKING AT THEN THE STRAIGHT-LEGGED

8   PLAYARDS, I THINK, AGAIN, WHEN WE'RE TALKING ABOUT

9   COMMUNICATIONS BETWEEN CUSTOMERS AND THIRD PARTIES ABOUT A

10  REQUEST TO CHANGE OR A PREFERENCE FOR A CURVED-LEG PLAYARD,

11  AGAIN, THOSE TYPES OF DOCUMENTS HAVE ALREADY BEEN SEARCHED

12  FOR AND WOULD HAVE BEEN PRODUCED IN RESPONSE TO GRACO'S

13  REQUEST FOR DOCUMENTS RELATING TO A CURVED-LEG PLAYARD.

14         THE COURT:  OKAY.  SO, LET ME ASK YOU THIS.  IS IT

15  YOUR REPRESENTATION TO ME THAT NO SUCH DOCUMENTS EXIST?

16         MS. MALLGRAVE:  YOUR HONOR --

17         THE COURT:  OR DO YOU WANT TO DO ANOTHER SEARCH?

18  DO YOU WANT TO --

19         MS. MALLGRAVE:  I'M HESITATING BECAUSE IF WE HAVE

20  THE DOCUMENTS, THEY WOULD HAVE BEEN PRODUCED.  BUT WE HAVE

21  OVER THE PAST FEW MONTHS REVIEWED THOUSANDS UPON THOUSANDS OF

22  EMAILS.  AND IF THE DOCUMENTS EXISTED IT WOULD HAVE BEEN

23  PRODUCED.  BUT IT'S POSSIBLE WE HAD MULTIPLE ATTORNEYS

24  REVIEWING THE DOCUMENTS, THAT SUCH INFORMATION MAY NOT HAVE

25  GOTTEN BACK TO ME THAT WE HAVE THEM.

1        AS I UNDERSTAND IT, WE DON'T HAVE DOCUMENTS WHERE

2   ONE -- YOU KNOW, WHERE SOMEBODY, A THIRD PARTY, IS ACTUALLY

3   REQUESTING A CURVED LEG.  THERE ARE CHANGES LIKE -- WELL,

4   MAYBE -- I'M NOT -- I SUPPOSE IT'S HOW YOU CHARACTERIZE IT.

5   I THINK THERE ARE DOCUMENTS WHERE A CUSTOMER IS INDICATING

6   THEY'RE INTERESTED IN THE CURVED-LEG MODELS NOW THAT I THINK

7   ABOUT IT.

8        WHAT I CAN REPRESENT IS IF THEY EXIST, THEY HAVE

9   BEEN PRODUCED.  WHAT I WOULD HAVE TO DO TO GO BACK AND SEE IF

10  WE ACTUALLY HAD ANY, I'D HAVE TO REVIEW THE DOCUMENTS OR TALK

11  TO THE PEOPLE MORE SPECIFICALLY TO SEE IF ANY SUCH DOCUMENTS

12  THAT EXIST.

13       THE COURT:  TALK TO THE PEOPLE.

14       MS. MALLGRAVE:  BUT I KNOW WE DID A THOROUGH -- IF

15  THEY -- IF IT EXISTS, THEY'VE ALREADY BEEN PRODUCED.

16       THE COURT:  OKAY.  TALK TO THE PEOPLE AND PUT THIS

17  IN YOUR DECLARATION.  OKAY.

18       MS. MALLGRAVE:  AND WE'RE TALKING ABOUT WHETHER

19  THERE ARE ANY --

20       THE COURT:  THIS IS THE -- I MEAN, THIS STUFF DOES

21  NOT MAKE OR BREAK THE CASE AS FAR AS I'M CONCERNED.  AND I

22  THINK IT'S A FUNCTION OF THE COURT TO BALANCE COST VERSUS

23  RELEVANCE IN ANY TYPE OF THESE CASES -- YOU KNOW, IN THESE

24  TYPES OF CASES.

25       SO, GO BACK -- I'M NOT GOING TO MAKE YOU GO THROUGH

26

1   EVERY DOCUMENT AGAIN AND SEE IF SOME FATHER OUT THERE SAID,

2   DARN, I WISH WE HAD A CURVED-LEG PLAYARD, YOU KNOW.  THAT

3   DOESN'T MAKE OR BREAK THIS CASE.  SO, I WANT YOU TO CHECK

4   THAT.  BUT I'M NOT GOING TO MAKE YOU DO A COMPLETE DOCUMENT

5   REVIEW AGAIN.

6            MS. MALLGRAVE:  BUT I CAN ASK THAT POINTED QUESTION

7   TO THE PEOPLE WHO REVIEWED THE DOCUMENTS --

8            THE COURT:  SURE.

9            MS. MALLGRAVE: -- FOR PRODUCTION.

10            THE COURT:  YES.  AND SEE WHAT THERE IS.

11            MS. MALLGRAVE:  RIGHT.

12            THE COURT:  IF THERE'S SOMETHING, TURN IT OVER.

13            MS. MALLGRAVE:  OH, IT WOULD HAVE ALREADY BEEN

14   TURNED OVER EITHER PREVIOUSLY OR IN -- WE HAD AN ISSUE IN

15   TURNING OVER DOCUMENTS UNTIL WE HAD AN AGREEMENT ON A

16   PROTECTIVE ORDER --

17            THE COURT:  OKAY.

18            MS. MALLGRAVE:  -- SO WE REACHED THAT AGREEMENT.

19   SO, ADDITIONAL DOCUMENTS WENT OUT YESTERDAY.

20            THE COURT:  ALL RIGHT.

21            MS. MALLGRAVE:  SO, IT MAY -- BUT THEY'RE THERE.

22            THE COURT:  SO, THERE'S DOCUMENTS THAT WENT OUT

23   YESTERDAY?

24            MS. MALLGRAVE:  UH-HUM.  YES.

25            THE COURT:  HOW CAN I DECIDE THIS IF THERE'S STILL

1    DOCUMENTS IN TRANSIT.

2              HOW DO YOU KNOW WHAT YOU HAVE?  I MEAN, MAYBE I

3    SHOULD MAKE YOU COME BACK.

4              BUT LET'S GET THROUGH THIS.  LET'S GET THROUGH

5    THIS.

6              MS. MALLGRAVE:  SO, I THINK NEXT WE'RE LOOKING AT

7    PROFITABILITY OF THE STRAIGHT LEG AND THEN DOCUMENTS RELATING

8    TO A COST-SALES PRICE 10:30:38 -- STRAIGHT LEG AND CURVED

9    LEG.

10             THE COURT:  RIGHT.

11             MS. MALLGRAVE:  OR I GUESS SPECIFICALLY TO THE

12   STRAIGHT LEG.

13             YES, THOSE DOCUMENTS WILL EXIST.  THEY'LL BE -- WE

14   HAVE NOT PRODUCED THEM.  WE HAVE NOT PRODUCED ANY SALES

15   INFORMATION FOR THE STRAIGHT LEG.  IT WILL BE EXTREMELY

16   BURDENSOME TO OBTAIN FROM BABY TREND.  BABY TREND DOES NOT

17   HAVE COMPUTERIZED SALES INFORMATION PRIOR TO 2009.

18             THE COURT:  HOW BIG IS BABY TREND?

19             MS. MALLGRAVE:  IT IS A LARGE COMPANY IN TERMS OF

20   SALES; SMALL IN TERMS OF PEOPLE ON STAFF.  IT IS WHAT -- AND

21   GOING FORWARD FROM 2009 FORWARD, THERE'S ONE COMPUTER SYSTEM

22   FROM 2009 AND 2010.  BUT IT WAS SO LIMITED IN SPACE, THEY HAD

23   TO STORE THAT ONE AND GET A NEW ONE STARTING FEBRUARY 1ST,

24   2011.

25             SO, TO PULL INFORMATION FOR SALES PRIOR TO 2009,

 1   BABY TREND NEEDS TO LOOK THROUGH LITERALLY BOXES OF DOCUMENTS

 2   THAT ARE STORED IN ITS WAREHOUSE AND GO THROUGH WHETHER IT'S

 3   P.O.'S, INVOICES, THAT TYPE OF INFORMATION, TO EITHER PULL

 4   THE INDIVIDUAL DOCUMENTS AND CREATE SPREADSHEETS OR SOMEHOW

 5   COMPILE THE INFORMATION.  IT IS NOT COMPUTERIZED.  AND, SO,

 6   WE WOULD BE DOING THAT I GUESS GOING BACK TO 2000 --

 7           THE COURT:  WELL, I'M NOT GOING --

 8           MS. MALLGRAVE: -- FOR THE PAST ELEVEN YEARS BECAUSE

 9   LIKE I SAID WE'VE CONTINUED TO SELL THE STRAIGHT-LEG PLAYARD.

10   WE'RE NOT -- IT HASN'T BEEN DISCONTINUED.

11           THE COURT:  HOW DO THESE GUYS DO THEIR TAX RETURNS?

12           MS. MALLGRAVE:  I DON'T KNOW HOW THEY DID IT

13   BEFORE, YOUR HONOR.

14           THE COURT:  THEY MUST HAVE HAD SOMETHING.  THEY

15   MUST HAVE HAD SOME BALANCE SHEET, SOME SPREADSHEET.

16           MS. MALLGRAVE:  THERE IS A LOG --

17           THE COURT:  YOU KNOW, I MEAN, I DON'T WANT EVERY

18   DOCUMENT.

19           MS. MALLGRAVE:  -- THAT DOESN'T CREATE --

20           THE COURT:  YOU KNOW, I WANT SOME -- I WANT SOME

21   SUMMARY DOCUMENT THAT GOES BACK A FEW YEARS SO THAT AT LEAST

22    -- THERE'S GOT TO BE SOMETHING OUT THERE.  WE SOLD 100,000

23   OR 5 STRAIGHT- -- WHATEVER IT IS, STRAIGHT-LEGGED PLAYARDS IN

24   2008.  AND THIS WAS OUR PROFIT.  THIS WAS OUR SALES PRICE.

25   THIS WAS OUR COST.  THIS IS OUR PROFIT.

1            MS. MALLGRAVE:  IF WE DON'T HAVE TO BREAK IT DOWN

2    BY MODEL, IF WE'RE JUST LOOKING AT ALL THE STRAIGHT-LEGGED

3    PLAYARDS, I CAN -- I HAVEN'T ASKED THAT QUESTION.

4            THE COURT:  ALL RIGHT.

5            MS. MALLGRAVE:  BECAUSE WE'VE BEEN TALKING ABOUT

6    MORE DETAILED --

7            THE COURT:  BUT THAT MAKES SENSE --

8            MS. MALLGRAVE:  -- INFORMATION.

9            THE COURT:  -- TO ME.  I DON'T THINK YOU WOULD --

10   I DON'T SEE WHY YOU NEED IT BY MODEL.

11           WHY DO YOU NEED IT BY MODEL?

12           MS. RZONCA:  I WAS JUST ASKING MS. QUICKER WHAT SHE

13   THOUGHT OUR DAMAGES EXPERT NEEDED.  I CERTAINLY THINK BY

14   YEAR, YOUR HONOR.

15           AND IF I MAY, THIS COMPANY WENT TO THE FEDERAL

16   COURT AND FILED FOR BANKRUPTCY PROTECTION IN OCTOBER OF 2009.

17   I CAN'T IMAGINE THAT THEY DID THAT WITH ZERO COMPUTER SYSTEMS

18   AND ZERO ACCESSIBILITY TO DOCUMENTS --

19           THE COURT:  WELL, I MEAN, THAT'S WHAT I'M BEING

20   TOLD.  THAT'S WHAT I'M BEING TOLD.  OKAY.

21           MS. MALLGRAVE:  THAT'S NOT TO SAY WE DON'T HAVE

22   FINANCIAL DOCUMENTS.  I MEAN, THERE WAS A TAX RETURN.  THE

23   SPREADSHEETS GO ALONG WITH THAT.  BUT BABY TREND DOESN'T JUST

24   SELL STRAIGHT-LEGGED PLAYARDS.  SO, IT'S THE IDEA OF BREAKING

25   DOWN BY PRODUCTS OR EVEN BY MODEL.

1          THE COURT:  OKAY.  I DON'T -- YOU'VE GOT TO DO

2    SOMETHING BY PRODUCT.   YOU'VE GOT TO FIND SOMETHING.

3    THERE'S GOT TO BE SOME SORT OF SPREADSHEET.

4          MS. MALLGRAVE:  I HAVE ASKED REPEATEDLY.  I HAVE

5    GONE TO THEIR CORPORATE OFFICES.  I HAVE LOOKED AT THEIR

6    DOCUMENTS.  I HAVE LOOKED AT THEIR SYSTEMS.

7          I MEAN, I HATE TO SAY IT'S BEING HIDDEN FROM ME IF

8    IT EXISTS, YOUR HONOR, BUT I HAVEN'T SEEN IT, AND I'VE

9    INQUIRED MULTIPLE TIMES TO MULTIPLE PEOPLE AND EVEN EXPLAINED

10   TO THEM WHAT OUR OBLIGATIONS ARE TO PRODUCE IN DISCOVERY,

11   THAT I AM NOW GOING TO COURT -- AND I HAVE, YOUR HONOR, TO

12   TRY AND FIND OUT THE TYPE OF DOCUMENTS THAT EXIST.

13          IN TERMS OF A SUMMARY, THE ONLY THING I HAVE BEEN

14   SHOWN IS ALMOST -- THEY CALL IT A LOG BOOK THAT LOGS IN THE

15   P.O. -- THE PURCHASE ORDER, MAYBE THE DATE IT WAS RECEIVED.

16   BUT I'M NOT EVEN SURE THERE'S -- THERE MAY BE A PRICE ON

17   THAT.  BUT IT'S -- I BELIEVE IT'S ONLY FOR WHAT'S COMING IN.

18   I MAY HAVE THAT MIXED UP IN MY HEAD.  BUT I BELIEVE IT'S ONLY

19   FOR WHAT'S COMING IN, NOT WHAT'S BEING SOLD.  I ADMIT IT'S

20   ANTIQUATED AND NEARLY SHOCKING.  AND IT WAS FOR ME AS WELL.

21          WHAT I HAVE NOT ASKED IS IF I NEEDED SOMETHING THAT

22   SUMMARIZED -- BECAUSE, AGAIN, I WAS LOOKING FOR DETAIL -- IF

23   I NEEDED SOMETHING THAT SUMMARIZED ALL THE STRAIGHT-LEGGED

24   PLAYARDS BY YEAR -- WOULD SUCH A DOCUMENT EXIST.  IS THAT

25   PART OF SOME FINANCIAL BOOKKEEPING OR SOMETHING.

31

1          THE COURT:  SO, HERE'S THE PROBLEM --

2          MS. MALLGRAVE:  AND I CAN GO BACK AND ASK.

3          THE COURT: -- I HAVE.  HERE'S THE PROBLEM I HAVE.

4   OKAY.

5          THE INFRINGING PRODUCTS ARE THE CURVED-LEG

6   PLAYARDS.  THE STRAIGHT-LEG PRODUCT INFORMATION IS FROSTING

7   ON THE CAKE.  OKAY.  I THINK IT IS.

8          COUNSEL FOR PLAINTIFF IS GRIMACING.  THE RECORD

9   SHALL REFLECT THAT COUNSEL FOR PLAINTIFF IS GRIMACING AT MY

10  STATEMENT.  THE GRIMACE IS NOTED BUT REJECTED.  ALL RIGHT.

11  IT'S FROSTING ON THE CAKE.

12         SO, THE QUESTION IS WE'VE GOT ALL THESE DOCUMENTS

13  -- WE'VE GOT SOME DOCUMENTS.  WE'VE GOT BOXES AND BOXES OF

14  DOCUMENTS.  WHAT'S IT WORTH IT TO YOU TO GO THROUGH THEM.

15         MS. RZONCA:  MAY I, YOUR HONOR?

16         THE COURT:  SURE.

17         MS. RZONCA:  AND, SIR, THE GRIMACE STEMS FROM THE

18  FACT THAT THE CASE LAW ON DAMAGES DOES SAY WE NEED THOSE

19  DOCUMENTS WITH RESPECT TO ESTABLISHING LOST PROFITS,

20  ESTABLISHING A REASONABLE ROYALTY.

21         MS. MALLGRAVE IS UP HERE ARGUING THAT THE STRAIGHT

22  LEGS ARE NOT A NON-INFRINGING SUBSTITUTE.  THAT'S ONE OF THE

23  ELEMENTS THAT WE HAVE TO LOOK AT.  AND IF SHE WANTS TO

24  STIPULATE THAT, THEN, WE'LL ACCEPT THAT STIPULATION.

25         YOUR HONOR, I ALSO WANTED TO GO BACK TO A POINT

1   THAT WE WERE DISCUSSING A MOMENT AGO WITH RESPECT TO WHAT ARE

2   THESE ADDITIONAL DOCUMENTS GOING TO SHOW.  AND I HAD

3   MENTIONED THE DOCUMENTS THAT WERE TRICKLING IN.  WE'VE ALSO

4   BEEN DISCUSSING A TIME LIMITATION.

5            ONE OF THE DOCUMENTS I WAS REFERENCING, IT WAS NOT

6   PRODUCED UNTIL AFTER THE FILING OF THESE TWO MOTIONS TO

7   COMPEL.  AND I'D LIKE TO CHARACTERIZE AND READ INTO THE

8   RECORD --

9            THE COURT:  BUT PRODUCED.

10           MS. RZONCA:  -- AND WE'LL KNOW THAT IT'S --

11           THE COURT:  BUT PRODUCED, RIGHT?

12           MS. RZONCA:  LATE.

13           THE COURT:  BUT PRODUCED.

14           GO AHEAD.

15           MS. RZONCA:  RIGHT.  AFTER WE HAD --

16           THE COURT:  GO AHEAD.

17           MS. RZONCA:  -- BEEN TOLD THEY DON'T EXIST.

18           THE COURT:  I MEAN --

19           MS. RZONCA:  I WILL NOTE FOR THE RECORD, SIR --

20           THE COURT:  GO AHEAD.

21           MS. RZONCA:  -- THIS HAS BEEN DESIGNATED AS

22   CONFIDENTIAL FOR COUNSEL ONLY.  AND IT'S VERY SHORT.

23           THERE IS AN EMAIL FROM THE PRESIDENT OF BABY TREND

24   TO TWO WHAT WE UNDERSTAND TO BE EMPLOYEES FOR MAY OF 2003.

25           AND THE PRESIDENT SAYS,

33

1          "ROB, ATTACHED IS THE NEW PLAYARD AND THE

2          BASSINET.  USE GREEN FABRIC GROUPING."

3      THIS MAN APPARENTLY DOES NOT WRITE PARTICULARLY

4  CLEAR ENGLISH.  SO, I AM READING VERBATIM.

5          "DID WE INTERESTING AND NEED DO ANY CHANGE FOR THE

6          5/6 MEETING."

7      AND THE RESPONSE TO THAT EMAIL IS:

8          "DENNY," WHO IS THE PRESIDENT OF THE COMPANY, "THE

9          PLAYARD IS MOST LIKELY AN INFRINGEMENT OF GRACO'S

10         DESIGN PATENT FOR THE OUTWARDLY BOWED VERTICAL

11         TUBES."

12     THIS IS THE TYPE OF DOCUMENT THAT'S NOW BEEN

13  SHOWING UP AFTER WE'VE BEEN TOLD NO DOCUMENTS.  AND THAT,

14  YOUR HONOR, IS SIMPLY WHY WE FEEL SO STRONGLY AND WHY WE

15  FILED THE MOTIONS.

16     THE COURT:  OKAY.  ALL RIGHT.

17     MS. RZONCA:  THEY HAVE -- THEY HAVE BEEN

18  PRODUCTIVE.

19     THE COURT:  THEY HAVE BEEN PRODUCED BUT LATE.

20  OKAY.

21     MS. MALLGRAVE:  YOUR HONOR, CAN I RESPOND TO THOSE

22  LAST STATEMENTS?

23     THE COURT:  YES.

24     MS. MALLGRAVE:  OKAY.  WITHOUT LOOKING AT THE

25  SPECIFIC EMAIL AND QUESTION THE OTHER DOCUMENTS SURROUNDING

34

1  IT, I BELIEVE THAT EMAIL RELATES TO A DIFFERENT GRACO PATENT

2  FOR A CURVED-LEG PLAYARD THAT IS NOT AT ISSUE IN THIS CASE.

3  BUT BECAUSE THE DOCUMENT REQUEST SOUGHT DOCUMENTS AND

4  INFORMATION RELATING TO ALL GRACO CURVED-LEG PLAYARDS, WE DID

5  PRODUCE THEM.

6         THERE IS ANOTHER PATENT THAT ONCE BABY TREND

7  DISCOVERED THIS PATENT EXISTED, I BELIEVE THE EMAILS REFLECT

8  TRIED NOT TO INFRINGE THAT PRODUCT.  AND THAT'S A DIFFERENT

9  PATENT.

10        IN TERMS OF OUR DOCUMENT PRODUCTION, PRIOR TO THE

11 FILING OF THE MOTION TO COMPEL, WE DID INDICATE TO OPPOSING

12 COUNSEL THAT WE WERE -- HAD A VOLUMINOUS EMAIL THAT WE HAD TO

13 REVIEW FOR -- TOWARDS OUR E-DISCOVERY.  AND PRIOR TO THE

14 MOTION INDICATED WE WERE STILL REVIEWING THAT DATABASE AND

15 WOULD BE PRODUCING DOCUMENTS.

16        THE DOCUMENTS THAT WERE SUBSEQUENTLY PRODUCED WHEN

17 WE SAID NO SUCH DOCUMENTS EXIST, BUT, OOPS, WE LOOKED AGAIN

18 AND NOW WE HAVE FOUND SOME, I BELIEVE THERE WAS A HANDFUL,

19 MAYBE 20 TO 25 DOCUMENTS THAT WOULD FALL WITHIN THAT

20 CATEGORY.  AND IT'S A HANDFUL OF REQUESTS.

21        FOR THE MAJORITY OF THE REQUESTS WHERE WE INITIALLY

22 RESPONDED, NO RESPONSIVE DOCUMENTS EXIST, NO RESPONSIVE

23 DOCUMENTS EXISTED.

24        WE DID A -- I'M SORRY.  SO, INCLUDED WITH THE

25 NO-RESPONSIVE-DOCUMENTS-EXIST CATEGORY, WE DID FIND SOME

35

1   DOCUMENTS BOTH IN E-DISCOVERY THROUGH THE EMAIL SEARCHES AND

2   THEN A HANDFUL THAT WERE STILL IN FILES.  AND THOSE WERE

3   PRODUCED.  SO, WE INDICATED PRIOR TO THE FILING OF THE MOTION

4   THAT WE WERE STILL GOING THROUGH THE PROCESS.  GRACO JUST

5   DIDN'T WANT TO WAIT ANY LONGER.

6           AND, YES, WE PRODUCED DOCUMENTS YESTERDAY.  BUT

7   WE'RE ALSO STILL RECEIVING DOCUMENTS FROM GRACO.  I MEAN,

8   IT'S MY UNDERSTANDING THAT DISCOVERY IS ONGOING.  BOTH

9   PARTIES HAVE AN OBLIGATION TO SUPPLEMENT AND CONTINUE TO

10  PRODUCE DOCUMENTS.  AND THAT'S WHAT BABY TREND IS DOING IN

11  GOOD FAITH.

12          THE COURT:  OKAY.  I NEED YOU TO GO BACK AND FIND

13  SOMETHING ON SALES AND PROFITABILITY.

14          MS. MALLGRAVE:  I'LL SEE --

15          THE COURT:  I NEED YOU TO FIND SOME DOCUMENTS -- I

16  NEED YOU TO -- AND I NEED IT TO GO BACK -- YOU NEED TO GO

17  BACK TO 2004.

18          I DON'T WANT -- YOU DON'T NEED MARGINS.  I NEED

19  SALES -- THEY NEED SALES AND PROFITABILITY.

20          MS. MALLGRAVE:  JUST TO CLARIFY, YOUR HONOR,

21  ASSUMING THERE ARE NO SUMMARY DOCUMENTS INDICATING SALES OR

22  PROFITABILITY, SO WE'RE LOOKING AT TRYING TO FIND OUR COST

23  AND OUR SALES -- WHAT WE PURCHASED THE PRODUCT FOR AND WHAT

24  WE SOLD IT FOR.

25          THE COURT:  YOU MANUFACTURE OR YOU JUST PURCHASE

36

1   AND --

2           MS. MALLGRAVE:  WE PURCHASE PRODUCTS FROM COMPANIES

3   IN CHINA --

4           THE COURT:  OKAY.

5           MS. MALLGRAVE: -- FOR MANUFACTURERS IN CHINA.

6           THE COURT:  ALL RIGHT.

7           MS. MALLGRAVE:  SO, WE'RE BASICALLY -- I MEAN, I

8   GUESS WE -- I THINK THE PARTIES HAVE BEEN SAYING THINGS,

9   LIKE, YOU KNOW, BABY TREND MANUFACTURES AND SELLS.  BUT WE

10  PERSONALLY DO NOT OWN THE FACTORIES.  AND WE DO NOT ACTUALLY

11  DO THE MANUFACTURE OURSELVES.

12          THE COURT:  OKAY.

13          MS. MALLGRAVE:  WE PURCHASE THEM FROM FACTORIES IN

14  CHINA.

15          THE COURT:  ALL RIGHT.

16          DO YOU DISAGREE WITH THAT?

17          MS. RZONCA:  OUR UNDERSTANDING IS THAT THE

18  MANUFACTURER -- THE MANUFACTURING COMPANY IS OWNED OR SOMEHOW

19  AFFILIATED WITH BABY TREND SO THAT THOSE DOCUMENTS AND

20  NUMBERS SHOULD BE READILY AVAILABLE.

21          MS. MALLGRAVE:  THAT'S NOT THE CASE.

22          THE COURT:  OKAY.

23          MS. RZONCA:  OUR UNDERSTANDING IS THAT IT'S CALLED

24  BABY TREND --

25          THE COURT:  WHAT IS YOUR UNDERSTANDING -- I MEAN,

37

1   WHERE DOES YOUR UNDERSTANDING COME FROM?

2           MS. RZONCA:  FROM SOME OF THE FEW EMAILS THAT HAVE

3   BEEN PRODUCED.

4           THE COURT:  IF YOU HAVE CONTROL OVER THOSE

5   DOCUMENTS, OVER THAT INFORMATION FROM THE MANUFACTURERS, YOU

6   NEED TO GET THEM.

7           MS. MALLGRAVE:  I HAVE LOOKED INTO THAT ALREADY,

8   YOUR HONOR.  AND WE DON'T HAVE CONTROL OF THE MANUFACTURERS.

9           THE COURT:  OKAY.

10          MS. MALLGRAVE:  THEY'RE NOT BABY TREND COMPANIES.

11          THE COURT:  IF YOU'RE STILL DOING BUSINESS WITH THE

12   MANUFACTURERS, YOU CAN REQUEST THAT THEY BE PROVIDED.

13          MS. MALLGRAVE:  WE HAVE REQUESTED INFORMATION IN

14   ANOTHER CASE.  THERE'S ANOTHER LITIGATION GOING ON WITH

15   GRACO.  AND WE HAVE REQUESTED INFORMATION, SALES INFORMATION,

16   FROM THE MANUFACTURERS.  AND THEY REFUSED TO GIVE IT.

17          THE COURT:  WELL, ASK AGAIN.

18          MS. MALLGRAVE:  I WILL ASK AGAIN, YOUR HONOR.

19          (PAUSE IN PROCEEDINGS.)

20          THE COURT:  ALL RIGHT.  WHERE DO WE GO FROM HERE?

21          MS. RZONCA:  I AM HAPPY TO DISCUSS ANY OF THE

22   REMAINING INTERROGATORY --

23          THE COURT:  RIGHT.  WE HAVE ALL THOSE

24   INTERROGATORIES, RIGHT.

25          WELL, I'M NOT SURE EXACTLY HOW TO GO ABOUT THIS.

1   IF WE CAN -- I SURELY DO NOT WANT TO GO THROUGH THEM ONE BY

2   ONE.  NOW, I SAW THAT THERE WAS A SERIES OF THEM.  YOU HAVE

3   ACCEPTED THE REPRESENTATION THAT I THINK NO DOCUMENTS EXIST

4   OR --

5            MS. RZONCA:  YES, SIR, WITH RESPECT TO THE DOCUMENT

6   REQUESTS.

7            THE COURT:  OKAY.  SO, IS THERE SOME WAY WE CAN

8   GROUP THEM AND CATEGORIZE THE INTERROGATORIES SO THAT WE CAN

9   MAKE SOME DECISIONS ABOUT WHAT'S GOING TO BE ANSWERED OR NOT.

10           MS. RZONCA:  ABSOLUTELY.  I HAVE SOME SHORT

11  SUMMARIES RIGHT IN FRONT OF ME.

12           THE COURT:  LET'S DO IT.

13           MS. RZONCA:  ALL RIGHT.

14           THE COURT:  GO AHEAD.

15           MS. RZONCA:  SO, WHERE BABY TREND STOPPED WITH ITS

16  ANSWERS WAS ASKING AS TO ALL OF THEIR PLAYARDS, WHAT THEIR

17  NUMBERS WERE, HOW MANY THEY SOLD AND DISTRIBUTED.  IT CLEARLY

18  GOES TO DAMAGES.

19           THE COURT:  OH, NO.  I ORDERED ALREADY THAT THEY'RE

20  GOING TO HAVE TO ANSWER THE INTERROGATORIES.  THE QUESTION

21  WAS THE SCOPE OF THOSE INTERROGATORIES.  OKAY.  AND IT SEEMED

22  TO ME THAT WE FOCUSED IN ON THE REAL DISPUTE ONCE WE GOT PAST

23  THE NUMBER -- WAS WHETHER OR NOT IT, YOU KNOW, WAS APPLICABLE

24  TO THE STRAIGHT-LEGGED PLAYARDS.

25           SO, I THINK WHAT I'VE DONE -- WHAT I INTENDED TO DO

                                                                39

1   WAS ORDER THE DEFENDANT TO GO ON AND ANSWER THOSE

2   INTERROGATORIES.

3            MS. RZONCA:  VERY GOOD.  THANK YOU.

4            THE COURT:  OKAY.  SO, THAT'S WHERE WE ARE WITH

5   THAT PARTICULAR MOTION.  AND I THINK I'VE RESOLVED THAT

6   PARTICULAR MOTION.

7            MS. RZONCA:  THANK YOU FOR THE CLARIFICATION.

8            THE COURT:  OKAY.  I THINK I HAVE UNLESS YOU HAVE

9   QUESTIONS.

10            MS. MALLGRAVE:  I DO HAVE A QUESTION BECAUSE MY

11   UNDERSTANDING WAS WE WERE GOING TO ANSWER THE INTERROGATORIES

12   WITH RESPECT TO THE CURVED-LEG INFORMATION, WHICH IS WHAT WE

13   HAD AGREED TO DO BEFORE.

14            WITH THE STRAIGHT-LEGGED PLAYARD WE WERE GOING TO

15   GO BACK TO LOOK FOR THESE DOCUMENTS --

16            THE COURT:  RIGHT.  THAT'S RIGHT.  THAT'S RIGHT.

17            MS. RZONCA:  TO THE EXTENT THE INTERROGATORIES ARE

18   ALSO DIRECTED TO STRAIGHT-LEGGED PLAYARDS THAT WOULD FALL

19   WITHIN THE SCOPE OF YOUR HONOR'S PRIOR RULING --

20            THE COURT:  I'M LIMITING IT.  I TOLD YOU I WAS

21   LIMITING IT.  ALL RIGHT.  I MEAN, YOU'VE SAID THE

22   STRAIGHT-LEGGED PLAYARDS HAVE CERTAIN RELEVANCE WITH RESPECT

23   TO DAMAGES AND WILLFULNESS.  AND TO THE EXTENT THAT THESE

24   INTERROGATORIES WOULD PROVIDE INFORMATION THAT GOES TO THOSE

25   ISSUES, YES.  BUT JUST GENERAL INFORMATION ABOUT THEM, I'M

```
 1   NOT GOING TO REQUIRE THEM TO DO THAT.

 2              MS. RZONCA:  OKAY.  THANK YOU.

 3              THE COURT:  OKAY.  SO, NOW, WE HAVE THE SECOND

 4   MOTION, WHICH IS THE REQUEST FOR PRODUCTION.  AND WE HAVE --

 5   WE HAVE DOCUMENTS THAT ARE IN TRANSIT, RIGHT?

 6              AND ARE SOME OF THESE DOCUMENTS RESPONSIVE TO THE

 7   REQUEST FOR PRODUCTION?

 8              MS. MALLGRAVE:  YES.

 9              THE COURT:  HOW MANY DOCUMENTS DID YOU SEND OUT

10   YESTERDAY?

11              MS. MALLGRAVE:  A FEW HUNDRED, MORE THAN A FEW

12   HUNDRED.  800 MAYBE.  EMAIL COMMUNICATIONS.  AND THEN WE HAVE

13   SOME FINANCIAL DOCUMENTS GOING OUT TODAY THAT JUST DIDN'T

14   MAKE IT INTO THE -- WE'RE PRODUCING DOCUMENTS VIA A CERTAIN

15   DATABASE.  SO, THEY JUST DIDN'T MAKE IT FOR A PRODUCTION LINE

16   YESTERDAY.  SO, THERE'S A FEW MORE GOING OUT TODAY.

17              IN ADDITION THERE'S ALSO THE DOCUMENTS THAT ARE --

18   WE HAVE THOUSANDS OF DOCUMENTS THAT ARE IN CHINESE THAT ARE

19   BEING REVIEWED.  AND WE SHOULD BE FINISHED WITH THE CHINESE

20   REVIEW -- AND I HAVE NO IDEA WHAT THOSE SAY -- BUT I

21   ANTICIPATE THE REMAINING OF THOSE WILL GO OUT BY THIS FRIDAY,

22   THOUGH I'M NOT SURE HOW MANY THAT WILL BE BECAUSE THEY'RE

23   STILL BEING REVIEWED.

24              THE COURT:  WHEN IS YOUR TRIAL DATE?

25              MS. RZONCA:  DECEMBER -- DECEMBER 14TH.
```

41

1    MID-DECEMBER.

2              THE COURT:  IS IT REALLY GOING TO GO ON DECEMBER --

3              MS. RZONCA:  WE ARE TRYING OUR BEST, YOUR HONOR, TO

4    MAINTAIN THAT TRIAL DATE.

5              THE COURT:  OKAY.  DOES IT MAKE SENSE TO PUT THIS

6    OFF FOR TWO WEEKS AND THEN SEE WHAT YOU GET AND THEN SEE

7    WHERE WE ARE?

8              MS. RZONCA:  YES, YOUR HONOR.

9              THE COURT:  I DIDN'T TWIST YOUR ARM TO SAY YES, DID

10   I?  THAT WAS A PAINFUL YES.

11             MS. RZONCA:  WILL YOU ALLOW ME ONE MOMENT TO CONFER

12   WITH MS. QUICKER?

13             THE COURT:  SURE.  I MEAN, I DON'T WANT TO HAVE TO

14   START DECIDING THINGS THAT I DON'T NEED TO DECIDE.

15             AND THIS IS A MESS.  I MEAN, IT'S A MESS BECAUSE

16   ACCEPTING COUNSEL'S -- DEFENSE COUNSEL'S REPRESENTATIONS AS

17   TRUE, WHICH I DO AT THIS POINT IN TIME, THIS COMPANY IS A

18   MESS.  THEY DON'T KEEP ANY RECORDS.  AND THE WAY THEY KEEP

19   THE RECORDS, THEY EITHER -- THEY EITHER DON'T KEEP ANY

20   RECORDS OR, YOU KNOW, THEY COULD BE HIDING THE RECORDS, BUT I

21   MEAN, YOU KNOW, I'M SURE COUNSEL HAS TWISTED -- SOMETIMES IT

22   HAPPENS.

23             YOU'VE GOT TO -- AND THIS IS -- AND, AGAIN, I'M

24   SORRY.  I'M BAD WITH NAMES.  MS. MALLGRAVE, YOU'VE GOT TO PUT

25   SOME PRESSURE ON THESE GUYS TO GET THEIR ACT TOGETHER.  I

1  MEAN, IF IT TURNS OUT THAT WE STILL KEEP GETTING DOCUMENTS,

2  THEN, I MAY HAVE TO LOOK AT WHETHER OR NOT THERE'S BEEN A

3  WILLFUL ATTEMPT BY THE PARTIES -- NOT BY YOU, BUT BY THE

4  PARTIES NOT TO TURN OVER MATERIALS.  AND, YOU KNOW, IF STUFF

5  TRICKLES IN WHICH SHOULD HAVE RESPONDED TO TEN MONTHS AGO,

6  WHERE A LITTLE BIT OF SEARCHING WOULD HAVE FOUND IT, YOU

7  KNOW, THAT'S THE EQUIVALENT OF WILLFUL -- THE FAILURE TO

8  LOOK, THE WILLFUL FAILURE TO LOOK IS JUST AS BAD AS HIDING IT

9  AS FAR AS I'M CONCERNED.

10         SO, I'M NOT SAYING THEY'RE DOING IT.  BUT I THINK

11  YOU NEED TO LET THEM -- THEY NEED TO KNOW THAT THIS HAS BEEN

12  PRESENTED TO ME.  AND, YOU KNOW, AS THE JUDGE WHO HAS SOME

13  CONCERNS ABOUT THIS, I'LL PULL THEM IN HERE.  I'LL PUT THEM

14  ON THE STAND IF I HAVE TO.

15         MS. MALLGRAVE:  NO, YOUR HONOR.  WE DEFINITELY --

16         MAY I?

17         MS. RZONCA:  YES.  OF COURSE.

18         MS. MALLGRAVE:  I APOLOGIZE.  THANK YOU.

19         I HAVE EXPLAINED THAT TO BABY TREND -- TO OUR

20  CLIENT.  I WILL EXPLAIN IT AGAIN.  AND BY WAY OF

21  CLARIFICATION, THE ADDITIONAL DOCUMENTS THAT WERE PRODUCED

22  YESTERDAY ARE NOT A MATTER OF TRICKLING IN OR, OH, GEE, WE

23  JUST LOOKED IN THIS FILE BOX AND NOW WE HAVE FOUND 800

24  DOCUMENTS.  THEY WERE EMAIL COMMUNICATIONS THAT WE HAVE BEEN

25  SEARCHING FOR INTERNALLY AT SNELL WILMER FOR MONTHS.

1       BABY TREND DID NOT HAVE A WAY TO EFFECTIVELY AND

2  EFFICIENTLY -- IT'S EVEN WORSE THAN US I SUPPOSE -- REVIEW

3  WITH EMAILS.  SO, WE HAD TO TAKE THE ENTIRE SERVER FROM ALL

4  THEIR EMAIL SYSTEM AND COME UP WITH OUR KEY WORDS AND

5  ACTUALLY SEARCH THROUGH AND HAD A NUMBER OF ATTORNEYS FOR A

6  FEW MONTHS SEARCHING THROUGH THESE EMAILS.  SO, IT'S JUST

7  THROUGH THAT PROCESS THAT HAS TAKEN AN ENORMOUS AMOUNT OF

8  TIME.  THIS ISN'T WE FORGOT TO LOOK IN ONE PLACE AND, OH, SO,

9  LET'S LOOK HERE AND NOW DOCUMENTS ARE TRICKLING IN.  IT'S

10  JUST THE SEARCH HAS TAKEN THAT LONG.

11       AND THE SAME THING WITH THE MANDARIN REVIEW.  IT

12  HONESTLY HAS JUST TAKEN US -- ADMITTEDLY IT HAS TAKEN SOME

13  TIME TO LOCATE, RETAIN, AND KEEP HOLD OF PEOPLE WHO CAN

14  INTERPRET THE MANDARIN DOCUMENTS TO GO THROUGH THESE

15  THOUSANDS OF EMAILS -- BECAUSE WE HAVE NO ONE IN THE FIRM WHO

16  CAN DO IT UNFORTUNATELY.  SO, WE'VE HIRED CONTRACT ATTORNEYS

17  TO DO IT -- TO ACTUALLY GET THROUGH THE DOCUMENTS THAT ARE IN

18  CHINESE TO IDENTIFY WHAT IS RESPONSIVE.

19       MS. RZONCA:  MAY I, YOUR HONOR?

20       PRIOR TO THE FILING OF THE MOTIONS TO COMPEL, BABY

21  TREND PRODUCED 250 DOCUMENTS.

22       THE COURT:  OKAY.

23       MS. RZONCA:  THE VAST MAJORITY OF THOSE WERE

24  PATENTS THAT THEY REPRESENTED WERE IN RESPONSE TO OUR REQUEST

25  THAT THEY SHOW US WHAT PRIOR ART THEY THOUGHT WAS RELEVANT.

44

1   THEIR EXPERT DIDN'T EVEN RELY ON THOSE DOCUMENTS.  BUT THAT

2   CONSTITUTED A GOOD CHUNK OF WHAT THEY PRODUCED.

3           OTHER THAN THAT, THEY PRODUCED ONE FINANCIAL

4   DOCUMENT, A HANDFUL OF CUSTOMER COMPLAINTS, AND A TEN-PAGE

5   DOCUMENT, NINE PAGES OF WHICH WERE REDACTED.  SO, NOW THE

6   FLOODGATES ARE OPENING.  THAT'S WHERE THE CONCERN ABOUT

7   COMPLIANCE WITH DISCOVERY --

8           THE COURT:  I THINK IT'S A LEGITIMATE --

9           MS. RZONCA: -- OBLIGATION ARISES --

10          THE COURT:  I THINK IT'S A LEGITIMATE CONCERN.  I

11  MEAN, OBVIOUSLY, YOU CAN TAKE IT TO JUDGE TUCKER.  ASK HER

12  FOR TERMINATING SANCTIONS IF YOU WANT.

13          BUT AT THIS POINT ALL I'VE GOT TO TRY TO DO IS GET

14  THIS THING ON TRACK.  ALL RIGHT.  SO, THAT'S WHAT I WANT TO

15  DO.

16          MS. RZONCA:  AND WE GREATLY APPRECIATE YOUR HELP IN

17  DOING THAT.

18          THE COURT:  WELL, I'M NOT SURE I'M HELPING THAT

19  MUCH, BUT, YOU KNOW, I WANT TO GET IT ON TRACK.  AND IF WE

20  CAN EITHER SAY THAT, ALL RIGHT, THESE DOCUMENTS MAY BE

21  RESPONSIVE OR, YOU KNOW, IF THERE'S SOME LEGAL DISPUTES ABOUT

22  CERTAIN DOCUMENTS I CAN RESOLVE TODAY, I'LL BE GLAD TO

23  RESOLVE THOSE TODAY AS LONG AS -- YOU KNOW, CATEGORIES OF

24  DOCUMENTS.

25          TO THE EXTENT THAT YOU'RE SEEKING FINANCIAL

45

1   DOCUMENTS, YOU'RE OBVIOUSLY ENTITLED TO FINANCIAL DOCUMENTS

2   WITH RESPECT TO THE CURVED-LEG PLAYARDS.  OKAY.  I'M TRYING

3   TO GET YOU AT LEAST SOMETHING ON THE STRAIGHT-LEGGED

4   PLAYARDS.  AND THAT'S WHAT I'VE ORDERED.  ALL RIGHT.  BUT IF

5   THERE'S CATEGORIES OF INFORMATION -- AND THIS IS WHAT I NEED

6   TO KNOW THAT YOU'VE REQUESTED AND THAT -- AND I'M TALKING TO

7   THE PLAINTIFF -- THAT DEFENDANT HAS AND HAS REFUSED TO

8   PRODUCE BASED UPON CERTAIN OBJECTIONS, I NEED TO KNOW WHAT

9   THESE ARE.  AND THEN I CAN DECIDE THOSE TODAY.

10          SO, YOU NEED TO TELL ME.  I MEAN, THIS IS JUST A

11  PILE OF STUFF HERE.  I READ IT AGAIN THIS MORNING.  AND I

12  STILL -- YOU KNOW, AND I CAN'T REMEMBER IT NOW.  SO, YOU NEED

13  TO TELL ME WHAT THE LEGAL DISPUTE IS OF DOCUMENTS YOU'VE

14  REQUESTED THAT WE KNOW EXIST AND THAT THE DEFENDANT HAS SAID,

15  NO, WE'RE NOT GOING TO TURN THEM OVER BECAUSE THEY'RE

16  CONFIDENTIAL OR THEY'RE PRIVATE OR WHATEVER.  OKAY.  SO,

17  MAYBE THAT CAN HELP US NARROW THIS SO MAYBE YOU DON'T HAVE TO

18  COME BACK.

19          MS. RZONCA:  WE'LL TAKE A MOMENT AND DO A

20  DOUBLE-CHECK ON THAT.

21          I WOULD LIKE TO RESPOND TO THE PROPOSAL ABOUT A

22  DATE CERTAIN FOR THE COMPLETION OF BABY TREND'S PRODUCTION.

23  TWO WEEKS WAS SUGGESTED.  WE WOULD ASK FOR THAT TO BE A WEEK

24  BECAUSE WE HAVE DEPOSITIONS STARTING IN TWO WEEKS.  WE WOULD

25  ALSO WANT THAT TO BE ACCOMPANIED BY A FULL DECLARATION BY MS.

46

 1   MALLGRAVE THAT THE PRODUCTION IS, IN FACT, COMPLETE.

 2            THE COURT:  WHEN DO YOUR DEPOSITIONS START?  THIS

 3   CASE IS NEVER GOING TO GET TO TRIAL.

 4            MS. MALLGRAVE:  I DON'T EVEN THINK WE HAVE THEM

 5   SCHEDULED.  I THINK --

 6            IS THERE ONE NEXT WEDNESDAY IN CLEVELAND, OHIO?

 7            MS. RZONCA:  THERE IS.

 8            MS. MALLGRAVE:  WE HAVE ONE NEXT WEDNESDAY.

 9            THE COURT:  OKAY.

10            MS. RZONCA:  AGAIN, THE SUGGESTION THAT THE

11   DEADLINE FOR FULL PRODUCTION BE SET AT ONE WEEK WITH THE

12   DECLARATION OF COMPLETION.

13            THERE'S ALSO BEEN REFERENCE TO THE THOUSANDS OF

14   EMAILS IN CHINESE.  OBVIOUSLY, IF THEY'RE PRODUCED TO US IN

15   CHINESE, WE'RE GOING TO HAVE TO START TRANSLATING.  SO, IF

16   BABY TREND --

17            THE COURT:  WELL, I THINK THEY'RE TRANSLATING THEM,

18   SO.

19            MS. MALLGRAVE:  NO.  WE'RE REVIEWING THEM.

20            THE COURT:  OH, YOU'RE REVIEWING THEM.

21            MS. MALLGRAVE:  WE'RE REVIEWING THEM IN CHINESE TO

22   DETERMINE WHAT'S RESPONSIVE.  AND THEN THEY'RE BEING

23   PRODUCED.  IT WOULD -- I DON'T KNOW IF WE WOULD HAVE TIME TO

24   TRANSLATE THEM ALL.

25            THE COURT:  NO.

1           MS. RZONCA:  SOME SUMMARY THEN PERHAPS OF WHY THEY

2    ARE RELEVANT --

3           THE COURT:  WELL --

4           MS. RZONCA:  -- AND WHAT THEY DEAL WITH.

5           THE COURT:  YOU FOLKS NEED TO SIT DOWN AND WORK

6    THIS STUFF OUT, YOU KNOW.

7           MS. MALLGRAVE:  YOUR HONOR, I WILL SAY IN TERMS OF

8    HAVING A COMPLETE PRODUCTION, I UNDERSTAND OUR OBLIGATIONS.

9    WE'RE TRYING TO LIVE UP TO THEM.  BUT I'M NOT AWARE OF A RULE

10   THAT ALL DOCUMENTS HAVE TO BE PRODUCED PRIOR TO DEPOSITION.

11   I MEAN, WE'RE AT THE END OF DISCOVERY.  SO, WE ARE WORKING

12   TOWARDS PRODUCING EVERYTHING.

13          BUT IN TERMS OF -- I MEAN, LIKE I SAID, GRACO'S

14   PRODUCING DOCUMENTS.  WE GOT TWO SUPPLEMENTAL PRODUCTIONS

15   FROM THEM, ONE THE OTHER DAY AND ONE THE WEEK BEFORE.

16   DISCOVERY IS ONGOING.  AND WHAT I HEAR FROM GRACO

17   REPRESENTATIONS LIKE, YOU KNOW, CERTIFY YOU'VE PRODUCED ALL

18   THE DOCUMENTS.  WELL, I CAN CERTIFY AS THEY HAVE THAT I AM

19   PRODUCING ALL THE DOCUMENTS THAT I'M AWARE OF, THAT I'VE

20   LOCATED.  BUT WHAT IF WE STUMBLE INTO ONE.  I DON'T SEE THAT

21   WE NEED TO BE PRECLUDED FROM PRODUCING IT.

22          I MEAN, BABY TREND AS WELL AS GRACO, I ASSUME, IS

23   DOING A GOOD-FAITH EFFORT -- AND WE ARE -- TO REVIEW

24   THOUSANDS UPON EMAILS AND PRODUCE WHAT IS THERE.

25          BUT WE ALL KNOW IN LITIGATION, WHETHER IT'S SOMEONE

1   AFTER DISCOVERY CUTOFF AND DOCUMENTS WERE SUPPOSED TO HAVE

2   BEEN PRODUCED, WHETHER IT'S IN A DEPOSITION OR, YOU KNOW,

3   HOPEFULLY, IT'S NOT AT THE TIME OF TRIAL WHERE THE WITNESS ON

4   THE STAND SUDDENLY GOES, AH, I'VE GOT A VACATION HOME IN

5   MALIBU THAT I FORGOT ABOUT A BOX OF DOCUMENTS I TOOK DOWN

6   THERE AND NEVER PULLED BACK.  I BET THAT'S GOT SOMETHING FROM

7   THREE YEARS AGO.

8            I MEAN, I DON'T KNOW WHAT'S GOING TO COME UP.  BUT

9   I HEAR THEM TRYING TO PRECLUDE ME.  AND IT'S EVEN IN THEIR --

10           THE COURT:  I'M NOT GOING TO --

11           MS. MALLGRAVE:  -- MOTION --

12           THE COURT:  I'M NOT GOING TO ORDER THAT.

13           MS. MALLGRAVE: -- FROM A SUBSEQUENTLY DISCOVERED

14   DOCUMENT.

15           THE COURT:  I'M NOT SURE THAT'S WHAT'S GOING ON.  I

16   THINK THEY WANT WHAT YOU HAVE WITHIN --

17           MS. MALLGRAVE:  AND I'LL GIVE THEM WHAT I HAVE, BUT

18   THERE IS A REPRESENTATION IN THE MOTION OF REQUEST THAT WE

19   NOT BE  -- THAT WE BE PRECLUDED FROM --

20           THE COURT:  I'M NOT GOING TO GRANT THAT EITHER.

21   NOT IN THIS --

22           MS. MALLGRAVE:  -- SUBSEQUENTLY DISCOVERED

23   DOCUMENTS.

24           THE COURT:  NOT IN THIS CASE.

25           MS. MALLGRAVE:  THANK YOU, YOUR HONOR.

1           THE COURT:  LET'S TALK ABOUT GENERAL LEGAL ISSUES

2    INVOLVING THE DOCUMENTS IF ANY EXIST.  OKAY.

3           DO YOU HAVE ANY?

4           MS. RZONCA:  I WOULD PUT THAT QUESTION TO MS.

5    MALLGRAVE AND ASK HER IF SHE'S STILL STANDING ON ANY OF THE

6    RELEVANCY OBJECTIONS THAT SHE PREVIOUSLY RAISED.

7           MS. MALLGRAVE:  YES.  I MEAN, I UNDERSTAND THAT

8    YOUR HONOR COULDN'T FIND THEM, BUT THEY ARE IN THE

9    200-SOME-ODD PAGE STIPULATION.  THERE ARE CERTAIN REQUESTS

10   THAT WE OBJECT TO.

11          NUMBERS -- I THINK THESE ALL KIND OF FALL INTO ONE

12   CATEGORY --

13          THE COURT:  ALL RIGHT.  LET'S TALK ABOUT THAT.

14          MS. MALLGRAVE:  OKAY.  AND THEY'RE IDENTIFIED AS

15   WELL IN GRACO'S SUPPLEMENTAL MEMORANDUM.

16          NUMBERS 4, 8, 15, 17, 18, AND 19 WERE GROUPED BY

17   GRACO IN TERMS OF AGAIN -- WELL, THEY'RE DOCUMENTS SEEKING

18   TESTING, EVALUATION, DESIGN MATERIALS FOR BOTH THE STRAIGHT

19   LEG AND THE CURVED LEG.  SO, WE'RE BACK TO THE STRAIGHT LEG

20   VERSUS THE CURVED-LEG ISSUE.

21          THE COURT:  UH-HUM.

22          MS. MALLGRAVE:  WE HAVE AGREED TO PRODUCE THE

23   CURVED-LEG DOCUMENTS.  WE THINK TO THE EXTENT THEY SEEK

24   TESTING, EVALUATION, OR DESIGN MATERIALS FOR A STRAIGHT LEG,

25   THEN, IT'S OVERBROAD AND NOT RELEVANT.

50

1            THE COURT:  OKAY.

2            MS. MALLGRAVE:  I BELIEVE THOSE CATEGORIES OF

3    DOCUMENTS ALSO ENCOMPASS DOCUMENTS GENERALLY RELATED TO

4    GRACO.  FOR EXAMPLE, WE GOT OUR DOCUMENT REQUEST FOR ANY

5    DOCUMENTS RELATING TO ANY GRACO PRODUCTS, NOT EVEN LIMITED TO

6    PLAYARDS, WHETHER STRAIGHT OR CURVED-LEG, OR ANY DOCUMENTS

7    RELATING TO GRACO.  THOSE ARE DOCUMENT REQUESTS THAT WE THINK

8    ARE OVERBROAD AND OBJECT TO.

9            THE COURT:  OKAY.  THANK YOU.

10            ANYTHING ELSE AT THIS POINT?

11            MS. MALLGRAVE:  OH, ANYTHING ELSE.  SORRY.  THAT

12    WAS ONE --

13            THE COURT:  NOW, LET'S GO --

14            MS. MALLGRAVE:  ONE CERTAIN CATEGORY --

15            THE COURT:  LET'S GO -- LET'S DO IT BY CATEGORY.

16            MS. MALLGRAVE:  OKAY.

17            THE COURT:  I THINK YOU'RE RIGHT.  I THINK YOU'RE

18    RIGHT.

19            OKAY.  YOU WANT TO RESPOND TO THAT?

20            MS. MALLGRAVE:  IF I MAY.  ONE CATEGORY OR TWO?

21            WELL, I GUESS IT'S TWO CATEGORIES BUT THEY OVERLAP

22    IN TERMS OF THE DOCUMENT REQUEST.  AND ONE OF THEM DOES COME

23    FROM THE -- INTERROGATORY MOTION ALSO INCLUDED A DOCUMENT --

24    SOME DOCUMENT REQUESTS.  AND THOSE WERE -- ONE OF THOSE WAS

25    ALSO ANY DOCUMENTS RELATING TO GRACO.  I HAVE TO LOOK AT THAT

1   NUMBER ON A DIFFERENT --

2           THE COURT:  ALL RIGHT.  LET'S TALK ABOUT ANY

3   DOCUMENTS RELATED TO GRACO.  OVERBROAD?

4           MS. RZONCA:  NOT IN THIS CONTEXT, YOUR HONOR --

5           THE COURT:  OKAY.

6           MS. RZONCA:  -- WHICH WAS ESTABLISHED BY THE

7   DOCUMENTS THAT I READ INTO THE RECORD.  IT DIDN'T

8   SPECIFICALLY IDENTIFY THE '218 PATENT.  IT DID REFER TO

9   GRACO.

10          THE COURT:  OKAY.

11          MS. RZONCA:  PART OF THE WILLFULNESS INQUIRY IS

12  THIS PATTERN OF COPYING GRACO.  AND, SO, DOCUMENTS -- WE ONLY

13  SAY IT'S LIMITED TO GRACO PLUS PLAYARD.  GRACO PLUS THE '218

14  PATENT.  THAT'S TOO LIMITED.  IT NEEDS TO JUST BE DOCUMENTS

15  --

16          THE COURT:  ANY DOCUMENT --

17          MS. RZONCA:  -- RELATING TO GRACO.

18          THE COURT:  ANY DOCUMENT THAT HAS THE WORD "GRACO"

19  IN IT.

20          MS. RZONCA:  YES.

21          THE COURT:  ALL RIGHT.  IT'S DENIED.  I THINK IT'S

22  OVERBROAD.  OKAY.

23          MS. RZONCA:  CAN WE NARROW IT THEN?

24          THE COURT:  GO AHEAD -- YOU KNOW, I MEAN, YOU DON'T

25  GET A SERIES OF CHANCES.  I THINK THAT REQUEST -- I'M JUST

52

1  GOING TO DECIDE ON THE REQUESTS THAT ARE BEFORE ME.  IT'S

2  OVERBROAD.

3           LET'S GO ON.

4           MS. RZONCA:  VERY GOOD.

5           I THINK THE SECOND CATEGORY THAT MS. MALLGRAVE

6  BROUGHT UP WAS TESTING AND EVALUATION OF STRAIGHT-LEGGED

7  PRODUCTS.

8           THE COURT:  UH-HUM.

9           MS. RZONCA:  THOSE WOULD FALL I BELIEVE INTO THE

10  CATEGORY OF THE DIFFERENTIATION BETWEEN THE STRAIGHT LEG AND

11  THE MOTIVATION TO MOVE FROM A STRAIGHT LEG TO A CURVED LEG.

12  WHY WERE STRAIGHT-LEGGED PLAYARDS NOT DOING IT FOR BABY

13  TREND.  WHY DID THEY WANT TO MOVE.  IF THERE IS TESTING AND

14  EVALUATION, FOR EXAMPLE, A MARKETING REPORT OR A CONSUMER

15  PREFERENCE STUDY OR A RETAILER STUDY SAYING STRAIGHT-LEGGED

16  PLAYARDS ARE PASSE BECAUSE GRACO HAS COME OUT WITH THIS GREAT

17  NEW CURVED-LEG PLAYARD.  BABY TREND, YOU ARE OUT OF

18  CONTENTION UNLESS YOU BRING US ONE OF THOSE.

19           THAT WOULD FALL INTO THAT CATEGORY AND ABSOLUTELY

20  BE RELEVANT TO AND NECESSARY FOR US TO ESTABLISH OUR

21  WILLFULNESS CASE.

22           THE COURT:  ISN'T THAT PART OF ANOTHER REQUEST

23  THOUGH?  I MEAN, ISN'T THAT INCLUDED?

24           MS. RZONCA:  I DON'T THINK SO.

25           THE COURT:  I MEAN, A REQUEST THAT ASKS FOR ALL

53

1   DOCUMENTS RELATING TO THE STRAIGHT-LEGGED PLAYARDS BECAUSE

2   THERE MIGHT BE SOMETHING IN THERE.

3           MS. RZONCA:  OUR REQUEST IS IN FACT MORE NARROW.

4   IT'S STUDIES AND EVALUATIONS OF THESE DIFFERENT TYPES OF

5   PLAYARDS, WHICH WE'LL POINT OUT AND ESTABLISH --

6           THE COURT:  WELL, OKAY.  ARE WE TALKING MARKETING

7   STUDIES AND EVALUATIONS?  ARE WE TALKING ABOUT MATERIAL

8   STUDIES AND EVALUATIONS?

9           MS. RZONCA:  THESE ARE CHILDREN'S PRODUCTS.  SO,

10  THERE COULD BE MARKETING STUDIES.  THERE COULD BE SAFETY

11  STUDIES OF BABY --

12          THE COURT:  ALL RIGHT.

13          MS. RZONCA:  -- TREND'S STRAIGHT-LEGGED PLAYARD HAS

14  ISSUES.  WE'RE GOING TO MOVE TO THE CURVED-LEGGED PLAYARD

15  BECAUSE IT LOOKS BETTER, BECAUSE GRACO'S IS DOING BETTER IN

16  THE MARKETPLACE AND --

17          THE COURT:  WELL, HOLD ON.  HOLD ON.  HOLD ON.

18  OKAY.

19          MARKETING STUDIES AND CONSUMER STUDIES.  THAT SEEMS

20  TO BE FAIRLY NARROW.

21          IF WE LIMIT IT TO THAT, WHY CAN'T -- WHY CAN'T YOU

22  PROVIDE THAT? -- OTHER THAN YOU CAN'T FIND IT.

23          MS. MALLGRAVE:  IF I COULD RESPOND TO THAT TODAY.

24  I'M PRETTY CONFIDENT, THOUGH, I COULD PUT IT IN A DECLARATION

25  THAT WE CAN RESPOND TO THAT AND NO SUCH DOCUMENTS EXIST FOR A

1    STRAIGHT-LEGGED PLAYARD.

2              THE COURT:  ALL RIGHT.

3              WELL, I'M GOING TO GRANT THE REQUEST.  MARKETING

4    STUDIES, CONSUMER STUDIES RELATING TO THE STRAIGHT-LEGGED

5    PLAYARD.  AND YOU CAN EITHER PROVIDE THEM OR PROVIDE -- PUT

6    IT IN THIS LONG DECLARATION WE'RE GOING TO SEE.  OKAY.

7              LET'S GO TO THE NEXT CATEGORY.

8              MS. RZONCA:  AGAIN, WE'D LIKE TO HEAR WHAT --

9              THE COURT:  WELL, I NEED TO KNOW WHAT THE CATEGORY

10   IS.  MAYBE -- I MEAN, YOU SEEM TO HAVE CATEGORIZED THESE

11   THINGS, SO.

12             MS. MALLGRAVE:  WELL, AND I DON'T KNOW.  LIKE -- I

13   MEAN, THAT WAS -- I THINK WE JUST WENT THROUGH SIX.  I DON'T

14   KNOW IF WE WANT TO GO CATEGORY BY CATEGORY OR REQUEST BY

15   REQUEST.  I'D HATE TO --

16             THE COURT:  I'D RATHER GO CATEGORY -- IF WE CAN GO

17   BY CATEGORY, I DON'T WANT TO -- YOU KNOW, IF WE GO REQUEST BY

18   REQUEST, WE'LL HAVE TO PUT IT OVER -- WE'LL HAVE TO CONTINUE

19   INTO TOMORROW.  BUT IF YOU THINK THAT'S THE WAY TO DO IT,

20   I'LL DO IT.  I THINK WE CAN GET THROUGH.

21             MS. MALLGRAVE:  IT'S THEIR MOTION.

22             THE COURT:  LET'S DO IT.

23             MS. RZONCA:  OUR UNDERSTANDING, YOUR HONOR, IS THAT

24   MS. MALLGRAVE AT THIS HEARING HAS AGREED TO SEARCH FOR SOME

25   ADDITIONAL DOCUMENTS.  SO, WE JUST --

1              THE COURT:  ALL RIGHT.

2              MS. RZONCA:  -- WANT TO CLARIFY FOR THE RECORD THAT

3    ESSENTIALLY SHE'S WITHDRAWN CERTAIN BLANKET REFUSALS --

4              THE COURT:  NO.

5              MS. RZONCA:  -- TO PRODUCE.

6              THE COURT:  LET'S -- I MEAN, TO THE EXTENT THAT

7    SHE'S AGREED TO SEARCH FOR ADDITIONAL DOCUMENTS -- SO --

8              MS. RZONCA:  SURE.  THE NEXT CATEGORY WITH RESPECT

9    TO THE REFUSALS TO PRODUCE WERE DOCUMENTS SUFFICIENT TO

10   ACTUALLY PROVE THEIR ADVERTISING PROMOTION AND MARKETING

11   EXPENSES FROM 2000 UNTIL NOW.

12             YOU REMEMBER THE SINGLE-PAGE CHART I SHOWED YOU.

13   THAT WAS THEIR FINANCIAL PRODUCTION.

14             THE COURT:  WELL, I --

15             MS. RZONCA:  I UNDERSTAND TODAY AT THE HEARING MS.

16   MALLGRAVE SAID THAT YESTERDAY SHE PRODUCED ADDITIONAL

17   DOCUMENTS.

18             THE COURT:  RIGHT.  AND I'VE ALREADY ORDERED HER TO

19   GET ADDITIONAL DOCUMENTS WITH RESPECT TO --

20             MS. MALLGRAVE:  THE STRAIGHT LEG.

21             THE COURT:  RIGHT.  OKAY.

22             SO, NOW, WE'RE AT THE CURVED LEGGED?

23             MS. RZONCA:  EVEN MORE RELEVANT.

24             THE COURT:  NOW, WHAT DO YOU WANT AGAIN?

25             MS. RZONCA:  DOCUMENTS SUFFICIENT TO PROVE THEIR

1   ADVERTISING -- THIS ALL GOES TO DAMAGES.  MATERIAL THAT OUR

2   EXPERT HAS SPECIFICALLY REQUESTED.  PROMOTION AND MARKETING

3   EXPENSES FOR THE CURVED-LEGGED PLAYARDS.

4                MS. MALLGRAVE:  IF I MAY, YOUR HONOR.

5                THE COURT:  YES.

6                MS. MALLGRAVE:  THAT IS ONE THAT -- WELL, I SAID WE

7   WERE PRODUCING ADDITIONAL FINANCIAL DOCUMENTS.  WE HAVE

8   OBJECTED TO PRODUCING DOCUMENTS RELATING TO THE DESIGN,

9   MANUFACTURE, IMPORTATION COST -- WAS THE SPECIFIC REQUEST

10  NUMBER 29.

11                IN RESPONSE TO OTHER REQUESTS, WE'VE AGREED TO

12  PRODUCE DOCUMENTS RELATING TO SALES VOLUMES, COSTS, AND --

13  OH, I THINK THAT WAS IT.

14                BUT SPECIFICALLY --

15                THE COURT:  SO, IN OTHER WORDS, YOU DON'T WANT TO

16   --

17                MS. MALLGRAVE:  BREAK DOWN THE COSTS.

18                THE COURT:  -- DELINEATE THE BREAK-DOWN OF THE

19  COSTS?

20                MS. MALLGRAVE:  YES.  THAT'S OUR OBJECTION.

21                THE COURT:  OKAY.

22                AND WHY DO YOU NEED THE COSTS BROKEN DOWN?

23                MS. RZONCA:  FOR OUR DAMAGES CASE.  SOMETHING

24  SPECIFIC THAT THE DAMAGES EXPERTS NEED TO USE TO PREPARE

25  THEIR EVALUATIONS OF LOST PROFITS, REASONABLE ROYALTIES, AND

1    THE PROFITS --

2              THE COURT:  ALL RIGHT.  I'M GOING TO ORDER --

3              MS. RZONCA: -- THAT BABY TREND HAS MADE.

4              THE COURT: -- I'M GOING TO ORDER YOU TO TURN THAT

5    OVER UNDER THE TERMS OF THE PROTECTIVE ORDER.

6              (PAUSE IN PROCEEDINGS.)

7              MS. RZONCA:  OTHER REFUSALS WERE REQUEST NUMBER 14,

8    COMMUNICATIONS WITH CUSTOMERS ABOUT ACCUSED PRODUCTS.  WE'VE

9    DISCUSSED THAT IN PART --

10             THE COURT:  RIGHT.

11             MS. RZONCA: -- IN TERMS OF THE MOTIVATION AND THE

12   CUSTOMERS WANTING THE LOOK OF A CURVED-LEG PLAYARD AS BEING

13   RELEVANT.  AND AS I UNDERSTAND IT, YOUR HONOR HAS RULED THAT

14   THOSE ARE RELEVANT.

15             THE COURT:  NO.  I'VE RULED STUDIES ARE RELEVANT.

16   NOT EACH INDIVIDUAL REQUEST IS RELEVANT.

17             MS. RZONCA:  SO, WITH RESPECT TO REQUEST NUMBER 14,

18   THE COMMUNICATIONS WITH CUSTOMERS ABOUT THE ACCUSED PLAYARDS,

19   LIKES AND DISLIKES, ET CETERA, THERE HAD BEEN A REFUSAL TO

20   PRODUCE.  WE BELIEVE THAT THAT IS RELEVANT WITH RESPECT TO

21   BABY TREND'S MOTIVATION AND TO THE COMMERCIAL SUCCESS OF THE

22   PRODUCT WHICH ALSO GOES TO THE DAMAGES INQUIRY.

23             THE COURT:  ALL RIGHT.  ANY -- A QUICK RESPONSE ON

24   THAT.

25             MS. MALLGRAVE:  YOUR HONOR, I WAS CHECKING OUR

58

1    MOTION TO MAKE SURE I GOT IT RIGHT BECAUSE MY NOTES INDICATE

2    WE HAVE AGREED TO PRODUCE THOSE DOCUMENTS.

3             THE COURT:  ALL RIGHT.  THEN I DON'T HAVE TO DECIDE

4    IT.

5             MS. MALLGRAVE:  YES.

6             THE COURT:  OKAY.  PRODUCE WITHIN TWO WEEKS.

7             ALL RIGHT.  LET'S MOVE ON.

8             MS. RZONCA:  WE HAD REQUESTED COSTS, SALES,

9    DOCUMENTS, AND GROSS PROFIT DOCUMENTS FOR THE ACCUSED

10   PRODUCTS.  AS I UNDERSTAND IT, THAT ALSO HAS BEEN RULED UPON

11   THIS MORNING.

12            THE COURT:  I THINK SO.

13            MS. MALLGRAVE:  I'M SORRY.  COULD YOU JUST REPEAT

14   --

15            MS. RZONCA:  YES, OF COURSE.

16            MS. MALLGRAVE:  I WAS TRYING TO CATCH UP WITH MY

17   NOTES.

18            MS. RZONCA:  SURE.

19            MS. MALLGRAVE:  WHAT DID I AGREE TO?

20            MS. RZONCA:  THE COSTS, SALES, AND GROSS PROFITS

21   FOR THE ACCUSED PRODUCTS.

22            MS. MALLGRAVE:  YES.  THAT'S PART OF THE ADDITIONAL

23   PRODUCTION THAT WE'RE DOING BETWEEN TODAY AND TOMORROW.

24            THE COURT:  OKAY.

25                 (PAUSE IN PROCEEDINGS.)

1          MS. RZONCA:  YOUR HONOR, I HAVE CONFERRED WITH

2   CO-COUNSEL.  AND SHE CONFIRMS THAT'S IT WITH RESPECT TO THE

3   REFUSALS.

4          THE COURT:  OKAY.

5          (PAUSE IN PROCEEDINGS.)

6          THE COURT:  I ASSUME I'M GOING TO SEE YOU AGAIN.

7   BUT WE HAVE TWO WEEKS.  YOU HAVE TWO WEEKS TO GET -- TO TURN

8   OVER THOSE DOCUMENTS.

9          IF YOU'RE GOING TO FOCUS ON ANYTHING, I THINK YOU

10  NEED TO FOCUS ON THE FINANCIAL AND GET THAT AS QUICKLY AS

11  POSSIBLE TO THE PLAINTIFF.  SO, THAT'S  -- I'M GOING TO GIVE

12  YOU ONE -- WELL, I'M GOING TO GIVE YOU TWO WEEKS ALTOGETHER.

13  BUT I'M GOING TO ASK YOU TO TRY TO SPEED UP ON THE FINANCIAL

14  DOCUMENTS.  I THINK THOSE ARE THE MOST SIGNIFICANT.

15         WHAT CAN I DO TO MAKE THIS EASIER?

16         MS. MALLGRAVE:  I THOUGHT THERE WAS --

17         THE COURT:  WHAT CAN WE DO TO MAKE THIS EASIER?

18         MS. MALLGRAVE:  IF I COULD HAVE ONE POINT OF

19  CLARIFICATION?

20         THE COURT:  YES.

21         MS. MALLGRAVE:  FOR THE SALES AND PROFITABILITY

22  DOCUMENTS ON THE STRAIGHT LEG, I THINK I MAY HAVE

23  MISUNDERSTOOD.  WE'RE GOING BACK AND LOOKING FROM 2004 --

24         THE COURT:  RIGHT.

25         MS. MALLGRAVE:  -- WAS THE DATE I HAD.  AT THAT

1   TIME WE HADN'T DISCUSSED TWO WEEKS.  SO, I WAS UNDER THE

2   IMPRESSION WE WERE GOING TO LOOK TO SEE WHAT WE HAD.  IF WE

3   HAVE A SUMMARY DOCUMENT --

4              THE COURT:  RIGHT.

5              MS. MALLGRAVE:  -- PRODUCE IT.

6              NOW, WITH A TWO-WEEK LIMIT, IF I DON'T HAVE -- IF

7   BABY TREND DOESN'T HAVE A SUMMARY, NOT BROKEN DOWN BY EVEN A

8   MODEL, BUT THERE'S NO SUMMARY -- I'M JUST THROWING IT OUT

9   THERE -- DO YOU WANT ME WITHIN TWO WEEKS, AM I SUPPOSED TO BE

10  PRODUCING EACH INDIVIDUAL INVOICE AND PURCHASE ORDER.  I'M

11  NOT SURE -- I'M NOT SURE THAT'S EVEN FEASIBLE IN TWO WEEKS.

12             THE COURT:  NO, IT'S NOT FEASIBLE.  IT'S NOT

13  FEASIBLE.

14             MS. MALLGRAVE:  SO, IF I'VE GOT A SUMMARY, I'LL

15  PRODUCE THAT AS SOON AS I CAN WITHIN --

16             THE COURT:  RIGHT.

17             MS. MALLGRAVE:  -- TWO WEEKS.  IF NOT, MAYBE WE'LL

18  BE BACK.

19             THE COURT:  THEN I THINK WE NEED TO TALK.

20             MS. MALLGRAVE:  OKAY.

21             THE COURT:  I THINK WE NEED TO TALK ABOUT THIS

22  ABOUT HOW IT'S GOING TO BE DONE IF IT'S GOING TO BE DONE.  I

23  WANT YOU TO LOOK FOR SOME SORT OF SUMMARY.

24             MS. MALLGRAVE:  YES.

25             THE COURT:  HERE'S MY PROBLEM WITH THAT.  OKAY.

1    AND THEN I UNDERSTAND THE PLAINTIFF THINKS IT'S REALLY

2    SIGNIFICANT IN TERMS OF THE DAMAGES CLAIM.  I'M NOT CONVINCED

3    YET THAT IT -- THAT IT IS SO SIGNIFICANT THAT THE COST OF

4    GOING THROUGH I DON'T KNOW HOW MANY BOXES IS OUTWEIGHED BY

5    THE RELEVANCE OF THE INFORMATION.  NOW, IT MAY BE, BUT I'M

6    NOT CONVINCED OF IT YET.

7             MS. MALLGRAVE:  YES.

8             THE COURT:  YES.  SO, YOU KNOW, I MEAN, I GUESS --

9    I GUESS THE QUESTION BECOMES TO THE PLAINTIFF WHAT'S IT WORTH

10   TO YOU -- WHAT'S IT WORTH TO YOU, YOU KNOW.  AND TO THE

11   DEFENDANT, YOU'RE WILLING TO LET THEM GO THROUGH YOUR STUFF.

12            MS. MALLGRAVE:  I CAN TELL YOU I KNOW BABY TREND'S

13   PREFERENCE WOULD BE TO JUST TO DO IT ITSELF IN TERMS OF

14   ANYONE HAVING TO GO THROUGH THE BOXES --

15            THE COURT:  ALL RIGHT.

16            MS. MALLGRAVE:  -- BECAUSE THEY'RE NOT -- I DO KNOW

17   THEY'RE NOT -- I MEAN, IT'S NOT BY CATEGORY.  SO, IT'S ALL OF

18   THEIR FINANCIAL DATA THEY'D BE HANDING OVER TO OPPOSING

19   COUNSEL TO LOOK THROUGH IT.  NOT MANY CORPORATIONS WOULD

20   AGREE TO THAT.  SO, I --

21            THE COURT:  I DIDN'T THINK SO.

22            MS. MALLGRAVE:  SO, WE'LL BE DOING IT.

23            THE COURT:  ALL RIGHT.

24            MS. MALLGRAVE:  BUT WE'RE HAPPY FOR A REIMBURSEMENT

25   OF COST.

62

```
 1            THE COURT:  I BET YOU ARE.

 2            GO AHEAD.

 3            MS. RZONCA:  WELL, I THINK WE HAVE A PENDING MOTION

 4    FOR REIMBURSEMENT OF OUR COSTS AND BEING FORCED TO BRING ALL

 5    OF THIS --

 6            THE COURT:  WHERE?  HERE?

 7            MS. RZONCA: -- TO YOUR HONOR.

 8            YES.  I JUST WANT TO RESPOND.

 9            THE COURT:  YES.  RESPOND TO THE FIRST QUESTION.

10    YOU KNOW, I NEED TO KNOW WHY THE, YOU KNOW -- WHY THE COST

11    AND EFFORT TO DO THIS IS LESS THAN THE RELEVANCE OF THE --

12    YOU KNOW, WHY DOES THE RELEVANCE OF THIS OUTWEIGH THE COST

13    AND EXPENSE AND TIME OF GOING THROUGH THIS.

14            MS. RZONCA:  JUST -- YOU MEAN, JUST WITH RESPECT TO

15    THE FINANCIALS ON THE STRAIGHT-LEGGED PLAYARDS?

16            THE COURT:  YES.

17            MS. RZONCA:  I WILL JUST NOTE THAT WE HAVEN'T HAD

18    ANY SPECIFIC SHOWING OF WHAT THE BURDEN WOULD BE, WHICH IS

19    TYPICALLY WHAT THE RESPONDING PARTY HAS TO SHOW.  BUT,

20    OBVIOUSLY, THIS IS AN IMPORTANT CASE TO THE CLIENT.  SALES

21    HAVE BEEN SUBSTANTIAL.  THEY HAVE SUFFERED IN THE

22    MARKETPLACE.  THIS IS WHY --

23            THE COURT:  FROM THE -- YES, FROM THE --

24            MS. RZONCA:  ABSOLUTELY.

25            THE COURT:  FROM THE CURVED-LEGGED --
```

63

```
 1              MS. RZONCA:  YES.

 2              THE COURT:  -- SALES.  OKAY.

 3              MS. RZONCA:  YES.

 4              THE COURT:  AND THAT'S WHY -- THAT STILL IS THE

 5     QUESTION I HAVE.

 6              MS. RZONCA:  RIGHT.

 7              THE COURT:  ALL RIGHT.  I MEAN, IF IT WAS THE

 8     CURVED-LEGGED PLAYARDS, I'D SAY YOU GO THROUGH EVERY ONE OF

 9     THEM --

10              MS. RZONCA:  -- RIGHT.

11              THE COURT:  -- AND DO THIS.  ALL RIGHT.

12              MS. RZONCA:  ABSOLUTELY.

13              THE COURT:  BUT I'M TRYING TO UNDERSTAND -- I CAN

14     UNDERSTAND YOUR INTEREST IN IT.  I CAN UNDERSTAND THE

15     RELEVANCE OF IT.  I STILL NEED TO UNDERSTAND THAT IT IS MORE

16     -- THAT THE RELEVANCE OUTWEIGHS THE COST OF GOING FORWARD.

17     AND I UNDERSTAND WHAT YOU'RE SAYING ABOUT BURDENS.  BUT IT

18     WOULD BE NICE TO HAVE.  IS IT ESSENTIAL TO HAVE.  SO, THAT'S

19     THE QUESTION.

20              MS. RZONCA:  TWO RESPONSES.  ONE IS THAT THERE IS A

21     REASON THAT BABY TREND MOVED FROM THE STRAIGHT-LEGGED PLAYARD

22     TO THE CURVED-LEGGED PLAYARD.  AND THAT WILL BE PLAYED OUT IN

23     THE FINANCIAL DOCUMENTS SHOWING THAT STRAIGHT-LEGGED PLAYARD,

24     OKAY.

25              THE COURT:  SO, YOU KNOW -- BUT IF IT DOESN'T
```

64

1 INFRINGE, IT DOESN'T MATTER.

2          MS. RZONCA:  BUT IT --

3          THE COURT:  IF IT DOESN'T INFRINGE, IT DOESN'T

4 MATTER, RIGHT?

5          MS. RZONCA:  WITH ALL --

6          THE COURT:  AND IF IT STILL -- THAT'S THE ULTIMATE

7 ISSUE.

8          MS. RZONCA: -- DUE RESPECT, YOUR HONOR, IT DOES

9 MATTER IN PART BECAUSE OF THE DAMAGES ASSESSMENT, INCLUDING

10 THE DAMAGES EXPERT'S NEED, IN OPINING ABOUT WHAT MAY BE A

11 REASONABLE ROYALTY, TO LOOK BACK AT THE TIME PERIOD WHEN

12 INFRINGEMENT FIRST STARTED TO SAY WHAT WOULD THE PARTIES HAVE

13 BEEN BRINGING TO THE TABLE.  AND ONE OF THE ELEMENTS THAT

14 BABY TREND WOULD HAVE BROUGHT TO THE TABLE IS HOW PROFITABLE

15 ARE THEIR CURRENT PRODUCTS -- WERE THEIR CURRENT PRODUCTS,

16 THOSE STRAIGHT-LEGGED PLAYARDS.

17          WE'D BE HAPPY TO SUBMIT A DECLARATION FROM THE

18 FINANCIAL EXPERT IF THAT WOULD HELP ON THIS ISSUE.

19          THE COURT:  SURE.  GO AHEAD.

20          MS. RZONCA:  GOOD.

21          A POINT OF CLARIFICATION, YOUR HONOR, IF I MAY.

22          WOULD IT BE POSSIBLE TO HAVE THE ANSWERS TO

23 INTERROGATORIES IN A WEEK?

24          THE COURT:  NO.  DOING EVERYTHING IN TWO WEEKS.

25          MS. RZONCA:  AND THE ISSUE HAD COME UP PREVIOUSLY

65

1   ABOUT WHETHER OR NOT MS. MALLGRAVE WAS STIPULATING TODAY THAT

2   THE STRAIGHT-LEGGED PLAYARDS WERE NOT AN ACCEPTABLE

3   COMMERCIAL SUBSTITUTE FOR CURVED-LEGGED PLAYARDS.  AND WE'D

4   LIKE TO --

5          THE COURT:  THAT WAS YOUR ISSUE.  I DON'T THINK

6   ANYONE ELSE RAISED IT.

7          MS. RZONCA: -- TIE THAT UP.

8          THE COURT:  OKAY.

9          MS. MALLGRAVE:  YOUR HONOR, MY ARGUMENT TODAY WAS I

10  HAD HEARD NOTHING FROM THEM.  AND IT WAS A VIABLE

11  NON-INFRINGING SUBSTITUTE.  TO DATE, I DON'T BELIEVE WE HAVE

12  ALLEGED IT IS.

13         THE COURT:  OKAY.

14         MS. MALLGRAVE:  I'M NOT SURE WHERE THE EXPERT

15  TESTIMONY IS GOING TO COME OUT ON THAT.  SO, I DON'T THINK I

16  --

17         THE COURT:  WELL, IT MIGHT BE SOMETHING YOU WANT TO

18  DO SOONER RATHER THAN LATER.

19         MS. MALLGRAVE:  I CAN GO BACK AND WE CAN CHECK IF

20  IT'S GOING TO HELP RESOLVE SOME OF THESE ISSUES, BUT --

21         THE COURT:  WHY DON'T YOU.

22         MS. MALLGRAVE:  I CAN DO THAT, YOUR HONOR.

23         THE COURT:  IF WE CAN NARROW THE ISSUES, MAYBE WE

24  CAN NARROW THE DISCOVERY.

25              (PAUSE IN PROCEEDINGS.)

1              MS. MALLGRAVE:  OH, INCIDENTALLY, I'M NOT SURE

2    WHERE THAT GETS US BECAUSE WE'RE ALREADY LOOKING FOR THE

3    STRAIGHT-LEG SALES INFORMATION.  IF WE STIPULATE THAT IT'S

4    NON-INFRINGING, THAT IT WOULD NOT BE A NON-INFRINGING

5    SUBSTITUTE, ARE YOU STILL GOING TO WANT THE --

6              MS. RZONCA:  ABSOLUTELY.

7              THE COURT:  SO, THERE'S NO REASON TO STIPULATE, IS

8    THERE?

9              MS. MALLGRAVE:  NO.

10             MS. RZONCA:  ONE POINT.

11             THE COURT:  OKAY.  IT DOESN'T GET US ANYWHERE.

12             MS. RZONCA:  YOUR HONOR, AGAIN, TO AVOID ANY ISSUE

13   AND TO SPEED THINGS ALONG, IS IT CONFIRMED THAT THE -- ALL OF

14   THE FINANCIAL DATA WITH RESPECT TO THE CURVED-LEGGED PLAYARDS

15   WILL BE GOING BACK TO 2004?

16             THE COURT:  YES.

17             THEY ONLY CAME OUT IN 2005, RIGHT?

18             MS. MALLGRAVE:  I BELIEVE IT CAME OUT IN 2005.

19             THE COURT:  WELL --

20             MS. MALLGRAVE:  SO, WE HAVE PREPARED AS -- RIGHT.

21             BUT JUST TO CLARIFY BECAUSE I KNOW FOR THAT WE'VE

22   GOT SIMILAR ISSUES AS WELL.  WE HAVE NOW GONE THROUGH AND

23   PULLED THE -- OR WILL BE GOING THROUGH AND PULLING TO CREATE

24   A SUMMARY DOCUMENT VERSUS EVERY SINGLE P.O. AND INVOICE

25   BECAUSE THAT INFORMATION AGAIN IS NOT IN OUR COMPUTER

1  DATABASE.  WE ONLY HAVE IT IN THE COMPUTER DATABASE FROM 2000

2  -- I BELIEVE IT STARTED JANUARY 1, 2009.  IT STARTED A YEAR

3  THEY STARTED A COMPUTER DATABASE.

4          THE COURT:  ALL RIGHT.  WELL --

5          MS. MALLGRAVE:  PRIOR TO THAT, WE'RE PULLING

6  INDIVIDUAL DOCUMENTS AND THEN --

7          THE COURT:  WELL, YOU HAVE TO DO THAT.

8          MS. MALLGRAVE:  RIGHT.

9          THE COURT:  OKAY.

10          MS. MALLGRAVE:  BUT I'M NOT CLEAR IF BABY TREND WAS

11  NOT EXPECTING TO PRODUCE THOSE INDIVIDUALS DOCUMENTS BUT WAS

12  CREATING A DETAILED SUMMARY IN TERMS OF DATES, COSTS, P.O.

13  NUMBERS, PRODUCTS, THAT TYPE OF INFORMATION.

14          THE COURT:  YOU BETTER KEEP THEM SEGREGATED.

15          MS. MALLGRAVE:  AND WE CAN KEEP THEM SEGREGATED.

16          THE COURT:  ALL RIGHT.  WHERE ARE WE NOW?

17          MS. RZONCA:  CONFERRING, YOUR HONOR, WITH MS.

18  QUICKER JUST TO MAKE CERTAIN WE HAVE COVERED ALL OF THE

19  ISSUES.

20          THE COURT:  ALL RIGHT.

21          MS. RZONCA:  THANK YOU.

22          (COUNSEL CONFERRING.)

23          MS. RZONCA:  I UNDERSTAND YOUR RULING, YOUR HONOR.

24  WITH RESPECT TO THE SUPPLEMENTATION OF INTERROGATORY ANSWERS

25  IN TWO WEEKS.

1          THERE IS A SUMMARY JUDGMENT DEADLINE OF SEPTEMBER

2     12TH.  WE WOULD --

3               MS. QUICKER:  19TH.

4               MS. RZONCA:  19TH?  19TH.  I STAND CORRECTED.

5          WE WOULD ASK FOR SUPPLEMENTATION OF INTERROGATORY

6     NUMBER 7 WITHIN ONE WEEK, WHICH ASKS FOR THE DETAILING OF THE

7     FACTUAL AND LEGAL BASIS FOR THE CONTENTION THAT THE PATENT IS

8     UNENFORCEABLE, WHICH IS FAIRLY LIMITED.

9               MS. MALLGRAVE:  YOUR HONOR, THIS REQUEST HAS

10    ALREADY BEEN MADE AT LEAST ONCE -- ACTUALLY, I THINK TWICE TO

11    OUR TRIAL COURT JUDGE FOR AN EXTENSION OF TIME TO RESPOND TO

12    THE PENDING MOTION FOR SUMMARY JUDGMENT BASED ON THE

13    DISCOVERY ISSUES.  AND IT'S BEEN -- THE FIRST REQUEST WAS

14    GRANTED.  AND THERE WAS AN EXTENSION.  THAT'S WHY THE HEARING

15    IS NOW SEPTEMBER 19TH.  THE REQUEST WAS RENEWED.  AND THAT

16    REQUEST WAS DENIED.

17              ALSO, THE MOTION ITSELF IS REALLY ONE NARROW -- ONE

18    NARROW ISSUE IN TERMS OF WHAT IS COVERED BY THE PATENT IN

19    TERMS OF -- OUR ASSERTION IS IT'S FOR THE COVERED CURVED-LEG

20    --

21              THE COURT:  RIGHT.

22              MS. MALLGRAVE:  -- BY THE DRAWINGS THEMSELVES.

23    THEY CONTEND I GUESS THAT IT'S NOT COVERED.  THAT'S THE ISSUE

24    OF THE M.S.J. NOT THE ENFORCEABILITY OF THE PATENT ITSELF.

25              THE COURT:  ALL RIGHT.  I'M NOT GOING TO PIECEMEAL

1   THIS.  EVERYTHING IN TWO WEEKS.  ALL RIGHT.  EVERYTHING IN

2   TWO WEEKS.  SO, THAT RESOLVES THAT.

3          WHAT I AM -- I THINK THE ONLY ISSUE THAT I AM

4   HOLDING UP IS THE ONE INVOLVING WHETHER OR NOT THE DEFENDANT

5   IS GOING TO HAVE TO GO THROUGH EACH DOCUMENT AND FIND EACH

6   DOCUMENT WITH RESPECT TO THE SALE OF STRAIGHT-LEGGED

7   PLAYARDS, OKAY, IN ORDER TO COME UP WITH A BASIS FOR SALES

8   AND COSTS.

9          AND YOU'RE GOING TO SEND ME A DECLARATION.  I'M

10  GOING TO ENCOURAGE COUNSEL FOR THE DEFENDANT TO FIND -- TO

11  TRY TO FIND SOMETHING IN ORDER TO GET THAT DONE.  AND YOU CAN

12  SEND ME THE DECLARATION.

13         I THINK THAT RESOLVES ALL THE LEGAL ISSUES, RIGHT?

14  YES?

15         MS. RZONCA:  YES.

16         THE COURT:  ALL RIGHT.  I THINK IT DOES.  I'LL TRY

17  TO PUT TOGETHER -- COBBLE AN ORDER TOGETHER INDICATING WHAT

18  WE'VE DONE HERE.

19         I AM DENYING COSTS AND FEES ON THE MOTION.  I DON'T

20  THINK THEY'RE WARRANTED UNDER THE CIRCUMSTANCES OF THIS CASE.

21         SHOULD ISSUES ARISE AGAIN ON ANOTHER MOTION, WHICH

22  I HOPE IT DOESN'T, I'LL TAKE A HARDER LOOK AT THE COSTS AND

23  FEES.  BUT I'M NOT GOING TO AWARD ANY COSTS AND FEES ARISING

24  FROM THIS MOTION.

25         I'M REALLY GOING TO ENCOURAGE YOU TO TRY TO WORK

70

1   THIS OUT A LITTLE BIT BETTER.  A LOT OF PAPER.  A LOT OF

2   TIME.  A LOT OF MONEY TO GO THROUGH THESE THINGS,

3   PARTICULARLY, WHEN MOST OF THE -- YOU KNOW, MUCH OF THE STUFF

4   WAS DISCOVERABLE.

5            I THINK YOU NEED -- AND I'M TALKING TO THE

6   DEFENDANT -- NEED TO REALLY PUSH ON YOUR CLIENT TO GET THIS

7   DONE QUICKER.

8            SO, ALL RIGHT.  THAT'S ALL I'M GOING TO SAY RIGHT

9   NOW.

10           ALL RIGHT.  ANYTHING ELSE?

11           MS. RZONCA:  NO.  THANK YOU SO MUCH FOR YOUR TIME,

12   YOUR HONOR.

13           THE COURT:  ALL RIGHT.  THANK YOU.

14           MS. MALLGRAVE:  THANK YOU, YOUR HONOR.

15           THE CLERK:  ALL RISE.

16           THIS COURT IS NOW ADJOURNED.

17           (PROCEEDINGS ADJOURNED AT 11:20 A.M.)

18

19

20

21

22

23

24

25

71

1

2

3                    C E R T I F I C A T E

4

5          I CERTIFY THAT THE FOREGOING IS A CORRECT

6   TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

7   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

8

9

10

11   /S/ DOROTHY BABYKIN                    9/6/11

12   _____    _____

13   FEDERALLY CERTIFIED TRANSCRIBER         DATED

14   DOROTHY BABYKIN

15

16

17

18

19

20

21

22

23

24

25