○

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACO CHILDREN'S PRODUCTS, INC., | CASE NO. 2:10-CV-05897-JST (MLGx) |
| Plaintiff, | |
| vs. | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| BABY TREND, INC., | |
| Defendant. | |

1

**INTRODUCTION**

On August 9, 2010, Plaintiff Graco Children's Products, Inc. ("Graco") filed a Complaint alleging that Baby Trend, Inc.'s ("Baby Trend's") playards infringe Graco's design patent for curved legs on a playard. (Compl., Doc. 3, Ex. 1.) Before the Court is Baby Trend's Motion for Summary Judgment. (Doc. 43.) Specifically, Baby Trend moves for summary judgment on Graco's Complaint, and Baby Trend's first Counterclaim for declaratory relief, (Doc. 22), on the grounds that Graco's patent covers only *covered* curved legs. Having read the papers submitted by the parties and heard oral argument, the Court DENIES Defendant's Motion for Summary Judgment for the reasons described below.

**BACKGROUND**

On September 25, 2001, the United States Patent and Trademark Office ("PTO") issued Design Patent D448,218 ("the '218 patent) to Graco. (Quicker Decl., Doc. 59, Ex. A, at 5.) The patent is titled "Curved Legs for a Playard," and is comprised of seven figures, which show the design embodied in a playard from multiple views. (Id.) *See* Appendix A. The patent cites four prior art references: United States Design Patent D397,882 issued to Wu, United States Patent 4,376,318 issued to Cirillo, United States Patent 5,349,709 issued to Cheng, and United States Patent 5,367,725 issued to Tsai. (Id.) Each of these prior art reference covers some form of baby bed or playpen with straight legs,[1] while the '218 patent drawings show curved legs. (Id.)

In 2000, Graco began selling a playard with curved, covered legs. (Schoettelkotte Decl., Doc. 59-7, ¶ 5.) Four years later, Graco introduced a playard with curved exposed legs. (Id.) No earlier than September 25, 2001, when the '218 patent issued to Graco, Baby Trend began selling playards with curved legs. (Quicker Decl., Ex. C, at No. 23-26.)

---

[1] Neither party has submitted the prior art cited in the '218 patents. However, the Court may take judicial notice of published patents under Fed. R. Evid. 201(b) & (c).

2

1 Baby Trend currently sells twenty-four playard models that have curved legs ("the
2 Accused Products"). (Id. at No. 32.) The legs of each of these models appear to be
3 identical, (Compl., Doc. 3, Ex. 1, at 3-7), except six of these models have fabric-covered
4 legs, while the rest have exposed legs. (Quicker Decl., Ex. C, at No. 117, 125, 133[2], 141,
5 177, 185.) Graco's Complaint alleges that Baby Trend's curved playard legs infringe its
6 '218 patent. (Compl., at 7.)

The central issue disputed by the parties is the significance of lines and markings
contained within the solid black lines in the figures that comprise the '218 patent (the
"disputed lines.") Specifically, there are three types of disputed lines. In Figure One, the
disputed lines are soft vertical lines shown closely following the solid black lines (the
"disputed outer lines"). *See* Appendix A. The disputed vertical lines are also shown in
Figures Two through Five, in which they closely follow the outermost solid black lines on
each side of the drawing. *See* Appendix A, B. In Figures Two through Five, there are also
shorter, somewhat diagonal lines shown closer to the inner solid black lines on each side
that are disputed (the "disputed inner lines"). *Id.* Finally, in Figures Six and Seven, there
are short, curved lines shown in a circle-like pattern within the solid black lines (the
"disputed top and bottom lines"). *See* Appendix A, C.

Baby Trend argues that the disputed outer lines and the disputed top and bottom lines
show the playard legs themselves, (Mot. at 11-12), while the disputed inner lines show
fabric pulled taut (Rep., Doc. 63, at 6.) Graco, on the other hand, argues that all of the
disputed lines indicate shading and the contour of the leg. (Pl.'s Opp'n. at 11.)[3]

---

[2] Graco's Requests for Admissions ask Baby Trend twice to admit its 8207BCC (Deluxe Nursery Center – Sun Dance) has fabric-covered legs. (Quicker Decl., Ex. C, No. 125, 133.) Therefore, Baby Trend only admitted that five of its products have fabric-covered legs. However, at oral argument, Baby Trend clarified that six of its products have fabric-covered legs.

[3] Both parties adopt somewhat inconsistent positions throughout their papers. For example, Baby Trend alternatively argues that the disputed lines show a leg disposed inside, (Mot. at 11-12), and that they show fabric (Rep. at 6). At oral argument, Baby Trend clarified that it believes that disputed outer lines and disputed top and bottom lines show the leg itself, while the disputed inner lines show taut fabric.

(footnote continued)

3

1   The Board of Patent Appeals and Interferences ("BPAI") previously construed the '218
2   patent in the context of a third-party's *ex parte* proceeding. In 2005, two other inventors,
3   Damon Oliver Casati Troutman and Edward B. Bretschger, filed an application for a
4   design patent covering the "ornamental design for exposed legs for a play yard" ("the '970
5   patent application"). (RFJN, Ex. 1, at 197-210.)[4] The seven figures comprising the '970
6   patent application look nearly identical to the seven figures in the '218 patent, but without
7   the disputed lines. (Id. at 207-210.)   The PTO Patent Examiner first rejected the '970
8   application because the invention was obvious in light of the '218 patent. (Id. at 192-196.)
9   After Troutman and Bretschger argued that the '218 patent had fabric-covered legs while
10  the '970 patent application covered only exposed legs, (Id. at 179-183), the Patent
11  Examiner rejected the '970 application again for obviousness in light of the '218 patent
12  and other prior art references that taught exposed legs (Id. at 169-177). Once the PTO
13  issued a final Office Action rejecting the '970 patent application, (Id. at 148-154), the
14  applicants appealed to the BPAI (Id. at 146-147). In its decision, the BPAI made three
15  findings of fact ("BPAI findings of fact") relating to the '218 patent:

> FF 1. In the Celestina-Krevh patent [the '218 patent], the
> curved legs of the play yard have what appear to be lengths of
> fabric wrapped around the legs to cover the legs, the fabric
> being attached to the walls (also apparently fabric) of the
> enclosure of the play yard. (Celestina-Krevh, Figs. 1-7.)

---

   Graco, for its part, submits evidence that the '218 patent shows a leg that is not covered, (Anders Decl., Doc. 59-2, at 7), and argues that the '218 patent claims only the leg, regardless of covering (Sur-Rep., Doc. 70, at 9.).

   [4] Baby Trend filed a request for judicial notice of (1) the United States Patent D604, 970 ("the '970 patent") file wrapper, and (2) the '970 patent. (RFJN, Doc. 43-3.) Baby Trend's request is GRANTED, as the contents of the file wrapper and the '970 patent are "not subject to reasonable dispute" in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

4

> FF 2. In the Celestina-Krevh [the '218 patent] patent drawings, broken lines representing the leg members appear immediately adjacent the fabric covering, which would be understood by persons of ordinary skill in the art as connoting that the fabric covering closely follows the contour of the leg disposed inside. (Celestina-Krevh, Fig. 1-7).

> FF. 3. The Celestina-Krevh patent [the '218 patent] discloses and claims only play yard legs which are substantially completely covered in fabric. (Celestina-Krevh, Figs. 1-7.)

(Id. at 19.) In short, the BPAI's findings in the third-party proceeding support Baby Trend's position that the curved legs themselves are represented by broken lines and are not part of the claimed design. In that appeal, the Patent Examiner filed a brief opposing the issuance of the '970 patent, (Id. at 88-96), but Graco was not a party to the proceedings.

**LEGAL STANDARD**

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. The moving

party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

## DISCUSSION

A patent holder must prove infringement by a preponderance of the evidence. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) ("Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence."). The Court may decide infringement at summary judgment if there are no genuine issues of material fact or if no reasonable jury could return a verdict in favor of the nonmoving party. *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001).

The test for patent infringement "requires the court to first construe the claimed design, if appropriate, and then to compare the claimed design to the article." *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001) (citing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed. Cir. 1997)). For infringement of design patents, when courts compare the claimed design to either the accused design or prior art, they apply the "ordinary observer" test. *See Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1237-40 (Fed. Cir. 2010); *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc). That is:

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871).

### A. Claim Construction

Claim construction is a matter of law. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1574 (Fed. Cir. 1995) (applying *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 to design patents.) "Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010). Thus, trial courts are not required "to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents." *Egyptian Goddess*, 543 F.3d at 679 (holding that "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design"). "As a rule, the illustration in the drawing views is its own best description." *Crocs, Inc.*, 598 F.3d at 1303 (quoting *Manual of Patent Examining Procedure* ("Manual") § 1503.01 (8th ed. 2006)); *see Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("It is the drawings in the patent, not just one feature of the claimed design, that define the patented design."). However, the Court is required to resolve disputes about claim construction. *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, No. Civ.A. 3:00-CV-888-X, 2001 WL 36186585, at *17 (N.D. Tex. May 16, 2001).

a. *Effect of Board of Patent Appeals Findings of Fact*

Baby Trend argues that this Court should defer to the BPAI findings of fact in construing the '218 patent. (Rep. at 12.) In support of its argument that the BPAI findings of fact are entitled to deference, Baby Trend cites *Dickinson v. Zurko*, in which the Supreme Court held that any court reviewing a PTO decision may only "set aside agency findings [of fact] found to be arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence." 527 U.S. 150, 152 (1999) (internal citations and quotations omitted). In subsequent cases, however, the Federal Circuit held that when a district court

reviewing a finding of fact is presented with new evidence, "the district court would make *de novo* factual findings if the evidence is conflicting." *Mazzari v. Rogan*, 323 F.3d 1000, 1005 (Fed. Cir. 2003).

    In both of these cases, the facts involved the review of a denial of a patent. Neither case addresses the procedural history here, where the BPAI findings of fact were made in an *ex parte* proceeding involving a third party's patent. However, multiple factors lead the Court to conclude that it must make *de novo* findings of fact. Graco was not a party to the *ex parte* proceeding that produced the BPAI's findings of fact. (Pl.'s Opp'n. at 13.) On this basis alone, the findings of fact cannot be binding on Graco. *See Bonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971) (holding that a patentee whose patent was declared invalid in a prior suit can still assert the validity of his patent if he did not have a full and fair opportunity to litigate the issue in the first suit.)

    Moreover, the issue of whether the '218 patent claimed a fabric-covered leg does not appear to have been litigated, by Graco or anyone else. The Patent Examiner, who was party positioned to dispute applicants' argument that the '218 patent shows fabric-covered legs, instead apparently agreed with applicants that the difference between the '970 application and the '218 patent is that the '218 patent has fabric-covered legs . In his brief, the Patent Examiner states that the '970 patent application differs from the '218 patent because "the tubing or rod material from which the legs are formed [in the third-party patent] is exposed having no additional covering material." (RFJN, Ex. 1, at 91.)

    Additionally, while the BPAI presumably could have considered the '218 patent prosecution history, the record of the BPAI proceeding does not suggest that the BPAI considered any evidence other than the drawings and the apparent agreement of the parties as to the construction of the '218 patent in reaching its conclusion that only fabric-covered legs were claimed. (RFJN, Ex. 1.) Thus, the rationale for *de novo* findings of fact in *Mozzari*, where new evidence was presented in a district court review of a denial of a patent application, applies with at least equal force here.

### b. *Patent Drawings*

The patent drawings themselves show the disputed lines, which may be construed as either "broken lines" representing environmental structure, shading lines showing the contour of the design, or fabric surface treatment. Manual § 1503.02. 37 C.F.R. § 1.152 explains, "[b]roken lines may be used to show visible environmental structure, but may not be used to show hidden planes and surfaces that cannot be seen through opaque materials." *See also* Manual § 1503.02. These broken lines may be used to show "any portion of an article in which the design is embodied or applied to that is not considered part of the claimed design." Manual § 1503.02. Additionally, "[a]s it is possible that broken lines with different purposes may be included in a single application, the description must make a visual distinction between the two purposes." *Id.*

The disputed outer lines could be described as a forming a broken line. There are several short lines aligned such that, if connected, they would form one longer line. *See* Appendix B. However, the Court finds unpersuasive Baby Trend's argument that these markings are "broken lines," used to show the playard leg itself, as defined and discussed in 37 C.F.R. § 1.152 and the Manual.

There is no question that the '218 patent uses broken lines, as defined in 37 C.F.R. § 1.152 and the Manual, to show the playard structure in which curved leg is embodied. *See* Appendix A. The drawings consistently use a pattern of long line, short line, short line to show the rest of the playard. *Id.* However, the disputed outer lines and disputed top and bottom lines do not follow this pattern. Instead, these lines appear not to follow a pattern at all. Each of the disputed outer lines is a different length. *See* Appendix B. Therefore, the markings within the solid black lines appear to have a different meaning than the long-short-short lines used to show the environmental structure of the playard leg. However, the patent description provides that "[t]he features shown in broken lines are for illustrative purposes only and do not form part of the claimed design." This description suggests the

1 use of broken lines for only one purpose, rather than two or more broken line patterns
2 signifying different purposes. *See* Manual § 1503.02. Thus, the disputed outer lines
3 cannot be broken lines showing environment because they look nothing like the
4 environmental broken lines, and because the patent description does not provide for two
5 types of broken lines.

6     Moreover, the use of broken lines to show playard legs disposed within a fabric
7 covering would directly violate the rule that broken lines "may not be used to show hidden
8 planes and surfaces that cannot be seen through opaque materials." 37 C.F.R. § 1503.02.
9 A playard leg disposed within a fabric covering would be a "hidden plane or surface" that
10 could not be seen through an "opaque material." Furthermore, if the playard legs were
11 shown by broken lines, the playard legs would not be claimed. However, the title of the
12 patent is "Curved Legs for a Playard." While the title need not define the precise
13 boundaries of the claim, it must "designate the particular article." 35 C.F.R. § 1.153. *See*
14 *also Minka Lighting*, 2001 WL 36186585, at \*5 (noting that because 37 C.F.R. § 1.153
15 requires that the title must designate a particular article, the title and the claim must
16 correspond, but the title does not define the outer bounds of the patent).

17     It is apparent to the Court that the disputed outer lines are not "broken lines," but rather
18 surface shading lines. Furthermore, the disputed top and bottom lines are not even broken
19 lines, and therefore can only be explained as surface shading lines, see Appendix C, and
20 the disputed inner lines also appear to be surface shading. The Manual explains that
21 surface shading may be necessary "to show clearly the character and contour of all
22 surfaces of any 3-dimensional aspects of the design." § 1503.02. Baby Trend argues that
23 the curvature of the leg is obvious from the solid black lines, (Rep. at 9), but the solid
24 black lines show curvature only in one dimension. Surface shading is necessary to show
25 that the leg is also rounded in cross-section. In this respect, the disputed outer lines are
26 similar to the surface shading used on the handle claimed in the patent at issue in
27 *Calphalon Corp. v. Meyer Corp., U.S.*, No. CIV. S-05-971 WBS DAD, 2006 WL 2474286
28

1  (E.D. Cal. Aug. 25, 2006). The handle in *Calphalon* is clearly curved, but surface shading
2  is used to denote the cross-sectional roundness of the handle. *Id.* at *2 n.1. The dispute
3  inner lines are also in areas that appear to be curved. *See Radio Sys. Corp. v. Tri-Tronics,*
4  *Inc.*, 2006 WL 6221555, at *2-*3 (E.D. Tenn. Dec. 11, 2006). Thus, the Court finds that
5  all of the disputed lines are shading lines.

####        c. *Patent Prosecution History*

The prosecution history of the '218 patent is consistent with the conclusion that the disputed lines are shading lines. The PTO twice issued objections to Graco's use of broken lines in its '218 patent application drawings. On October 24, 2000, an Office Action notified Graco that "objection is made to the drawing since some of the broken line disclosure is a mixture of broken and solid lines. For clarity, all broken lines must be converted to clear small broken lines on the new drawing." (Quicker Decl., Ex. B, at 58.) In response, Graco submitted new drawings and notified the PTO that "all broken lines have been converted to clear small broken lines." (Id. at 70.) Subsequently, the PTO issued another Office Action, notifying Graco of its objection to the new drawings because the "top corner connectors in figure 1 [were] again shown shaded and in a combination of broken and solid lines." (Id. at 74.) In order to satisfy the PTO's objection, the patent examiner instructed Graco to submit a "new drawing . . . wherein the corner connectors in all views have been converted to small clear broken lines." (Id.) Graco complied with this request. (Id. at 76, 79.) Notably, while none of the disputed lines are "clear small broken lines" as used elsewhere on the drawings to show environment, the patent examiner never issued an objection to the disputed lines. This suggests that neither Graco nor the patent examiner understood any of the disputed lines to be environmental lines indicating the leg itself.

Furthermore, as noted above, the PTO objected to drawings submitted by Graco that showed surface shading on the top connectors, which do not form part of the claimed

11

design. This objectionable drawing showed the top corner connectors with short markings that resemble the disputed lines. (Quicker Decl., Ex. B, at 62.) The PTO instructed Graco to submit a new drawing in which "the shade lines have been erased from the corner connectors in figure 1." (Id. at 74.) In response Graco submitted new drawings and stated that "the top corner connectors in all figures are shown in clear small broken lines and without shade lines." (Id. at 76.) The accompanying drawings show the corner connectors without the short markings. (Id. at 82.) Thus, the short markings previously shown on the top corner connectors must have been shade lines. This suggests that the markings on the leg, which resemble the shade lines that were erased, must also be shade lines.

Baby Trend argues that other drawings withdrawn by Graco through the course of prosecution show fabric lines, and that these are the same types of line found within the solid black lines. (Rep. at 6.) *See* Appendix D. Graco initially claimed both the entire playard and the playard leg and submitted drawings for both claims. Fabric comprises much of the surface of the playard, and is denoted in the withdrawn figures with wavy short lines. (Quicker Decl., Ex. B, at 24-30.) *See also* Appendix D. At the hearing, Baby Trend clarified that it argues only that the innermost lines show fabric (specifically, fabric "pulled taut"). However, none of the disputed lines, including the disputed inner lines, look like the wavy lines denoting fabric in the withdrawn figures. *See* Appendix D. Therefore, the prosecution history is consistent with the Court's conclusion that the disputed lines show surface shading.

                d. *Inventor Testimony*

Baby Trend submitted portions of a transcript of its deposition of Mary Ann Celestina-Krevh, the '218 patent inventor, in support of its argument that the '218 patent claims only a fabric-covered leg. While the Court may consider inventor testimony, the Federal Circuit has stated that "the subjective intent of the inventor . . . is of little or no probative weight in determining the scope of a claim." *Markman*, 52 F.3d at 985. *See also Solomon*

1 *v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000) (discussing the low
2 probative weight of "litigation-derived inventor testimony."). As the *Markman* Court
3 noted, "it is not unusual for there to be a significant difference between what an inventor
4 thinks his patented invention is and what the ultimate scope of the claims is after
5 allowance by the PTO." 52 F.3d at 985.

6     In this case, the portions of the deposition transcript highlighted by Baby Trend suggest
7 that Mrs. Krevh testified that the photograph that provided the basis for the drawings
8 submitted to the PTO showed a fabric-covered leg. (Mallgrave Decl., Doc. 63-1, Ex. B,
9 75:19-75:24, 77:20-77:22, 79:25-80:03.) In light of the low probative weight of Mrs.
10 Krevh's testimony and the strong possibility that the photograph provided to the claim
11 drafter does not accurately define the ultimate claim, Mrs. Krevh's testimony does not alter
12 the Court's conclusion that the disputed lines are surface shading.

### B. Application of the Ordinary Observer Test

15     The second step of the test for infringement in a design patent case requires the
16 Court to inquire "whether an ordinary observer, familiar with the prior art …, would be
17 deceived into believing the [allegedly infringing design] is the same as the patented
18 [design]." *Egyptian Goddess*, 543 F.3d at 681. Baby Trend's only argument for non-
19 infringement at this second step depends on a finding that the '218 patent shows a fabric-
20 covered leg. (Mot. at 14.) Because the Court finds that the '218 patent covers a curved
21 playard leg, regardless of covering, there remains a genuine issue of material fact as to
22 infringement. All of the Accused Products have curved legs. In light of the '218 patent
23 prior art, in which all legs are straight, an ordinary observer could find the legs of the
24 Accused Products "deceptively similar" to the '218 patent. Therefore, Baby Trend is not
25 entitled to summary judgment.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Baby Trend's Motion for Summary Judgment.

DATED: October 12, 2011

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE
