1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3          **SOUTHERN DIVISION AT SANTA ANA**

4      HONORABLE JOSEPHINE STATON TUCKER, JUDGE PRESIDING

5

6   GRACO CHILDREN'S PRODUCTS, INC.,    )
                                        )
7              PLAINTIFF,               )
                                        )
8          VS.                          ) CV NO. 10-5897-JST
                                        )
9   BABY TREND, INC.,                   )
                                        )
10             DEFENDANT.               )
    _____)

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14               SANTA ANA, CALIFORNIA

15            MONDAY, SEPTEMBER 19, 2011

16                  10:00 A.M.

17

18

19

20

21          **DEBORAH D. PARKER, CSR 10342**

22           **OFFICIAL COURT REPORTER**
           **UNITED STATES DISTRICT COURT**
23            **411 WEST FOURTH STREET**
                 **SUITE 1-053**
24         **SANTA ANA, CALIFORNIA 92701**
                **(714) 542-8409**
25           **D.PARKER@IX.NETCOM.COM**

```
 1   APPEARANCES OF COUNSEL:

 2        FOR THE PLAINTIFF, GRACO CHILDREN'S PRODUCTS,
          INC.:
 3
                              LYNN E. RZONCA
 4                            PENNY M. COSTA
                              KATRINA M. QUICKER
 5                            BALLARD SPAHR, LLP
                              1735 MARKET STREET
 6                            51ST FLOOR
                              PHILADELPHIA, PENNSYLVANIA 19103
 7                            (215) 665-8500

 8
          FOR THE DEFENDANT, BABY TREND, INC.:
 9
                              J. RICK TACHÉ
10                            DEBORAH S. MALLGRAVE
                              SNELL & WILMER, LLP
11                            600 ANTON BOULEVARD
                              SUITE 1400
12                            COSTA MESA, CALIFORNIA 92626
                              (714) 427-7000
13

14

15

16

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1            SANTA ANA, CALIFORNIA; MONDAY, SEPTEMBER 19, 2011;

 2                          10:00 A.M.

 3            THE CLERK:  CALLING CALENDAR ITEM NO. 2,

 4    CV 10-5897-JST, IN RE BABY TREND, INC. VERSUS GRACO

 5    CHILDREN'S PRODUCTS, INC. VERSUS BABY TREND, INC.

 6            COUNSEL, YOUR APPEARANCES, PLEASE.

 7            MS. COSTA:  GOOD MORNING, YOUR HONOR.

 8            LYNN RZONCA AND MYSELF, PENNY COSTA, ON BEHALF OF

 9    PLAINTIFF GRACO CHILDREN'S PRODUCTS, INC.

10            MR. TACHÉ:  GOOD MORNING, YOUR HONOR.

11            RICK TACHÉ, FROM SNELL & WILMER, ON BEHALF OF THE

12    DEFENDANT, BABY TREND.

13            THE COURT:  PLEASE STAND WHEN YOU ADDRESS THE

14    COURT.

15            MR. TACHÉ:  SORRY.

16            GOOD MORNING, YOUR HONOR.

17            RICK TACHÉ FROM SNELL & WILMER, ON BEHALF OF THE

18    DEFENDANT, BABY TREND.

19            THE COURT:  THANK YOU.

20            MS. MALLGRAVE:  GOOD MORNING, YOUR HONOR.

21            DEBORAH MALLGRAVE, ON BEHALF OF DEFENDANT BABY

22    TREND.

23            THE COURT:  ALL RIGHT.  GOOD MORNING AGAIN.  AND

24    WE ARE HERE ON DEFENDANT BABY TREND'S MOTION FOR SUMMARY

25    JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT.
```

```
1              I'LL HEAR FROM THE MOVING PARTY, FIRST.  AND I

2    USUALLY HAVE ORAL ARGUMENT ONLY WHEN I HAVE QUESTIONS, OR

3    PARTICULAR CONCERNS, SO I WILL BE ASKING THOSE QUESTIONS.

4              NO FEEL FREE TO GO AHEAD AND MOVE THE PODIUM,

5    WHOEVER IT IS WHO WILL BE ARGUING FOR BABY TREND.

6              I'M SORRY.  YOU PRONOUNCE YOUR LAST NAME TACHÉ?

7              MR. TACHÉ:  TACHÉ.

8              THE COURT:  TACHÉ?

9              MR. TACHÉ:  YES.

10             THE COURT:  YES.  ALL RIGHT.

11             MR. TACHÉ:  GOOD MORNING, YOUR HONOR.

12             THE COURT:  GOOD MORNING.

13             MR. TACHÉ:  I'M HAPPY TO PREPARE -- I'M HAPPY TO

14   DISCUSS THE PREPARATION FOR THE MOTION THIS MORNING IN AS

15   MUCH DETAIL THE COURT WOULD LIKE.  BUT GIVEN YOUR COMMENTS

16   JUST A MOMENT AGO, I'M HAPPY TO FOREGO THAT PRESENTATION IN

17   LIEU OF ADDRESSING ANY CONCERNS OR QUESTIONS THAT YOU MAY

18   HAVE WITH RESPECT TO THE MOTION, OR LIMIT MY COMMENTS TO

19   PARTICULAR ISSUES, IF THAT WOULD HELP THE COURT.

20             THE COURT:  WHAT I WILL DO IS I'LL ASK YOU SOME

21   QUESTIONS; AND THEN, IF THERE IS AN AREA THAT YOU WOULD LIKE

22   TO HIGHLIGHT, YOU THINK MAYBE THE PAPERS DIDN'T ADDRESS IT,

23   BUT IT GOES BEYOND MY QUESTIONS, I'LL GIVE YOU THAT

24   OPPORTUNITY.

25             HOW MANY PRODUCTS ARE THE SUBJECT OF THE LAWSUIT
```

```
 1    BY GRACO?  HOW MANY BABY TREND PRODUCTS?

 2              MR. TACHÉ:  THE ORIGINAL COMPLAINT INCLUDED 11

 3    ACCUSED PRODUCTS.  BUT SUBSEQUENTLY IN DISCOVERY, THEY HAVE

 4    ADDED ANOTHER 11, SO FOR A TOTAL OF 22.

 5              THE COURT:  ALL RIGHT.  SO --

 6              MR. TACHÉ:  I'M SORRY, YOUR HONOR.  I'VE JUST BEEN

 7    CORRECTED.

 8              THE COURT:  24?

 9              MR. TACHÉ:  24.  APPARENTLY, I CAN'T COUNT.

10              THE COURT:  SO YOUR MOTION ONLY GOES TO 11

11    PRODUCTS, CORRECT?

12              MR. TACHÉ:  THE MOTION WAS FILED WITH RESPECT TO

13    THE 11 THAT WERE NAMED IN THE COMPLAINT.  SUBSEQUENTLY IN

14    DISCOVERY, THEY ADDED THE ADDITIONAL -- THE ADDITIONAL

15    ACCUSED PRODUCTS.  WE BELIEVE THAT THE SAME ISSUES WOULD

16    APPLY WITH RESPECT TO ALL BUT -- IS IT FOUR OR SIX?

17              ALL BUT SIX OF THE ACCUSED PRODUCTS OF THE 24

18    TOTAL, SO 18 WOULD BE COVERED BY THIS MORNING'S MOTION.

19              THE COURT:  ALL RIGHT.  SO REGARDLESS IT WOULDN'T

20    BE SUMMARY JUDGMENT AS TO THE ENTIRE COMPLAINT IN ANY EVENT

21    AT THIS POINT THEN.  IT WOULD BE AS TO THE 18 PRODUCTS THAT,

22    PERHAPS, ARE -- DO NOT HAVE COVERED LEGS, OR DO HAVE -- YES,

23    THE 18 THAT DO NOT HAVE COVERED LEGS.  PRESUMABLY, THE

24    REMAINING SIX WOULD BE AT ISSUE BECAUSE THEY ARE COVERED?

25              MR. TACHÉ:  YES.  THERE ARE OTHER GROUNDS FOR
```

1   INVALIDITY AS TO THOSE SIX; BUT, YES, YOUR HONOR, YOU'RE

2   CORRECT.

3          THE COURT:  ALL RIGHT.  OKAY.  SO LET ME ASK YOU

4   THIS:  WHEN I REVIEWED THE PAPERS AND I REVIEWED THE MOTION,

5   THE MOTION SEEMED TO INDICATE THAT BABY TREND WAS TAKING THE

6   POSITION THAT THE LINES THAT SHOW ON THE -- I'LL SAY ON THE

7   LEG, THE SHORT LINES THAT ARE SORT OF AT ISSUE HERE, BECAUSE

8   THAT SEEMS TO BE THE GIST OF THE ARGUMENT, ARE LINES THAT

9   REFLECT THE LEG ITSELF AND BECAUSE THOSE LINES ARE BROKEN --

10         JUST ONE MOMENT.  LET ME SEE IF I CAN FIND IT.

11  THE LEG ITSELF IS NOT COVERED BY THE PATENT.  WHAT I'M

12  LOOKING AT IS THE BOTTOM OF PAGE 11, THE TOP OF PAGE 12 OF

13  YOUR MOTION AND THEN ALSO THE BOTTOM OF PAGE 12.  THE

14  DESIGN, QUOTE, SHOWN AND DESCRIBED, CLOSE QUOTE, IS THE

15  PLAYARD WITH THE OUTSIDE OF THE LEG SHOWN IN SOLID LINES AND

16  THE REST OF THE PLAYARD, INCLUDING THE LEGS THEMSELVES,

17  SHOWN IN BROKEN LINES.  AND SO, THEN IT GOES DOWN AND ON

18  LINE 24 OF THE MOTION, IT SAYS:  *THUS, AS DRAWN AND*

19  *DESCRIBED, THE DESIGN CLAIMED BY THE '218 PATENT IS FOR THE*

20  *COVERED LEGS OF A PLAYARD.*  AND COVERED IS "ITALICIZED."

21  AND THEN, IT SAYS:  THE LEG ITSELF IS NOT COVERED BY THE

22  PATENT.

23         SO IS THAT THE POSITION OF BABY TREND, THAT THOSE

24  LINES ARE REFLECTIVE OF THE LEGS THEMSELVES AND THEREFORE,

25  THE LEG IS NOT COVERED BY THE PATENT?

1          MR. TACHÉ:  THAT'S NOT JUST BABY TREND'S POSITION

2    THAT'S ALSO THE POSITION OF THE PATENT AND TRADEMARK OFFICE,

3    BOTH AS TO THE EXAMINER WHO PROSECUTED NOT JUST THIS BUT THE

4    SUBSEQUENT '970 PATENT THAT ISSUED TO KOLCRAFT AND ALSO THE

5    PATENT BOARD OF APPEALS --

6          THE COURT:  ALL RIGHT.  BUT THAT IS YOUR POSITION?

7          MR. TACHÉ:  IT IS, YOUR HONOR.

8          THE COURT:  ALL RIGHT.  SO YOUR POSITION IS NOT

9    THAT THE -- THOSE BROKEN LINES REFLECT FABRIC.  THOSE BROKEN

10   LINES REFLECT THE LEG ITSELF AND BECAUSE THEY ARE BROKEN

11   LINES THEY SHOW ENVIRONMENT AND, THEREFORE, THEY ARE NOT

12   COVERED.

13         MR. TACHÉ:  THAT'S ABSOLUTELY CORRECT, YOUR HONOR.

14         WHAT'S NOTEWORTHY IS THE FACT THAT THOSE LINES

15   ACTUALLY SHOULDN'T EVEN BE THERE IF THE APPLICANT HAD

16   ACTUALLY COMPLIED WITH THE PATENT AND TRADEMARK OFFICE.

17         THE COURT:  YOU'RE SAYING THEY SHOULDN'T BE THERE

18   IF THEY COMPLIED.  IN FACT, IF I CAN CURE WITH -- USING THE

19   RULES THAT ONE WOULD USE, BECAUSE THOSE -- IF THOSE WERE

20   INTENDED TO BE BROKEN LINES SHOWING ENVIRONMENT, THEY

21   WOULDN'T BE THERE, WOULD THEY, BECAUSE THERE'S AN OPAQUE

22   SURFACE OVER THERE?  SO YOU WOULDN'T SHOW ANYTHING BEYOND

23   THAT OPAQUE SURFACE, I.E., THE FABRIC; CORRECT?

24         MR. TACHÉ:  YES, THAT IS CORRECT, YOUR HONOR.

25         THE COURT:  SO I WOULD HAVE TO ASSUME THAT

1    EVERYBODY, INCLUDING THE PATENT EXAMINER, GOT IT WRONG AND

2    JUST ASSUMED THAT THOSE LINES WERE THERE, BUT THAT WAS ALL

3    WRONG, BUT WE'RE GOING TO ACCEPT IT ANYWAY.  IN OTHER WORDS,

4    THE LINES WERE THERE IN THE APPLICATION, IN THE DRAWING.

5    THE LINES SHOULDN'T BE THERE.  AND YOU'RE SAYING THEY

6    SHOULDN'T BE THERE, IF MY INTERPRETATION -- "MY" BEING "BABY

7    TREND'S" IS CORRECT -- AND THOSE LINES SHOW ENVIRONMENT.

8           MR. TACHÉ:  THAT'S PARTIALLY CORRECT, YOUR HONOR.

9    THE ISSUE IS:  SO SINCE THEY ARE THERE, WHAT COULD THEY

10   POSSIBLY REPRESENT?

11          THE COURT:  AND THEY COULDN'T REPRESENT CURVATURE

12   OR CONTOURS OF THE LEGS?

13          MR. TACHÉ:  NO, THEY COULDN'T.  BECAUSE, AGAIN,

14   EVEN WHEN GRACO'S EXPERT REPORT, THE DRAWINGS -- THE LINES

15   THEMSELVES -- PARDON ME -- ARE INCONSISTENT WITH THE PATENT

16   AND TRADEMARK OFFICE RULES AS TO WHAT THOSE LINES SHOULD BE

17   IF, IN FACT, THEY WERE TO REPRESENT A CURVATURE OR A

18   CONTOUR.  AND THAT'S EXACTLY THE POINT, YOUR HONOR.  YOU'VE

19   GOTTEN TO THE NUB OF THE ISSUE, VERY QUICKLY.

20          THE COURT:  WELL, I WANT TO ASK YOU ANOTHER

21   QUESTION THEN, BECAUSE I ASKED YOU ABOUT WHETHER YOUR

22   POSITION WAS THEY WERE THE -- SHOWING THE LEG, OR SHOWING

23   THE FABRIC.

24          AND THEN, WHEN I LOOK AT YOUR REPLY, AND I LOOK AT

25   PAGE 6 AT THE BOTTOM, IT SAYS:  THE DRAWINGS DO NOT SHOW THE

```
 1    EXPOSED FRAME -- THESE ARE DRAWINGS FIGURES 1 THROUGH 7.

 2             THE DRAWINGS DO NOT SHOW THE EXPOSED FRAME OF THE

 3    PLAYARD EXCEPT FOR THE BASE BUT SHOW A PLAYARD THAT IS

 4    COMPLETELY COVERED IN FABRIC AND INCLUDES A MESH,

 5    SEE-THROUGH FABRIC IN FRONT AND BACK.  THE LINES USED AS

 6    SHADING TO INDICATE A COVERING ON THE MAIN PORTION OF THE

 7    PLAYARD MATCH THE LINES USED FOR SHADING ON THE LEGS.

 8             SO THAT APPEARS WHAT YOU'RE SAYING THERE IS THAT'S

 9    FABRIC SHADING ON -- THOSE LINES ON THE LEGS ARE FABRIC

10    SHADING.  THAT'S WHAT YOU SAY IN YOUR REPLY.

11             MR. TACHÉ:  YOUR HONOR, I THINK WE MAY HAVE

12    CONFUSED YOU WITH RESPECT TO THAT DESCRIPTION IN THE REPLY

13    BRIEF.

14             THE COURT:  OKAY.  SO WHEN IT SAYS THE LINES USED

15    AS SHADING TO INDICATE A COVERING ON THE MAIN PORTION OF THE

16    PLAYARD MATCH THE LINES USED FOR SHADING ON THE LEGS, WHAT

17    DID YOU MEAN BY THAT?

18             MR. TACHÉ:  IN THE -- IN THE MAIN PORTION OF THE

19    PLAYARD, THERE ARE THE BROKEN LINES AND THEN INSIDE OF THAT

20    THERE IS SHADING.  WHAT WE'RE SUGGESTING IS THE BROKEN LINES

21    SHOW ENVIRONMENTAL CONTEXT IN THE MAIN BODY OF THE PLAYARD

22    AND, SIMILARLY, ON THE LEG ITSELF, THE BROKEN LINES

23    REPRESENT CONTEXT OR ENVIRONMENT WHICH IN THIS CASE WOULD BE

24    THE LEGS RATHER THAN THE SHADING.

25             THE COURT:  ALL RIGHT.
```

```
 1          MR. TACHÉ:  AND, YOUR HONOR, ONE FURTHER POINT OF
 2   CLARIFICATION IS THAT THE STATEMENT REFERENCES NOT JUST THE
 3   FIGURES THAT ARE IN THE '218 PATENT BUT ALSO FIGURES 1
 4   THROUGH 7 FROM THE ORIGINAL APPLICATION WHICH WAS
 5   SPECIFICALLY DIRECTED TO THE ENTIRE PLAYARD RATHER THAN TO
 6   JUST THE LEGS OF A PLAYARD.
 7          IF THE COURT RECALLS, WHEN THE APPLICATION WAS
 8   FILED, THEY INCLUDED 14 FIGURES.  AND THE FIRST SEVEN WERE
 9   DIRECTED TO THE PLAYARD IN ITS ENTIRETY AND NOT JUST TO THE
10   LEGS.  AND THEN THEY HAD FIGURES 8 THROUGH 14 THAT WERE
11   DIRECTED TO THE LEGS OF THE PLAYARD.  AND IF YOU COMPARE
12   THOSE TWO SETS OF DRAWINGS, IT'S UNEQUIVOCALLY CLEAR THAT
13   WHAT WAS INTENDED BY THE APPLICATION AND WHAT WAS FILED AND
14   WHAT WAS SHOWN BOTH IN THE APPLICATION AND THE SUBSEQUENTLY
15   ISSUED PATENT WAS THAT IT WAS DIRECTED TO A COVERED PLAYARD
16   AND NOT AN EXPOSED PLAYARD.  AND THAT'S CONSISTENT WITH
17   SHADING IN THE DRAWINGS.
18          I'M NOT SUGGESTING THAT THEY DID A GOOD JOB WITH
19   THE DRAWINGS, YOUR HONOR.  IN FACT, IT ALMOST RAISES A
20   35 U.S.C. 112 ISSUE AS TO ENABLEMENT AS TO THE DESIGN AND WE
21   MAY DECIDE TO PURSUE THAT ISSUE AT TRIAL; OR TO THE EXTENT
22   IT MERITS THAT THE COURT GRANTS US LEAVE FROM THE SCHEDULING
23   ORDER, WE CAN FILE A MOTION NOW.
24          BUT THE REALITY IS, THEY DIDN'T DO A VERY GOOD JOB
25   WITH THIS APPLICATION AND THAT'S WHAT'S CAUSED THE
```

1    CONFUSION.  BUT IT'S UNEQUIVOCALLY CLEAR THAT THE PATENT

2    EXAMINER, THE INVENTOR AND THE PTAI -- THE BOARD OF APPEALS

3    AND INFERENCES CLEARLY UNDERSTOOD WHAT THIS INVENTION WAS

4    DIRECTED TO AND THAT'S FURTHER EVIDENCED BY THE FACT THAT

5    ALMOST THREE AND A HALF OR ALMOST FOUR YEARS LATER KOLCRAFT,

6    THE COMPETITOR, COMES IN AND GETS A PATENT THAT LOOKS

7    VIRTUALLY IDENTICAL IN ALL RESPECTS TO THE '218 PATENT AND

8    THE ONLY DIFFERENCE IS, IT GETS ONE FOR EXPOSED LEGS.  SO

9    THE PATENT AND TRADEMARK OFFICE ISN'T DUMB ENOUGH TO ISSUE

10   TWO PATENTS ON THE SAME INVENTION.

11           AND SO ON ONE SIDE IS EVERYBODY THAT BELIEVES THAT

12   THIS THING IS LIMITED TO A COVERED CURVED LEG AND THE ONLY

13   OUTLIERS ARE GRACO'S EXPERTS.

14           THE COURT:  SO IS THERE A -- SHOULD THE COURT

15   IGNORE THE TITLE OF THE PATENT?  THE TITLE OF THE PATENT IS

16   FOR CURVED LEGS.  IT APPEARS THAT THE INTENT WAS TO COVER

17   LEGS, NOT FABRIC.

18           MR. TACHÉ:  AGAIN, YOUR HONOR, THAT'S THE LEGACY

19   FROM THE ORIGINAL APPLICATION THAT WAS FILED, AND THEN IT

20   WAS CONVERTED AT THE REQUEST OF THE PATENT EXAMINER TO

21   CONVERT IT TO THE CURVED LEG OF A PLAYARD --

22           THE COURT:  RIGHT.  BUT THE PATENT EXAMINER DIDN'T

23   REQUEST THAT THEY CONVERT IT TO COVERED LEGS OR COVERING FOR

24   CURVED LEGS ON A PLAYARD.  IT WAS CURVED LEGS ON A PLAYARD.

25   SO FAR I'M -- I'M SUPPOSED TO IGNORE THAT THEY SHOULDN'T

```
1    HAVE SHOWN THE LINES FOR THE LEG BECAUSE THAT ENVIRONMENT
2    SHOULDN'T HAVE BEEN SHOWN UNDER THE OPAQUE SURFACE, AND I'M
3    SUPPOSED TO IGNORE THE TITLE AND ASSUME THAT THE PATENT
4    EXAMINER DIDN'T -- SHOULDN'T HAVE TOLD THEM TO REVISE IT FOR
5    CURVED LEGS BUT RATHER FOR CURVED COVERED LEGS BUT JUST
6    FAILED TO DO THAT?
7              MR. TACHÉ:  IT'S A FAIR POINT, YOUR HONOR, EXCEPT
8    THERE'S TWO IMPORTANT THINGS TO UNDERSTAND:  ONE IS THE
9    TITLE OF A PATENT -- THE TITLE OF PATENT -- PARDON ME -- IS
10   NOT DETERMINATIVE NECESSARILY OF THE INVENTION.
11             THE COURT:  I'M NOT SAYING IT'S "DETERMINATIVE."
12   I'M PUTTING ALL THE PIECES TOGETHER.  SHOULD I IGNORE IT, IS
13   WHAT I'M SAYING?
14             MR. TACHÉ:  I'M NOT ASKING YOU TO IGNORE IT, YOUR
15   HONOR.  AT THE END OF THE DAY WHAT'S COVERED IN FABRIC IS,
16   IN FACT, A CURVED LEG.  BUT THE FACT REMAINS THAT IT'S WHAT
17   WAS INTENDED AND WHAT WAS FILED WAS FOR A COVERED LEG.
18             THE OTHER THING THAT'S MORE TO UNDERSTAND IS WHEN
19   THIS APPLICATION WAS FILED, THERE WAS NEITHER AN EXPOSED LEG
20   OR A COVERED LEG, BASED ON THE INFORMATION BEFORE THE COURT
21   AS IT RELATES SPECIFICALLY TO THIS MOTION FOR A PLAYARD.
22   AND THEY HAD THE OPPORTUNITY, SHOULD THEY HAVE ELECTED TO DO
23   SO, TO HAVE DRAWN THE INVENTION DIFFERENTLY AND CLAIM IT
24   MORE BROADLY.  THEY ELECTED NOT TO DO SO.  AND SO NOW THEY
25   ARE STUCK WITH WHAT THEY SPECIFICALLY FILED AND CLAIMED.
```

1    AND ONLY NOW IS THERE ATTEMPTING TO ASSERT THE PATENT AS THE

2    ISSUE COME UP FOR THE FIRST TIME.

3         THE EXAMINER WAS -- IT WAS NEVER IN THE EXAMINER'S

4    MIND AT THE TIME THE APPLICATION WAS FILED OR DURING

5    PROSECUTION.  OPPOSING COUNSEL POINTS THIS OUT.  THE RECORD

6    IS CLEAR.  THERE IS NO MENTION OF COVERED LEGS IN THE

7    CONTEXT OF THE APPLICATION.  IT'S BECAUSE IT WASN'T AN

8    ISSUE.  THE PATENT EXAMINER WOULD HAVE HAD NO REASON AT ALL

9    TO HAVE RAISED THE ISSUE AS TO WHETHER OR NOT WHAT WAS BEING

10   CLAIMED AS AN EXPOSED LEG OR A COVERED LEG BECAUSE HE WAS

11   WORKING FROM -- SHE, ACTUALLY -- WAS WORKING FROM THE

12   DRAWINGS THEMSELVES.  AND THAT'S -- IT WAS CLEAR FROM THE

13   DRAWINGS WHAT WAS INTENDED.  SO THERE WAS NO REASON TO

14   MENTION.  SO THE FACT THAT THERE'S AN ABSENCE OF A

15   DISCUSSION AS TO WHETHER OR NOT WHAT WAS COVERED WAS A

16   CURVED LEG OR EXPOSED OR COVERED AND THE FACT THAT THE TITLE

17   SIMPLY SAYS "CURVED LEG," IT WASN'T AN ISSUE AT THE TIME.

18   SO WE'RE USING HINDSIGHT AS TO WHAT THE PATENT ACTUALLY

19   COVERS.  AND I'M SUGGESTING THAT IN CONSTRUING THE CLAIMS,

20   THE COURT LOOKS TO FOUR THINGS.  THE CLAIM ITSELF, WHICH

21   UNEQUIVOCALLY SHOWS THAT IT'S A COVERED LEG.

22         IF YOU LOOK AT THE TOP PLAN VIEW IN FIGURE 7 OR

23   THE SIDE VIEW IN FIGURE 4, IT'S UNEQUIVOCALLY CLEAR -- THE

24   INVENTORS TESTIFIED TO IT, THE EXAMINER HAS POINTED TO THIS,

25   AND I CAN CITE THE BOARD OF APPEALS CASE IN THE '970 PATENT

1    WHERE THE EXAMINER CLEARLY ACKNOWLEDGES THAT IT'S A COVERED

2    CURVED LEG.  BUT IF YOU LOOK, YOUR HONOR, AT FIGURE 7,

3    WHETHER FIGURE 6 OR FIGURE 7 OF THE PATENT, IT'S THE TOP

4    PLAN VIEW AND THE BOTTOM PLAN VIEW AND, PROBABLY, FIGURE 6

5    IS THE BETTER ONE.  IT'S SHEET 6 OF 7 OF THE DRAWINGS IN THE

6    '218 PATENT.  IT UNEQUIVOCALLY SHOWS THE FABRIC GOING AROUND

7    THE EXTERNAL PERIMETER OF THE LEGS.  THAT'S WHAT THE

8    EXAMINER RELIED ON AND RIGHTFULLY SO, AND THAT'S ALSO WHAT

9    THE BOARD OF APPEALS RELIED ON AND RIGHTFULLY SO.  THAT'S

10   WHAT WAS INTENDED AND THAT'S WHAT IS SHOWN AND THAT'S WHAT

11   IS CLAIMED.

12        AND AS MUCH AS GRACO WOULD LIKE TO MOVE FROM THAT

13   NOW BECAUSE IT'S EXPEDIENT TO DO SO, IT CAN'T.

14        THE COURT:  SO IF I'M LOOKING AT -- AND I JUST

15   PULLED OUT BECAUSE THAT'S THE FIRST THAT I FOUND, WHICH WAS

16   YOUR REPLY THAT INCLUDES FIGURE 6, ON IT AT PAGE 7, IS THAT

17   THE TOP DOWN?

18        MR. TACHÉ:  YES, IT IS.  THAT'S THE TOP PLAN VIEW.

19        THE COURT:  ALL RIGHT.  SO TELL ME WHAT THERE THAT

20   YOU THINK I SHOULD BE LOOKING AT TO SAY THAT WHAT THEY'RE

21   CLAIMING IS THE COVERED LEG.

22        MR. TACHÉ:  IF YOU TAKE A LOOK AT THE DASH LINES

23   THAT GO ALL THE WAY AROUND THE PERIMETER, THE MOST EXTERNAL

24   LINES THAT GO ALL THE WAY AROUND THE PERIMETER OF THE

25   PLAYARD, THOSE ARE -- SUDDENLY BECOME SOLID LINES AS THEY GO

1     AROUND THE EXTERNAL PORTIONS OF THE FOUR CORNERS OF THE

2     LEGS -- OF THE LEGS -- PARDON ME, THE FOUR CORNERS OF THE

3     PLAYARD.  THAT'S EXACTLY WHAT THEY INTENDED AND WHAT THEY

4     DID IN FACT CLAIM WHICH IS A COVERED LEG.  AND THEY'VE GOT

5     IT IN BROKEN LINES EVERYWHERE ELSE, INCLUDING THE LEGS WHICH

6     ARE IN DASH LINES INTERNAL TO THAT, BECAUSE THAT'S WHAT THEY

7     INTENDED.  THEY WANTED IT TO SHOW ENVIRONMENT FROM THE TOP

8     DOWN.

9          THE COURT:  BUT IF THAT'S SHOWING ENVIRONMENT,

10     THAT'S THE COVERING THAT'S SHOWING ENVIRONMENT; CORRECT?

11     IT'S THE LEG THAT'S THE SOLID LINE?

12          MR. TACHÉ:  NOT TRUE, YOUR HONOR.  WHAT'S IN

13     BROKEN LINES, IT'S BROKEN LINE IS ENVIRONMENT.  EVERYWHERE

14     ELSE EXCEPT AS IT GOES AROUND THE LEG.  AND WHAT BECOMES

15     BROKEN IS THE LEG PORTION INSIDE THAT CORNER AND THAT'S WHAT

16     THEY INTENDED THIS TO BE.  THEY INTENDED THIS TO BE A

17     COVERED CURVED LEG.  HOW ELSE DO WE EXPLAIN THAT FOUR YEARS

18     LATER, KOLCRAFT GETS A PATENT ISSUED THAT'S IDENTICAL?

19          AS YOU LOOK AT THE DRAWINGS OF THE '970 --

20          THE COURT:  WELL, THAT WOULD HAVE NOTHING TO DO

21     WITH GRACO'S INTENT, BECAUSE THEY DIDN'T -- THEY WEREN'T

22     PART OF THAT LATER PROCEEDING, OR NOTIFIED OF IT, OR HAD

23     ANY -- NO ONE -- THE ISSUE OF WHETHER IT WAS COVERED OR NOT

24     WAS NOT SOMETHING THAT WAS LITIGATED REALLY IN THAT

25     PROCEEDING.  IT WAS JUST ASSUMED THAT IT WAS COVERED,

1    CORRECT?

2              MR. TACHÉ:  NO, I WOULD --

3              THE COURT:  YOU'RE SAYING RIGHTLY ASSUMED, BUT --

4              MR. TACHÉ:  I WOULD GO A LITTLE BIT STRONGER THAN

5    THAT, YOUR HONOR.  I WOULD SHOW GREAT DEFERENCE TO THE FACT

6    THAT A THREE-JUDGE PANEL AT THE BOARD OF APPEALS AND

7    INTERFERENCES AND THEY ARE SENIOR PATENT EXAMINERS APPOINTED

8    BY THE DIRECTOR OF THE PATENT AND TRADEMARK OFFICE, AND THEY

9    LOOK AT, LITERALLY, HUNDREDS OF APPEALS, JUST LIKE THIS,

10   EVERY MONTH.  AND THEY ARE LEARNED BOTH AS TO THE LAW AND AS

11   TO TECHNOLOGY, OR THEY WOULD NOT BE APPOINTED.

12             I WOULD SUGGEST TO THE COURT THAT SUBSTANTIAL

13   DEFERENCE BE GIVEN TO THEIR CONCLUSIONS AND THEY HAD THREE

14   SPECIFIC FINDINGS OF FACT AS TO WHAT THE '218 PATENT COVERED

15   AND THAT WAS AFTER FULL BRIEFING BY BOTH THE APPLICANT IN

16   THE '970 PATENT BY KOLCRAFT.

17             THE COURT:  WHO HAD EXPOSED LEGS, CORRECT?

18             MR. TACHÉ:  YES.  YES.

19             THE COURT:  AND WOULD HAVE HAD AN INTEREST IN

20   SAYING THESE ARE COVERED LEGS.  WHO WAS FULLY LITIGATING --

21   WHO HAD AN INTEREST IN SAYING, *NO, THESE ARE EXPOSED LEGS.*

22   *THIS IS A PATENT FOR THE CURVED LEG*?

23             MR. TACHÉ:  THE PATENT EXAMINER WOULD HAVE HAD

24   THAT INTEREST WHEN HE FILED HIS ARGUMENTS IN REPLY, YOUR

25   HONOR, BECAUSE SHE WAS DEFENDING HER POSITION WITH RESPECT

1   TO REJECTING THE KOLCRAFT PATENT AS BEING OBVIOUS IN LIGHT

2   OF THE '218 PATENT.  AND EVEN SHE GOES TO THE FACT, IF YOU

3   LOOK AT HER BRIEF AND ARGUMENT, SHE SPECIFICALLY SAYS --

4           LET ME CITE TO THE PAGE.  IN THE FILED HISTORY

5   THAT WE PROVIDED YOU WHICH INCLUDES THE ARGUMENT FROM THE

6   PATENT BOARD OF APPEALS, IN EXHIBIT 1, ON PAGE 93, SHE

7   GOES -- SHE SHOWS A DRAWING OF THE KOLCRAFT APPLICATION ON

8   PAGE 6 AND A SIMILAR VIEW OF THE '218, FIGURE 4; AND THEN

9   GOES DOWN LATER TO SAY WHETHER OR NOT THE LEGS ARE PROVIDED

10  WITH A COVER, THE OVERALL APPEARANCE IS CITED FOR DISCLOSING

11  WHAT CLAIMS.  AND LATER SHE SAYS: *THIS IN NO FACT*

12  *DISCOURAGES THE DESIGNER FROM RECOGNIZING LEGS WITHOUT A*

13  *COVER MIGHT BE IMPROVEMENT OF THE DESIGN.*

14          THE ONLY REASON THAT ONE COULD MAKE THAT ARGUMENT

15  IS IF ONE BELIEVES THAT THE OTHER ONE DOES, IN FACT, SHOW A

16  COVERED LEG.  AND I MEAN, THIS -- BRIEFS WERE FILED BY BOTH

17  KOLCRAFT AND BY THE PATENT EXAMINER.  AND A THOROUGH REVIEW

18  OF THE RECORD BY THE PATENT BOARD OF APPEALS AND

19  INTERFERENCES AND THEY HAD THREE FINDINGS OF FACT:  THE LEG

20  WAS COVERED; THAT IT WAS LIMITED TO A COVERED LEG AND THAT

21  THAT'S THE TEACHING OF THE PATENT.

22          I'M HAPPY TO CITE YOU SPECIFIC PAGES.  IF YOU TURN

23  TO A COUPLE OF PAGES EARLIER, ON PAGE 4 -- IN FACT, TWO OR

24  THREE PAGES EARLIER, THE FINDING OF FACTS ARE RIGHT THERE.

25  IT SAYS: *THE PATENTS HAVE WHAT APPEAR TO BE LENGTH OF*

1   *FABRIC WRAPPED AROUND THE LEGS TO COVER THE LEG, AND THE*

2   *FABRIC BEING ATTACHED TO THE WALLS, ALSO, APPARENTLY,*

3   *FABRIC.*

4            FINDING OF FACT 2 WAS THAT THE LEG MEMBERS APPEAR

5   IMMEDIATELY ADJACENT TO FABRIC COVERING WHICH WOULD BE

6   UNDERSTOOD BY PERSONS OF ORDINARY SKILL IN THE ART AS

7   CONNOTING THAT FABRIC COVERED AND CLOSELY FOLLOWS THE

8   CONTOUR OF THE LEG EXPOSED INSIDE.  AND, FINALLY, THEIR

9   FINDING OF FACT, WHICH TO ME, IS THE ISSUE.  IT SAYS:  *THE*

10  *PATENT DISCLOSES IN CLAIMS ONLY PLAYARD LEGS WHICH ARE*

11  *SUBSTANTIALLY COMPLETELY COVERED IN FABRIC.*

12           THE COURT:  I UNDERSTAND THAT THAT'S WHAT THEY

13  HAVE SAID, AND I'M -- I HAVE READ ALL OF THAT AND SO I KNOW

14  THAT.  WHAT I WAS ASKING IS MORE:  WHERE IS THE DISCUSSION

15  ABOUT HOW DO YOU DECIDE THAT THAT WAS FOR A COVERED LEG?

16           THERE'S NOT A LOT OF DISCUSSION ABOUT ANY OF THE

17  LINES, OR THE DRAWINGS, OR ANYTHING LIKE THAT THAT I COULD

18  LOOK AT IT AND SAY, *OH, THOSE ARE THE UNDERLYING FACTS.*

19  IT'S SORT OF AN ULTIMATE FACT THAT THEY, PERHAPS, FOUND.

20  BUT WHERE IS THERE A DISCUSSION OF HOW THEY CAME TO THAT

21  FINDING AND WHO WAS IT THAT WOULD HAVE SAID, *NO, THAT'S --*

22           MR. TACHÉ:  SEE, THAT'S EXACTLY THE ISSUE, YOUR

23  HONOR, IS THAT NO ONE WOULD HAVE HAD ANY REASON IN THE WORLD

24  TO HAVE HAD THAT TYPE OF DISCUSSION BECAUSE EVERYBODY READ

25  THE DRAWINGS AND UNDERSTOOD EXACTLY WHAT THEY MEANT.  THERE

1   WAS NO DEBATE BY ANYBODY, WHETHER IT'S THE PATENT EXAMINER,

2   KOLCRAFT'S ATTORNEY, OR THE BOARD AS TO THIS ISSUE BECAUSE

3   IT'S A NONISSUE.  IT'S A RED HERRING THAT GRACO HAS RAISED

4   IN AN EFFORT TO TRY TO STRETCH WHAT'S COVERED BY THE CLAIM.

5   IT'S NOW SAYING, *OH, THAT'S REALLY NOT WHAT THEY DID.  AND*

6   *THAT'S NOT WHAT WE COVERED.*  IT'S A BUNCH OF HAND WAVING.

7   THE FACTS ARE WHAT THE FACTS ARE, YOUR HONOR.  WHEN THEY

8   FILED THE APPLICATION THEY FILED IT SHOWING A COVERED LEG.

9   THERE WAS NEVER A DEBATE.  THERE WAS NEVER A DISCUSSION.  IT

10  WAS NEVER AN ISSUE.  IT'S ONLY AN ISSUE TODAY, BECAUSE

11  THEY'RE TRYING TO DRIVE BABY TREND OUT OF THIS MARKETPLACE,

12  AND THIS IS THE ONLY WEAPON THAT THEY HAVE TO USE AND SO

13  THEY'RE NOW TRYING TO RECREATE HISTORY.  AND THAT'S ALL THIS

14  IS, IS REVISIONIST HISTORY.  AND THEY ARE RAISING THE ISSUE

15  AS TO WHETHER OR NOT THIS IS SOMETHING THAT'S EVEN IN DEBATE

16  OR A GENUINE ISSUE OF MATERIAL FACT WHEN IT'S NOT.

17          IT'S UNEQUIVOCAL WHAT THEY FILED.  IT'S THERE IN

18  BLACK AND WHITE IN THE DRAWINGS.  FOR THEM TO NOW COME BACK,

19  AND BE HISTORIANS AND SAY, *NO, NO, NO, NO.  THAT'S NOT WHAT*

20  *WE DID.  IT'S NOT WHAT WE INTENDED.*

21          IT'S NOTHING SHORT OF BUNK.  EVERYBODY UNDERSTOOD

22  IT:  THE PATENT EXAMINER, THE INVENTOR, GRACO'S -- I'M

23  SORRY, KOLCRAFT'S PATENT ATTORNEY, THE BOARD OF APPEALS.

24  EVERYBODY UNDERSTANDS IT FOR WHAT IT MEANS AND WHAT IT

25  SHOWS.

```
1              THE ONLY PEOPLE THAT ARE NOW TRYING TO CONVINCE
2    THE COURT -- LITERALLY GRACO'S ARGUMENT IS:  THE BOARD OF
3    PATENT APPEALS DOESN'T KNOW WHAT IT'S DOING.  IT LITERALLY
4    SAID THAT THEY DIDN'T LOOK AT THE RECORD.  I MEAN, WHAT
5    BASIS DO THEY HAVE FOR THESE ARGUMENTS OTHER THAN
6    CONVENIENCE TO BEFORE TO THIS COURT THAT THERE'S SOMEHOW A
7    QUESTION OF FACT WHEN, IN FACT, THERE ISN'T?  AND WHAT'S A
8    LITTLE BIT FRUSTRATING FOR ME TO CONVEY, YOUR HONOR, IS
9    THAT:  THIS ISN'T AN ISSUE.  IT SHOULDN'T BE AN ISSUE.  IT'S
10   A RED HERRING.  THIS IS UNEQUIVOCALLY CLEAR FROM THE RECORD
11   AND THAT'S EXACTLY WHAT MARKMAN SAYS THE COURT SHOULD BE
12   DOING IS LOOKING AT THE RECORD.  THE RECORD IS CLEAR.  THE
13   CLAIM SHOWS DRAWINGS HAVING A SOLID LINE ON THE EXTERNAL
14   PORTION OF THE LEG.  END OF STORY.
15              THE COURT:  THANK YOU.
16              MS. RZONCA:  GOOD MORNING.
17              THE COURT:  GOOD MORNING.
18              ALL RIGHT.  SO LOOKING AT PAGE 7 OF THE REPLY
19   BRIEF, THE TOP DOWN FIGURE, PARTICULARLY, THE ONE ON THE
20   RIGHT-HAND SIDE OF THE PAGE, I DON'T KNOW IF THAT'S TOP DOWN
21   OR BOTTOM UP, ACTUALLY.  IT'S HARD TO TELL.
22              BUT IN ANY EVENT, IT SHOWS, AS COUNSEL FOR BABY
23   TREND JUST INDICATED, BROKEN DOTTED LINES ON THE INTERIOR IN
24   WHAT COULD BE VIEWED AS A LEG AND THEN THE SOLID LINE
25   WRAPPING AROUND THAT DOTTED LINE.
```

```
 1              HOW IS THAT NOT CLEARLY A LEG INSIDE A COVERING?

 2              MS. RZONCA:  YOUR HONOR, WE LOOK AT THE FIGURES IN

 3    THE '218 PATENT TOGETHER.  THEY ALL FORM PART OF THE PATENT

 4    AND HAS BEEN POINTED OUT, THE TITLE IS CURVED LEGS FOR A

 5    PLAYARD, NOT FABRIC-COVERED LEGS, OR COVERED LEGS, AS BABY

 6    TREND WOULD LIKE THE PATENT TO READ.

 7              THE COURT:  OKAY.  WELL, THAT GOES TO ARGUMENT

 8    ABOUT WHAT THE TITLE IS, BUT RIGHT NOW WHAT I'M -- AND I

 9    RAISED THAT, SO I'M AWARE OF THAT.  BUT NOW I'M FOCUSED ON

10    THE -- ONE OF THE DRAWINGS, ITSELF.

11              AND SO, THE PROBLEM THAT WE HAVE IS, UNLIKE SOME

12    CASES WHERE THERE'S A LEGEND OR A DESCRIPTION IN THE PATENT

13    ITSELF THAT SAYS WHAT YOU'RE DOING WITH PARTICULAR LINES,

14    WHAT YOU INTEND WITH PARTICULAR STYLIZED LINES, THAT IS NOT

15    CONTAINED IN THIS PATENT.  THERE IS NO -- IN THIS

16    APPLICATION, THERE WAS NO DESCRIPTION OF WHAT WAS INTENDED

17    BY THE BROKEN LINES ON THE LEGS.  AND SO, WE'RE LOOKING AT

18    THE DRAWINGS AND TRYING TO DISCERN WHAT THOSE BROKEN LINES

19    ARE.

20              THE BROKEN LINES THAT ARE INSIDE OF THE SOLID LINE

21    ON FIGURE 6 APPEARS TO BE CONSISTENT WITH ALL OF THE OTHER

22    BROKEN LINES IN THAT PARTICULAR DRAWING, UNLIKE SOME OF THE

23    DRAWINGS WHERE THERE IS -- GRANTED, A LOT OF INCONSISTENCY

24    IN THE LINE.  THEY'RE DRAWN DIFFERENTLY IN ONE PLACE THAN

25    ANOTHER.  AND THAT WAS, PERHAPS, ONE QUESTION I HAD FOR
```

1    DEFENSE COUNSEL AND DIDN'T ASK, WHICH IS:  WHY WOULD THE

2    LINES ON THE LEG, IF THEY ARE TO SHOW ENVIRONMENT, BE DRAWN

3    DIFFERENTLY FROM ALL THE OTHER BROKEN LINES ON THE DRAWING?

4    BUT THAT'S NOT A QUESTION FOR YOU.  THAT'S A QUESTION FOR

5    DEFENSE COUNSEL.  I MIGHT GIVE HIM AN OPPORTUNITY TO ANSWER

6    THAT.

7            BUT LOOKING AT THE DRAWING THAT IS ON -- THAT I'VE

8    REFERENCED, WHAT IS INTENDED BY THE LINES INSIDE THE

9    SOLID -- THE SOLID LINES?

10           MS. RZONCA:  AND, YOUR HONOR, THAT WOULD BE A

11   CONTINUATION OF THE SURFACE SHADING THAT IS SHOWN IN THE

12   OTHER FIGURES, IN PARTICULAR:  FIGURE 1, FIGURE 2

13   THROUGHOUT.  THERE ARE THREE TYPES OF LININGS THAT ARE USED

14   IN THE DRAWINGS OF THE GRACO PATENT, AND THEY ARE ALL IN

15   COMPLIANCE WITH THE REQUIREMENTS SET OUT BY THE MANUAL OF

16   PATENT EXAMINING PROCEDURE.

17           THE COURT:  WHY WOULD YOU DO SURFACE SHADING ON A

18   TOP DOWN -- THERE'S NO SURFACE TO SHADE.  SO WHY WOULD YOU

19   DO SURFACE SHADING ON A TOP-DOWN DEPICTION?

20           MS. RZONCA:  BECAUSE THE CURVATURE MAY BE SHOWN IN

21   LOOKING FROM THE TOP DOWN, JUST AS THERE IS A CURVATURE TO

22   THE EXTERIOR PERIMETER OF THE LEGS THAT IS CALLED FOR BY THE

23   SURFACE SHADING THAT IS SHOWN IN THE OTHER FIGURES AS WELL.

24   THIS WOULD BE CONSISTENT WITH WHAT'S REQUIRED BY THE MANUAL

25   OF PATENT EXAMINING PROCEDURE, SECTION 1503.02, WHERE IT

1   SAYS:  *ALTHOUGH SURFACE SHADING ISN'T REQUIRED, IT MAY BE*

2   *NECESSARY TO SHOW CHARACTER AND CONTOUR OF ALL SURFACES.*

3         AND SO, THAT'S WHAT'S BEING DONE.  THE BROKEN

4   LINES ARE IN COMPLIANCE WITH SECTION 1503.02 OF THE MANUAL

5   WHICH SAYS THAT YOU'RE USING THESE TYPES OF BROKEN LINES TO

6   SHOW ENVIRONMENT THAT IS NOT CLAIMED.  AND, SIMILARLY, THE

7   USE OF SOLID LINES OUTLINING THE LEGS THEMSELVES AND SHOWING

8   THE CURVATURE SHOWING THE SHAPE WHICH IS AND ALWAYS HAS BEEN

9   THE INTENT OF THIS PATENT IS TO CLAIM THE SHAPE OF THE LEGS,

10  REGARDLESS OF ANY COVERING, REGARDLESS OF NO COVERING.  THAT

11  IS WHAT'S EXACTLY SHOWN VERY CLEARLY BY THE SOLID LINES IN

12  ALL OF THE FIGURES.

13        GRACO HAS ALWAYS MARKED ALL OF ITS DEVICES,

14  REGARDLESS OF WHETHER THEY HAD EXPOSED LEGS OR COVERED LEGS,

15  WITH THE '218 PATENT.  IT'S CONSISTENT WITH THE FACT THAT

16  WHEN THIS PATENT WAS FILED, IT WAS ALWAYS INTENDED TO COVER

17  THE CURVATURE OF THE LEGS.

18        AT THE TIME THIS PATENT WAS FILED, THE MARKET

19  LOOKED -- FOR PLAYARDS WAS VERY, VERY DIFFERENT.  ALL

20  PLAYARDS WERE VERY BOXY-LOOKING.  THEY HAD VERY STRAIGHT

21  LEGS.  AND THAT'S WHY WHEN THE INVENTOR, MS. KREVH DEVISED

22  HER INVENTION, AS SHE TESTIFIED, HER INVENTION WAS ALWAYS

23  ABOUT THE SHAPE OF THE LEGS.  IT DIDN'T MATTER WHETHER THERE

24  WAS COVERING OR NO COVERING.  AND, IN FACT, WE HAVE FILED ON

25  FRIDAY, YOUR HONOR -- I DON'T KNOW IF YOU'VE SEEN IT YET --

```
 1  A SURREPLY, WHICH INCLUDES MS. KREVH'S DECLARATION AND THAT
 2  IS TO COUNTER THE SELECTIVE PORTIONS OF HER DEPOSITION THAT
 3  BABY TREND ATTEMPTED TO RELY ON.  AND SHE MAKES VERY CLEAR,
 4  AFTER SAYING SHE HAS NO INTEREST IN THIS LAWSUIT, SHE HAS NO
 5  INTEREST IN THE PATENT, SHE WAS SO UPSET WITH WHAT
 6  TRANSPIRED AT THE DEPOSITION THAT SHE WANTED TO SET THE
 7  RECORD CLEAR.  AND SHE CONFIRMS, AS REFLECTED IN HER
 8  ORIGINAL TESTIMONY, THE PATENT SHOWS A CURVED LEG,
 9  REGARDLESS OF COVERING.  IT WAS ONLY TO THE SHAPE OF THE
10  LEG.  THAT IS WHAT SHE INVENTED AND THAT IS WHAT --
11          THE COURT:  I AGREE THAT HER TESTIMONY WAS TAKEN
12  OUT OF CONTEXT.  ONE THING THAT I DO WANT TO NOTE, THOUGH,
13  IS THAT YOU CAN'T INVITE EACH OTHER TO FILE SURREPLY.  YOU
14  CAN'T PUT IN NEW EVIDENCE AND INVITE THE OTHER SIDE TO FILE
15  A SURREPLY.  IT IS NOT FOR THE PARTIES.  IT'S SORT OF LIKE
16  SAYING, WELL, WE AGREE THAT YOU'RE GOING TO MOVE THIS
17  HEARING FOR THREE WEEKS, YOUR HONOR, SO WE'LL SHOW UP THREE
18  WEEKS FROM NOW.
19          YOU NEED TO GET PERMISSION OF THE COURT TO DO
20  EITHER OF THOSE.  SO IN THE FUTURE, YOU'LL NEED TO MAKE SURE
21  THAT YOU FOLLOW THE RULES WHICH DO NOT JUST PERMIT
22  SURREPLIES AND NEW EVIDENCE WITHOUT GETTING PRIOR
23  AUTHORIZATION FROM THE COURT.
24          MS. RZONCA:  UNDERSTOOD.  AND THANK YOU.
25          THE COURT:  ALL RIGHT.  SO WHY DO THE -- WAS THERE
```

1   A PARTICULAR REASON WHY THERE WAS NO GUIDANCE IN THE PATENT

2   APPLICATION AS TO THE MEANING OF THE SHORT LINES ON THE

3   LEGS?

4           MS. RZONCA:  GUIDANCE IN TERMS OF VERBIAGE WOULD

5   BE UNCOMMON IN A DESIGN PATENT APPLICATION.

6           THE COURT:  TO SAY WHAT THE LINES ON THE DRAWINGS

7   INDICATE?

8           MS. RZONCA:  CORRECT, YOUR HONOR.

9           IN DESIGN PATENTS WHAT A COURT IS SAYING, IS THE

10  ORNAMENTAL APPEARANCE OF THE PRODUCT.  AND SO JUST AS NOW

11  EGYPTIAN GODDESS HAS SAID THAT THE COURT NO LONGER ISSUES A

12  TEXTUAL OR A VERBIAGE-BASED CLAIM CONSTRUCTION.  BUT THE

13  EMPHASIS IS ON WHAT THE PRODUCT SHOWS.  AND THAT PARLAYS, OF

14  COURSE, INTO THE TEST NOW FOR DESIGN PATENT INFRINGEMENT

15  WHICH IS VERY MUCH FOCUSED ON WHAT IS THE IMPRESSION TO THE

16  ORDINARY OBSERVER.

17          THE COURT:  ALL RIGHT.

18          MS. RZONCA:  MAY I CONTINUE?

19          THE COURT:  YES, YOU MAY.

20          MS. RZONCA:  AND I JUST WANTED TO CONTINUE THAT

21  LINE OF THOUGHT BECAUSE WE'RE HERE ON A MOTION FOR SUMMARY

22  JUDGMENT AND WHAT BABY TREND HAS GLOSSED OVER AND DOESN'T

23  WANT TO ACKNOWLEDGE IS THAT THE ULTIMATE ISSUE OF

24  INFRINGEMENT OF A DESIGN PATENT IS A QUESTION OF FACT.  VERY

25  CLEARLY.

1          THE COURT:  BUT I HAVE TO CONSTRUE THE CLAIM TO

2   GET YOU THERE.  THAT'S AN ISSUE FOR THE COURT, CORRECT?

3          MS. RZONCA:  THE CONSTRUCTION OF THE CLAIM IS

4   ABSOLUTELY AN ISSUE FOR THE COURT.

5          THE COURT:  OKAY.  AND ISN'T THAT REALLY WHAT

6   WE'RE FOCUSED ON HERE?

7          MS. RZONCA:  WELL, THERE WILL BE TWO ISSUES, OF

8   COURSE:  ONE IS A CLAIM CONSTRUCTION.  BUT THEN WITH THE

9   CLAIM CONSTRUCTION THERE IS STILL THE ISSUE OF ONCE THE

10  PATENT HAS BEEN CONSTRUED IS THERE INFRINGEMENT.  AND

11  BABY TREND WOULD LIKE TO SAY THAT'S AN OPEN AND SHUT CASE,

12  AND THAT'S ABSOLUTELY NOT THE CASE.  THAT'S EVIDENCED BY THE

13  SUPREME COURT'S DECISION IN *GORHAM V. WHITE.*

14         THE COURT:  LET'S STICK WITH CLAIM CONSTRUCTION.

15         MS. RZONCA:  OKAY.

16         THE COURT:  BECAUSE I KNOW THAT'S FOR ME.

17         MS. RZONCA:  YES.  INDEED.

18         THE COURT:  ALL RIGHT.  SEARCHING FOR THE FIGURES,

19  TELL ME WHICH --

20         MS. RZONCA:  WOULD YOUR HONOR LIKE A COPY OF THE

21  '218 PATENT?

22         THE COURT:  YES.  BECAUSE I HAVE THAT SOMEWHERE

23  HERE, BUT YOU'LL HAVE GIVEN ME LOTS OF PAPER, WHICH IS FINE.

24  I EXPECT IT, BUT THEN TRYING TO FIND THINGS WITHIN IT

25  SOMETIMES --

1            MS. RZONCA:  WE HAVE THE SAME PROBLEM.

2            THE COURT:  I HAVE TO TELL YOU THE ONE THAT GAVE

3     ME THE MOST PAUSE WAS FIGURE 2.  BECAUSE IF YOU LOOK AT

4     FIGURE 2, THERE IS A LINE -- AND I WISH WE HAD IT UP ON A

5     SCREEN, OR SOMETHING TO THAT EFFECT BUT -- I WISH I HAD A

6     SCREEN WHERE I COULD POINT TO, NOT ONE THAT YOU COULD POINT

7     TO, SO I COULD SHOW YOU.

8            LET'S JUST TAKE ONE CORNER.  FOR EXAMPLE, IF YOU

9     LOOK AT THE UPPER LEFT CORNER --

10           MS. RZONCA:  YES.

11           THE COURT:  AND YOU HAVE THE -- THERE'S THE DOTTED

12    LINE, ENVIRONMENTAL PORTIONS.  RIGHT ABOVE -- THERE'S A

13    HORIZONTAL SOLID LINE THAT'S SUPPOSED TO REFLECT THE TOP OF

14    THE CLAIMED PORTION DESIGN, CORRECT?

15           MS. RZONCA:  CORRECT.

16           THE COURT:  OKAY.  WHAT IS THAT THAT IS INSERTED

17    WITHIN THAT TOP PORTION?  THERE'S SOMETHING ELSE THAT'S

18    COMING DOWN.  AND THEN IF YOU LOOK AT VERY BOTTOM OF THAT

19    SAME FIGURE AND YOU LOOK AT THE QUASI-HORIZONTAL SOLID

20    LINES, YOU HAVE TWO LINES BENEATH THAT THAT ARE INDENTED AND

21    THAT -- THAT MEET UP WITH THE HORIZONTAL LINE, BUT THEY ARE

22    SMALLER THAN.  AND I WOULD HAVE TO SAY THAT WHEN I LOOK AT

23    THIS, THE FIRST THING I SEE IS IT LOOKS LIKE THERE IS

24    SOMETHING INSERTED WITHIN -- WITHIN THE CLAIMED SOLID LINE,

25    I.E., A LEG WITHIN FABRIC.  THAT'S WHAT IT LOOKS LIKE.

1          SO TELL ME WHAT THE INTENT WAS AND WHY THAT'S

2    WRONG.  I MEAN, I'VE LOOKED AT WHAT YOUR EXPERTS SAID,

3    BUT --

4          MS. RZONCA:  THE INTENT, AS NOTED BEFORE, WAS THAT

5    THIS IS ALL PART AND PARCEL OF CLAIMING OF THE SHAPE OF THE

6    LEG REGARDLESS OF COVERING.  I THINK THAT IS PART OF THE

7    CONTOUR SHADING.  AND I THINK THAT YOUR QUESTIONS REFLECT

8    THE FACT THAT THERE ARE FACTUAL ISSUES UNDERLYING THE

9    DRAWINGS THAT NEED TO BE RESOLVED BEFORE THERE CAN BE A

10   CLAIM CONSTRUCTION.  FOR THAT REASON, THE BOARD DIDN'T ISSUE

11   CONCLUSIONS OF LAW ABOUT --

12         THE COURT:  SO WAIT, WAIT, WAIT.  LET ME MAKE SURE

13   I UNDERSTAND.  AND IT'S FINE IF YOU ALL WILL AGREE ON THIS.

14   I'M NOT SURE IF YOU DO.  BUT ARE YOU SAYING THAT WE WOULD

15   GIVE TO THE JURY THIS PHOTO -- EXCUSE ME, NOT PHOTO --

16   FIGURE AND WE WOULD TELL THEM TO TELL US HOW THE -- WHAT

17   THIS MEANS, WHETHER IT'S THE LEG, WHAT IS BEING CLAIMED

18   HERE?  WE WOULD HAVE THEM TELLING US THAT?

19         MS. RZONCA:  WHEN WE LOOK AT THE FINDINGS OF FACT

20   THAT THE BOARD ISSUED, FOR EXAMPLE, FINDINGS OF FACT --

21         THE COURT:  BUT I WANT A "YES" OR "NO" FIRST.

22         MS. RZONCA:  YES.  YES.  I THINK THAT THEY ARE

23   FACT ISSUES THAT UNDERLIE THE CLAIM CONSTRUCTION.  THEY ARE

24   WHAT DO THE LEGS -- WHAT DO THESE MARKINGS SHOW?  FINDING OF

25   FACT, NUMBER ONE, IN THE BOARD'S --

1          THE COURT:  CAN YOU CITE ME TO A CASE, BECAUSE I

2    WOULD LIKE TO MAKE SURE THAT THIS IS THE CORRECT STANDARD TO

3    BE APPLYING.  IT JUST SEEMS --

4          MS. RZONCA:  SURE, YOUR HONOR.  I'M LOOKING AT

5    *EGYPTIAN GODDESS* AT PAGE 680.

6          MAY I READ IT INTO THE RECORD?

7          THE COURT:  YES, THAT WOULD BE FINE.

8          MS. RZONCA:  *APART FROM ATTEMPTING TO PROVIDE A*

9    *VERBAL DESCRIPTION OF THE DESIGN, A TRIAL COURT CAN USEFULLY*

10   *GUIDE THE FINDER OF FACT BY ADDRESSING A NUMBER OF ISSUES*

11   *THAT BEAR ON THE SCOPE OF THE CLAIM.  THOSE INCLUDE SUCH*

12   *MATTERS AS DESCRIBING THE ROLE OF PARTICULAR CONVENTIONS IN*

13   *DESIGN PATENT DRAFTING, SUCH AS THE ROLE OF BROKEN LINES --*

14   AND THEN THERE'S THE CITATION OF 37 CFR § 1.152 -- *ASSESSING*

15   *AND DESCRIBING THE EFFECT OF ANY REPRESENTATIONS THAT MAY*

16   *HAVE BEEN MADE IN THE COURSE OF THE PROSECUTION HISTORY --*

17   CITING *GOODYEAR FIRE AND RUBBER -- AND DISTINGUISHING*

18   *BETWEEN THOSE FEATURES THE CLAIM DESIGN THAT ARE ORNAMENTAL*

19   *THOSE THAT ARE PURELY FUNCTIONAL*, CITING *ODDZON.*

20          AND MY EMPHASIS IS ON THE STATEMENT THAT THE COURT

21   WOULD ASSIST THE FACT-FINDER BY DESCRIBING THE ROLE OF

22   PARTICULAR CONVENTIONS AND DESIGN PATENT DRAFTING, NOT WHAT

23   THE LINING IN THE DRAWINGS ARE.  THAT'S THE DISTINCTION I'M

24   DRAWING.  AND THIS IS SUPPORTED BY THE FACT, AGAIN, THAT

25   WHAT THE BOARD ISSUED WERE THREE FINDINGS OF FACT, NOT A

```
1   LEGAL INTERPRETATION OF THE SCOPE OF THE GRACO PATENT, A
2   FINDING OF FACT IN NUMBER ONE, SAYING THAT THE CURVED LEGS
3   OF THE PLAYARD HAVE WHAT APPEAR TO BE LENGTH OF FABRIC
4   WRAPPED AROUND THE LEG.  THAT IMPLICATES A FACTUAL QUESTION.
5   DO THE DRAWINGS SHOW WHAT THE BOARD SAYS THAT IT APPEARS TO
6   SHOW, NOT AS A MATTER OF LAW BUT AS A MATTER OF FACT.
7           FINDING OF FACT NO. 2:  IN THE CELESTINA-KREVH
8   PATENT DRAWINGS BROKEN LINES REPRESENTING THE LEG MEMBERS
9   APPEAR IMMEDIATELY ADJACENT TO FABRIC COVER.
10          QUESTION OF FACT.  DO THEY DO THAT?
11          THAT'S WHY I SAY THERE ARE UNDERLYING FACTUAL
12  ISSUES THAT NEED TO BE ADDRESSED.  ONE OF THE REASONS WHY
13  SUMMARY JUDGMENT IS APPROPRIATE.  AND, AGAIN, GOING BACK --
14  WE CITE RIGHT OFF, BUT GOING BACK TO THE MAJOR FACTUAL ISSUE
15  WHICH IS WHETHER OR NOT THERE IS INFRINGEMENT, WHETHER OR
16  NOT, WHICH IS A QUESTION OF FACT -- WHETHER OR NOT AN
17  ORDINARY OBSERVER WHO'S FAMILIAR WITH THE PRIOR ART WOULD
18  LOOK AT THE BABY TREND DEVICE AND SAY THAT IT IS
19  SUBSTANTIALLY SIMILAR TO THE GRACO PRODUCT.  THAT IS
20  ABSOLUTELY A QUESTION OF FACT.
21          WE SAW TIME AND TIME AGAIN IN THE PROSECUTION
22  HISTORY OF THE KOLCRAFT PATENT THAT BABY TREND IS ASSERTING
23  AS ITS SOLE BASIS FOR INFRINGEMENT IS THE EXAMINER SAID
24  MULTIPLE TIMES:  THESE ARE STRIKINGLY SIMILAR DESIGNS.
25          THAT ABSOLUTELY IS A QUESTION OF FACT THAT
```

1    PRECLUDES THE ISSUANCE OF SUMMARY JUDGMENT HERE.

2            THE COURT:  SO WHAT YOU'RE SAYING AT THIS POINT

3    IS, EVEN IF THE PATENT IS FOR COVERED CURVED LEGS, THERE

4    IS -- IT STILL GOES TO THE JURY?

5            MS. RZONCA:  ABSOLUTELY.  AND GOING BACK TO *GORHAM*

6    *V. WHITE*, WHAT BABY TREND WOULD HAVE YOU DO IS COMPLETELY

7    TURN *GORHAM V. WHITE* ON ITS HEAD.  AND THEY WOULD SAY, JUST

8    BECAUSE ASSUMING THAT KOLCRAFT IS VALID AND THERE ARE

9    QUESTIONS ABOUT THAT, QUESTIONS ABOUT WHETHER IT FAILS TO

10   SHOW PROPER LINING, QUESTIONS ABOUT WHAT KOLCRAFT KNEW WHEN

11   IT FILED ITS APPLICATION BECAUSE IT'S VERY ODD APPLICATION,

12   WE SAW IT AND THOUGHT, WELL, PERHAPS, IT WAS A COPYRIGHT

13   ISSUE THERE, BECAUSE THE DRAWINGS WERE SO VERY SIMILAR.  BUT

14   THEY'RE BASICALLY SAYING, *BECAUSE KOLCRAFT HAS A PATENT AND*

15   *WE DON'T INFRINGE YOUR PATENT, GRACO, WE INFRINGE KOLCRAFT'S*

16   *PATENT AND, THEREFORE, WE CAN'T INFRINGE YOUR PATENT.*

17           BUT THE SUPREME COURT IN GORHAM *VERSUS WHITE*

18   ADDRESSED THAT ISSUE AND SAID, *THAT'S ABSOLUTELY NOT THE*

19   *CASE.*  IN THAT CASE, TOO, THE PLAINTIFF *GORHAM* HAD A PATENT

20   ON ITS ORNAMENTAL DESIGN ON THE ENDS OF TABLEWARE AND THE

21   DEFENDANT HAD TWO PATENTS ON ITS ORNAMENTAL DESIGN ON THE

22   ENDS OF TABLEWARE.  AND WHILE THE LOWER COURT SAID THERE ARE

23   ALL OF THESE DETAILS THAT ARE DIFFERENT AND THAT MEANS NO

24   DESIGN PATENT INFRINGEMENT, THE SUPREME COURT SAID, *THAT'S*

25   *NOT THE CASE.  WE NEED TO BACK UP AND WE NEED TO LOOK AT THE*

1   *EFFECT ON THE EYE OF THE SIMILARITIES OF THESE DESIGNS, NOT*
2   *DIG DOWN INTO ALL OF THESE DETAILS.*

3          AND IT MATTERED NOT THAT *WHITE* HAD TWO PATENTS.
4   THE COURT STILL SAID, *THESE ARE CASES OF SUBSTANTIAL*
5   *SIMILARITY BECAUSE WE'RE TALKING ABOUT THE ORDINARY OBSERVER*
6   *VIEWING THESE THINGS IN THE MARKETPLACE.*

7          SO, EVEN IF THERE WERE A CONSTRUCTION THAT SAID
8   THESE LEGS ARE COVERED, THAT IS NOT THE END OF THE INQUIRY
9   AND THERE IS STILL A MAJOR FACT ISSUE THAT THE JURY IS
10  ENTITLED TO REVIEW IN TERMS OF SUBSTANTIAL SIMILARITY.  I GO
11  BACK, AGAIN, JUST SAYING LOOKING AT THE TEST, WHICH SAYS IN
12  THE EYE OF THE ORDINARY OBSERVER WHO IS FAMILIAR WITH THE
13  PRIOR ART AND IF KOLCRAFT'S PATENT IS NOT PRIOR ART, WE ARE
14  TALKING ABOUT WHAT WAS IN THE MARKETPLACE IN 2000:  ALL
15  STRAIGHT-LEGGED PLAYARDS.  VERY BOXY LOOK.

16         GRACO'S PATENTED PRODUCT CAME ONTO THE MARKET AND
17  IT HAD A DIFFERENT LOOK.  IT WAS VERY COMMERCIALLY
18  SUCCESSFUL FOR THAT REASON.  AND, OF COURSE, THINGS THAT ARE
19  COMMERCIALLY SUCCESSFUL GET COPIED.  AND THAT'S WHAT
20  HAPPENED HERE.  BUT WE WOULD ENTITLED TO TAKE THAT FACTUAL
21  ISSUE TO THE JURY.

22         THE COURT:  ALL RIGHT.  THANK YOU.

23         ANY REBUTTAL?

24         MR. TACHÉ:  THANK YOU, YOUR HONOR.

25         JUST A COUPLE OF THINGS.  LET ME SORT OF ADDRESS

```
 1    THE LAST ISSUE FIRST.  I DON'T THINK ANYWHERE IN ITS MOTION
 2    PAPERS DID BABY TREND EVER ADMIT THAT IT INFRINGED THE
 3    KOLCRAFT PATENT.  THAT WAS NOT WHY WE RELIED UPON THE
 4    KOLCRAFT PATENT.  AND I WOULD REFUTE THAT GRACO IN SOME
 5    RESPECTS DONE US A FAVOR THIS MORNING, YOUR HONOR, IN THAT
 6    THEY BET THEIR ENTIRE CASE ON BEING ABLE TO CONVINCE THIS
 7    COURT THAT THEIR PATENT COVERS A CURVED LEG WHETHER IT'S
 8    EXPOSED OR NOT.  THEY HAVE NOT PRESENTED ANY ARGUMENTS OR
 9    RAISED ANY GENUINE ISSUES OF MATERIAL FACT WITH RESPECT TO
10    WHETHER OR NOT THE BABY TREND PRODUCTS WOULD IN FACT
11    INFRINGE THE '218 PATENT TO THE EXTENT THAT THE COURT WERE
12    TO AGREE THAT THE PATENT IS LIMITED TO A COVERED LEG.
13            AND SO, WE WOULD POSIT THAT THIS IS RIPE FOR
14    SUMMARY JUDGMENT.  THERE IS REALLY NO ISSUE OF DECEPTIVE
15    SIMILARITY WITH RESPECT TO THE BABY TREND PRODUCTS IF THE
16    COURT DECIDES THE '218 PATENT IS IN FACT LIMITED TO THE
17    COVERED CURVED LEG.  IN FACT, THE BOARD OF APPEALS IS NOT
18    DETERMINATIVE, BUT IT IS PRETTY COMPELLING.  IT SAYS THAT
19    180 DEGREES DIVERGENT FROM AN EXPOSED LEG.  AND THAT'S
20    SOMETHING THEIR OWN INVENTOR, WHILE ATTEMPTING TO RECANT HER
21    OTHER EVIDENCE, HER OTHER TESTIMONY -- PARDON ME -- IS
22    SILENT AS TO THIS ISSUE.  SHE AGREES THAT AN EXPOSED LEG IS
23    THE OPPOSITE OF A COVERED LEG, AT LEAST IN HER EYES AS THE
24    INVENTOR.
25            YOU RAISED A POINT A MOMENT AGO WITH RESPECT TO
```

1    FIGURE 2 THAT, I THINK, REQUIRES FURTHER EMBELLISHMENT.  AND

2    I THINK YOU'RE ON TO SOMETHING, YOUR HONOR.  IF YOU TAKE A

3    LOOK AT FIGURE 2, AGAIN, AND IF YOU TAKE A LOOK AT EITHER

4    THE TOP PORTION OR THE BOTTOM PORTION OF ANY OF THE LEGS, IN

5    ADDITION TO THE HORIZONTAL LINES THAT YOU REFERENCED, THERE

6    ARE ON THE INSIDE OF EACH LEG, WHETHER IT'S ON THE LEFT OR

7    THE RIGHT SIDE LEG, LITTLE -- THESE LITTLE HASH MARKS GOING

8    HORIZONTALLY ACROSS A PORTION OF THE LEG.  THOSE ARE SHOWING

9    FABRIC PULLED TAUT AS IT GOES AROUND THE CURVE ON THE LEG

10   AND THAT FURTHER SUBSTANTIATES THE FACT THAT IT'S CLEAR FROM

11   THE DRAWINGS WHAT THE INVENTION COVERS.  MORE IMPORTANTLY,

12   CASE LAW --

13          THE COURT:  WELL, ISN'T THAT -- AREN'T THOSE THE

14   MARKS THAT THEIR EXPERT SAYS SHOW CURVATURE?  I'M NOT --

15   THAT'S THE OTHER ARGUMENT, IS IT NOT, THAT IT SHOWS

16   CURVATURE AS OPPOSED TO FABRIC PULLED TAUT?

17          MR. TACHÉ:  EXCEPT THAT IT DOESN'T CURVE ALONG

18   THAT AXIS.  IT WOULD CURVE VERTICALLY.  BECAUSE IT'S A TUBE

19   THAT GOES THIS WAY AROUND *(INDICATING)*.  SO IF YOU'RE GOING

20   TO SHOW -- IF WE FOLLOW WHAT GRACO AND GRACO'S EXPERT

21   SUGGESTS THE COURT DO, WHICH IS THE RULES OR GUIDELINES

22   SUGGEST IF YOU'RE GOING TO SHOW CURVATURE, THEY MUST BE

23   PARALLEL LINES THAT GET PROGRESSIVELY CLOSER TOGETHER TO

24   SHOW CURVATURE.  AND IN THIS CASE, ON THE ONE HAND, THEY'RE

25   ARGUING THAT THAT'S WHAT SOMEHOW THOSE BROKEN LINES ARE.

1    WELL, AGAIN, THAT'S COMPLETELY INCONSISTENT WITH WHAT THE

2    RULES ARE. AND MORE IMPORTANTLY, I DON'T SEE ANY PARALLEL

3    SETS OF LINES THAT GET CLOSER TOGETHER TO SHOW CONTOUR. AND

4    SO, THE LINES THAT ARE SHOWN HORIZONTALLY ON THE DRAWING ARE

5    NOT FOR CONTOUR BUT, IN FACT, SHOW -- BECAUSE, AGAIN,

6    THEY'RE NOT PARALLEL. THEY WOULD BE THERE TO SHOW FABRIC

7    BEING PULLED TAUT AROUND THE TUBE OF THE LEG.

8         THE COURT: ALL RIGHT. WELL, THAT'S WHAT I

9    THOUGHT I WAS ASKING YOU ABOUT EARLIER ON WHEN I ASKED

10    WHETHER YOU WERE SAYING THE BROKEN LINES SHOW THE LEG ITSELF

11    CONTRARY TO THE RULES THAT WOULD SAY YOU DON'T PUT THE LEG

12    BEHIND. YOU DON'T SHOW ENVIRONMENT BEHIND AN OPAQUE

13    MATERIAL, OR WHETHER THOSE LINES SHOW FABRIC. IN YOUR

14    OPENING BRIEF YOU SAID THAT THOSE LINES SHOWED THE LEG

15    ITSELF AND, THEREFORE, THE LEG IS ENVIRONMENT, AND IT'S NOT

16    BEING CLAIMED. AND THEN IN THE REPLY, YOU SEEM TO INDICATE

17    THAT THE BROKEN LINES SHOWED FABRIC.

18        AND SO THAT WAS MY FIRST QUESTION TO YOU OUT OF

19    THE BOX, AND YOU SAID THAT I WAS CONFUSED BY SOMETHING YOU

20    HAD SAID IN THE REPLY BRIEF, BUT YOU CONFIRMED THAT THE

21    BROKEN LINES SHOWED THE LEG INCORRECTLY. BUT NOW IT SOUNDS

22    TO ME LIKE, IN LOOKING AT FIGURE 2, YOU'RE SAYING THOSE

23    BROKEN LINES SHOW FABRIC. SO THAT IS WHAT I'M GRAPPLING

24    WITH, WHAT IT IS YOU'RE SAYING THEY PURPORTEDLY SHOW.

25        MR. TACHÉ: I APPRECIATE THAT QUESTION AND THE

1    REQUEST FOR CLARIFICATION, YOUR HONOR.  AND LET ME MAKE IT,

2    HOPEFULLY, ABUNDANTLY CLEAR, OR CRYSTAL CLEAR.

3           THE VERTICAL LINES -- AND BY VERTICAL, I'M BEING

4    VERY CAVALIER WITH THAT LANGUAGE.  IT'S THOSE LINES THAT

5    FOLLOW THE CONTOUR OF THE LEG IN A VERTICAL DIRECTION.

6    THOSE ARE THE ONLY BROKEN LINES THAT ACTUALLY SHOW UP IN,

7    FOR EXAMPLE, FIGURE 2.  THE HORIZONTAL LINES ARE SOLID LINES

8    BUT MUCH SMALLER.  BUT THEY ARE HORIZONTAL.

9           THE COURT:  LIKE LITTLE HASH MARKS?

10          MR. TACHÉ:  EXACTLY.  WHEN WE REFER TO BROKEN

11   LINES IN THE BRIEF AND WHAT I REFER TO, AS I SPOKE ABOUT IT

12   THIS MORNING, TO ME THOSE ARE SEPARATE AND DISTINCT.  THE

13   VERTICAL LINES ARE THE BROKEN LINES THAT WE WERE REFERRING

14   TO THAT SHOW THE LEG CONSISTENT WITH YOUR INTERPRETATION AS

15   YOU DESCRIBED IT WITH OPPOSING COUNSEL MOMENTS AGO AND THEN

16   THE HASH LINES ARE THE ONES THAT SHOW THE FABRIC.

17          THE COURT:  WHY WOULD THEY ONLY SHOW ONE VERTICAL

18   LINE -- ONE SET OF BROKEN VERTICAL LINES THEN?

19          THE LEG WOULD HAVE TWO SIDES, JUST AS THE FABRIC

20   HAS TWO SIDES.  WHY WOULD THERE JUST BE ONE LINE, IF IT WERE

21   INTENDED TO SHOW THE LEG?

22          MR. TACHÉ:  BECAUSE THE INSIDE PORTION OF EACH OF

23   THE LEGS COINCIDES WITH THAT LINE -- THE SOLID LINE OF THE

24   FABRIC AS IT GOES AROUND THAT LEG.  AND SO, WHILE THERE IS

25   THE SILHOUETTE SLIGHTLY DIFFERENT ON THE OUTSIDE PORTION OF

```
 1    THE LEG, THAT'S NOT TRUE OF THE INSIDE PORTION OF THE LEG,
 2    YOUR HONOR; OTHERWISE, I WOULD HAVE EXPECTED AS IT SHOWS IN
 3    OTHER DRAWINGS WHERE THERE'S TWO SETS OF LINES.  SO, FOR
 4    EXAMPLE, IF YOU LOOK AT THE TOP PLAN VIEW OF FIGURE 6 AGAIN,
 5    YOU CAN SEE IT SHOWS DASH LINES ON EACH SIDE OF THE INSIDE
 6    OF THE LEG AND THAT'S THE POINT, YOUR HONOR.  SO FROM A
 7    PURELY DESIGN PERSPECTIVE, THOSE ARE CONSISTENT POSITIONS.
 8            THE COURT:  ALL RIGHT.
 9            MR. TACHÉ:  AND IT'S ALSO FIGURE 1 SHOWS THAT AS
10    WELL, PROBABLY EVEN A LITTLE BIT BETTER.
11            THE COURT:  ALL RIGHT.  ANYTHING FURTHER?
12            MR. TACHÉ:  YES.  WITH RESPECT TO THE ISSUE OF THE
13    INVENTOR'S INTENT, YOUR HONOR, CASE LAW IS UNEQUIVOCAL ON
14    THIS ISSUE.  THE COURT CAN ONLY LOOK TO THE EXPERTS'
15    TESTIMONY OR THE EXPERT'S REPORT -- PARDON ME -- OR THE
16    INVENTOR'S TESTIMONY TO THE EXTENT THAT THEY DON'T
17    CONTRADICT THE INTRINSIC EVIDENCE WHICH ARE, IN FACT,
18    CLAIMED AND THE SPECIFICATION AND THE FILE HISTORY.  AND IN
19    THIS CASE, IT'S CLEAR THAT THE INVENTOR -- THEIR TESTIMONY
20    OR HER TESTIMONY -- PARDON ME -- IS COMPLETELY INCONSISTENT
21    WITH RESPECT TO THE INTRINSIC EVIDENCE.
22            AND ONE LAST POINT, IF I MAY.  GRACO HAS SUBMITTED
23    AN EXPERT REPORT, AND WE'VE NOT TALKED ABOUT THAT THIS
24    MORNING.  BUT IF THE COURT WILL INDULGE I WOULD LIKE TO
25    SPEND AT LEAST TWO OR THREE MINUTES TALKING ABOUT IT,
```

```
 1    BECAUSE I THINK IT IS AN IMPORTANT PIECE OF THIS DISCUSSION.

 2          WOULD THAT BE OKAY?

 3          THE COURT:  VERY BRIEFLY.  AND THEN, I'LL GIVE

 4    PLAINTIFF AN OPPORTUNITY TO RESPOND.  BUT NO FURTHER

 5    REBUTTAL.

 6          MR. TACHÉ:  THE EXPERT'S REPORT, WE BELIEVE, IS

 7    ACCURATE IN ONE RESPECT.  I THINK HE PROPERLY CITES THE

 8    APPLICABLE DESIGN DRAWING RULES, AND I THINK HE APPLIES --

 9    I'M SORRY.  AND I THINK HE CITES THE APPLICABLE LAW WITH

10    RESPECT TO DETERMINING INFRINGEMENT.  UNFORTUNATELY, THAT'S

11    SORT OF WHERE THE VALUE OF THE EXPERT REPORT STOPS.  BECAUSE

12    AS NOTED HERE IN THE DISCUSSION WITH RESPECT TO THE

13    DRAWINGS, THE EXPERT ATTEMPTS TO SUGGEST THAT THESE LINES

14    REPRESENT CONTOURS AND, YET, BY HIS OWN REPRESENTATION AND

15    ACKNOWLEDGMENT OF WHAT THE APPLICABLE DESIGN DRAWING RULES

16    ARE, THERE MUST BE MULTIPLE LINES IN PARALLEL THAT GET

17    PROGRESSIVELY CLOSER TOGETHER TO REPRESENT CONTOUR.

18          NOWHERE IN THE FIGURES DOES IT SHOW MULTIPLE LINES

19    IN PARALLEL THAT GET PROGRESSIVELY CLOSER TOGETHER TO

20    REPRESENT CONTOUR.  AT BEST, THERE ARE TWO BROKEN LINES

21    WHICH, AGAIN, THAT'S NOT WHAT BROKEN LINES ARE FOR.

22          SO THAT ARGUMENT THAT SOMEHOW THE BROKEN LINES ARE

23    SUPPOSED TO REPRESENT CONTOUR AND NOT THE LEGS INSIDE

24    FRANKLY DOESN'T HOLD WATER.

25          THE SECOND THING THAT THE EXPERT DOES IS ATTEMPTS
```

1    TO APPLY THE *EGYPTIAN GODDESS* CASE UNDER THE ORDINARY

2    OBSERVER TEST TO SUGGEST THAT SOMEHOW BABY TREND'S ACCUSED

3    PRODUCTS INFRINGE.  AGAIN, HE IGNORES THE FACT -- AND

4    THERE'S ABSOLUTELY NO EVIDENCE, AS I MENTIONED A MOMENT

5    AGO -- AS TO THAT EVALUATION IN THE CONTEXT OF THE COURT

6    HAVING DECIDED IN THE EVENT IT WERE TO DO SO THAT IT COVERED

7    CURVED LEGS IS ALL THAT WAS CLAIMED.

8          THE EXPERT'S ANALYSIS GOES TO A CURVED LEG WHETHER

9    OR NOT IT'S EXPOSED.  WHERE THE LOGIC FALLS DOWN IS,

10   HOWEVER, THAT THE EXPERT IGNORES THE LAW AND DOES NOT

11   COMPARE THE CLAIMED ELEMENT RELATIVE TO THE ACCUSED

12   PRODUCTS.  INSTEAD, HE COMPARES PLAYARDS TO PLAYARDS, WHICH

13   IS NOT THE ANALYSIS.  AND EVEN IF WE WERE TO ADOPT THAT

14   ANALYSIS, THE EXPERT REPORT IS WRONG ON FOUR OUT OF THE

15   SEVEN DRAWINGS.  AND I WOULD SPECIFICALLY CALL THE COURT'S

16   ATTENTION TO PAGE 28 OF THE EXPERT'S REPORT WHICH IS

17   ATTACHED TO HIS DECLARATION, AND IT'S PAGES 27 AND 28.  IT'S

18   TABLE 6 OF THE REPORT.  AND I'LL JUST FOCUS ON A COUPLE OF

19   FIGURES, JUST TO MAKE A POINT.  IF THE COURT TAKES A LOOK AT

20   FIGURES 4 AND 5 OF THAT COMPARISON WHICH WOULD BE THE SECOND

21   AND THIRD ROW ON PAGE 28, THE LOGIC THAT IS USED BY THEIR

22   EXPERT IS WRONG AND THEN MORE IMPORTANTLY, HOW IT'S APPLIED

23   IN THE ACTUAL CONCLUSIONS IS WRONG.  THE EXPERT BASICALLY

24   HAS SAID, HE TAKES THE ORDINARY OBSERVER TEST, WHICH

25   OPPOSING COUNSEL CORRECTLY STATED AS THE ORDINARY OBSERVER

1    BEING FAMILIAR WITH THE PRIOR ART MUST DETERMINE WHETHER OR

2    NOT THE ACCUSED PRODUCTS ARE DECEPTIVELY SIMILAR.  THE

3    PROBLEM IS WHAT HE, IN FACT, DOES -- AND AS HE STATES IN HIS

4    REPORT -- HE SAYS:  *IF A IS CLOSER TO B THAN IT IS TO C,*

5    *THEN A INFRINGES.*

6             AND THAT'S LITERALLY ALL HE DOES.  HE SAYS, *IF YOU*

7    *LOOK AT THE LEFT-HAND COLUMN* -- WHICH ARE THE FIGURES FROM

8    THE PATENT, '218 PATENT -- *RELATIVE TO THE RIGHT-HAND*

9    *COLUMN* -- WHICH ARE FIGURES THAT HE CLAIMS AS THE CLOSEST

10   PRIOR ART -- *AND IF THE MIDDLE COLUMN WHICH IS THE ACCUSED*

11   *PRODUCT IS CLOSER TO THE LEFT COLUMN THAN TO THE RIGHT*

12   *COLUMN, THEN YOU INFRINGE.*

13            WELL, THAT'S NOT THE LAW.  AND THAT'S NOT HOW IT'S

14   SUPPOSED TO BE APPLIED.  BUT EVEN IF WE GRANT THEM THAT AND

15   ADOPT THAT LOGIC, AS TORTURED AS IT IS, IF YOU LOOK AT THE

16   SPECIFIC FIGURES -- FOR EXAMPLE, IF YOU LOOK AT FIGURES 4

17   AND 5, IT'S UNEQUIVOCALLY CLEAR THAT THE ACCUSED PRODUCTS

18   ARE MUCH CLOSER TO THE PRIOR ART THAN THEY ARE TO THE '218

19   PATENT.

20            THE COURT:  ALL RIGHT.

21            MR. TACHÉ:  AND ONE LAST POINT, IF I MAY; AND

22   THEN, I PROMISE I'LL STOP.

23            OPPOSING COUNSEL HAS SUGGESTED TO THE COURT THAT

24   IT'S NOT THE COURT'S PURVIEW BUT RATHER THAT SHE'S TO ASSIST

25   THE FINDER OF FACTS AS TO CLAIM CONSTRUCTION.  AND THE

1    PORTIONS THAT SHE READ OF *EGYPTIAN GODDESS*, I DON'T THINK

2    SPECIFICALLY ANSWERED YOUR QUESTION.  AND *MARKMAN*

3    UNEQUIVOCAL AS TO THIS ISSUE THAT IT'S THE STRICT PURVIEW OF

4    THE COURT TO DETERMINE CLAIM CONSTRUCTION.  AND I THINK

5    WHAT'S REFERENCED IN THE *EGYPTIAN GODDESS* CASE THAT OPPOSING

6    COUNSEL READ INTO THE RECORD FOR THE COURT SIMPLY SUGGESTS

7    THAT ONCE THE COURTS DETERMINED WHAT THAT CLAIM CONSTRUCTION

8    IS, TO THE EXTENT THAT YOUR HONOR WOULD LIKE TO DO SO, IN

9    THE EVENT THAT THIS WERE TO GO TO A TRIAL, SHE'S ABLE TO

10   ASSIST THE FINDER OF FACT IN UNDERSTANDING WHAT THAT CLAIM

11   CONSTRUCTION IS AND IN SO DOING, DO THINGS LIKE WHAT

12   OPPOSING COUNSEL READ INTO THE RECORD, EXPLAINING WHAT THE

13   PURPOSE OF A DASH OR BROKEN LINE MEANS VERSUS A SOLID LINE,

14   IN TERMS OF HELPING THE JURY UNDERSTAND WHAT THAT CLAIM

15   CONSTRUCTION MEANS AND HOW TO INTERPRET IT.  IT DOESN'T

16   DEFAULT DECISION TO THE TRIER OF FACT.  THE COURT -- THE

17   CASE LAW IS CLEAR ON THIS ISSUE, AND YOU WERE RIGHT WHEN YOU

18   MENTIONED IT EARLIER TODAY.  THIS IS YOURS AND YOURS ALONE

19   TO DECIDE.

20        AND I WOULD REPRESENT TO THE COURT, THERE'S NO

21   MORE EVIDENCE THAT WE COULD PROVIDE, NOR OPPOSING COUNSEL IF

22   THIS GOES THROUGH THE EVE OF TRIAL, THAT THE COURT WOULD

23   NEED TO DECIDE THE ISSUE AS TO WHAT THE CLAIM CONSTRUCTION

24   SHOULD BE IN THIS CASE.

25        THE COURT:  THANK YOU.

1            AND RESPONSE ONLY TO THE EXPERT REPORT.

2            MS. RZONCA:  YOUR HONOR, COUNSEL FOR BABY TREND

3    STARTED OUT BY SAYING THERE WAS NO EVIDENCE HERE THAT THERE

4    COULD BE A FACTUAL DISPUTE ABOUT THE ULTIMATE ISSUE OF

5    INFRINGEMENT AND THEN HE PROCEEDED TO TALK ABOUT THE EXPERT

6    REPORT WHICH DOES, IN FACT, PROVIDE JUST THAT SO THAT THERE

7    REMAINS THAT ULTIMATE FACTUAL ISSUE.

8            COUNSEL ALSO FOCUSED YOUR HONOR'S ATTENTION ON

9    SELECT FIGURES FROM THE EXPERT'S REPORT.  OF COURSE, HE WENT

10   THROUGH AND CONDUCTED HIS ANALYSIS WITH RESPECT TO EACH

11   FIGURE IN THE *GRACO* PATENT AND THAT IS REQUIRED BY THE

12   *CONTESSA VERSUS CONAGRA* CASE, SO IT WOULD BE INAPPROPRIATE

13   JUST TO FOCUS IN ON ONE PARTICULAR ELEMENT.  OBVIOUSLY, OUR

14   VIEW IS THAT IT IS THE SUM TOTAL OF THE ANALYSIS THAT WAS

15   UNDERTAKEN BY THE EXPERT, ACCORDING TO *EGYPTIAN GODDESS*,

16   PUTTING HIMSELF IN THE POSITION OF THE ORDINARY OBSERVER

17   FAMILIAR WITH THE PRIOR ART TO GO THROUGH EACH OF THOSE

18   FIGURES AND MAKE SURE THEY ARE ALL ACCOUNTED FOR AND HAVE

19   BEEN ACCESSED AND NOT IGNORE ANY OF THEM.

20           IT SEEMS TO ME THAT THE OTHER POINTS THAT COUNSEL

21   MADE REALLY ARE IN THE NATURE OF CROSS-EXAMINATION POINTS

22   FOR AN EXPERT.  WE'VE NOT YET HAD EXPERT DISCOVERY, AND HE

23   CAN APPROPRIATELY TAKE THEM UP AT THAT TIME.

24           SO IT DOES NOT IN ANY WAY OBVIATE THE FACT THAT

25   THERE ARE FACTUAL ISSUES BOTH WITH RESPECT TO THE UNDERLYING

1    ISSUE OF THE CLAIM CONSTRUCTION BUT MORE IMPORTANTLY WITH

2    RESPECT TO THE ULTIMATE ISSUE OF DESIGN PATENT INFRINGEMENT

3    THAT PRECLUDE THE ENTRY OF SUMMARY JUDGMENT.

4              THE COURT:  THANK YOU.

5              ALL RIGHT.  THE MATTER WILL BE UNDER SUBMISSION

6    AND THE COURT'S RULING WILL BE POSTED ON THE DOCKET.

7         *(AT 11:01 A.M., PROCEEDINGS WERE ADJOURNED.)*

8

9                             -OOO-

10

11                          CERTIFICATE

12             I HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

13   TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

14   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

15   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

16   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

17   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

18

19   DATE:  OCTOBER 11, 2011

20

21

22            _____

23                  DEBORAH D. PARKER, OFFICIAL REPORTER

24

25