1   Michael B. Reynolds (#174534)
    mreynolds@swlaw.com
2   J. Rick Taché (#195100)
    rtache@swlaw.com
3   Deborah S. Mallgrave (#198603)
    dmallgrave@swlaw.com
4   SNELL & WILMER L.L.P.
    600 Anton Boulevard, Suite 1400
5   Costa Mesa, California 92626-7689
    Telephone:  (714) 427-7000
6   Facsimile:  (714) 427-7799

7

    Attorneys for Baby Trend, Inc.
8
                    UNITED STATES DISTRICT COURT
9
          CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION
10

11   GRACO CHILDREN'S PRODUCTS,        CASE NO. 2:10-CV-05897 JST
     INC.,                             Hon. Josephine S. Tucker
12                                      Ctrm 10A
                         Plaintiff,
13                                      **Baby Trend, Inc.'s Notice of
     vs.                                Motion and Motion *in Limine* to
14                                      Exclude Introduction of Evidence
     BABY TREND, INC.,                  Relating to Allegations of
15                                      Infringement Unrelated to this
                         Defendant.     Case; Memorandum of Points and
16                                      Authorities; Declaration of
                                        Deborah S. Mallgrave**
17

18                                      Date: November 28, 2011
                                        Time: 1:30 p.m.
19                                      Courtroom: 10A

20

21   **TO THE DISTRICT COURT AND PARTIES IN INTEREST:**

22         **PLEASE TAKE NOTICE** that, by submission to the Honorable Josephine

23   S. Tucker of the United States District Court for the Central District of California,

24   Defendant Baby Trend, Inc. ("Baby Trend"), hereby moves the court *in limine* for

25   an order to exclude evidence relating to allegations of infringement unrelated to this

26   case.

27         This motion is made pursuant to the Court's Order of Jury Trial and Local

28   Rule 6-1. It is made on the grounds that evidence relating to allegations of

1    infringement unrelated to this case is irrelevant to any issues in the trial of the

2    within case. *See* Fed. R. Evid. 401, 402. Moreover, inquiry into allegations of

3    infringement unrelated to this case would unfairly prejudice Baby Trend, confuse

4    the jury and cause undue delay. *See* Fed. R. Evid. 403. As such, Defendant moves

5    the court *in limine* for the following order:

6            (i) that Plaintiff, its counsel and any witnesses shall not, in the presence of

7    the jury, comment upon, make any reference to, or question any witness regarding

8    (1) emails relating to products or features other than those pertaining to the curved

9    leg of a playard, including, but not limited to, BT_GCP 2070-2071; BT_GCP 2170;

10   BT_GCP 2179-2184; BT_GCP 2218-2219; BT_GCP 2221-2224; BT_GCP 2414-

11   2425; BT_GCP 2434-2435; BT_GCP 2499-2500; BT_GCP 2533; BT_GCP 2534-

12   2535; BT_GCP 2980-2981; BT_GCP3049; BT_GCP  4205-4206; BT_GCP 4698-

13   4699; BT_GCP 5120-5124; BT_GCP 5125-5129; (2) emails relating to Graco

14   patents other than the '218 Patent, including, but not limited to, BT_GCP 2722-

15   2730; BT_GCP  2883; 3222; BT_GCP 2885; and (3) testimony pertaining to

16   litigation unrelated to the '218 Patent.

17           Baby Trend moves the court *in limine* for an order that Plaintiff, its counsel

18   and any witnesses shall not, in the presence of the jury, comment upon, make any

19   reference to, or question any witness regarding: (1) emails relating to products or

20   features other than those pertaining to the curved leg of a playard; (2) emails

21   relating to Graco patents other than the '218 Patent; and (3) testimony pertaining to

22   litigation unrelated to the '218 Patent without first making a foundational showing

23   of relevance and admissibility outside the presence of the jury.

24           This Motion is made following the Local Rule 16-2 Meeting of Counsel

25   Before Final Pretrial Conference and the discussion of evidentiary matters pursuant

26   to Local Rule 16-2.6, which took place on October 17 (telephonically), October 21

27   (telephonically), and October 27, 2011 (in-person meeting).  This specific motion

28   was discussed on October 17, 2011.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

13881381

Motion *in limine* Re Allegations of Infringement
Case No. 2:10-cv-05897-JST

1        This motion is based on this notice of motion and motion, the attached

2    memorandum of points and authorities, the attached declaration of Deborah S.

3    Mallgrave, the pleadings and records on file with the court in this action, and on

4    such other and further argument and evidence as the court may properly receive.

5    DATED:  October 31, 2011     Respectfully submitted,

6        SNELL & WILMER L.L.P.

7

8        By: _Deborah S. Mallgrave_

9        Michael B. Reynolds

10       J. Rick Taché

     Deborah S. Mallgrave

11       Attorneys for Baby Trend, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

13881381

Motion *in Limine* Re Allegations of Infringement
Case No. 2:10-cv-05897-JST

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.

## INTRODUCTION

Graco contends that certain playards manufactured and sold by Baby Trend infringe a design patent for the covered legs of a playard, entitled "Curved Legs for a Playard" (U.S. Patent No. D448,218 ("the '218 Patent")).  Accordingly, the sole issue between the parties in this action is the alleged infringement of a discrete design patent claim directed towards curved legs of playards.

Evidence pertaining to allegations of infringement of other products is irrelevant to the resolution of this issue and would be highly prejudicial to Baby Trend.  Nonetheless, Graco appears to intend to seek to introduce certain irrelevant evidence with generalized references to Graco including: (1) emails relating to products or features other than those pertaining to the curved leg of a playard; (2) emails relating to Graco patents other than the '218 Patent; and (3) testimony pertaining to litigation unrelated to the '218 Patent.

All such evidence is unrelated to the issues at dispute in this proceeding, which only pertain to curved leg playards and the '218 Patent.  Furthermore, admission of such irrelevant evidence will likely create confusion as to the patented feature at issue, as well as the patent at issue, and cause undue prejudice to Baby Trend and confuse the jury.

## II.

## STATEMENT OF FACTS

Graco alleges that it owns all right, title, and interest in the '218 Patent, titled "Curved Legs for a Playard," issued on September 25, 2001.  [Docket No. 14, Notice of Complaint Filed in Bankruptcy Court, ¶ 11, Ex. A ("Complaint").]  Graco contends that certain of Baby Trend's playards infringe the '218 Patent.  [Docket

Snell & Wilmer
L.L.P.—
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

No. 14, ¶¶ 12, 15 (Complaint).]  Specifically, Graco identifies the following eleven playards as infringing the '218 Patent:  PY90918 Mini Nursery Center-Twilight; PY87983 Deluxe Nursery Center-All Star; PY90973 Mini Nursery Center-Cordova; PY88950 Deluxe Nursery Center-Metropolitan; PY87029 Deluxe Nursery Center-Gabriella; PY86428 Deluxe Nursery Center-Mojito; PY86045 Deluxe Nursery Center-Skylar; PY86091 Deluxe Nursery Center-Mesa; PY86443 Deluxe Nursery Center-Columbia; PY86962 Deluxe Nursery Center-Dakota; and 8065BCC Deluxe Nursery Center-Orange Oak (the "Accused Products").  [*Id.*, ¶¶ 12.]  Graco seeks injunctive relief and an unspecified amount of damages to compensate for the alleged infringement.  [*Id.*, prayer for judgment and relief.]  In discovery, Graco expanded its claims to include all 24 of Baby Trend's curved leg playards.  [Mallgrave Decl., ¶ 4, Ex. 2 (Supplemental Expert Report of W. Todd Schoettelkotte, served October 21, 2011 ("Schoettelkotte Report," p. 6)).]

During discovery, Baby Trend produced thousands of pages of emails having anything to do with any curved leg playard, regardless of whether they related to the curved leg feature.  [Mallgrave Decl., ¶ 9.]  Such production was not limited to emails pertaining to the curved leg of a playard or the issues necessary for a resolution of Graco's infringement claim or Baby Trend's invalidity defense.  [*Id.*]

Graco has not alleged willful infringement in its Complaint nor has it prayed for treble damages for willful infringement under 35 U.S.C. § 284.  In its discovery motions, however, Graco appeared to allege that Baby Trend willfully infringes the '218 Patent.  [*See, e.g.,* Docket No. 50, pp. 21, 23, 28, 41, 71, 77, 120; Docket No. 56, pp. 13, 105, 115, 120, 158 (Graco's Motions to Compel Discovery).]  In its correspondence to counsel for Baby Trend, counsel for Graco has contended that patterns of intellectual property infringement are relevant to enhanced damages and willfulness.  A true and correct copy of Graco counsel's June 30, 2011 letter to Baby Trend's counsel is attached as Exhibit 1 to the concurrently filed Declaration of Deborah S. Mallgrave.  [Mallgrave Decl., ¶ 3, Ex. 1.]  Since then, however,

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   Graco has served an expert report on damages limited to disgorgement remedies

2   under 35 U.S.C. § 289, which does not provide for an augmentation of damages

3   upon a finding of willful infringement.  [Mallgrave Decl., ¶ 4, Ex. 2 (Schoettelkotte

4   Report, pp.7-8).]

5       While unrelated to the issues presented in this litigation, and the alleged

6   infringement of the '218 Patent, Graco has indicated in its draft exhibit list and

7   expert report on damages that it intends to rely on such evidence at trial.

8   [Mallgrave Decl., ¶ 4, Ex. 2 (Schoettelkotte Report, pp. 7-8).]  Specifically, Graco

9   seeks to admit emails pertaining to other products, such as highchairs, and other

10  product features, such as playard canopies and music boxes.  [Mallgrave Decl., ¶ 5,

11  Ex. 3.]  Graco also seeks to admit emails relating to other Graco patents, such as

12  U.S. Patent No. D462,532.  [Mallgrave Decl., ¶ 6, Ex. 4.]  Additionally, Graco

13  seeks to admit testimonial evidence of other, unrelated litigation involving Baby

14  Trend.

### III.

### ARGUMENT

**A.   The Evidence Graco Seeks to Admit Is Irrelevant and Inadmissible**

Evidence that is not relevant is inadmissible.  Fed. R. Evid. 402.  Relevant evidence is defined in Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403; *see Abbott Labs. v. Sandoz, Inc.*, 743 F Supp 2d 762, 772 (N.D. Ill. 2010) (finding

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Motion *in Limine* Re Allegations of Infringement
Case No. 2:10-cv-05897-JST

1   evidence of manufacturer's alleged anticompetitive strategy not relevant under Fed.

2   R. Evid. 401, 402 to issue of obviousness in patent infringement suit and, even if it

3   were marginally relevant, probative value was substantially outweighed by danger

4   of unfair prejudice under Fed. R. Evid. 403).

5        This matter involves a single claim of patent infringement of the '218 Patent,

6   which Baby Trend contends its products do not infringe and is invalid due to

7   obviousness and lack of enablement.  Design patent infringement is a question of

8   fact, which a patentee must prove by a preponderance of the evidence. *Richardson*

9   *v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010). The patentee must

10   establish that "an ordinary observer, familiar with the prior art …, would be

11   deceived into believing the [allegedly infringing design] is the same as the patented

12   [design]." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir.

13   2008); *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *Amini Innovation*

14   *Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1055 (C.D. Cal. 2011).

15        Evidence of (1) emails relating to products or features other than those

16   pertaining to the curved leg of a playard; (2) emails relating to Graco patents other

17   than the '218 Patent; and (3) testimony pertaining to litigation unrelated to the '218

18   Patent, is irrelevant and inadmissible under Federal Rule of Evidence 402 because it

19   does not pertain to the product feature and patent at issue in this litigation and thus

20   cannot be relevant to the claims and defenses in this action.

21       **1.**    **Emails Relating to Products or Features Other than Those**

22           **Pertaining to the Curved Leg of a Playard are Irrelevant**

23           **and Inadmissible and Should be Excluded**

24

25        As set forth above, emails relating to products or features other than those

26   pertaining to the curved leg of a playard are irrelevant to the claims and defenses

27   presented in this litigation and should be excluded under Federal Rule of Evidence

28   402.  To the extent Graco claims that such evidence has any marginal relevance, it

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    is clearly outweighed by the unfair prejudicial effect to Baby Trend and the

2    confusion it would cause.  Fed. R. Evid. 403.

3         Graco has indicated during discovery that it wanted emails relating to

4    products or features other than those pertaining to the curved leg of a playard to

5    demonstrate Baby Trend's willful infringement of the '218 Patent.  [*See, e.g.,*

6    Docket No. 50, pp. 21, 23, 28, 41, 71, 77, 120; Docket No. 56, pp. 13, 105, 115,

7    120, 158 (Graco's Motions to Compel Discovery).]  Graco, however, has not pled

8    willfulness and consistent with its pleadings, Graco submitted an expert damages

9    report that purports only to seek damages measured by Baby Trend's profits from

10   infringing sales.  [Mallgrave Decl., ¶ 4, Ex. 2 (Schoettelkotte Report, pp.7-8).]

11   Enhanced damages for willfulness are not available under Section 289.  *Nike, Inc. v.*

12   *Wal-Mart Stores, Inc.* 138 F.3d 1437, 1439 (Fed. Cir. 1998); *Braun Inc. v.*

13   *Dynamics Corp. of America,* 975 F.2d 815, 824 (Fed. Cir. 1992).  In short, willful

14   infringement is not at issue in this case and all emails relating to products or

15   features other than those pertaining to the curved leg of a playard is irrelevant and

16   inadmissible.

17        The evidence that should be excluded includes, but is not limited to, the

18   following emails:

19        Baby Trend emails BT_GCP2070-2071; BT_GCP 2980-2981;

20   BT_GCP3049, while related to playards in general, specifically reference an

21   attachable changing table design change.  The changing table feature of the playard

22   is not the subject to the '218 Patent and is unrelated to the claims and defenses in

23   this case and these emails should be excluded as irrelevant.

24        Baby Trend email BT_GCP2170 has no bearing on this case because, on its

25   face, it pertains to the one hand fold mechanism of Baby Trend's playards.  This

26   feature is not the subject of the '218 Patent and is unrelated to the claims and

27   defenses in this case and these emails should be excluded as irrelevant.

28        Baby Trend emails BT_GCP2179-2184 have no bearing on this matter

1   because, on their face, they relate to highchairs.  Highchairs are not the subject of

2   the '218 Patent and are unrelated to the claims and defenses in this case and these

3   emails should be excluded as irrelevant.

4       Baby Trend emails BT_GCP2218-2219; BT_GCP 2221-2224; BT_GCP

5   2414-2425; BT_GCP 5120-5124; BT_GCP 5125-5129, on their face, relate to the

6   canopy feature of a playard.  This feature is not the subject of the '218 Patent and is

7   unrelated to the claims and defenses in this case and these emails should be

8   excluded as irrelevant.

9       Baby Trend emails BT_GCP 2434-2435; BT_GCP 2533; BT_GCP 2534-

10   2535 relate to playard warnings on their face.  Warning and consumer safety labels

11   are not the subject of the '218 Patent or the claims and defenses in this lawsuit and

12   these emails should be excluded as irrelevant.

13       Baby Trend emails BT_GCP 2499-2500 relate to creating a pocket for

14   instruction manuals on playard mattress bottoms on their face.  Fabric design and

15   mattress bottoms are not the subject of the '218 Patent and are unrelated to the

16   claims and defenses in this case and these emails should be excluded as irrelevant.

17       Baby Trend emails BT_GCP 4205-4206; BT_GCP 4698-4699 relate to the

18   music box feature of a playard on their face.  The music box feature is not the

19   subject of the '218 Patent and is unrelated to the claims and defenses in this case

20   and these emails should be excluded as irrelevant.

21       True and correct copies of these emails are attached as Exhibit 3 to the

22   concurrently filed Declaration of Deborah S. Mallgrave. [Mallgrave Decl., ¶ 5, Ex.

23   3.]

24                  **2.     Emails Relating to Graco Patents Other than the '218 Patent**

25                          **are Irrelevant and Inadmissible and Should be Excluded**

26       As set forth above, emails relating to Graco patents other than the '218 Patent

27   are irrelevant to the claims and defenses presented in this litigation and should be

28   excluded under Federal Rule of Evidence 402.  To the extent Graco claims that

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   such evidence has any marginal relevance, it is clearly outweighed by the unfair

2   prejudicial effect to Baby Trend and the confusion it would cause.

3       Graco has indicated during discovery that it wanted emails relating to other

4   Graco patents to demonstrate Baby Trend's willful infringement of the '218 Patent.

5   [*See, e.g.,* Docket No. 50, pp. 21, 23, 28, 41, 71, 77, 120; Docket No. 56, pp. 13,

6   105, 115, 120, 158 (Graco's Motions to Compel Discovery).]  As discussed above,

7   willful infringement is not at issue in this case and all emails relating to Graco

8   patents other than the '218 Patent is irrelevant and inadmissible.

9       The evidence that should be excluded includes, but is not limited to, the

10  following emails:

11      Baby Trend emails BT_GCP 2722-2730; BT_GCP 2885; BT_GCP2883;

12  BT_GCP3222; relate to Graco's U.S. Patent No. D462,532 on their face.  This

13  patent is not at issue in this case and is unrelated to the claims and defenses asserted

14  and these emails should be excluded as irrelevant.

15      True and correct copies of these emails are attached as Exhibit 4 to the

16  concurrently filed Declaration of Deborah S. Mallgrave.  [Mallgrave Decl., ¶ 6, Ex.

17  4.]

18      **3.**   **Testimony Pertaining to Litigation Unrelated to the '218**

19          **Patent is Irrelevant and Inadmissible and Should be**

20          **Excluded**

21      As set forth above, testimony pertaining to litigation unrelated to the '218

22  Patent is irrelevant to the claims and defenses presented in this litigation and should

23  be excluded under Federal Rule of Evidence 402.  To the extent Graco claims that

24  such evidence has any marginal relevance, it is clearly outweighed by the unfair

25  prejudicial effect to Baby Trend and the confusion it would cause.  While evidence

26  of prior litigation, to the extent relevant, may be used in appropriate circumstances

27  as substantive evidence to establish a fact in a later case, it is subject to Federal

28  Rule of Evidence 403, and may be excluded if its probative value is substantially

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

Motion *in Limine* Re Allegations of Infringement
Case No. 2:10-cv-05897-JST

1   outweighed by possible prejudice due to the possibility of jury confusion.  *See*

2   *Mendenhall v. Cedarapids*, 5 F.3d 1557, 1573 (Fed. Cir. 1993).  No facts from prior

3   litigation involving Baby Trend are relevant to the claims and defenses in this case

4   because they do not involve the '218 Patent.

5          Further, evidence of settlement agreements involving patents other than the

6   '218 Patent is irrelevant to the claims and defenses presented in this litigation and

7   should be excluded under Federal Rule of Evidence 402.  To the extent Graco

8   claims that such evidence has any marginal relevance, it is clearly outweighed by

9   the unfair prejudicial effect to Baby Trend and the confusion it would cause.

10          Evidence of settlement agreements is generally inadmissible under Federal

11   Rules of Evidence 402 and 403.  Additionally, here, there are no settlement

12   agreements that are related to this litigation between the parties because no prior

13   settlement agreement exists as to the '218 Patent, or as to curved leg playards.

14   Putting aside the general inadmissibility of settlement agreements under the Rules

15   of Evidence, here, there is simply no relevant reason to introduce evidence of

16   settlement agreements involving other Graco patents because they have no bearing

17   on the resolution of this unrelated case pertaining to a distinct patent and patented

18   feature.

19          Graco inquired about prior Baby Trend litigation during written discovery

20   and the deposition testimony of Baby Trend's Bradley Mattarocci.  [Mallgrave

21   Decl., ¶ 7, Ex. 5 (Graco's First Set of Interrogatories, p. 10 ("All Complaints and

22   Answers filed in any other case in which Baby Trend was charged with infringing

23   the patent, trademark, service mark, or other intellectual property rights of any third

24   party")); Mallgrave Decl., ¶ 8, Ex. 6 (deposition testimony of Bradley Mattarocci,

25   pp. 364: 24-25; 365: 1-17).]  Graco, however, has presented no evidence that other

26   litigation is relevant, likely because no such evidence exists due to the unrelated

27   nature of the proceedings.

28          The evidence that should be excluded includes, but should not be limited to,

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

testimony pertaining the following cases:

- Graco Children's Products Inc v. Baby Trend, Inc., Eastern District of Pennsylvania, No.04-CV-2609 (pertaining to distinct patents and products); and

- In re Certain Strollers and Playards, International Trade Commission, Inv. No. 337-TA-762 (pertaining to a distinct utility patent used for curved leg playards, as well as other unrelated products and patents).

- Settlement Agreement and Release reached by Graco and Baby Trend in an unrelated proceeding in the Eastern District of Pennsylvania, No.04-CV-2609 (distinct patent on a straight leg playard).

## IV.

## CONCLUSION

Graco must be precluded from introducing at trial all evidence relating to allegations of infringement unrelated to this case, including: (1) emails relating to products or features other than those pertaining to the curved leg of a playard; (2) emails relating to Graco patents other than the '218 Patent; and (3) testimony pertaining to litigation unrelated to the '218 Patent on the grounds that such evidence is irrelevant to any of the claims at issue and is therefore inadmissible.

DATED:  October 31, 2011        Respectfully submitted,

SNELL & WILMER L.L.P.

By: _Deborah S. Mallgrave_

Michael B. Reynolds
J. Rick Taché
Deborah S. Mallgrave
Attorneys for Baby Trend, Inc.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# DECLARATION OF DEBORAH S. MALLGRAVE

I, Deborah S. Mallgrave, declare as follows:

1.     I am an attorney licensed to practice law in all courts in the State of California. I am an associate in the law firm of Snell & Wilmer L.L.P., and one of the attorneys of record for Defendant Baby Trend, Inc. ("Baby Trend") in the above-entitled lawsuit. I have personal knowledge of the facts set forth below and if called to testify as a witness I could competently testify to them.

2.     I make this declaration in support of Defendant's motion *in limine* to exclude evidence relating to allegations of infringement unrelated to this case.

3.     In her correspondence to me, Katrina Quicker, counsel for Graco, has contended that patterns of intellectual property infringement are relevant to enhanced damages and willfulness. A true and correct copy of Ms. Quicker's June 30, 2011 letter to me counsel is attached as Exhibit 1.

4.     Graco served its Supplemental Expert Report of W. Todd Schoettelkotte via email to me on October 21, 2011.  The report limits Graco's damages to disgorgement remedies under 35 U.S.C. § 289.  A true and correct copy of Mr. Schoettelkotte's supplemental report is attached as Exhibit 2.

5.     Attached as Exhibit 3 are true and correct copies of emails produced in discovery by Baby Trend that Graco seeks to introduce as exhibits and Baby Trend contends should be excluded as improper evidence of products or features other than those pertaining to curved leg playards.

6.     Attached as Exhibit 4 are true and correct copies of emails produced in discovery by Baby Trend that Graco seeks to introduce as exhibits and Baby Trend contends should be excluded as improper evidence of Graco patents other than the '218 Patent.

7.      Graco served its First Set of Interrogatories to me via email on January 31, 2011.  A true and correct copy of Graco's First Set of Interrogatories is attached as Exhibit 5.

Snell & Wilmer
L.L.P.
———
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

8.      A true and correct copy of pages 364- 365 from the certified deposition transcript of Bradley Mattarocci, taken October 5, 2011, is attached as Exhibit 6.

9.      During discovery, Baby Trend produced thousands of pages of emails having anything to do with any curved leg playard, regardless of whether they related to the curved leg feature.  Such production was not limited to emails pertaining to the curved leg of a playard.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on October 31, 2011, at Costa Mesa, California.

Deborah S. Mallgrave

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

Page Intentionally Left Blank

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

13881381

Motion *in Limine* Re Allegations of Infringement
Case No. 2:10-cv-05897-JST

Exhibit 1

Exhibit 1

Exhibit 1
- 17 -

# Ballard Spahr
### LLP

999 Peachtree Street, Suite 1000
Atlanta, GA 30309-3915
TEL 678.420.9300
FAX 678.420.9301
www.ballardspahr.com

Katrina M. Quicker
Direct: 678.420.9330
quickerk@ballardspahr.com

June 30, 2011

*Confidential*
*By E-mail (dmallgrave@swlaw.com) and U.S. Mail*

Deborah S. Mallgrave
J. Rick Taché
Snell & Wilmer L.L.P.
600 Anton Boulevard, Suite 1400
Costa Mesa, CA 92626-7689

RE:    Graco Children's Products Inc. v. Baby Trend, Inc., 2:10-cv-05897-JST

Dear Deb:

Thank you for your email. I too am hopeful that we can resolve this dispute without involving the Court, and I invite any and all discussion with you that will move us toward a mutually acceptable resolution. I note, however, that Baby Trend filed a Motion for Summary Judgment to which Graco must respond by August 15, 2011. Accordingly, any agreement to resolve this dispute must be reached by no later than next week (and supplemental responses and document production served) so that if necessary, Graco still may timely file its Motion to Compel.

Additionally, I believe that your suggestions for narrowing Graco's discovery requests would deny Graco discovery that is essential to the claims and defenses in this case, and to which Graco is clearly entitled under the Federal Rules.

Before I address the specific questions you raise in your email, I want to make clear that Graco will not agree to narrow the subject matter of any discovery request to the eleven products identified in the Complaint. It is well settled that discovery in patent cases is not limited to the products identified in the complaint. *See, e.g., L.G. Philips LCD Co. v. Tatung Co.*, Nos. F-07-0009 EFB and S-07-0018 FCD EFB, 2007 U.S. Dist. LEXIS 24890, at *5-7 (E.D. Cal. Mar. 21, 2007) (denying motion for protective order because the discovery "appears to seek information related to that claim insofar as it seeks to identify further incidents of infringement regarding the patents-in-suit"); *Advanced Micro Devices, Inc. v. Samsung Elecs. Co.*, No. C 08-986 SI, 2009 U.S. Dist. LEXIS 53942, at *13-15 (N.D. Cal. June 24, 2009); *Polycom, Inc. v. Codian, Ltd.*, No. 2:05CV520, 2007 U.S. Dist. LEXIS 4293, at *9-10 (E.D. Tex. Jan. 22, 2007). Graco's discovery requests uniformly define Accused Products as "any Baby Trend playard having curved or bent legs, including any and all of" the eleven products identified in the Complaint. Accordingly, the suggestion in your email that there are only "11 Accused Products at issue" here is not correct, and Graco is at least entitled to discovery as to all of Baby Trend's playards with curved or bent legs.

Atlanta #1196254 v1

Atlanta | Baltimore | Bethesda | Denver | Las Vegas | Los Angeles | New Jersey | Philadelphia | Phoenix | Salt Lake City | San Diego | Washington, DC | Wilmington

**Exhibit 1**
**- 18 -**

Deborah S. Mallgrave
June 30, 2011
Page 2

As is clear from Baby Trend's document production, Baby Trend has manufactured and/or sold – in addition to the eleven playards identified in the complaint – at least twenty-two (22) playards with curved legs. *See* BT_GCP000400; BT_GCP000236; BT_GCP000387; BT_GCP000327; BT_GCP000297; BT_GCP000342; BT_GCP000372; BT_GCP000312; BT_GCP000251; BT_GCP000274; BT_GCP000357; BT_GCP000413; BT_GCP000425; BT_GCP000437; BT_GCP000460; BT_GCP000571; BT_GCP000533; BT_GCP000573; BT_GCP000552; BT_GCP000491; BT_GCP000449; and BT_GCP000514.[1] The documents produced to date clearly show that all of these playards have curved legs like those claimed in the '218 patent, and, as such, these playards infringe. Consequently, discovery requests relating to these playards are relevant. If Baby Trend maintains its position that there are only eleven products at issue here despite the clear evidence to the contrary, Graco will have no choice but to seek the Court's assistance to obtain the necessary discovery.

Request Number 2

Turning to your specific questions, Request Number 2 asks for all documents relating to playards with curved or bent legs, or curved or bent legs for playards. You are correct in your understanding that Graco seeks, among other things, documents relating to sales, shipment, and distribution of the playards. Request Number 2 encompasses documents that will allow Graco to determine the cost of manufacturing and sales price for each accused playard. This request also encompasses documents that will allow Graco to determine when each such playard was sold. The single "summary" document Baby trend has produced on this point to date (*see* BT_GCP000966 ) does not provide the necessary information, and therefore is inadequate. Because the requested documents are directly relevant to the calculation of damages in this case, they must be produced.

Regarding many of the other categories of documents you raise in your letter, which Request Number 2 and other document requests encompass – such as customer complaints (No. 16), leg design (No. 17), development (No. 22), testing/evaluation (No. 18), alternative designs (No. 23), decisions to develop, market and sell the products (No. 24), and freedom-to-operate searches (No. 27) – Baby Trend has responded that it has no responsive documents in its possession, custody, or control. We find this assertion difficult to believe, and the design documents in Baby Trend's recent "corrected" production confirm our doubts. *See* BT_GCP001162 - BT_GCP001187. Because Baby Trend clearly has such documents in its possession, custody, and control, we ask that you update your responses to Graco's document requests and produce all responsive, non-privileged documents.

Request Number 3

I appreciate your agreement to produce all documents and things that relate to Graco.

---

[1] These playards have Model Nos. PY90918; PY87983; PY90973; PY88950; PY87029; PY86428; PY86045; PY86091; PY86443; PY86962; 8065BCC; 8206BCC; 8207BCC; 8211BCC; 8263BCC; PY87965; PY87915; PY87991; PY87916; 8274BCC; 8256BCC; and PY86992.

Atlanta #1196254 v1

**Exhibit 1**
**- 19 -**

Deborah S. Mallgrave
June 30, 2011
Page 3

Request Number 28

It appears that we may have a misunderstanding as to Graco's request for advertising and marketing expenditures. Request Number 28 relates specifically to Baby Trend's annual advertising expenditures, rather than Baby Trend's actual advertising (which is encompassed by Request Number 33). Although it is not my responsibility to explain why these documents are discoverable, Baby Trend's annual advertising spending is reasonably calculated to lead to admissible evidence relating to both damages and willfulness, and as such, is an appropriate subject of discovery. *See Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 655 (Fed. Cir. 1985) (holding infringer's profits, which would necessarily include its advertising and marketing expenditures, are an appropriate measure for determining patentee's lost profits).

Request Number 40

I appreciate your agreement to produce all documents that are responsive to this request.

Request Number 41

I assume that Baby Trend does not contend that, to be subject to discovery, a document must relate to the "narrow" (as Baby Trend called it in its opposition to Graco's Ex Parte Application For Extension Of Time) issue of infringement. Request Number 41 asks for assertions of intellectual property infringement against Baby Trend. Such documents are relevant to, at least, patterns of intellectual property infringement, which, of course, is relevant to enhanced damages and willfulness. *See Swallow Turn Music v. Wilson*, 831 F. Supp. 575, 580 (E.D. Tex. 1993) (explaining that willfulness is shown when the normal course of business involves a pattern of repeated infringements).

Interrogatories

As we discussed on the call, your position that the number of interrogatories should be counted based on the number of playards Baby Trend makes is without legal support. *See Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005) (explaining that an interrogatory asking for specific information about 12 separate complaints *does not* constitute 12 separate interrogatories). I am happy to continue to discuss the scope of the interrogatories with you in an effort to find a mutually agreeable resolution without involving the Court. As discussed above, however, Graco cannot agree to limit the interrogatories to the products listed in the Complaint, as you appear to suggest.

In addition, several interrogatories (*see* Interrogatory Nos. 1-6 and 14) request information relating to both straight-legged and curved-legged playards. Although Graco does not contend that straight-legged playards infringe the '218 patent, information relating to the design change is relevant to both damages and willfulness. *See T.A. Pelsue Co. v. Grand Enters., Inc.*, 782 F. Supp 1476, 1499 (D. Colo. 1991); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-28 (Fed. Cir. 1992). Accordingly, Graco

Atlanta #1196254 v1

Exhibit 1
- 20 -

Deborah S. Mallgrave
June 30, 2011
Page 4

cannot universally limit its interrogatories to playards with curved legs.  Nevertheless, I am willing to
discuss reasonable, mutually-agreeable limits with respect to straight-legged playards.

I hope that this correspondence has been helpful in clarifying Graco's positions.  I look forward to
your response so that we can continue to move toward an acceptable resolution without involving the
Court.

Very truly yours,

Katrina M. Quicker

Katrina M. Quicker

**Exhibit 1**
**- 21 -**

Exhibit 2

# Exhibit 2

**Exhibit 2**
**- 22 -**

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GRACO CHILDREN'S PRODUCTS INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 2:10-cv-05897-JST |
| BABY TREND, INC. | § § | |
| Defendants. | § § § | |
| | § | |

## SUPPLEMENTAL EXPERT REPORT OF W. TODD SCHOETTELKOTTE

_____
W. Todd Schoettelkotte

10-21-11
Date

Page 1 of 31

Exhibit 2
- 23 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

1. **Nature of Involvement**

I have been retained as an expert on behalf of the Plaintiff, Graco Children's

Products, Inc. ("Graco" or "Plaintiff"). I have been asked to prepare this report and, if

necessary, appear and testify before the Court regarding financial issues related to

Graco's damages resulting from the alleged patent infringement by the Defendant,

Baby Trend, Inc. ("Baby Trend" or "Defendant").[1] In addition, I have also been asked

to quantify and testify as to the amount of profits that Baby Trend has generated as a

result of its alleged patent infringement. Further, to the extent Baby Trend has made

claims for damages against Graco, I have also been retained to address issues related

thereto. I have also been retained to consider the commercial success of the patented

playards.

I previously submitted expert reports in this case dated August 12, 2011

("Initial Report") and August 19, 2011 ("Second Report"). I have also previously

issued declarations in this matter dated August 15, 2011 ("August 15, 2011

Declaration") and September 6, 2011 ("September 6, 2011 Declaration.") Unless stated

otherwise, the opinions expressed in my Initial Report, Second Report, August 15, 2011

Declaration, and September 6, 2011 Declaration are incorporated herein by reference.

I understand that this action relates to Plaintiff's claims regarding the

infringing use by Baby Trend of United States Patent No. D448,218 entitled "Curved

Legs for a Playard" (the "'218 Patent"). I am providing my opinions relating to

Graco's claims for damages in this case under the assumption that the patent at issue is

valid, enforceable and infringed by the Defendant and that Graco is entitled to

---

[1] I understand that the Plaintiff's complaint against the Defendant in this case includes claims
of patent infringement under 35 U.S.C. § 271.

**Exhibit 2**
**- 24 -**

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

damages as a result of the alleged patent infringement. However, for purposes of my analysis as a damages expert, this report is prepared without regard to the findings of liability in this matter (i.e., I have no opinion regarding the legal conclusion of the causes of action.)

## 2. Credentials and Compensation

I am a Managing Director with FTI Consulting, Inc. ("FTI")[2], a financial consulting firm that provides valuation, financial consulting and dispute analysis services. I am a member of FTI's Forensic and Litigation Consulting Group, which is comprised of professionals located across the country that provide financial consulting and investigative services. As part of this group, I am involved in providing consulting services and damages assessments related to intellectual property such as trademarks, trade dress, patents and copyrights. These intellectual property services include the analysis of lost sales, lost profits, incremental profits, product line profitability, cost analysis, valuation analysis, cash flows, reasonable royalty and other related financial information including financial analyses regarding the impact of intellectual property and unfair competition on specific businesses.

I have been involved as a financial consultant for more than 15 years. I am a Certified Public Accountant ("CPA") licensed in Texas. I am a member of the American Institute of CPAs ("AICPA") and the Texas CPA Society, and have served as a Guest Lecturer at the Chicago Kent College of Law, the Georgetown University Law Center and the John Marshall School of Law. I am a Certified Valuation Analyst ("CVA") and a member of the National Association of Certified Valuation Analysts

---

[2] FTI is a publicly traded global advisory firm.

Page 3 of 31

**Exhibit 2**
**- 25 -**

CONFIDENTIAL -- OUTSIDE COUNSEL ONLY

("NACVA"). I am also a member of the Licensing Executives Society ("LES"), an

organization of more than 5,000 members including corporate executives and

professionals involved in the licensing and valuation of patents, trademarks and other

intellectual property. I have attached as Schedule 1 a summary of my professional

background and testimony experience.

FTI is being compensated for our involvement in this matter based upon our

standard billing rates for this type of engagement. FTI's billing rate for my time is

$425 per hour for my analysis, preparation of this report and testimony. FTI's fee is

not contingent upon the outcome of this litigation.

### 3. **Information Reviewed**

In connection with the preparation of this report, I have considered

information from a variety of sources including documents and/or electronic files

produced thus far by the parties in this case, and publicly available information, such

as articles, press releases and Internet websites. I have also had a discussion with

Graco's industrial design expert in this case, Mr. Robert Anders as well as certain

Graco personnel, including Graco's Senior Brand Manager for Children's Products,

Kerry Strzelecki, Graco's Director of Marketing for Mobility, Art Gehr and Graco's

Director of Finance for Children's Products, Josh Jacobs. A complete listing of the

information I have considered to date in connection with the preparation of this report

is listed in Schedule 2.

At the time of my Initial Report, sales, cost and profit information produced by

Baby Trend related to its accused products was incomplete. At that time, certain

financial documents necessary to appropriately assess Baby Trend's performance,

**Exhibit 2**
**- 26 -**

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

including total sales, costs and/or profits on the accused products at issue had been requested but were not included in the Baby Trend produced documents. In fact, only one document (BT_GCP000966) related to Baby Trend's sales, costs or profits had been produced as of the date of my Initial Report. In addition, depositions of Baby Trend personnel had not yet been taken. Thus, I was asked to perform my analysis based upon the information currently available as of the date of my Initial Report.

Subsequent to the issuance of my Initial Report and Second Report, certain written discovery responses and financial documents necessary to appropriately assess Baby Trend's performance, including total sales, costs and/or profits on the accused products have been produced. Additionally, depositions of certain Baby Trend personnel that are relevant to my analysis have been taken. I have been asked to review the additional information produced as part of this matter that is relevant to my analysis, including financial documents produced by Baby Trend, deposition testimony, expert reports and other documents produced subsequent to the issuance of my Initial Report and Second Report.

I understand that discovery in this case, including expert discovery, has been completed. Nonetheless, if additional information or testimony becomes available to me, I may use this additional information to supplement, revise or amend my analysis, opinions and conclusions. Therefore, I reserve the right to perform additional analyses and supplement or amend this report as necessary. The discussion below is based on my review of the information available to me as of the date of this report.

**Exhibit 2**
**- 27 -**

CONFIDENTIAL -- OUTSIDE COUNSEL ONLY

## 4. Background of the Allegations

As part of this matter, Graco asserts that Baby Trend has infringed its United States Patent No. D448,218 entitled "Curved Legs for a Playard."[3,4] I understand that on October 9, 2009, Baby Trend filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.[5] Graco asserts that Baby Trend has infringed the '218 Patent by making, using, selling, offering to sell or importing the following models of playard products (the "Baby Trend Accused Playards"):[6]

| Model Number | Baby Trend Model Name |
|---|---|
| PY90918 | Mini Nursery Center – Twilight |
| PY87983 | Deluxe Nursery Center – All Star |
| PY90973 | Mini Nursery Center – Cordova |
| PY88950 | Deluxe Nursery Center – Metropolitan |
| PY87029 | Deluxe Nursery Center – Gabriella |
| PY86428 | Deluxe Nursery Center – Mojito |
| PY86045 | Deluxe Nursery Center – Skylar |
| PY86091 | Deluxe Nursery Center – Mesa |
| PY86443 | Deluxe Nursery Center – Columbia |
| PY86962 | Deluxe Nursery Center – Dakota |
| 8065BCC | Deluxe Nursery Center – Orange Oak |
| 8206BCC | Malawi Deluxe Nursery Center |
| 8207BCC | Deluxe Nursery Center – Sun Dance |
| 8211BCC | Deluxe Nursery Center – Chatham |
| 8263BCC | Deluxe Nursery Center – Zanzibar |
| PY87965 | Deluxe Nursery Center – Chickadee |
| PY87915 | Deluxe Nursery Center – Northridge Plaid |
| PY87991 | Deluxe Nursery Center – Wisteria Lane |
| PY87916 | Deluxe Nursery Center – Zulu |
| 8274BCC | Deluxe Nursery Center – Havenwood |
| 8256BCC | Deluxe Nursery Center – Serengeti |
| PY86992 | Deluxe Nursery Center – Provence |
| PY86801 | Deluxe Nursery Center – Baby Tech |
| PY87906 | Deluxe Nursery Center – Chrissy |

[3] Complaint for Patent Infringement, pgs. 1-2.
[4] The application for the '218 Patent was filed on May 5, 2000, and the '218 Patent issued to Graco Children's Products, Inc. on September 25, 2001, U.S. D448,218 S.
[5] Complaint for Patent Infringement, pg. 2.
[6] Complaint for Patent Infringement, pgs. 1-7; Plaintiff's First Set of Requests for Admission to Defendant, pgs. 2-3; Letter to Deborah S. Mallgrave, Snell & Wilmer L.L.P., from Katrina M. Quicker, Ballard Spahr L.L.P., dated July 27, 2011.

**Exhibit 2**
**- 28 -**

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

Graco asserts that Baby Trend's infringement of the '218 Patent through the Baby Trend Accused Playards capitalizes on the ornamental design for curved legs for a playard as described in the '218 Patent.[7]  Thus, I understand that because of the alleged wrongful acts by the Defendant, Graco alleges that it has incurred damages in the form of Baby Trend's profits from sales of the Accused Playards.

### A.  Framework for Baby Trend's Profits

Title 35 U.S.C. § 289, titled, "Additional Remedy for Infringement of Design Patent," allows for Graco to be awarded Defendant's profits upon a finding of infringement by the Court.  Section 289 states, "[w]hoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article or manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit."  Accordingly, Defendant's profits can be measured as the amount of profit generated from sales of the products at issue.  More specifically, a calculation of profit considers the total sales of the accused products and an accounting of the specific costs incurred in conjunction with generating the sales of the products at issue.  Accordingly, as indicated in my Initial Report, I have been asked to calculate the sales, appropriate costs and profits obtained by Baby Trend from the sale of the allegedly infringing products at issue.

---

[7] Complaint for Patent Infringement, pgs. 1-3.

**Exhibit 2**
**- 29 -**

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

In order to determine Baby Trend's profits from the products at issue, I have reviewed financial and financially-related documents produced by Baby Trend. At the time I issued my Initial Report, Baby Trend had not produced complete and/or sufficient information that was necessary for the determination of Baby Trend's profits.[8] Since the issuance of my Initial Report Baby Trend has produced additional documents including sales information and certain limited cost information.

As discussed above, I have been asked to provide my opinions based on currently available information. I understand that I may be asked to review additional pertinent information produced as part of this matter. In addition, my analysis is ongoing, and I may continue my review and analyses of information produced as part of this case, and thus, reserve the right to update, adjust, modify or amend my conclusions and calculations accordingly.

## 5. **Basis of Opinions**

In forming my opinions in this case, I have relied upon my review of documents provided to date, legal filings, deposition transcripts, discussions that I have held with Graco personnel and the Plaintiff's industrial design expert in this case, my knowledge, skill, training, education, experience and expertise in assessing and calculating damages, information from public sources such as Internet websites, the information presented above and my analysis discussed throughout this report. Further, in assessing monetary recovery, I have considered the relevant facts and circumstances in this case as well as the causal relationship between the wrongful acts

---

[8] As of the date of my Initial Report, I identified a single financial spreadsheet produced by Baby Trend (BT_GCP000966) which is incomplete and does not contain adequate sales, cost or profit information to complete my analysis of damages in this case.

Page 8 of 31

**Exhibit 2**
**- 30 -**

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

and the loss or gain being measured. The sections below are not necessarily mutually exclusive; however, as certain issues discussed below in one section may also relate to other sections, and certain items discussed above may also relate to the sections below.

### A. Background – Market for Baby Care Products

The baby and juvenile care products industry incorporates more than 250 companies in North America. These companies manufacture and/or import infant products such as cribs, car seats, strollers, high chairs, playards, infant swings, infant bathtubs, bedding, and a wide range of accessories and decorative items, among other things.[9]

The U.S. market for juvenile products is a $2.8 billion industry, with more than 75% of sales coming through mass merchandisers, discounters and specialists.[10] The baby durables market in the United States is expected to reach $6.19 billion by 2015.[11] Manufacturers expect the "introduction of new products, product lines and product line extensions" to be the substantial driver of sales volumes and revenue.[12] This growth is "tempered by external factors including sluggish birthrates, economic slowdown and the accompanying rising levels of unemployment, reducing disposable incomes and reduction in household wealth."[13]

Key distributors in the U.S. Baby Durables market include Graco, Dorel Industries Inc., Baby Trend Inc., Fisher-Price, Inc. and Evenflo Company, Inc., among

---

[9] www.jpma.org.
[10] www.jpma.org.
[11] Baby Durables market in the United States to Reach $6.19 Billion by 2015, According to New Report by Global Industry Analysts," April 13, 2009, www.prweb.com.
[12] www.jpma.org.
[13] Baby Durables market in the United States to Reach $6.19 Billion by 2015, According to New Report by Global Industry Analysts," April 13, 2009, www.prweb.com.

**Exhibit 2**
**- 31 -**

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

others.[14] Popular retailers for Baby Durables in the U.S. market include Toys 'R' Us, Inc., Babies 'R' Us, Target Corporation and Wal-Mart Stores, Inc.[15] According to the Juvenile Products Manufacturers Association, the "primary goal as an industry [is to] manufacture safe, innovative products that make the lives of parents and caregivers easier."[16]

A key product offering within the baby and juvenile product segment in the United States is the playard. Playards come in a variety of styles and fabrics, from the basic, which is a small boxed-in area, to more elaborate versions which can include accessories such as canopies, storage pockets, bassinets, co-sleepers, changing stations, wheels, toy mobiles, and electronics.[17] Playards are described as "a great way to keep your baby close in a safe, comforting environment."[18]

### B. **Background – Graco**

Graco is a subsidiary of the Newell Rubbermaid Company ("Newell Rubbermaid") headquartered in Atlanta, Georgia.[19] Newell Rubbermaid is described as a "global marketer of consumer and commercial products that touch millions of people every day where they work, live and play."[20] The Rubbermaid brand has been

---

[14] Baby Durables market in the United States to Reach $6.19 Billion by 2015, According to New Report by Global Industry Analysts," April 13, 2009, www.prweb.com; www.jpma.org.
[15] Baby Durables market in the United States to Reach $6.19 Billion by 2015, According to New Report by Global Industry Analysts," April 13, 2009, www.prweb.com; www.jpma.org.
[16] www.jpma.org.
[17] "The Ultimate Play Yard Buying Guide" by Kristen J. Gough, www.babyzone.com.
[18] "Keeping Your Baby Safe, How to Choose a Playard", www.babyproductexperts.com.
[19] According to the Newell Rubbermaid Internet website, the Company maintains "key centers of excellence for innovation and marketing in Huntersville, N.C., Oakbrook and Freeport, Ill., East Longmeadow, Mass., and Mississauga, Ontario, http://newellrubbermaid.com.
[20] http://newellrubbermaid.com.

**Exhibit 2**
**- 32 -**

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

identified as representing "innovative, high-quality products that help simplify life."[21]
Products offered by Newell Rubbermaid are used in 90% of U.S. households and
include popular brands such as "Goody," "Rubbermaid," "Graco," "Waterman,"
"Lenox," and "Sharpie" among others.[22] The Rubbermaid brand has been recognized
as a "Brand of the Century," and "is one of only 100 companies named as having an
impact on the American way of life."[23] With 48 locations across the United States,
Newell Rubbermaid has over 12,000 employees domestically and employs
approximately 30,000 employees worldwide.[24,25]

Graco is one of the world's most well known and trusted juvenile products
companies.[26] Based in Atlanta, Graco has proven itself as an innovator for over 50
years with the development of products including strollers, automatic baby swings,
travel systems, car seats, highchairs, portable playards, monitors, activity centers and
jumpers.[27,28] Graco invented the world's first wind-up infant swing in the 1950's and
since that time Graco has become the standard in the children's product categories it
has entered.[29] In 1987, Graco invented and introduced the "Pack 'n Play®" portable
playard, and today the Pack 'n Play® playard is "found in millions of homes across
North America."[30] In 1998, Graco acquired Century Car Seats, combining two of the
most respected brand names in baby products and further adding to its line of

---

[21] http://rubbermaid.com.
[22] http://newellrubbermaid.com.
[23] http://rubbermaid.com.
[24] http://eba.benefitnews.com.
[25] http://rubbermaid.com.
[26] www.gracobaby.com.
[27] www.gracobaby.com.
[28] GRACO00001444 – GRACO00001446.
[29] www.gracobaby.com.
[30] www.gracobaby.com.

Exhibit 2
- 33 -

CONFIDENTIAL -- OUTSIDE COUNSEL ONLY

innovative products.[31] According to its website, "Graco continues its tradition of innovation, with products like the imonitor™ Digital Baby Monitor and the compact folding Contempo Highchair."[32] It has been said that "Graco offers parents a compelling value and reinforces (its) commitment to providing dependable, innovative products to parents and caregivers around the world."[33] Today, Graco is a subsidiary of the Newell Rubbermaid Company and employs 1,500 associates worldwide.[34,35]

### C. Background – Baby Trend

Defendant Baby Trend founded 22 years ago, is headquartered in Ontario, California.[36] The Company describes its business as: "the inventor and exclusive manufacturer for several unique juvenile products," "on the forefront of new and innovative solutions," "providing the safest, most reliable products available at an affordable price."[37,38] Baby Trend's product offerings include car seats, strollers, sit n stand, joggers, travel systems, nursery centers, high chairs, diaper pails, walkers and bouncers among others. Baby Trend filed a voluntary petition for reorganization under Chapter 11 in US Bankruptcy Court on October 9, 2009.[39]

---

[31] www.gracobaby.com.

[32] www.gracobaby.com.

[33] Newell Rubbermaid; Newell Rubbermaid's Graco Brand Delivers More Value with Convertible Products that Adapt as Kids Grow.

[34] www.gracobaby.com.

[35] Newell Rubbermaid's Sandy Springs, GA testing facility (43,000 square feet, opened November 2010) combines the testing of several of its brands including Graco branded products; Sandy Springs: Newell Rubbermaid pools its research: Company hopes combined testing will encourage innovation, The Atlanta Journal Constitution, June 9, 2011.

[36] www.babytrend.com

[37] www.babytrend.com.

[38] According to www.USPTO.gov, Baby Trend has 12 issued patents, while Graco has 270.

[39] Bloomberg Businessweek, Private company Information, www.businessweek.com.

Page 12 of 31

Exhibit 2
- 34 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

### D.  Background - Importance of Intellectual Property

Intangible assets, including intellectual property such as patents, trademarks and trade dress, can be a source of significant value to companies.  In fact, intangible assets can account for approximately 2/3 to over 3/4 of a company's market value.[40,41] Intellectual property is valuable because it can provide a competitive advantage in the marketplace and ultimately can represent a very powerful driver for value.

Intellectual property can provide incentives for companies to invest in developing new products as well as to advertise and promote their products and to seek adequate compensation for their use as part of their commercialization.  When commercialized, these products and corresponding brands can provide significant economic returns, such as increased pricing and profits, reduced expenses, and customer loyalty and awareness, and can become a source of future economic growth. Consequently, companies invest significant resources to develop their products and brands to establish the brand awareness, reputation and acceptance of their products. Thus, companies often protect their intellectual property from improper and wrongful use to maximize the expected benefits and to safeguard their related investments in time and money.

In similar fashion, Graco views the fact that its products are patented as a differentiator in the marketplace and as having an influence on buyer decisions to purchase Graco products.  According to Michael Magee, who served as Graco's Vice President of Sales from 2007 to 2011, Graco would emphasize the fact that its products were patented because it was an indication that Graco was a quality provider and

---

[40] Davis, Adrian and Lucinda Spicer. *Intellectual Asset Management, An International Perspective on Brand Valuation and Management.* October 2003.
[41] Vermont, Samson. *Patent Costs and Benefits: The Economics of Litigation - Part 2.*

Page 13 of 31

**Exhibit 2**
**- 35 -**

CONFIDENTIAL -- OUTSIDE COUNSEL ONLY

supplier and an innovator in the market.[42]  Mr. Magee was aware of instances where the fact that a particular product was patented impacted the purchase decision of one of Graco's customers.[43]  According to Mr. Magee, "we [Graco] would often be asked about intellectual property, because they [Graco's customers] are very familiar with intellectual property and being the innovator, our designs are part of the innovation. So they would ask us specifically, is this something that you own."[44]


### E.  The Playard Products at Issue

Graco introduced the first playard into the marketplace in 1987 with the introduction of the company's Pack 'n Play® portable playard.[45,46]  Initially, most playards were designed for portability.[47]  Portable playards allowed parents to bring security and comfort everywhere they went, in particular to places that may not be considered safe for a baby.[48,49]  Playards were and still are considered ideal for taking along when traveling with a baby, as they are foldable and transportable.[50]  Important features and benefits associated with playards have included "Portability," "Versatility" and "Convenience."[51]

---

[42] Deposition of Michael Magee, dated September 15, 2011, pg. 28.
[43] Deposition of Michael Magee, dated September 15, 2011, pg. 28.
[44] Deposition of Michael Magee, dated September 15, 2011, pgs. 29-31.
[45] www.gracobaby.com.
[46] Graco competitors for the sale of playards include Baby Trend, Evenflo, Dorel, Fisher-Price, Chicco, Summer Infant, Joovy, Phil n Ted's, Baby Bjorn and Combi.
[47] www.consumerreports.org.
[48] "Keeping Your Baby Safe, How to Choose a Playard", www.babyproductexperts.com.
[49] I understand that recommended use of a playard is less dependent on a child's age, but rather dependent on developmental factors, for use by children unable to climb out of the playard and for children less than 35" tall and less than 30 lbs., GRACO00003131 – GRACO00003198.
[50] "Keeping Your Baby Safe, How to Choose a Playard", www.babyproductexperts.com.
[51] GRACO00003131 – GRACO00003198.

Exhibit 2
- 36 -

CONFIDENTIAL -- OUTSIDE COUNSEL ONLY

In 2000, Century Car Seats, which was acquired by Graco in 1998, introduced the first playard with curved legs identified under the "Swept" style platform.[52] Over time, the high end Pack 'n Play® playard evolved into a device used for "nighttime sleeping, daytime naps, changing diapers, 'containment' for a child, and for 'protection' from older brother or sister."[53] This evolution resulted in the high end Pack 'n Play® playard becoming "a more permanent fixture in the home, a permanent living room care center" for all the needs of a child.[54] This trend led to a heightened focus on playard design and aesthetics as playard owners were leaving their playards set up in the home. Subsequently, in 2004 the first playards with curved legs branded under the Graco name were introduced to the marketplace using the "Silhouette™" platform.[55] The curved legs on the Silhouette™ playards were intended as a movement to make playards more aesthetically appealing to consumers. According to documents produced by Graco, the Silhouette™ included the "classic playard design of the past and reinterprets it for today's lifestyles" and "[t]he Silhouette™ style Pack 'n Play® blends flowing lines, ideal proportions and purposeful details to define quality and comfort."[56] According to Graco research, "87% of Silhouette™ owners leave PNP's set up all the time."[57] In 2006, Graco launched another curved leg platform, the "SuiteSolutions," and positioned the product as "[s]uperbly designed with elegance and care, the sweeping lines and sturdy frame compliment your décor" and "A MORE PERMANENT FIXTURE IN THE HOME – beefier frame alludes to

---

[52] Graco produced documents for the Fold 'N Go® Care Center – Claret, Merlot, Tempo and Black 'N Khacki identify "New stylish design!" as a feature. GRACO00003278 – GRACO00003281.
[53] GRACO00003270 – GRACO00003275.
[54] GRACO00003270 – GRACO00003275.
[55] GRACO00002574 – GRACO00002679
[56] GRACO00003131 – GRACO00003198.
[57] GRACO00003296 – GRACO00003297.

**Exhibit 2**
**- 37 -**

CONFIDENTIAL — OUTSIDE COUNSEL ONLY

furniture-like quality."[58]  A Graco document titled "Positioning/Commercialization – Fashion Direction," states, "SuiteSolutions needs to be part of a high-end fashion collection: a collection with 'furniture-like' appeal – no animals, wingdings or whimsy."[59]

### 6.   Graco's Playard Products at Issue

Graco's playards which embody the '218 Patent ("the Graco patented playards") have consistently achieved commercial success in the marketplace and are in demand within the playard product category.  Graco's playards have attained strong brand awareness and a reputation for being high-quality, premium child care products.  Graco has invested considerable time and expense to advertise and promote its patented playard products.

### A.   Patented Playards have Achieved Commercial Success

The patented playards at issue have consistently achieved commercial success in the marketplace and are in demand within the playard product category.  As such, both Graco and Baby Trend have generated sales of playards that embody the patent at issue.  During the period from 2000 to 2010 Graco sold approximately ▮▮▮▮ patented playard units containing curved legs.  See Schedule 6.  These units accounted ▮▮▮▮ in net sales.[60]  See Schedule 6.  Further, Graco's impressive list of retail customers illustrate the market success and broad acceptance of the Graco

---

[58] GRACO00003131 – GRACO00003198.
[59] GRACO00003296 – GRACO00003297.
[60] In 2004, Graco estimated that playards attributed ▮▮▮▮ of total operating income, GRACO00003131 – GRACO00003198.

Exhibit 2
- 38 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

patented playards that have been sold at Toys 'R' Us, Babies 'R' Us, Target, Wal-Mart, Burlington Coat Factory as well as many others. See Schedules 8 and 9. Graco is the market leader for playards, as is evident from Graco's market share in the playard category which has ranged from approximately ▇▇▇▇▇▇ over the period from 2001 through 2010.[61] Graco's considerable sales volumes of the patented products and its leading market share within the playard category are important indicators of the demand for the patented products.

As discussed above, playards have evolved to become a permanent fixture in the home for many customers. This is supported by a March 2000 study conducted by Graco in which it was found that (1) the family (living) room is where the Pack 'n Play® playard is most often used, (2) over 50% of respondents leave their Pack 'n Play® playard assembled, (3) over 70% of respondents leave the Pack 'n Play® playard set up in a typical week, (4) over 60% of the respondents always leave the bassinet set up, and (5) the majority of respondents (over 60%) use the Pack 'n Play® playard in their homes. Further, a July 2002 study conducted by Graco reported results consistent with the March 2000 study, notably that the Pack 'n Play playard is used most often in the family or living room and that over half of the respondents (55%) said that they do not fold their Pack 'n Play® playard.[62] A 2004 Graco document titled ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ discussed "[c]onsumers using (playards) as permanent fixture in home, living room/family room common."[63] According to a 2006 Graco document titled "Playard Segmentation," playards are

---

[61] GRACO00003300 – GRACO00003313, GRACO00003298 – GRACO00003299, GRACO00003131 – GRACO00003198, GRACO00002991 – GRACO00003005.
[62] GRACO00003042 – GRACO00003056.
[63] GRACO00003131 – GRACO00003198.

Page 17 of 31

**Exhibit 2**
- 39 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

"[o]ften considered a part of the home's décor" and a "[s]econd model often purchased to travel."[64]  Additionally, a Graco presentation titled "New Product 2007" identified the "#1 Opportunity in Playards" as "[c]apitalize on rising retails and permanency of playards in the home."[65]  The presentation identified "Key Findings," including that "87% of Silhouette™ owners leave [the playard] set up all the time."[66]

The Graco patented playards have been a key contributor in the progression of playards becoming a fixture in many homes.  More recent marketing studies conducted by Graco are reflective of customers' heightened focus on design and asthetics in playards, benefits which are associated with the Graco patented playard products.  For example, a December 2006 study conducted by Graco's marketing department identified Graco's Silhouette™ playard product line as the top ranking playard model for parents who intended to use the playard in the living room, family room or den.[67]  According to the study, "the slightly larger size and pleasing to the eye design makes it [the Silhouette™ model] a more popular choice overall."[68]  In a document titled "Keeping Your Baby Safe – How to Choose a Playard," it was stated that "[f]ashion tends to be the most important factor for many, as most playards do the same basic functions."[69]  In a Graco document identifying the "unique" attributes of the Silhouette™ style Pack 'n Play® playard and why consumers should buy it (the Silhouette™), Graco stated that the Silhouette™ reinterprets the classic playard design

---

[64] GRACO00003131 – GRACO00003198.
[65] GRACO00003131 – GRACO00003198.
[66] GRACO00003131 – GRACO00003198.
[67] GRACO00003006 – GRACO00003025.
[68] GRACO00003006 – GRACO00003025.
[69] GRACO00003131 – GRACO00003198.

Page 18 of 31

**Exhibit 2**
**- 40 -**

CONFIDENTIAL — OUTSIDE COUNSEL ONLY

of the past for today's lifestyles and the Silhouette™ style playard "blends flowing

lines, ideal proportion and purposeful details to define quality and comfort."[70]

Additionally, I have also reviewed a film segment from the Star Jones

television show that aired on October 18, 2007. The program featured Senior Lifestyle

Editor for American Baby Magazine, Jessica Hartshorn along with the (Silhouette™

Style) Graco Pack 'n Play® playard. In addressing the Graco Pack 'n Play® playard,

Ms. Hartshorn referred to the product as "the original portable crib" that is now being

used as "a second crib at home – which is brilliant."[71]

Further, the importance of playards as a fixture in the home has also involved

Graco's product introductions. For example, in a document titled "Executive

Summary – Graco Playards" and "SuiteSolutions Pack 'n Play Launch," it was stated

that the Pack 'n Play® playard "has evolved into a more permanent fixture in the

home" and described Graco's new SuiteSolutions Pack 'n Play® playard as having

"[s]weeping lines and substantial frame (that) add permanency and complement

décor."[72]  The benefits of the '218 Patent have also been associated with the Baby

Trends' accused products. For example, I have reviewed a publicly available

document titled "Mom Top 10 – PlayYards" in which Baby Trends' Deluxe Playard –

Provence (one of the accused products) was featured and described as "[o]ne of the

prettiest play yards out there"[73]

Graco's playards have consistently been recognized in the marketplace through

industry awards for excellence. For example, Graco's playards earned "Baby Talk's"

---

[70] GRACO00003131 – GRACO00003198.
[71] Star Jones 10-18-07.wmv
[72] GRACO00003270 – GRACO00003275.
[73] www.momtop10.com.

Page 19 of 31

Exhibit 2
- 41 -

CONFIDENTIAL -- OUTSIDE COUNSEL ONLY

Editor's Choice Award from 2001 through 2004. See Schedule 12. In addition, Graco's playards have also been recognized by "American Baby" with "Best of Year" Awards (or honorable mention) in the years 1998, 1999, 2000, 2003 and again from 2005 through 2007. See Schedule 12. For example a 2005 American Baby announcement for a "Best of Year" Award stated "Graco Pack 'n Play® playard – Many readers use this as a second crib in their living room or family room, for baby's daytime naps."[74] Additionally, in a 2006 American Baby "Best of Year" announcement, it was stated "Graco Pack 'n Play® playard – what began as a travel crib has now become a second crib (in, say, the living room) for many households."[75] While in 2007, American Baby announced, "Graco Pack 'n Play® – these portable playards have become so jazzed up that they now practically rival traditional baby furniture."[76]

In my opinion, the patented elements of the Pack 'n Play® playard at issue are important to the aesthetic appeal and the trend toward Pack 'n Play® playard use as a semi-permanent fixture in households.

**B.** <u>**Graco Has Invested Significant Resources in the Research, Development, Advertisement and Promotion of its Playards**</u>

Graco has heavily invested time and expense associated with the research and development, advertisement and promotion of its playard products. Regarding research and development, Graco has incurred over ███████ in expenses over the period from January 2007 through June 2011 related to its playard category.[77] See

---

[74] GRACO00002559.
[75] GRACO00002556 – GRACO00002557.
[76] GRACO00002561.
[77] I understand that Graco has incurred research and development costs related to its playard product category prior to the January 2007 time period. I reserve the right to review and comment on these costs as they become available.

Exhibit 2
- 42 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

Schedule 10. These research and development expenses include costs related to employee salaries, materials/supplies, outside consulting services and freight among others. I understand that retailers scrutinize the potential product offerings in each category and are very aware of the technological innovation incorporated in the products they sell.

Additionally, Graco has marketed and sold its playards to a variety of customers through various channels of trade. More specifically, the Graco playard products have been sold through general mass retail, specialty stores as well as Internet websites. Graco's customers for its playard products include Toys 'R' Us, Babies 'R' Us, Target, Wal-Mart, Burlington Coat Factory, Stork Land, Rock a Bye Baby, Baby and Me, Amazon.com, Overstock.com and many others. See Schedules 8 and 9.

Over the period from January 2007 to June 2011, Graco has incurred more than ███████ in marketing expenses related to its playard product category including costs related to salaries, market and consumer research, outside consulting services, materials, samples and training among others.[78,79] See Schedule 11.

### 7. Retail Market for the Playard Products at Issue

Retailers who market and sell the playard products at issue offer different segments or "tiers" of playard products. Bradley Mattarocci, Baby Trend's Vice

---

[78] As part of its promotional activities, I understand that Graco participates in an annual "Line Review" with its customers that generally takes place during the periods from March through June and September through October of each year. During the Line Review process, Graco personnel meet with customer purchasing teams to identify specific products and the quantity to be purchased for the upcoming year.
[79] I understand that Graco has incurred marketing costs related to its playard product category prior to the January 2007 time period. I reserve the right to review and comment on these costs as they become available.

Page 21 of 31

Exhibit 2
- 43 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

President and General Manager, described in deposition testimony three tiers of

playard products offered by Baby Trend:[80]

1. Opening Price Point ("OPP") playards are the least expensive playards, generally priced between from $49 to $119 at the retail level.[81]

2. Mid Price Point ("MPP") playards are generally priced between from $120 to $149-$159 at the retail level.[82]

3. High Price Point ("HPP") playards are the most expensive playards, generally priced at $149-$159 and above per unit at the retail level.[83]

Jeffrey Meyer, Baby Trend's Vice President of Sales, had a different view of the

prices retailers charge at the various tiers for playards. Specifically:

1. Opening Price Point ("OPP") playards start at $49.

2. Mid Price Point ("MPP") playards range from $79 - $99.

3. High Price Point ("HPP") playards are anything over $100.[84]

Baby Trend's curved leg playards currently available in the market are all

offered within the HPP segment of the playard market as Baby Trend currently does

not offer any curved leg playards in either the OPP or MPP segments of the market.[85]  I

understand that Baby Trend's straight leg playards currently offered in the market are

priced below $100 per unit at the retail level while Baby Trend's curved leg playard

products currently available in the market are priced between $149 and $179 per unit

at the retail level.[86]  A November 2005 e-mail from Jeffrey Meyer to Baby Trend

personnel provides a "recap of the BRU meeting on 11/15/06." Mr. Meyer's email

---

[80] Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pgs. 132-133 and 138-139.
[81] Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pgs. 132-133 and 138-139.
[82] Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pgs. 132-133 and 138-139.
[83] Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pgs. 132-133 and 138-139.
[84] Deposition of Jeffrey Meyer, dated October 6, 2011, pg. 69.
[85] Deposition of Jeffrey Meyer, dated October 6, 2011, pg. 96.
[86] Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pgs. 297-301.

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

crystallizes the relationship between curved legs and retail price when Mr. Meyer states that "all playards over $99.99 must have electronics and curved legs."[87]

According to Baby Trend's produced documents and its corporate witness deponents, OPP products are sold in Wal-Mart retail stores, MPP products are sold at either Wal-Mart, Target or Toys 'R' Us, and HPP products are sold at Target, Toys 'R' Us, Walmart.com, Target.com, Amazon.com, and in specialty stores.[88]  Additionally, I understand that there are a finite number of product placements or offerings within a given retailer.[89]  For example, retailers, such as Toys 'R' Us, carry a certain number of playards in the OPP segment, a certain number of playards in the MPP segments, and a certain number of playards in the HPP segment.[90]  Generally, each category of products within a retailer is dedicated a certain amount of space, referred to as "slots."[91]  The correlation of products and slots available for sale in a given category is one-to-one, meaning that one product represents one slot.[92]  Thus, each slot that is filled with one company's product represents one less product that will be offered for sale by a competitor.

8. **Baby Trend's Approach to the Playard Market**

I understand that Baby Trend does not conduct any market studies or consumer studies with respect to its playard products.[93]  According to Jeffrey Meyer, Baby Trend's Vice President of Sales, "typically what I would do is go into a retail

---

[87] Plaintiff's Deposition Exhibit 208 (BT_GCP002171-BT_GCP002173 at BT_GCP002172).
[88] Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pgs. 134-135.
[89] Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pg. 155.
[90] Deposition of Jeffrey Meyer, dated October 6, 2011, pg. 71.
[91] Deposition of Michael Magee, dated September 15, 2011, pg. 104.
[92] Deposition of Michael Magee, dated September 15, 2011, pg. 104.
[93] Deposition of Jeffrey Meyer, dated October 6, 2011, pg. 86; Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pg. 117.

Page 23 of 31

Exhibit 2
- 45 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

store, evaluate what they have, and then make an assessment" of competitive products to determine whether or not Baby Trend products are competitive from a price and feature standpoint.[94] Mr. Meyer stated that one of his objectives as Baby Trend's Vice President of Sales is "primarily to expand placement" of Baby Trend's products, meaning adding a Baby Trend product to a retailer.[95] Mr. Meyer commented that Baby Trend would expand its product placement at retailers by offering "more value" than the competition, which could be in the form of offering retailers either more features or a better margin over a competing product.[96] Mr. Meyer further commented, "I think Graco does not offer the same value as Baby Trend" because Baby Trend "can offer similar value at lower retail price points for lower selling cost."[97] In response to a question asking under what circumstances Baby Trend would incorporate features into its products, Mr. Meyer testified that Baby Trend "would evaluate the marketplace, evaluate the price points that are out there, do a cost analysis on determining whether or not the product lined up with the competition would be competitive."[98] Regarding the impact of price in determining what features Baby Trend incorporates into its products Mr. Meyer stated "we would look at what we can do to, you know, incorporate that feature into our product, and then we would cost it out and see where it would – where we would project it to be positioned in the marketplace, and then make a determination on whether or not it makes sense to proceed."[99]

---

[94] Deposition of Jeffrey Meyer, dated October 6, 2011, pg. 86.
[95] Deposition of Jeffrey Meyer, dated October 6, 2011, pgs. 15 and 117.
[96] Deposition of Jeffrey Meyer, dated October 6, 2011, pg. 118.
[97] Deposition of Jeffrey Meyer, dated October 6, 2011, pg. 128.
[98] Deposition of Jeffrey Meyer, dated October 6, 2011, pgs. 137-138.
[99] Deposition of Jeffrey Meyer, dated October 6, 2011, pg. 137.

CONFIDENTIAL — OUTSIDE COUNSEL ONLY

Additionally, Baby Trend performs little to no advertising directed to consumers.  According to Bradley Mattarocci, Baby Trend's Vice President and General Manager, Baby Trend offers "very, very little" advertising directed to consumers and spent approximately $50,000 in 2010, "probably half of that" in 2009, and the "same or less" in 2008.[100]

### 9.  <u>Competition Between Graco and Baby Trend</u>

Based on my review of documents produced by the parties in this case and discussions with Graco representatives, I understand that competition within the market for playards is significant and that Graco and Baby Trend have been competitors for sales of playards for many years.  For example in a 2004 document titled RPA Visit, Graco identified Baby Trend (among others) as a competitor.[101]  Additionally, Consumer Reports includes Graco and Baby Trend in its listing of "Play Yard Brands."[102]

Based on my review of documents produced in this case and my discussions with Graco personnel, I understand that Graco and Baby Trend have directly competed for sales of playards at Babies 'R' Us, Toys 'R' Us, Wal-Mart and Target among others.[103],[104]  Indeed, Baby Trend's Vice President of Sales considers Graco to be more of a threat at Babies 'R' Us than the other competitor he identified, Cosco.[105]

---

[100] Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pgs. 109-110.
[101] GRACO00003131 – GRACO00003198.
[102] www.consumerreports.org.
[103] GRACO00003131 – GRACO00003198.
[104] Based on my analysis, I have determined that Graco's largest customer's for its patented playards include Babies 'R' Us, Target, Toys 'R' Us, and Burlington Coat Factory.  For the period from 2004 through 2010, these four customers accounted for over ▮ of Graco's total unit sales of its patented playards.  See Schedule 8.
[105] Video of Jeffrey Meyer deposition, at 2:36 pm – 2:38 pm.

Page 25 of 31

Exhibit 2
- 47 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

Baby Trend's largest customers in terms of sales are Babies 'R' Us/Toys 'R' Us, Target, and Wal-Mart.[106] ███████████████████████████████████████

███████████████████████████████████████████

████ Babies 'R' Us/Toys 'R' Us and Target accounted for 67% of Graco's total playard sales in 2010, and Babies 'R' Us/Toys 'R' Us was the largest customer of playard products for Graco (See Schedule 7).

     As a result of this marketplace competition, I understand that Graco's category strategy for playards has included the creation of innovative products to meet identified consumer needs.[108]

     In a document, identifying its competitors, Graco regarded Baby Trend as a "[f]ast follower."[109]  Baby Trend's produced documents, including email correspondence between Baby Trend personnel and their manufacturers, appear to support this assertion.  For example, in a February 15, 2002 email from Evelyn Chen to various Baby Trend personnel and/or Baby Trend manufacturers, Ms. Chen stated ████████████████████████████████████████████████████

████████████████████████████████  Additionally, in an email dated, June 16, 2004, from Ben Chen to various Baby Trend personnel, Mr. Chen stated, ████████

████████████████████████  Further, in an email dated January 6, 2006, containing the subject: ███████████████████████████ Robert Chao instructs

---

[106] Deposition of Jeffrey Meyer, dated October 6, 2011, pg. 111; Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pg. 57.
[107] Deposition of Jeffrey Meyer, dated October 6, 2011, pg. 114; Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pgs. 106-109. Baby Trend does not distinguish between Babies 'R' Us and Toys 'R' Us for purposes of tracking sales.  See Deposition of Bradley Mattarocci, Volume I, dated October 4, 2011, pg. 101.
[108] GRACO00003270 – GRACO00003275.
[109] GRACO00003131 – GRACO00003198.
[110] BT_GCP002126.
[111] BT_GCP002228.

Page 26 of 31

Exhibit 2
- 48 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

various Baby Trend personnel that ████████████████████████████████████

████████████████████████████████████████████████████████████ In

another email dated August 8, 2006, with the subject line description as: ██████████

Playard," Richard Lu states, ████████████████████████████████████████

██████████████ Further, in an email from Jeff Meyer to Baby Trend personnel/

manufacturers Mr. Meyer states ████████████████████████████████████████

My understanding is that "Wave" was Graco's internal name for its curved-leg

playards.

Notably, Baby Trend considered the curved leg feature of Graco's Silhouette™

playard in the development of its curved leg playard product.  Examples

demonstrating Baby Trend's intent to follow Graco's styling are presented below:

- In a May 7, 2003 email from Chip Whalen to Denny Tsai with a subject title of "new products," Mr. Whalen states ████████████████████████

████████████████████████████████████

- In an email from Denny Tsai dated May 17, 2004, Mr. Tsai stated

████████████████████████████████████████████████████

- In an email from George Lin, with the subject title ██████████████ George states ████████████

████████████████████████████████████████████████████

Derek Conrad's reply states, ████████████████████

████████████████████████████████████████████████████

---

[112] BT_GCP002174 – BT_GCP002175.
[113] BT_GCP002218 – BT_GCP002219.
[114] BT_GCP002197 – BT_GCP002199.
[115] BT_GCP002632.
[116] BT_GCP002212.

Page 27 of 31

Exhibit 2
- 49 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

███████████████████████████████████████████

Based on my review of the information produced by the parties thus far and

my discussions with the Plaintiff's industrial design expert, Mr. Robert Anders, I am

unaware of any acceptable non-infringing substitutes for Graco's patented playards.

10.    **Impact of Baby Trend's Sales of the Accused Playards**

The accused playards have allowed Baby Trend to offer a full line of products

within the HPP segment of the playard market.[118]  Further, Baby Trend has benefited

from its sales and profits of the accused curved leg playard products.  For example,

over the period from 2009 through mid 2011, ████████████████████████████

████████████████████████████████████████████████

████████████████████ See Schedules 4F and 5.  Further, Baby Trend's

curved leg playard products ███████████████████████████████████████

████████████████████████████████████████████████

For example, from 2009 through mid 2011, ██████████████████████

████████████████████████████████████████████████████

████████████████████ See Schedules 4F and 5.

████████████████████████████████

---

[117] BT_GCP002530.
[118] Michael Magee, Graco's Vice President of Sales from 2007 to 2011, testified that Graco' sales
of playard products increased incrementally when it began offering curved leg playards.
According to Mr. Magee, "if you looked at the sales for the period prior to introducing that
product [curved leg playards] to the market, and looked by customer, you see incrementality of
adding curved legs." Deposition of Michael Magee, dated September 15, 2011, pgs. 99-100.
[119] Michael Magee, Graco's Vice President of Sales from 2007 to 2011 ████████████████
████████████  Deposition of Michael Magee, dated September 15, 2011, pgs. 40-41.

Page 28 of 31

Exhibit 2
- 50 -

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

Further, Michael Magee, Graco's Vice President of Sales over the period from 2007 to 2011, testified that Baby Trend was the only competitive curved leg playard product in competition with Graco and that Graco lost curve leg playard slots to Baby Trend.[120,121] According to Mr. Magee, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████ This is consistent with the testimony of Baby Trend's Vice President of Sales, Jeffrey Meyer, who testified that Graco is a competitor of Baby Trend in the market for playard sales and that "...Graco does not offer the same value as Baby Trend" because Baby Trend "can offer similar value at lower retail price points for lower selling cost."[123]


**11. Baby Trend's Profits from Sales of the Accused Playard Products**

As discussed previously, Defendant's profits are measured as the amount of profit generated from sales of the allegedly infringing products at issue. A calculation of Defendant's profit considers the total sales of products alleged to infringe the asserted patent and deducts an accounting of the specific costs incurred in bringing the product(s) to market.

---

[120] Deposition of Michael Magee, dated September 15, 2011, pgs. 81-83 and 104-105.
[121] Melissa Wolf, Senior Development Manager for High Chairs and Playards at Graco, stated in her deposition that she was not aware of any other company making a curved leg playard other than Baby Trend that would compare to Graco's curved leg playards. See the Deposition of Melissa Wolf, dated September 21, 2011, pg. 65.
[122] Deposition of Michael Magee, dated September 15, 2011, pgs. 104-107.
[123] Deposition of Jeffrey Meyer, dated October 6, 2011, pgs. 125–126, 128.

**Exhibit 2**
**- 51 -**

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

See Schedule 3A).[124]  Baby Trend's sales associated with these units total approximately              (See Schedule 3A).[125]  Additionally, during the same period, Baby Trend's costs associated with the accused products at issued total approximately              See Schedule 3B).[126]  Thus, over the period from October 9, 2009 through July 29, 2011, I have calculated Baby Trend's resulting profit from sales of the accused products at issue to be approximately              (See Schedule 3).[127]

I understand that documents produced by Baby Trend as of the date of this report include certain financial information related to the period from 2005 through July 29, 2011.  I understand that Baby Trend has continued to make sales of the accused products since July 29, 2011.  As such, in the event that additional relevant financial information is produced, and as my analysis is ongoing, I may update, modify or amend my calculations of Baby Trend's sales, costs, and profits to include information covering the period through the date of trial, as appropriate.

In addition, I may continue my review and analyses of information produced as part of this case, and thus, reserve the right to update, adjust, modify or amend my conclusions and calculations accordingly.

---

[124] I understand that October 9, 2009 is the starting point for any damages calculations in this case.
[125] I understand that October 9, 2009 is the starting point for any damages calculations in this case.
[126] Betty Tsai, President and co-owner of Baby Trend, and the employee responsible for accounting, testified that Baby Trend does not allocate overhead costs to its products. Additionally, Ms. Tsai testified that she does not know whether Baby Trend has costs that it considers fixed in nature and costs that it considers variable in nature.  Deposition of Betty Tsai, dated October 3, 2011, pgs. 25, 184-187, 196.
[127] I am not aware of any additional cost information made available by Baby Trend in this matter.

Page 30 of 31

Exhibit 2

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

### 12. Other Issues

This report represents my analysis, opinions and conclusions at this time and is based on information available to me as of the report date. The citations to documents listed in this outline are illustrative, and as part of my analysis, I have also considered the additional documents and information listed on Schedule 2. Should Baby Trend put forth an analysis relating to its opinion of appropriate costs and deductions to arrive at its profits from the sale of the accused products, I may supplement this report to respond as necessary. Further, I may consider additional documents and information from publicly available sources as well as documents provided through the ongoing discovery process. If additional relevant information or testimony becomes available to me, I may supplement, revise or amend my analysis, opinions and conclusions, and thus reserve the right to modify or supplement this outline as necessary.

I may also testify at trial regarding any related matter raised by either party after the date of this report, if asked to do so by the Court or the parties' attorneys. Further, I may be asked to develop demonstratives for trial purposes related to my analysis, opinions and conclusions. I may also be asked to calculate prejudgment interest based on a final award of damages at trial. This report has been prepared in connection with the above referenced matter and is not to be used for any other purpose.

**Exhibit 2**
**- 53 -**

Schedule 1

# W. Todd Schoettelkotte, CPA, CVA

Managing Director, Forensic and Litigation Consulting

1001 Fannin, Suite 1400
First City Tower
Houston, TX 77002
Tel: (713) 353-5406
Fax: (713) 353-5459

**Certifications**
Certified Public
Accountant, Texas

Certified Valuation Analyst

**Professional Affiliations**
Guest Lecturer – Chicago
Kent, College of Law,
"Strategies in Intellectual
Property"
Spring 2004 – 2010

State Bar of Texas
Grievance Committee,
Committee Member, 2004 -
2009

Federal Bar Association,
South Texas Chapter,
Treasurer, 2007 – Present

**Associations**
American Institute of
Certified Public
Accountants

Texas Society of Certified
Public Accountants

Licensing Executives
Society

National Association of
Certified Valuation Analysts

**Education**
TX Masters in Accounting,
Rice University, Houston

BS Management, Rice
University, Houston

W. Todd Schoettelkotte is a Managing Director in the FTI Consulting Forensic and Litigation Consulting practice. Mr. Schoettelkotte has significant experience assisting companies with complex financial accounting and litigation issues in a variety of industries. He specializes in valuation and economic damages matters and has provided damage assessments for companies relating to intellectual property issues including patents, trademarks, copyrights and trade secrets. He has conducted numerous complex studies involving lost profits, reasonable royalty and unjust enrichment. His experience includes financial analysis related to damage assessments involving breach of contract, business interruption and valuation. Mr. Schoettelkotte is a Certified Public Accountant and a Certified Valuation Analyst.

Mr. Schoettelkotte has more than 15 years of experience as a consultant involved in a variety of litigation matters and disputes. He has testified at trial, prepared expert reports for trial proceedings, issued findings on matters under arbitration and has documented analyses and conclusions for a variety of disputes and non-litigation matters. He has led several large projects involving the analysis, organization and review of large document productions. Mr. Schoettelkotte has assisted companies and law firms in the identification of relevant financial information, developed damage alternatives and related case strategies and interacted with other experts and company personnel.

## Industry Experience

Mr. Schoettelkotte has significant experience in providing financial consulting services relating to valuation, financial analysis and damage analysis in the following industries:

- Automotive/Transportation
- Biotechnology
- Chemical
- Computer Software
- Consumer Products
- Electronics
- Healthcare/Medical Products
- Internet
- Oil and Gas
- Telecommunications



**CRITICAL THINKING
AT THE CRITICAL TIME`**

**Exhibit 2**

W. Todd Schoettelkotte

## Testimony Experience

*Texas Printing, Inc. and TSD Texas Sign and Display Inc. v. Graphic Communications Union Number 71-M, Communications Workers of America, Printing Sector, Local 6222, and Allied Printing Trades Council*, U.S. District Court, Southern District of Texas, Houston Division, Expert Report

*In the Matter of the Arbitration Between John McCormick v. Insource Technology Corp. f/k/a/ Insource Technology Corp. f/k/a/ Insource Management Group, Inc.*; American Arbitration Association, Houston, Texas, Trial Testimony

*Michael E. Hollomon v. O. Mustad & Son (USA), Inc., a New York Corporation*, U.S. District Court, Eastern District of Texas, Beaumont Division, Expert Report

*Alticor, Inc. v. Ultra-Sun Technologies, Inc.*, U.S. District Court, Western District of Michigan, Southern Division, Expert Report

*Blunt Wrap U.S.A., Inc. v. Royal Blunts, Inc.*, U.S. District Court, Eastern District of Louisiana, Expert Report

*Commission for Lawyer Discipline v. L. Mickele Daniels*, 333rd Judicial District, Harris County, Texas, Trial Testimony

*Dillard Department Stores, Inc. a/k/a Dillard's Inc. v. Chargois & Ernster, L.L.P*, District Court of Bowie County, Texas, Affidavit

*Source, Inc. v. Consumer First, LLC*, U.S. District Court for the Southern District of Ohio, Western Division, Expert Report

*Kevin S. Fiur and Danielle Fiur v. Martha Turner Properties, Inc., Jon M. Muckleroy and Paula Muckleroy*, U.S. District Court of Harris County, Texas, 190th Judicial District, Affidavit

*JLJ Inc. and Inliten, LLC v. Santa's Best Craft, LLC, Santa's Best, H.S. Craft Manufacturing Co., and Monogram Licensing, Inc.*, U.S. District Court for the Southern District of Ohio, Expert Report

*Whirlpool Properties, Inc. and Whirlpool Corporation v. LG Electronics U.S.A., Inc. and LG Electronics Inc.*, U.S. District Court, Western District of Michigan, Expert Report/Deposition

*James M. Nielsen, M.D., v. Advanced Medical Optics, Inc. and Allergan, Inc.*, U.S. District Court, Northern District of Texas, Dallas Division, Expert Report

*Mobility Electronics, Inc., v. Formosa Electronic Industries Inc.*, U.S. District Court, Eastern District of Texas, Affidavit, Trial Testimony

*Jonathan Manufacturing Corporation d/b/a Jonathan Engineered Solutions v. Central Industrial Supply Company*, U.S. District Court, Central District of California Southern Division, Expert Report

*Friskit, Inc., v. RealNetworks, Inc., a Washington corporation, and Listen.com, a California corporation*, U.S. District Court, Northern District of California, San Francisco Division, Expert Report, Supplemental Expert Report

*The Fresh Market, Inc. v. Marsh Supermarkets, Inc., Trademark Holdings, Inc.*, U.S. District Court, Northern District of Indiana, South Bend Division, Expert Report

*Rally Concepts, LLC v. The Spalding Group and The Republican National Committee*, U.S.



**Exhibit 2**

**- 55 -**

W. Todd Schoettelkotte

District Court, Eastern District of Texas, Texarkana Division, Rebuttal Expert Report

*Commission for Lawyer Discipline v. Joseph Onwuteaka*, 151st Judicial District Court, Harris County, Texas, Trial Testimony

*Align Technology, Inc. v. Willis J. Pumphrey, Jr., DDS, P.C., et al.*, U.S. District Court, Southern District of Texas, Houston Division, Expert Report

*Safeflight, Inc. v. Chelton Flight Systems, Inc.*, U.S. District Court, Northern District of Ohio, Expert Report

*Halliburton Energy Services, Inc.; and Halliburton Group Canada v. Packers Plus Energy Services, Inc., et al.*, District Court of Midland County, Texas, 238th Judicial District, Affidavit

*Seirus Innovative Accessories, Inc. v. Do-Gree Fashions Ltd.*, U.S. District Court, District of Utah, Expert Report

*Christopher D. Earnhardt v. The Martin-Brower Company, LLC*, District Court for Montgomery County, Texas, 284th Judicial District, Expert Report

*George & Company LLC v. Imagination Entertainment Limited, Imagination Holdings Pty Ltd., and Imagination DVD, Inc.*, U.S. District Court, Eastern District of Virginia, Alexandria Division, Rebuttal Expert Report

*John Blackmer d/b/a John Blackmer Photography v. Shadow Creek Ranch Development Company Limited Partnership, Shadow Creek Ranch Marketing Program Coordinator, LLC, David Goswick, and Goswick & Associates, Inc.*, U.S. District Court for the Southern District of Texas, Expert Report

*Herman Miller, Inc. v. Teknion Corporation and Okamura Corporation*, U.S. District Court for the Northern District of Illinois, Eastern Division, Expert Report, Supplemental Expert Report, Reply Report, Deposition

*Charles R. McCord v. Atrium Companies, Inc.*, County Court No. 3 of Dallas County, Texas, Expert Report, Deposition (2), Trial Testimony

*McKesson Automation, Inc. v. Translogic Corporation, and Swisslog Italia, S.p.A.*, U.S. District Court, District of Delaware, Expert Report, Supplemental Expert Report, Deposition, Second Supplemental Expert Report

*Alliance Packaging, LLC v. Smurfit-Stone Container Corporation and Altivity Packaging, LLC*, U.S. District Court, Western District of Washington at Seattle, Expert Report, Deposition

*Constellation IP, LLC v. FedEx Corp., et al.*, U.S. District Court, Eastern District of Texas, Texarkana Division, Expert Report, Deposition

*T-Mobile USA, Inc. v. Phones-N-Phones, Inc., et al.*, U.S. District Court, Northern District of Texas, Dallas Division, Expert Report

*Langeman Manufacturing, Ltd. v. Rhino Linings USA, Inc., et al.*, U.S. District Court, Western District of Wisconsin, Expert Report, Rebuttal Expert Report

*Paradox Security Systems, Ltd., Shmuel Hershkovitz, and Pinhas Shpater v. ADT Security Services, Inc., et al.*, U.S. District Court, Eastern District of Texas, Marshall Division, Expert Report, Rebuttal Expert Report, Deposition



W. Todd Schoettelkotte

*MOAEC, Inc. v. Pandora Media, Inc., J. River Inc., and Napster, LLC*, U.S. District Court, Western District of Wisconsin, Expert Report, Deposition

*Foboha GmbH, and Foboha US, Inc. v. Gram Technology, Inc., and Jes Gram*, U.S. District Court, Northern District of Illinois, Eastern Division, Expert Report

*ING Bank, and ING Direct Bancorp v. The PNC Financial Services Group, Inc., PNC Bank, National Association, and PNC Bank, Delaware*, U.S. District Court, District of Delaware, Expert Report, Deposition

*Crane Co., v. Sandenvendo America, Inc. and Royal Vendors, Inc.*, U.S. District Court, Eastern District of Texas, Marshall Division, Expert Report, Deposition

*BarTex Research L.L.C. v. FedEx Corporation et al.*, U.S. District Court, Eastern District of Texas, Tyler Division, Expert Report

*Bascom Global Internet Services v. AOL, LLC, et al.*, U.S. District Court, Eastern District of New York, Expert Report, Deposition

*James M. Nielsen, M.D. v. Alcon, Inc. and Alcon Laboratories, Inc.*, U.S. District Court, Northern District of Texas, Dallas Division, Expert Report

*Jorge G.Z. Calixto v. Watson Bowman Acme Corp.*, U.S. District Court, Southern District of Florida, Fort Lauderdale Division, Rebuttal Expert Report

*Hoffa, Inc., v. Wayne Patrick Bond*, U.S. District Court of Harris County, Texas, 151st Judicial District, Expert Report, Deposition

*Shell Trademark Management B.V. and Shell Oil Company v. Warren Unilube, Inc., and Warren Oil Company, Inc.*, U.S. District Court, Southern District of Texas, Houston Division, Expert Report, Supplemental/Rebuttal Expert Report, Deposition

*International Development LLC v. Simon Nicholas Richmond and Adventive Ideas, LLC*, U.S. District Court For The District of New Jersey, Deposition

In the Matter of *Certain Electronic Devices with Image Processing Systems, Components Thereof, and Associated Software*, U.S. International Trade Commission Washington, D.C., Deposition, Rebuttal Expert Report, Trial Testimony

**Articles and Presentations**

"What is Discoverable and Admissible for Damages, Willfulness and Other Purposes", Intellectual Property Owners Association, March 21, 2011

Damages, Part II: "Litigation Strategies" – 15th Annual Advanced Patent Law Institute - University of Texas School of Law, October 28-29, 2010

"IP Damages and Valuation", Global Intellectual Property Management, Georgetown University Law Center, July 2, 2008

"Advanced Evidence and Discovery – Working With Experts From Start To Finish" – Texas Bar Association, April-May 2006

"Trademarks – Financial Disclosure and Corporate Governance" – International Trademark Association, Emerging Issues in Trademark Law Forum, February 2-3, 2006



Exhibit 2
- 57 -

W. Todd Schoettelkotte

"Valuation of IP – A Licensing Perspective" – Lighthouse Seminar Group, IP Licensing Nuts & Bolts, March 3, 2005

"Measuring the Value of Damages in Trademark Infringement Claims" – DuPont's 18th Annual CLE Intellectual Property Law Seminar, October 12, 2004

"Measuring the Value of Damages in Patent and Trademark Claims" – Houston CPA Society, September 2004

"Measuring Damages in Trademark Infringement and Related Claims in Light of Recent Court Decisions" – The 19th Annual Intellectual Property Law Conference – American Bar Association, April 1, 2004

"Intellectual Property Damages: Patents & Trademarks" – Houston CPA Society "Litigation and Valuation Services Committee", January 28, 2004

Co-Author: "Accounting for Attorneys" – University of Oregon School of Law, November 12, 2003

"What are the Financial Stakes in Litigation? What are the Costs and the Return on Investment (ROI) That Can Be Expected? The Question of Intangible Returns?" – 2003 Fourth International Conference on Intellectual Property by CNCPI, October 7, 2003, Paris, France

"Current Issues in the Analysis of Reasonable Royalties in Patent Infringement Actions" – 2003 Licensing Executives Society Annual Meeting, September 24, 2003

Co-Author FTI Consulting Training Course: "Calculating Damages in Patent Infringement – A Lost Profits and Reasonable Royalty Case Study", July 17, 2003

**Prior Employment**

Technology & Financial Consulting, 1999 - 2002

Arthur Andersen, 1994 - 1999



**Exhibit 2**
**- 58 -**

Graco Children's Products, Inc. vs. Baby Trend, Inc.
List of Information Considered

Schedule 2



| Baby Trend | | Graco | |
|---|---|---|---|
| Begin | End | Begin | End |
| BT_GCP000001 BT_GCP033210 | BT_GCP033163 | GRACO0000001 | GRACO0003894 |

**Legal Documents**

Discovery Matter: Joint Stipulation Regarding the DirecTV Group, Inc.'s Motion to Compel Further Responses to Interrogatories, dated February 2, 2008
Civil Minutes-General in *Phoenix Solutions, Inc., v. The DirecTV Group, Inc.*, dated February 18, 2009
Joint Stipulation Re Ty's Motion to Compel Complete Answers to Interrogatories, dated June 3, 2010
Civil Minutes-General in *Aurora World, Inc v. Ty Inc.*, dated June 21, 2010
Complaint for Patent Infringement, filed August 9, 2010
Initial Standing Order for Cases Assigned to Judge Josephine Staton Tucker, dated August 17, 2010
Answer to Complaint for Patent Infringement and Counterclaims, dated October 13, 2010
Plaintiff's Answer to Defendant Baby Trend, Inc.'s Counterclaims, dated November 8, 2010
Joint Rule 26(f) Report, dated December 27, 2010
Order on Jury Trial, dated January 3, 2011
Order Vacating Scheduling Conference and Setting Case Management Dates, dated January 3, 2011
Initial Disclosures of Baby Trend, Inc. [F.R.C.P. 26(a)(1)], dated January 21, 2011
Plaintiff Graco Children's Products Inc.'s Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26, dated January 21, 2011
Plaintiff's First Set of Interrogatories to Defendant, dated January 31, 2011
Plaintiff's First Set of Requests for Production of Documents and Things to Defendant, dated January 31, 2011
Plaintiff Graco Children's Products Inc.'s Responses to Defendant Baby Trend, Inc.'s First Set of Requests for Production of Documents and Things, dated March 9, 2011
Plaintiff Graco Children's Products Inc.'s Responses to Defendant Baby Trend, Inc.'s First Set of Interrogatories to Plaintiff Graco, dated March 9, 2011
Defendant Baby Trend, Inc.'s Response to Interrogatories, Set One, dated April 6, 2011
Defendant Baby Trend, Inc.'s Response to Plaintiff's First Set of Requests for Production of Documents and Things, dated April 6, 2011
Letter to Deborah S. Mallgrave from Cecilia M. Andrews re: Discovery, dated June 15, 2011
Defendant Baby Trend, Inc.'s Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment; Memorandum of Points and Authorities, dated June 17, 2011
Graco's *Ex Parte* Application to Extend Graco's Time to Oppose Baby Trend's Pending Motion for Summary Judgment and to Continue the Hearing Date of Said Motion; Memorandum of Points and Authorities in Support Thereof; Declaration of Katrina M. Quicker, dated June 21, 2011
Defendant Baby Trend, Inc.'s Opposition to Graco Children's Products, Inc.'s *Ex Parte* Application to Extend Graco's Time to Oppose Baby Trend's Pending Motion for Summary Judgment and to Continue the Hearing Date of Said Motion; and Declaration of Deborah S. Mallgrave, dated June 22, 2011
Order Re: Graco's *Ex Parte* Application to Extend Graco's Time to Oppose Baby Trend's Pending Motion for Summary Judgment and to Continue the Hearing Date of Said Motion, dated June 23, 2011
Email to Katrina M. Quicker from Deborah S. Mallgrave re: Discovery, dated June 28, 2011
Email to Deborah S. Mallgrave from Katrina M. Quicker re: Discovery, dated June 30, 2011
Letter to Deborah S. Mallgrave from Katrina M. Quicker re: Discovery, dated June 30, 2011
Plaintiff's First Set of Requests for Admission to Defendant, dated July 6, 2011
Letter to Katrina M. Quicker from Deborah S. Mallgrave re: Discovery, dated July 8, 2011
Declaration of Katrina M. Quicker in Support of Joint Stipulation Re: Plaintiff Graco's Motions to Compel Discovery and Motion for Sanctions, dated July 12, 2011
Declaration of Cecilia M. Andrews in Support of Joint Stipulation Re: Plaintiff Graco's Motions to Compel Discovery and Motion for Sanctions, dated July 15, 2011
Letter to Katrina M. Quicker from Deborah S. Mallgrave re: Discovery, dated July 15, 2011
Baby Trend's Request For Judicial Notice for Joint Stipulation Re: Plaintiff Graco's Motions to Compel Discovery and Motion for Sanctions, dated July 22, 2011
Joint Stipulation Re: Plaintiff Graco's Motions to Compel Discovery and Motion for Sanctions, dated July 22, 2011
Graco's Notice of Motions and Motions to Compel Discovery and Motion for Sanctions, dated July 22, 2011
Appendix Containing Plaintiff Graco's Exhibits to Joint Stipulation Re: Plaintiff Graco's Motions to Compel Discovery and Motion for Sanctions, filed July 22, 2011
Graco's Notice of Motions and Motions to Compel Discovery and Motion for Sanctions; Declaration of Katrina M. Quicker, dated July 27, 2011
Letter to Deborah S. Mallgrave from Katrina M. Quicker re: Discovery, dated July 27, 2011
Document 56-4, Baby Trend Play Yard Review, filed July 27, 2011
Joint Stipulation Re: Plaintiff Graco's Motions to Compel Discovery and Motion for Sanctions, dated July 27, 2011
Appendix Containing Plaintiff Graco's Exhibits to Joint Stipulation Re: Plaintiff Graco's Motions to Compel Discovery and Motion for Sanctions, filed July 27, 2011
Declaration of Deborah S. Mallgrave in Support of Joint Stipulation Re: Plaintiff Graco's Motions to Compel Discovery and Motion for Sanctions, filed July 27, 2011
Rebuttal Expert Report of Carla S. Mulhern, dated October 14, 2011

Confidential Outside Counsel Only
Page 1 of 3

**Exhibit 2**
- 59 -

Graco Children's Products, Inc. vs. Baby Trend, Inc.                        Schedule 2
List of Information Considered

**Deposition and Related Exhibits**

Betty Tsai, dated October 3, 2011
Bradley Mattarocci, dated October 4 & 5, 2011
Derek Conrad, dated October 5, 2011
Jeffrey Meyer, dated October 6, 2011
Video of Jeffrey Meyer deposition, at 2:36 pm - 2:38 pm
Denny Tsai, dated October 3, 2011
Arthur Gehr, dated September 20, 2011
Josh Jacobs, dated September 14, 2011
Kerry Strezelecki, dated September 20, 2011
Melissa Wolf, September 21, 2011
Michale Magee, September 15

**Other Documents**

00278.pdf
00415.pdf
00473.pdf
00474.pdf
00501.pdf
00514.pdf
00516.pdf
00566.pdf
00568 (2).pdf
00575.pdf
00577.pdf
00606.pdf
00632.pdf
1st Annual Playard Summi_20110811111417.pdf
1st Annual Playard Summit – History
20110811150036.pdf
ack 'N Play® Silhouette Style Product Brief December 17, 2004.
Airbooster - Post and Courier 7.24.07
American Baby 10.06 Amby Awards.pdf
American Baby, October 2005 Best of Year Awards
American Baby, October 2006 Best of Year Awards.
American Baby, October 2007 Best of Year Awards
Book 3.xls
Copy of 00506 (2).pdf
Copy of 00506.pdf
Executive Summary – Graco Playards.
GRACO on Star Jones 10-18-07
GracoPnPAd.pdf
Indoor-Entertainment_M5-2 Presentation.ppt
JPMA 2006 - 00050.PDF
JPMA 2006 Summary - 00182.pdf
JPMA 2007 - 00188.pdf
JPMA 2008 - 00141.pdf
jpma 5005 - 00105.pdf
Meeting the Commercialization Challenge*; Positioning/Commercialization.
MetroLite and Pack n Play - American Baby Welcome Issue Spring-Summer 06.pdf
NA_MA_1154 Household Penetration Hero Tracker Short Deck.ppt
NA_PY_1004.pdf
NA_PY_1170_Sleep System Concepts
NA_PY_1418 FINAL REPORT.doc
NA_PY_2259 4094_001.pdf
Pack 'N Play® - 2006.
Pack 'N Play® Silhouette Style Product Brief December 17, 2014; WAVE description for TRU.
Pack n Play - American Baby 10-05 AMBY awards.pdf
Pack n Play_Pregnancy_2.pdf
PacknPlay - American Baby 10.07.pdf
Playards Additional Data v4 - Josh's Version.xls
PNP - Legal Information (v4) - C.Clapper.xls
Positioning/Commercialization.
PR - PnP Wave 10-30-04
RPA Visit.
RPA Visit_20110811111723.pdf

Confidential Outside Counsel Only
Page 2 of 3

**Exhibit 2**

Graco Children's Products, Inc. vs. Baby Trend, Inc.                                          Schedule 2
List of Information Considered

Suite Solutions - All About Kids 7.07.pdf
Suite Solutions - FINA.doc
Suite Solutions - Nashville Parent 7.07.pdf
Suite Solutions - Parenting 2.07.pdf
Suite Solutions - Post and Courier 4.10.07.pdf
Wonderland - Purchases by Category by Year.xls
Wonderland Monthly Capacity.ppt
Graham v. John Deere Co., 383 U.S. 1, 17-18 (1996):
Demaco Corp. v. F. Langsdorff Licensing Ltd., 851 F.2d 1387, 1392-93 (Fed. Cir. 1988):
Crocs, Inc. v. International Trade Com'n, 598 F.3d 1294, 1310 (Fed. Cir. 2010)

**Expert Reports:**

Expert Report of J. Michael McCarthy, dated July 29, 2011
Expert Report of Robert Anders, dated August 10, 2011

**Discussions with Graco Personnel**

Arthur Gehr, Director – Marketing, Graco Children's Products Inc.
Joshua Jacobs, Director – Finance, Graco Children's Products Inc.
Kerry Strzelecki, Sr. Brand Manager, Graco Children's Products Inc.
Melissa Wolf, Sr. Manager – R&D, Graco Children's Products Inc.

**Discussions with Other Experts**

Robert Anders

**Publicly Available Information**

Websites:
    http://eba.benefitnews.com.
    www.babytrend.com
    www.consumerreports.org
    www.gracobaby.com
    www.hoovers.com/company/Graco_Childrens_Products_Inc
    www.jpma.org
    www.momtop10.com/babyplayyards.asp
    www.newellrubbermaid.com
    www.prweb.com
    www.rubbermaid.com
    www.uclue.com
    www.uspto.com

Articles:
    "Baby Durables Market in the United States to Reach $6.19 Billion by 2015, According to New Report by Global Industry Analysts," April 13,
    2009 from www.prweb.com
    "Best Play Yards for Baby," by Heather Corley from www.about.com
    "Keeping Your Baby Safe: How to Choose a Playard," from babyproductsexperts.com
    "Newell Rubbermaid program helps employees afford computers electronics," April 6, 2010 by Bruce Shutan
    "Newell Rubbermaid: Newell Rubbermaid's Graco Brand Delivers More Value with Convertible Products that Adapts as Kids Grow," October
    20, 2009 from Science Letter
    "Sandy Springs: Newell Rubbermaid pools its research: Company hopes combined testing will encourage innovation," June 9, 2011 from The
    Atlanta Journal-Constitution
    "The Ultimate Play Yard Buying Guide," by Kristen J. Gough from www.babyzone.com
    Baby Durables market in the United States to Reach $6.19 Billion by 2015, According to New Report by Global Industry Analysts," April 13,
    2009, www.prweb.com.
    "How are Various Sized Pack 'N Play Units Perceived, Room by Room, by Parents at Home?," dated December 4, 2006
    "How Do Consumers Use the Specialty Style Pack 'N Play and What are their Likes, Dislikes and Lifestyles?," dated July 2, 2002

Other:
    US Patent D448,218 S, dated September 25, 2001
    Newell Rubbermaid 2010 Annual Report
    Newell Rubbermaid Form 10-K for year ended December 31, 2010
    Baby Trend, Inc. profile at http://investing.businessweek.com/research
    1st Annual Playard Summit – History
    American Baby, October 2005 Best of Year Awards
    Vermont, Samson. Patent Costs and Benefits: The Economics of Litigation - Part 2
    Davis, Adrian and Lucinda Spicer. Intellectual Asset Management, An International Perspective on Brand Valuation and Management

Confidential Outside Counsel Only
Page 3 of 3

**Exhibit 2**

Graco Children's Products Inc., vs. Baby Trend, Inc.
Baby Trend's Profits on Accused Products at Issue



Notes:
1. For the period October 9, 2009 through July 29, 2011. See Schedule 3A.
2. See Schedule 3B
3. Profit calculated by subtracting Total Cost from Total Sales.

Source: BT_GCTY026199 - BT_GCTY026329, BT_GCTY026204 - BT_GCTY026322, BT_GCTY026523 - BT_GCTY026345, BT_GCTY026345, BT_GCTY050133  BT_GCTY050162

Confidential Outside Counsel Only

Exhibit 2
- 62 -

Schedule 3A

Graco Children's Products Inc., vs. Baby Trend, Inc.
Baby Trend's Sales on Accused Products at Issue



Notes:
1. For the period October 9, 2009 through July 29, 2011.
2. Unit Price calculated by dividing Total Sales by Units Sold.

Source: BT_GCY026189 - BT_GCY026203; BT_GCY026204 - BT_GCY026232; BT_GCY026233 - BT_GCY026245; BT_GCY033133 - BT_GCY033162

Confidential Outside Counsel Only

**Exhibit 2**

Schedule 3B

Graco Children's Products Inc., vs. Baby Trend, Inc.
Baby Trend's Costs on Accused Products at Issue



Notes:
1. See Schedule 3A.
2. Unit Cost based on average Unit Price by Item No. from 2005 through July 29, 2011. See Schedule 4D.
3. Total Cost calculated by multiplying Units Sold by Unit Cost.
4. For the period October 9, 2009 through July 29, 2011.

Source: BT_CCP026189 - BT_CCP026203; BT_CCP026204 - BT_CCP026232; BT_CCP026233 - BT_CCP026245; BT_CCP033133 - BT_CCP033162

Confidential Outside Counsel Only

Exhibit 2
- 64 -

Schedule 4

Graco Children's Products Inc., v.s Baby Trend, Inc.
Units Sold - Baby Trend Curved Leg Playards



Notes:

1. For the period 2005 through July 29, 2011.

Source: BT_GCP026189 - BT_GCP026204; BT_GCP026203; BT_GCP026204 - BT_GCP026232; BT_GCP026233 - BT_GCP026245; BT_GCP033133 - BT_GCP033162

Confidential Outside Counsel Only

Exhibit 2
- 65 -

Schedule 4A

Graco Children's Products Inc., v.s Baby Trend, Inc.
Unit Price - Baby Trend Curved Leg Playards



Notes:
1. Unit Price calculated by dividing Total Sales by Units Sold.  See Schedules 4 & 4B.
2. For the period 2005 through July 29, 2011.

Source: BT_GCP026189 - BT_GCP026203; BT_GCP026204 - BT_GCP026232; BT_GCP026232; BT_GCP026233 - BT_GCP026245; BT_GCP033133 - BT_GCP033162

Confidential Outside Counsel Only

Exhibit 2
- 66 -

Schedule 4B

Graco Children's Products Inc. v.s Baby Trend, Inc.
Total Sales - Baby Trend Curved Leg Playards



Confidential Outside Counsel Only

Notes:
1. For the period 2005 through July 29, 2011.

Source: BT_GCP026189 - BT_GCP026193; BT_GCP026203; BT_GCP026204 - BT_GCP026232; BT_GCP026232; BT_GCP026233 - BT_GCP026245; BT_GCP033133 - BT_GCP033162

Exhibit 2
- 67 -

Schedule 4C

Graco Children's Products Inc., v.s Baby Trend, Inc.
Units Purchased from Manufacturer - Baby Trend Curved Leg Playards



Confidential Outside Counsel Only

Notes:
1. For the period 2005 through July 29, 2011.

Source: BT_GCP026189 - BT_GCP026203; BT_GCP026204 - BT_GCP026232; BT_GCP026233 - BT_GCP026245; BT_GCP033133 - BT_GCP033162

Exhibit 2
- 68 -

Schedule 4D

Graco Children's Products Inc., v.s Baby Trend, Inc.
Cost Price - Baby Trend Curved Leg Playards



Notes:
1. Unit Cost calculated by dividing Total Cost by Units Purchased from Manufacturer.  See Schedules 4C & 4E.
2. For the period 2005 through July 29, 2011.

Source: BT_GCP026189 - BT_GCP026203; BT_GCP026204 - BT_GCP026232; BT_GCP026233 - BT_GCP026245; BT_GCP033133 - BT_GCP033133 - BT_GCP033162

Confidential Outside Counsel Only

Exhibit 2
- 69 -

Schedule 4E

Graco Children's Products Inc., v.s Baby Trend, Inc.
Total Cost - Baby Trend Curved Leg Playards



Notes:
1. For the period 2005 through July 29, 2011.

Source: BT_GCP026189 - BT_GCP026203; BT_GCP026204 - BT_GCP026232; BT_GCP026233 - BT_GCP026245; BT_GCP033133 - BT_GCP033162

Confidential Outside Counsel Only

**Exhibit 2**
- 70 -

Schedule 4F

Graco Children's Products Inc., v.s Baby Trend, Inc.

Sales and Cost Information – Baby Trend's Curved Leg Playards[1]



Notes:

1. For the period January 1, 2009 through July 29, 2011.

2. See Schedule 4.

3. Unit Price calculated by dividing Total Sales by Units Sold.

4. See Schedule 4B.

5. Unit Cost based on average unit price by product from 2005 through July 29, 2011. See Schedule 4D.

6. Total Cost calculated by multiplying Units Sold by Unit Cost.

7. Profit calculated by subtracting Total Cost from Total Sales.

Source: BT_GCP026189 - BT_GCP026203; BT_GCP026204 - BT_GCP026232; BT_GCP026233 - BT_GCP026245; BT_GCP033133 - BT_GCP033162

Confidential Outside Counsel Only

Exhibit 2
- 71 -

Schedule 5

Graco Children's Products Inc., v.s Baby Trend, Inc.

Sales and Cost Information - Baby Trend Straight Leg Playards[7]



Notes:

1. See Schedule 5A.

2. Calculated by dividing Total Sales by Units Sold.

3. See Schedule 5C.

4. Unit cost based on average Unit Price by Item No. from January 1, 2004 through July 31, 2011. See Schedule 5E.

5. Total Cost calculated by multiplying Units Sold by Unit Cost.

6. Profit calculated by subtracting Total Cost from Total Sales.

7. For the period January 1, 2009 through July 31, 2011.

Source: BT_GCP033210; BT_GCP033163

Confidential Outside Counsel Only

Exhibit 2
- 72 -

Schedule 5A

Graco Children's Products Inc., v.s Baby Trend, Inc.
Units Sold - Baby Trend Straight Leg Playards



Confidential Outside Counsel Only

Notes:
1. Through July 31, 2011.

Source: BT_GCP033210; BT_GCP033163

Exhibit 2
- 73 -

Schedule 5B

Graco Children's Products Inc., v.s Baby Trend, Inc.
Unit Price - Baby Trend Straight Leg Playards

Confidential Outside Counsel Only

Notes:
1. Through July 31, 2011.

Source: BT_GCP033210; BT_GCP033163

Exhibit 2
- 74 -

Schedule 5C

Graco Children's Products Inc., v.s Baby Trend, Inc.
Total Sales - Baby Trend Straight Leg Playards



Notes:
1. Total Sales calculated by multiplying Unit Sold by Unit Price.
2. Through July 31, 2011.

Source: BT_GCP033210; BT_GCP033163

Confidential Outside Counsel Only

Exhibit 2
- 75 -

Schedule 5D

Graco Children's Products Inc., v.s Baby Trend, Inc.
Units Purchased from Manufacturer - Baby Trend Straight Leg Playards

Confidential Outside Counsel Only

Notes:
1. Through July 31, 2011.

Source: BT_GCP033210; BT_GCP033163

Exhibit 2
- 76 -

Schedule 5E

Graco Children's Products Inc., v.s Baby Trend, Inc.
Unit Cost - Baby Trend Straigh Leg Playard



Notes:
1. Through July 31, 2011.

Source: BT_GCP003210; BT_CCP003163

Confidential Outside Counsel Only

Exhibit 2
- 77 -

Schedule 5F

Graco Children's Products Inc., v.s Baby Trend, Inc.
Total Cost - Baby Trend Straight Leg Playard



Notes:
1. Total Cost calculated by multiplying Units Purchased from Manufacturer by Unit Cost.
2. Through July 31, 2011.

Source: BT_GCP033210; BT_GCP033163

Confidential Outside Counsel Only

Exhibit 2
- 78 -

Schedule 6

Graco Children's Products Inc., vs. Baby Trend, Inc.
Financial Analysis - Graco Playards at Issue



Confidential Outside Counsel Only
Page 1 of 11

Exhibit 2

Schedule 6

Graco Children's Products Inc, vs. Baby Trend, Inc.
Financial Analysis - Graco Playards at Issue

Confidential Outside Counsel Only
Page 2 of 11



Exhibit 2
- 80 -

Schedule 6

Graco Children's Products Inc., vs. Baby Trend, Inc.
Financial Analysis - Graco Playards at Issue

Confidential Outside Counsel Only
Page 3 of 11



Exhibit 2
- 81 -

Schedule 6

Graco Children's Products Inc., vs. Baby Trend, Inc.
Financial Analysis – Graco Playards at Issue



Confidential Outside Counsel Only
Page 4 of 31

Exhibit 2

- 82 -

Schedule 6

Graco Children's Products Inc., vs. Baby Trend, Inc.
Financial Analysis - Graco Playards at Issue



Confidential Outside Counsel Only
Page 5 of 11

Exhibit 2

- 83 -

Schedule 6

Graco Children's Products Inc., vs. Baby Trend, Inc.
Financial Analysis - Graco Playards at Issue



Confidential Outside Counsel Only
Page 6 of 11

Exhibit 2
- 84 -

Schedule 6

Graco Children's Products Inc., vs. Baby Trend, Inc.
Financial Analysis - Graco Playards at Issue



Confidential Outside Counsel Only
Page 7 of 11

Exhibit 2
- 85 -

Schedule 6

Graco Children's Products Inc., vs. Baby Trend, Inc.
Financial Analysis - Graco Playards at Issue

Confidential Outside Counsel Only
Page 8 of 11



**Exhibit 2**

Schedule 6

Graco Children's Products Inc., vs. Baby Trend, Inc.
Financial Analysis - Graco Playards at Issue



Confidential Outside Counsel Only
Page 9 of 11

Exhibit 2
- 87 -

Schedule 6

Graco Children's Products Inc., vs. Baby Trend, Inc.
Financial Analysis - Graco Playards at Issue



Confidential Outside Counsel Only
Page 10 of 11

Exhibit 2

- 88 -

Schedule 6

Graco Children's Products Inc., vs. Baby Trend, Inc.
Financial Analysis - Graco Playards at Issue



Confidential Outside Counsel Only
Page 11 of 11

**Exhibit 2**
**- 89 -**

Schedule 7

Graco Children's Products Inc., vs. Baby Trend, Inc.
Sales by Customer - Graco Playards at Issue

Confidential Outside Counsel Only



Exhibit 2
- 90 -

Schedule 8

Graco Children's Products Inc., vs. Baby Trend, Inc.
Units Sold by Customer - Graco Playards at Issue



Confidential Outside Counsel Only
Page 1 of 10

Exhibit 2
- 91 -

Schedule 8

Graco Children's Products Inc., vs. Baby Trend, Inc.
Units Sold by Customer - Graco Playards at Issue



Confidential Outside Counsel Only
Page 2 of 10

Exhibit 2
- 92 -

Schedule 8

Graco Children's Products Inc., vs. Baby Trend, Inc.
Units Sold by Customer – Graco Playards at Issue



Confidential Outside Counsel Only
Page 3 of 10

Exhibit 2
- 93 -

Schedule 8

Graco Children's Products Inc., vs. Baby Trend, Inc.
Units Sold by Customer – Graco Playards at Issue



Confidential Outside Counsel Only
Page 4 of 10

Exhibit 2
- 94 -

Schedule 8

Graco Children's Products Inc., vs. Baby Trend, Inc.
Units Sold by Customer - Graco Playards at Issue



Confidential Outside Counsel Only
Page 5 of 10

Exhibit 2
- 95 -

Schedule 8

Graco Children's Products Inc., vs. Baby Trend, Inc.
Units Sold by Customer - Graco Playards at Issue



Confidential Outside Counsel Only
Page 6 of 10

Exhibit 2
- 96 -

Schedule 8

Graco Children's Products Inc., vs. Baby Trend, Inc.
Units Sold by Customer - Graco Playards at Issue

Confidential Outside Counsel Only
Page 7 of 10



Exhibit 2
- 97 -

Schedule 8

Graco Children's Products Inc., vs. Baby Trend, Inc.
Units Sold by Customer - Graco Playards at Issue



Confidential Outside Counsel Only
Page 8 of 10

Exhibit 2
- 98 -

Schedule 8

Graco Children's Products Inc., vs. Baby Trend, Inc.
Units Sold by Customer - Graco Playards at Issue



Confidential Outside Counsel Only
Page 9 of 10

Exhibit 2
- 99 -

Schedule 8

Graco Children's Products Inc., vs. Baby Trend, Inc.
Units Sold by Customer – Graco Playards at Issue



Confidential Outside Counsel Only
Page 10 of 10

Exhibit 2
- 100 -

Schedule 9

Graco Children's Products Inc., vs. Baby Trend, Inc.
Net Sales by Customer - Graco Playards at Issue



Confidential Outside Counsel Only
Page 1 of 7

Exhibit 2
- 101 -

Schedule 9

Graco Children's Products Inc., vs. Baby Trend, Inc.
Net Sales by Customer - Graco Playards at Issue

Confidential Outside Counsel Only
Page 2 of 7



**Exhibit 2**

Schedule 9

Graco Children's Products Inc., vs. Baby Trend, Inc.
Net Sales by Customer - Graco Playards at Issue



Confidential Outside Counsel Only
Page 3 of 7

Exhibit 2
- 103 -

Schedule 9

Graco Children's Products Inc., vs. Baby Trend, Inc.
Net Sales by Customer - Graco Playards at Issue



Confidential Outside Counsel Only
Page 4 of 7

Exhibit 2

Schedule 9

Graco Children's Products Inc., vs. Baby Trend, Inc.
Net Sales by Customer - Graco Playards at Issue

Confidential Outside Counsel Only
Page 5 of 7



**Exhibit 2**
**- 105 -**

Schedule 9

Graco Children's Products Inc., vs. Baby Trend, Inc.
Net Sales by Customer - Graco Playards at Issue

Confidential Outside Counsel Only
Page 6 of 7



**Exhibit 2**

Schedule 9

Graco Children's Products Inc., vs. Baby Trend, Inc.
Net Sales by Customer - Graco Playards at Issue



Confidential Outside Counsel Only
Page 7 of 7

**Exhibit 2**
**- 107 -**

Schedule 10

Graco Children's Products Inc., vs. Baby Trend, Inc.
Graco Playard Team Research and Design Expenses



Confidential Outside Counsel Only

Exhibit 2

Schedule 11

Graco Children's Products Inc., vs. Baby Trend, Inc.
Graco Playard Team Marketing Expenses

Confidential Outside Counsel Only



Exhibit 2
- 109 -

Graco Children's Products Inc., vs. Baby Trend, Inc.                    Schedule 12
Industry Awards Received by Graco

| Product Category | Industry Awards Received by Graco |
|---|---|
| Portable Playards | Pack 'n Play® Playard |
| | Baby Talk, 2003, voted "Editor's Choice" |
| | Baby Talk, 2002, voted "Editor's Choice" |
| | Baby Talk, 2001, voted "Editor's Choice" |
| | American Baby, 1998, "Best of the Year" award |
| | American Baby, 1999, "Best of the Year" award |
| | American Baby, 2000, "Best of the Year" award – Honorable Mention |
| | American Baby, 2003, "Best of the Year" award – Honorable Mention |
| | American Baby, 2005, "Best of the Year" award – Honorable Mention |
| | American Baby, 2006, "Best of the Year" award |
| | American Baby, 2007, "Best of the Year" award |
| | Pack 'n Play Playmat Combo - Baby Talk, 2004, voted "Editor's Choice" |
| | Pack 'n Play Sport™ |
| | Baby Talk, 2004, voted "Editor's Choice" |
| | Parenting, 2004, awarded "Mom's Tested" product |
| Car Seats | SnugRide® |
| | Baby Talk, 2003, voted "Editor's Choice" |
| | Baby Talk, 2002, voted "Editor's Choice" |
| | ComfortSport™ - Baby Talk, 2003, voted "Editor's Choice" |
| | ComfortSport - Baby Talk, 2004, voted "Editor's Choice" |
| | SnugRide - Baby Talk, 2004, voted "Editor's Choice" |
| Strollers | Quattro Tour™ - Baby Talk, 2003, voted "Editor's Choice" |
| | MetroLite® - Baby Talk, 2001, voted "Editor's Choice" |
| | Leisure Sport™ - Baby Talk, 2002, voted "Editor's Choice" |
| | LiteRider® LXI - Parenting, 2004, awarded "Mom's Tested" product |
| | MetroLite® - Baby Talk, 2004, voted "Editor's Choice" |
| | DuoGlider™ - Baby Talk, 2004, voted "Editor's Choice |
| Highchairs | Harmony™ Highchair |
| | Baby Talk, 2004, voted "Editor's Choice" |
| | Parenting, 2005, voted "Mom's Tested Seal" |
| | NeatSeat™ - Baby Talk, 2001, voted "Editor's Choice" |
| | Easy Chair® - Baby Talk, 2003, voted "Editor's Choice" |
| Swings & Bouncers | Lovin' Hug™ Swing - American Baby, 2006, "Best of the Year" award |
| | Open Top™ Swing |
| | Baby Talk, 2003, voted "Editor's Choice" |
| | Baby Talk, 2001, voted "Editor's Choice" |
| | American Baby, 1998, "Best of the Year" award |
| | American Baby, 1999, "Best of the Year" award |
| | American Baby, 2000, "Best of the Year" award |
| | American Baby, 2001, "Best of the Year" award |
| | American Baby, 2002, "Best of the Year" award |
| | American Baby, 2003, "Best of the Year" award |
| | American Baby, 2004, "Best of the Year" award |
| | American Baby, 2005, "Best of the Year" award - Honorable Mention |
| | Travel Lite™ Swing - Parenting, 2004, awarded "Mom's Tested" product |
| | Travel Lite™ Bouncer |
| | Baby Talk, 2004, voted "Editor's Choice" |
| | Parenting, 2006, voted "Mom's Tested Seal" (Laura Ashley) |
| Activity Centers | 3-Way Entertainer - Baby Talk, 2002, voted "Editor's Choice" |
| | Baby Einstein® discover & play™ Activity Center |
| | Fit Pregnancy, 2005, "Editor's Choice Award" |
| | American Baby, 2006, "Best of the Year" award – Honorable Mention |

Source: www.gracobaby.com

Confidential Outside Counsel Only

Exhibit 2

Schedule 13

Graco Children's Products Inc., vs. Baby Trend, Inc.
Examples Demonstrating Baby Trend's Competitive Position Toward Graco



| Bates |
|---|
| BT_GCP002126 |
| BT_GCP002228 |
| BT_GCP002400 |
| BT_GCP002505 |
| BT_GCP002532 |
| BT_GCP002534 |
| BT_GCP002174 |
| BT_GCP002176 |
| BT_GCP002197 |
| BT_GCP002198 |
| BT_GCP002218 |
| BT_GCP002203 |

Confidential Outside Counsel Only
Page 1 of 4

Exhibit 2
- 111 -

Schedule 13

Graco Children's Products Inc., vs. Baby Trend, Inc.
Examples Demonstrating Baby Trend's Competitive Position Toward Graco

| Bates |
|---|
| BT_GCP000204 |
| BT_GCP000205 |
| BT_GCP000426 |
| BT_GCP002500 |
| BT_GCP002673 |
| BT_GCP002674 |
| BT_GCP002632 |
| BT_GCP002722 |
| BT_GCP002212 |
| BT_GCP002649 and BT_GCP002395 |
| BT_GCP002396 |

Confidential Outside Counsel Only
Page 2 of 4

Exhibit 2
- 112 -

Schedule 13

Graco Children's Products Inc., vs. Baby Trend, Inc.
Examples Demonstrating Baby Trend's Competitive Position Toward Graco

| Bates |
|---|
| BT_GCP002530 |
| BT_GCP002070 - 71 |
| BT_GCP002501 |
| BT_GCP002658 |
| BT_GCP002658 |
| BT_GCP002559 |
| BT_GCP002559 |

Confidential Outside Counsel Only
Page 3 of 4

Exhibit 2
- 113 -

Schedule 13

Graco Children's Products Inc., vs. Baby Trend, Inc.
Examples Demonstrating Baby Trend's Competitive Position Toward Graco



| Bates |
| --- |
| BT_GCP002073 |
| BT_GCP002166 |
| BT_GCP002633 - 34 |
| BT_GCP002710 |
| BT_GCP002716 |
| BT_GCP002609 |
| BT_GCP002599 |
| BT_GCP002614 |
| BT_GCP002179 |

Confidential Outside Counsel Only
Page 4 of 4

Exhibit 2
- 114 -

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is BALLARD SPAHR LLP, 2029 Century Park East, Suite 800, Los Angeles, CA  90067-2909.  On **October 21, 2011**, I served the within document:

**SUPPLEMENTAL EXPERT REPORT OF W. TODD SCHOETTELKOTTE**

☒ **BY MAIL**: by placing a true copy of the document listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below:

> J. RICK TACHÉ
> DEBORAH S. MALLGRAVE
> **Snell & Wilmer L.L.P.**
> Plaza Tower
> 600 Anton Blvd #1400
> Costa Mesa, CA  92626-7689

☒ **BY EMAIL**: I electronically served a true and correct copy of the document listed above as follows:

- **J. Rick Taché**
  (rtache@swlaw.com)
- **Deborah S Mallgrave**
  (dmallgrave@swlaw.com; dmwilliams@swlaw.com)

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on **October 21, 2011**, at Los Angeles, California.

_____
Monica Patanian

Exhibit 2

- 115 -

Exhibit 3

Exhibit 3

Exhibit 3

- 116 -

| | |
|---|---|
| **From:** | Jeff Meyer |
| **To:** | Bradley Mattarocci |
| **CC:** | Denny Tsai; Dorothy Chin; Derek Conrad; Bob Lee; Julie Lu; Irene Wang |
| **Sent:** | 1/11/2009 9:00:59 AM |
| **Subject:** | FW: Nature's Purest |
| **Attachments:** | SKMBT_C55009010512370.pdf |

This will seriously hurt our play yard sales. We will ███████████████████████████████ ██████████ The damage is already done with the release of the article. We need to discuss immediately. Our competitors are already trying to take our business. Pat wants to change ███████████████████The negative publicity hurts us at Walmart as well. JM

**From:** Filenbaum, Pat [mailto:Pat.Filenbaum@toysrus.com]
**Sent:** Saturday, January 10, 2009 2:53 PM
**To:** Jeff Meyer
**Cc:** Azar, Larry; Colombrita, Karen; Dombrowski, Suzanne
**Subject:** FW: Nature's Purest

**Hi Jeff, Please see the attached very disappointing article and respond.** ███████████████
██████████████████████ **Please advise, Pat**

================================================================

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, send an email to EmailAdmin@toysrus.com. Toys "R" Us, Inc.

CONFIDENTIAL - For Counsel Only

BT_GCP002070

Exhibit 3
- 117 -

## 2 play yards pose a risk



Some play yards, once known as playpens, come with an attachable changing table, including safety straps, to make baby care more convenient.

But in our recent safety tests, two play yards, the Baby Trend Orange Oak Deluxe Nursery Center and the Summer Infant Nature's Purest Soothing Comfort Playard, were found to pose a potential strangulation hazard to young children.

The Summer Infant Nature's Purest Soothing Comfort Playard

We judged them Not Acceptable and recommend that parents not buy those models. Our tests showed that when the table is left over the play yard contrary to manufacturer instructions, the safety straps could be manipulated through the table to the area below. If buckled, the straps could form a loop that allows a small child's head to fit through. Though the likelihood of this happening is low, there's no need to take chances; there are other play yards that don't present that kind of risk.

In response to our safety concerns, Summer Infant said in a statement that the restraint straps in the Nature's Purest Soothing Comfort Playard 64050 comply with "all applicable safety regulations as warranted by ASTM standards," and that "consumers can use this product with complete confidence." Messages seeking comment from Baby Trend were not returned.

### What you can do

If you already have one of these play yards, stop using the changing table attachment and remove it immediately.

If you plan to buy a play yard soon, consider one of our highly rated alternatives: the Chicco Lullaby LX ($160), which has a bassinet and a changing table, or the Cosco Funsport Travel ($45), a bare-bones model that has neither.

# Top TV converters

As the Feb. 17 digital-TV switchover approaches, we have found nine digital TV converter boxes that produce picture quality for over-the-air signals that rival those of a DVD. (For more on the digital-TV conversion, go to the DTV hub at ConsumerReports.org, which includes full Ratings of 31 models.)

All of the converters we tested performed comparably in their ability to pull in digital stations at our Yonkers, N.Y., location and in lab tests to see how well they handled progressively weaker signals.

The 1 Zinwell has the ability to pass through analog signals, and it has a VCR timer that will turn on and/or change the channel on the box so that your VCR can automatically record from different channels.

The 9 Channel Master is among the first to have an S-video output, which can deliver better picture quality than a composite-video or RF output. It also has analog pass-through. In addition to the models listed below, several previously tested units are worth noting. The Dish Network DTVPal, $60, has a VCR timer and analog pass-through. You can use a $40 government coupon to defray the cost of an approved converter box. Call 888-388-2009 or go to www.dtv2009.gov to request a coupon.

## Select Ratings

Best choices from our tests of 31 models in performance order.

☑ Recommended

| Recommendation | Rank | Brand & model | Price | Program guide | Aspect ratio button on remote | Easy to add new channels | Analog pass-through | Control buttons on box | VCR timer |
|---|---|---|---|---|---|---|---|---|---|
| ✓ | 1 | Zinwell ZAT-970A | $46 | basic | • | | • | • | • |
| ✓ | 2 | Tivax STB-T9 | 50 | better | • | | | • | |
| ✓ | 3 | Alpha Digital AT2016 | 55 | better | • | | • | | |
| ✓ | 4 | Sansonic FT300A | 55 | basic | • | | | • | |
| ✓ | 5 | AccessHD DTA1010D | 60 | better | • | | | • | |
| ✓ | 6 | Lasonic LTA-260 | 60 | basic | • | | | | |
| ✓ | 7 | Microgem MG2000 | 65 | better | • | | | • | |
| ✓ | 8 | Tivax STB-T8 | 65 | better | • | | • | • | |
| ✓ | 9 | Channel Master CM-7000 | 80 | better | | | • | | • |

# First look: BlackBerry Storm rumbles in

The BlackBerry Storm is the first BlackBerry with a touch screen. It also breaks new ground on a pesky touch-screen problem: sensitivity. It's easier to make mistakes on other phones with virtual keyboards.

**Pluses.** You firmly press on the Storm's screen, as you would on a real button. Other impressive Storm features: a 3.1-megapixel camera with flash; a full Web browser that supports streaming; GPS-navigation capability with audible directions; and the ability to edit Office documents. The Storm, a $200 exclusive from Verizon (with rebates and con-

tract), is one of the very few Verizon phones that will work outside the U.S.

**Minuses.** Typing on the innovative virtual keyboard is still not as efficient as on a real one, and listening quality is only fair, worse than many other phones from Verizon. Also, the phone doesn't work with Verizon's comprehensive VCast service, which provides music, video, and other TV services.

**Bottom line.** Despite these quibbles, the Storm might be one more reason for smart-phone seekers to choose Verizon's top-notch service over less consistent carriers.



CONFIDENTIAL - For Counsel Only

BT_GCP002071

Exhibit 3
- 118 -

| From: | Denny Tsai |
|---|---|
| To: | '??'; Denny Tsai; Derek Conrad |
| CC: | 'richard@babytrend.tw…'; 'tom'; 'joyce' |
| Sent: | 4/6/2005 4:53:02 PM |
| Subject: | RE: new playard new joint picture for confirmation |

**Shirley,**

**I need you help me make one playard** ███████████████████████
**when I visit you next Monday. Also I will cf. all the playard sample that Carolyn &
Joyce ask you make, if you have any question let me know.**

**Denny**

> -----Original Message-----
> **From:** 飘扬 [mailto:wq202@163.com]
> **Sent:** Sunday, March 27, 2005 5:55 PM
> **To:** Denny Tsai; Derek Conrad
> **Cc:** Ben Chen; richard@babytrend.tw…; tom; joyce
> **Subject:** new playard new joint picture for confirmation
> **Importance:** High
>
> Dear Denny and Derek:
>
> For the last meeting, you asked our engineer ████████████████████████
> ████
>
> Regards,
>
>
> Shirley

CONFIDENTIAL - For Counsel Only

Exhibit 3
- 119 -

BT_GCP002170

| From: | donna |
|---|---|
| To: | BT- 'jacky'; Joyce; 'Davis CHB'; 'Alex Kwan'; Derek |
| CC: | ??; tom@babytrend.twmail.net; 'Richard'; 'BUO-Denny'; 'George Lin'; À¹¬f¥; ®}?·s; ?ª+? |
| Sent: | 12/6/2006 5:29:34 PM |
| Subject: | Re: high chair |
| Attachments: | qianjiaoguan.jpg; guanzuob.jpg; qianlunguanzuozuoa.jpg; qianhoujiaozu.jpg |

Dear Denny & Derek,
The rough design of ███████████████████████████████████████████████████████████████.Once
it is confirmed , we will think over the details.
We will sincerely appreciate on your reply. TKS!
Donna
----- Original Message -----
From: "donna" <donna@chbaby.cn>
To: "Derek" <derekc@babytrend.com>; "'Alex Kwan'" <alexk@babytrend.com>; "'Davis CHB'"
<davis@chbaby.cn>; "Joyce" <joyce@babytrend.twmail.net>
Cc: "?ª+?" <zjl@chbaby.cn>; "®}?·s" <ck.tsui@chbaby.cn>; "À¹¬f¥" <davis@chbaby.com>; "'George
Lin'" <georgel@babytrend.com>; "'BUO-Denny'" <dennyt@babytrend.com>; "'Richard'"
<Richard@babytrend.twmail.net>; <tom@babytrend.twmail.net>
Sent: Friday, November 03, 2006 10:26 AM
Subject: Re: high chair


> Hi Joyce,
> We are processing ████████████████████████████████████████████████████████████████████
The difficult we face now is we only have some pictures of it. In order to quicken the making
process and make the sample better, we really need a sample of ████████████████████
urgently. Please give us a hand ! TKS!
> Donna
> ----- Original Message -----
> From: "Derek" <derekc@babytrend.com>
> To: "'donna'" <donna@chbaby.cn>; "'Alex Kwan'" <alexk@babytrend.com>; "'Davis CHB'"
<davis@chbaby.cn>
> Cc: "'Joyce'" <joyce@babytrend.twmail.net>; "'George Lin'" <georgel@babytrend.com>; "'BUO-
Denny'" <dennyt@babytrend.com>
> Sent: Wednesday, October 25, 2006 12:03 AM
> Subject: RE: high chair
>
>
> > Hi Donna,
> >
> > Please follow the ███████████████████████this has the nice styling
> > and gets us away from ████████████████
> >
> > Thanks,
> >
> > Derek
> > .
> > -----Original Message-----
> > From: donna [mailto:donna@chbaby.cn]
> > Sent: Monday, October 23, 2006 11:15 PM
> > To: Alex Kwan; Davis CHB
> > Cc: Joyce; George Lin; 'BUO-Denny'; BT - Derek
> > Subject: Re: high chair
> >
> > Hi Alex,
> > I illustrated the differences between ████████████████with pictures in
> > attached file.
> >
> > ████████████████████████████████████████████████████
> > Donna
> > ----- Original Message -----
> > From: "Alex Kwan" <alexk@babytrend.com>
> > To: "donna" <donna@chbaby.cn>; "Davis CHB" <davis@chbaby.cn>

```
> > Cc: "Joyce" <joyce@babytrend.twmail.net>; "George Lin"
> > <georgel@babytrend.com>; "'BUO-Denny'" <dennyt@babytrend.com>; "BT - Derek"
> > <derekc@babytrend.com>
> > Sent: Tuesday, October 24, 2006 9:33 AM
> > Subject: Re:
> >
> >
> > > Dear Donna,
> > >
> > > It was nice to discuss with you in this evening. As our discussion,
> > > please arrange the
> > >
> > >
> > >          please see you can find any picture and send to us.
> > >
> > >                    please follow up this issue with George.
> > >
> > >                                                        Please
> > > see your engineer
> > >
> > >           the sample is                         Please see you can
> > >
> > >
> > > Let me know if I forget some issue here.
> > > Thanks,
> > > Alex
> > >
> > >
> > >
> > > donna wrote:
> > > > Hi Alex;A
> > > > You know,we had finalized most of the samples,so the items i mailed
> > > > you need to get your confirming.
> > > > 1.the pictures of
> > > > were all mailed to you,please let us know your opinions about
> > > > them.I will arrange to deliver them once your requirment arrive.
> > > > 2.please give us you finally opinion
> > > >
> > > > You complete and quick reply will be sincerely appreciated :)TKS!
> > > > Donna
```

CONFIDENTIAL - For Counsel Only

BT_GCP002180

Exhibit 3
- 121 -



CONFIDENTIAL - For Counsel Only

Exhibit 3
- 122 -

BT_GCP002181

CONFIDENTIAL - For Counsel Only

BT_GCP002182

Exhibit 3
- 123 -



CONFIDENTIAL - For Counsel Only

Exhibit 3
- 124 -

BT_GCP002183



CONFIDENTIAL - For Counsel Only

Exhibit 3
- 125 -

BT_GCP002184

| | |
|---|---|
| **From:** | Richard |
| **To:** | derekc; 'juliec'; tom@babytrend.twmail.net; Joyce@babytrend.twmail.net; alexk@babytrend.com |
| **CC:** | 'zhangliang'; george@babytrend.com |
| **Sent:** | 8/10/2006 8:35:45 AM |
| **Subject:** | Re: ████████ |

Derek

Right now we don't have ability to change ████████████████████ ,only can change packing to make it looks better
If we want it look ████████████ , it must have ████████████████
For currently mass production , it can't be done so fast .


Baby Trend China Office

Richard Lu

████████████████

Mobile: ████████████

----- Original Message -----
寄件者: derekc
收件者: 'Richard' ; 'juliec' ; tom@babytrend.twmail.net ; Joyce@babytrend.twmail.net ; alexk@babytrend.com
副本: 'zhangliang' ; george@babytrend.com
傳送日期: 2006年8月10日 下午 11:15
主旨: RE: ████ Playard

Richard,
What David is referring to isn't ████████████████████. This is why we sent you and Tom ████████████████████████████████████████ I'm resending you the e-mail from July 19th that addressed this issue.

Derek

-----Original Message-----
**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Wednesday, August 09, 2006 11:22 PM
**To:** juliec; 'derekc'; tom@babytrend.twmail.net; Joyce@babytrend.twmail.net; alexk@babytrend.com
**Cc:** 'zhangliang'; george@babytrend.com
**Subject:** Re: ████ Playard

Dave

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Please let us know what you think ,we need to inform factory how to do

CONFIDENTIAL - For Counsel Only

BT_GCP002218

Exhibit 3
- 126 -

Baby Trend China Office

Richard Lu

████████████

Mobile: ████████████

----- Original Message -----
寄件者: juliec
收件者: 'derek' ; tom@babytrend.twmail.net ; Richard@babytrend.twmail.net ; Joyce@babytrend.twmail.net ; alexk@babytrend.com
副本: 'zhangliang'
傳送日期: 2006年8月9日 上午 12:40
主旨: RE█████████Playard

FYI

**From:** davidw [mailto:davidw@babytrend.com]
**Sent:** Monday, August 07, 2006 10:29 AM
**To:** 'Denny Tsai'; 'juliec'; 'Kristen Pruyn'
**Cc:** 'Jeff Meyer'; 'George Lin'; 'Betty Tsai'
**Subject:** RE: ███████ Playard

We really need to address █████████████████████████████ I have asked Derek to get a new design
for the ████████████ from what I understand they have not responded.██████████████████
████████████████ Please see what can be done before we ship any more inventory here.

Thank you!
Dave

David Williams
Baby Trend
General Manager
P: ████████████████████
F: ████████████████████
1567 S. Campus Dr
Ontario, CA 91761
www.babytrend.com

**From:** Denny Tsai [mailto:denny@babytrend.twmail.net]
**Sent:** Monday, August 07, 2006 9:29 AM
**To:** juliec; 'Kristen Pruyn'
**Cc:** 'davidw'; 'Jeff Meyer'; 'George Lin'; 'Betty Tsai'
**Subject:** Re: ████████ Playard

let me know can we ship this two container ████████ playard ASAP. denny
----- Original Message -----
**From:** juliec
**To:** 'Kristen Pruyn'
**Cc:** 'davidw' ; 'Jeff Meyer' ; 'Denny Tsai' ; 'George Lin' ; 'Betty Tsai'
**Sent:** Monday, August 07, 2006 9:02 AM
**Subject:** RE: ████████ Playard

Kristy,
According to Denny's voice mail in this morning, I'll ask factory to go ahead to ship this order.

Thanks,

CONFIDENTIAL - For Counsel Only

Exhibit 3
- 127 -

BT_GCP002219

Julie

---

**From:** juliec [mailto:juliec@babytrend.com]
**Sent:** Friday, August 04, 2006 3:25 PM
**To:** 'Kristen Pruyn'
**Cc:** 'davidw'; 'Jeff Meyer'; 'Denny Tsai'; 'George Lin'; 'Betty Tsai'
**Subject:** RE: ███ Playard
**Importance:** High

Kristy,
The new order is just receiving; please see the attached file for your reference. Could you please re-double check with your forecast if TRU really needs this lot to avoid of any make down price issue in the future? Please confirm ASAP.
FYI-----According to sales report on 7/31, there are total q' ty of 10,388pcs on hand.

Please provide your updated forecast spread sheet to me for reference.

Thanks,
Julie

-----Original Message-----
From: juliec [mailto:juliec@babytrend.com]
Sent: Friday, August 04, 2006 9:03 AM
To: 'Kristen Pruyn'
Subject: RE: ███ Playard

Factory already finished one cancelled order for PO#360059---2080pcs, can TRU reinstate this order in order to save time to correct PO# on shipping boxes? We can meeting S/W 8/9--8/15 (wk 35).

-----Original Message-----
From: Kristen Pruyn [mailto:kristypruyn@comcast.net]
Sent: Friday, August 04, 2006 6:40 AM
To: 'juliec'
Cc: 'Annie Ling'
Subject: FW: ███ Playard

HI Julie:

Please advise the best date that we can offer for another 2080 of the ███
Playard.

Thanks,
Kristy

-----Original Message-----
From: Dombrowski, Suzanne [mailto:dombrows@toysrus.com]
Sent: Thursday, August 03, 2006 6:53 PM
To: Kristy Pruyn (E-mail)
Cc: Hascup, Cheryl
Subject: ███ Playard

We are going to place another 2080 units of this item. What ETA can you get?

========================================================================
This email message is for the sole use of the intended recipient (s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, send an email to EmailAdmin@toysrus.com.
Toys "R" Us, Inc.

**CONFIDENTIAL - For Counsel Only**

**BT_GCP002220**

Exhibit 3
- 128 -

**From:** Richard
**To:** derekc; tom@babytrend.twmail.net; Joyce@babytrend.twmail.net; alexk@babytrend.com
**CC:** 'zhangliang'
**Sent:** 8/10/2006 5:12:19 PM
**Subject:** Re: ▓▓▓▓ Playard

Derek

That will ████████ ,and Mr. Li will ████████████████
But I want to tell you is currently mass production
Please advice what you think since ████████████████

Baby Trend China Office

Richard Lu

████████████████

Mobile:

████████████████

----- Original Message -----
寄件者: derekc
收件者: 'Richard' : tom@babytrend.twmail.net : Joyce@babytrend.twmail.net : alexk@babytrend.com
副本: 'zhangliang'
傳送日期: 2006年8月11日 上午 01:38
主旨: RE: ▓▓▓ Playard

> Richard,
>     Is their an engineer available at HH that can make ████████████████
>
> Derek
> -----Original Message-----
> **From:** Richard [mailto:Richard@babytrend.twmail.net]
> **Sent:** Thursday, August 10, 2006 8:36 AM
> **To:** derekc; 'juliec'; tom@babytrend.twmail.net; Joyce@babytrend.twmail.net; alexk@babytrend.com
> **Cc:** 'zhangliang'; george@babytrend.com
> **Subject:** Re: ▓▓▓ Playard
>
> Derek
>
> Right now we don't have ability to ████████████████████████████
> ████████████████
> If we want it ████████████████████████████
> For currently mass production , it can't be done so fast .
>
>
> Baby Trend China Office
>
> Richard Lu
>
> ████████████████

CONFIDENTIAL - For Counsel Only

BT_GCP002221

Exhibit 3
- 129 -



███████████████

Mobile:

███████████████

----- Original Message -----
寄件者: derekc
收件者: 'Richard' : 'juliec' : tom@babytrend.twmail.net : Joyce@babytrend.twmail.net : alexk@babytrend.com
副本: 'zhangliang' : george@babytrend.com
傳送日期: 2006年8月10日 下午 11:15
主旨: RE: ██████ Playard

Richard,

    What David is referring to ███████████████████████  This is why we
sent you and Tom ██████
    So it can be ████████████████████████████  I'm resending you the
e-mail from July 19th that addressed this issue.

Derek

----Original Message-----
From: Richard [mailto:Richard@babytrend.twmail.net]
Sent: Wednesday, August 09, 2006 11:22 PM
To: juliec; 'derekc'; tom@babytrend.twmail.net; Joyce@babytrend.twmail.net; alexk@babytrend.com
Cc: 'zhangliang'; george@babytrend.com
Subject: Re: ██████ Playard

Dave

Regarding ████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

Please let us know what you think ,we need to inform factory how to do

Baby Trend China Office

Richard Lu

███████████████

Mobile:

███████████████

----- Original Message -----
寄件者: juliec
收件者: 'derekc' : tom@babytrend.twmail.net : Richard@babytrend.twmail.net : Joyce@babytrend.twmail.net :
alexk@babytrend.com
副本: 'zhangliang'
傳送日期: 2006年8月9日 上午 12:40
主旨: RE: ██████ Playard

FYI

---

From: davidw [mailto:davidw@babytrend.com]
Sent: Monday, August 07, 2006 10:29 AM

CONFIDENTIAL - For Counsel Only

Exhibit 3
- 130 -

BT_GCP002222

**To:** 'Denny Tsai'; 'juliec'; 'Kristen Pruyn'
**Cc:** 'Jeff Meyer'; 'George Lin'; 'Betty Tsai'
**Subject:** RE: ███████ Playard

We really need to address ██████████████ ████████ I have asked Derek ████████ ██████████ from what I understand they have not responded. ████████████ ████████ Please see what can be done before we ship any more inventory here.

Thank you!
Dave

David Williams
Baby Trend
General Manager
P: ████████████████
F: ████████████
1567 S. Campus Dr
Ontario, CA 91761
www.babytrend.com

---

**From:** Denny Tsai [mailto:denny@babytrend.twmail.net]
**Sent:** Monday, August 07, 2006 9:29 AM
**To:** juliec; 'Kristen Pruyn'
**Cc:** 'davidw'; 'Jeff Meyer'; 'George Lin'; 'Betty Tsai'
**Subject:** Re: ██████ Playard

let me know can we ship this two container ██████ playard ASAP. denny
----- Original Message -----
**From:** juliec
**To:** 'Kristen Pruyn'
**Cc:** 'davidw' ; 'Jeff Meyer' ; 'Denny Tsai' ; 'George Lin' ; 'Betty Tsai'
**Sent:** Monday, August 07, 2006 9:02 AM
**Subject:** RE: ██████ Playard

Kristy,
According to Denny's voice mail in this morning, I'll ask factory to go ahead to ship this order.

Thanks,
Julie

---

**From:** juliec [mailto:juliec@babytrend.com]
**Sent:** Friday, August 04, 2006 3:25 PM
**To:** 'Kristen Pruyn'
**Cc:** 'davidw'; 'Jeff Meyer'; 'Denny Tsai'; 'George Lin'; 'Betty Tsai'
**Subject:** RE: ██████ Playard
**Importance:** High

Kristy,
The new order is just receiving; please see the attached file for your reference.  Could you please re-double check with your forecast if TRU really needs this lot to avoid of any make down price issue in the future?  Please confirm ASAP. FYI-----According to sales report on 7/31, there are total q' ty of 10,388pcs on hand.

Please provide your updated forecast spread sheet to me for reference.

Thanks,
Julie

-----Original Message-----
**From:** juliec [mailto:juliec@babytrend.com]
**Sent:** Friday, August 04, 2006 9:03 AM

CONFIDENTIAL - For Counsel Only

Exhibit 3
- 131 -

BT_GCP002223

To: 'Kristen Pruyn'
Subject: RE: ███████ Playard

Factory already finished one cancelled order for PO#360059---2080pcs, can TRU reinstate this order in order to save time to correct PO# on shipping boxes?  We can meeting S/W 8/9--8/15 (wk 35).

-----Original Message-----
From: Kristen Pruyn [mailto:kristypruyn@comcast.net]
Sent: Friday, August 04, 2006 6:40 AM
To: 'juliec'
Cc: 'Annie Ling'
Subject: FW: ███████ Playard

HI Julie:

Please advise the best date that we can offer for another 2080 of the ███████ Playard.

Thanks,
Kristy

-----Original Message-----
From: Dombrowski, Suzanne [mailto:dombrows@toysrus.com]
Sent: Thursday, August 03, 2006 6:53 PM
To: Kristy Pruyn (E-mail)
Cc: Hascup, Cheryl
Subject: ███████ Playard

We are going to place another 2080 units of this item. What ETA can you get?

========================================================================
This email message is for the sole use of the intended recipient (s) and may
contain confidential and privileged information. Any unauthorized review,
use, disclosure or distribution is prohibited. If you are not the intended
recipient, please contact the sender by reply email and destroy all copies
of the original message. To reply to our email administrator directly, send
an email to EmailAdmin@toysrus.com.
Toys "R" Us, Inc.

CONFIDENTIAL - For Counsel Only

Exhibit 3
- 132 -

BT_GCP002224

| From: | derekc |
| To: | 'Richard'; 'tom@babytrend.twmail.net'; 'Joyce@babytrend.twmail.net'; 'alexk@babytrend.com' |
| CC: | 'zhangliang' |
| Sent: | 8/11/2006 8:04:48 AM |
| Subject: | RE: ███████ Playard |
| Attachments: | |

Richard,
   We need ████████ David has suggested. It does look terrible when you compare
It to the competition. I made a mock up of ██████████████ ike for you and Mr. Li
to use as a guideline on a new style. ███████████████████████████████ Please have Mr. Li
start ASAP so we can get a proto done quickly.

Derek

-----Original Message-----
**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Thursday, August 10, 2006 5:12 PM
**To:** derekc; tom@babytrend.twmail.net; Joyce@babytrend.twmail.net; alexk@babytrend.com
**Cc:** 'zhangliang'
**Subject:** Re: ██████ Playard

Derek

That will be new design ,and Mr. Li will to make a new design
But I want to tell you is currently mass production
Please advice what you think since we can't change the hardware


Baby Trend China Office

Richard Lu

████████████████

Mobile:

████████████

----- Original Message -----
寄件者: derekc
收件者: 'Richard' : tom@babytrend.twmail.net : Joyce@babytrend.twmail.net : alexk@babytrend.com
副本: 'zhangliang'
傳送日期: 2006年8月11日 上午 01:38
主旨: RE: ██████ Playard

Richard,
   Is their an engineer available at HH that can make the changes for us on a new canopy ?

Derek
-----Original Message-----
**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Thursday, August 10, 2006 8:36 AM
**To:** derekc; 'juliec'; tom@babytrend.twmail.net; Joyce@babytrend.twmail.net; alexk@babytrend.com
**Cc:** 'zhangliang'; george@babytrend.com

CONFIDENTIAL - For Counsel Only

Exhibit 3
- 133 -

BT_GCP002414

**Subject:** Re: ███ Playard

Derek

Right now we don't have ability to ███████████████

███████████

If we want ████████████ it must have ████████████

For currently mass production , it can't be done so fast .

Baby Trend China Office

Richard Lu

████████████

Mobile: ████████████

----- Original Message -----
寄件者: derekc
收件者: 'Richard' ; 'juliec' : tom@babytrend.twmail.net : Joyce@babytrend.twmail.net : alexk@babytrend.com
副本: 'zhangliang' : george@babytrend.com
傳送日期: 2006年8月10日 下午 11:15
主旨: RE: ███ Playard

Richard,
         What David is referring to isn't ██████████████ This is why we sent you and Tom ████████
         So it can be changed ████████████████ I'm resending you the e-mail from July 19th that addressed this issue.

Derek

-----Original Message-----
**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Wednesday, August 09, 2006 11:22 PM
**To:** juliec; 'derekc'; tom@babytrend.twmail.net; Joyce@babytrend.twmail.net; alexk@babytrend.com
**Cc:** 'zhangliang'; george@babytrend.com
**Subject:** Re: ███ Playard

Dave

████████████████████████████████
████████████████████████████████
████████████████████████████████

Please let us know what you think ,we need to inform factory how to do

Baby Trend China Office

Richard Lu

BT_GCP002415

██████████████

Mobile:

██████████████

----- Original Message -----
寄件者: juliec
收件者: 'derekc' : tom@babytrend.twmail.net : Richard@babytrend.twmail.net : Joyce@babytrend.twmail.net :
alexk@babytrend.com
副本: 'zhangliang'
傳送日期: 2006年8月9日 上午 12:40
主旨: RE ███████ Playard

FYI

---

**From:** davidw [mailto:davidw@babytrend.com]
**Sent:** Monday, August 07, 2006 10:29 AM
**To:** 'Denny Tsai'; 'juliec'; 'Kristen Pruyn'
**Cc:** 'Jeff Meyer'; 'George Lin'; 'Betty Tsai'
**Subject:** RE: █████ Playard

We really need to address ████████████████ I have asked Derek to
████████████████████ what I understand they have not responded. The
████████████████████ Please see what can be done before we ship any
more inventory here.

Thank you!
Dave

David Williams
Baby Trend
General Manager

██████████████

1567 S. Campus Dr
Ontario, CA 91761
www.babytrend.com

---

**From:** Denny Tsai [mailto:denny@babytrend.twmail.net]
**Sent:** Monday, August 07, 2006 9:29 AM
**To:** juliec; 'Kristen Pruyn'
**Cc:** 'davidw'; 'Jeff Meyer'; 'George Lin'; 'Betty Tsai'
**Subject:** Re: ████ Playard

let me know can we ship this two container ████ playard ASAP. denny
----- Original Message -----
**From:** juliec
**To:** 'Kristen Pruyn'
**Cc:** 'davidw' ; 'Jeff Meyer' ; 'Denny Tsai' ; 'George Lin' ; 'Betty Tsai'
**Sent:** Monday, August 07, 2006 9:02 AM
**Subject:** RE: █████ Playard

Kristy,
According to Denny's voice mail in this morning, I'll ask factory to go ahead to ship this order.

Thanks,
Julie

---

**From:** juliec [mailto:juliec@babytrend.com]

BT_GCP002416

**Sent:** Friday, August 04, 2006 3:25 PM
**To:** 'Kristen Pruyn'
**Cc:** 'davidw'; 'Jeff Meyer'; 'Denny Tsai'; 'George Lin'; 'Betty Tsai'
**Subject:** RE: ███ Playard
**Importance:** High

Kristy,
The new order is just receiving; please see the attached file for your reference.  Could you please re-double check
with your forecast if TRU really needs this lot to avoid of any make down price issue in the future?  Please confirm
ASAP.
FYI-----According to sales report on 7/31, there are total q' ty of 10,388pcs on hand.

Please provide your updated forecast spread sheet to me for reference.

Thanks,
Julie

-----Original Message-----
From: juliec [mailto:juliec@babytrend.com]
Sent: Friday, August 04, 2006 9:03 AM
To: 'Kristen Pruyn'
Subject: RE: ███ Playard

Factory already finished one cancelled order for PO#360059---2080pcs, can TRU reinstate this order in order to
save time to correct PO# on shipping boxes?  We can meeting S/W 8/9--8/15 (wk 35).

-----Original Message-----
From: Kristen Pruyn [mailto:kristypruyn@comcast.net]
Sent: Friday, August 04, 2006 6:40 AM
To: 'juliec'
Cc: 'Annie Ling'
Subject: FW: ███ Playard

Hl Julie:

Please advise the best date that we can offer for another 2080 of the ███
Playard.

Thanks,
Kristy

-----Original Message-----
From: Dombrowski, Suzanne [mailto:dombrows@toysrus.com]
Sent: Thursday, August 03, 2006 6:53 PM
To: Kristy Pruyn (E-mail)
Cc: Hascup, Cheryl
Subject: ███ Playard

We are going to place another 2080 units of this item. What ETA can you get?

==========================================================================
This email message is for the sole use of the intended recipient (s) and may
contain confidential and privileged information. Any unauthorized review,
use, disclosure or distribution is prohibited. If you are not the intended
recipient, please contact the sender by reply email and destroy all copies
of the original message. To reply to our email administrator directly, send
an email to EmailAdmin@toysrus.com.
Toys "R" Us, Inc.

CONFIDENTIAL - For Counsel Only                                                     BT_GCP002417

**Exhibit 3**



CONFIDENTIAL - For Counsel Only

Exhibit 3
- 137 -

BT_GCP002418



CONFIDENTIAL - For Counsel Only

Exhibit 3

BT_GCP002419



Exhibit 3
- 139 -

CONFIDENTIAL - For Counsel Only

BT_GCP002420



CONFIDENTIAL - For Counsel Only

Exhibit 3
- 140 -

BT_GCP002421



CONFIDENTIAL - For Counsel Only

Exhibit 3
- 141 -

BT_GCP002422



CONFIDENTIAL - For Counsel Only

Exhibit 3
- 142 -

BT_GCP002423



CONFIDENTIAL - For Counsel Only

Exhibit 3
- 143 -

BT_GCP002424



CONFIDENTIAL - For Counsel Only

Exhibit 3
- 144 -

BT_GCP002425

| From: | Richard |
|---|---|
| To: | George Lin; Irene Wang |
| CC: | Bradley Mattarocci; Denny Tsai; Tina Lu; Derek Conrad; BT-Tom; Max Kuo |
| Sent: | 1/7/2008 3:38:13 AM |
| Subject: | Re: PO#629044/ 8065BCC ███████ Play yard |

**George / Bradley**

**Per Denny instruction**

██████████████████████ and ████will be delay accordingly

**Denny suggest changed first /second order destination to  BUO warehouse , not TRU  because We want to make
sure the quality and will inspect the mass production in BUO warehouse**

**If TRU agree this , then we don't need to ████████████████████████████████████████
to TRU**

████████████████████████it will take 1 week , if it is ok , we ███████████████need 5 days

**So QY real can't catch S/W**

**If we change destination to BUO , we will have time for COC testing for other PO#**

**Pls discuss and reply ASAP**

Richard

----- Original Message -----
From: George Lin
To: Jeff Meyer ; Irene Wang ; Jessica Holt
Cc: Bradley Mattarocci ; Denny Tsai ; Tina Lu ; Derek Conrad ; BT-Tom ; BT-Richard
Sent: Friday, January 04, 2008 5:27 AM
Subject: RE: PO#629044/ 8065BCC ████████Play yard

██████████████████████████████████████████████████████████████████████

████████ Tina had provided most of corrections to China, and the re-test will be performed on this Friday or next Monday.  An
express test services will be conducted to expedite the ████████and hopefully we can get the result by next Friday.
Both of Derek & Tina will make sure ████████████████████

---

From: Jeff Meyer [mailto:jmeyer12@neo.rr.com]
Sent: Thursday, January 03, 2008 1:05 PM
To: Irene Wang; Jessica Holt
Cc: Bradley Mattarocci; George Lin; Denny Tsai
Subject: RE: PO#629044/ 8065BCC ████████Play yard
Importance: High

████████████████████ I need this information before I speak with the buyer.  When are we re-submitting the sample for the
████ What are we doing to insure that we don't have a second failure?  This is obviously a critical issue with BRU.  We need
to expedite the process and communicate.  Please advise.

---

From: Irene Wang [mailto:Irenew@babytrend.com]
Sent: Wednesday, January 02, 2008 7:41 PM
To: Jeff Meyer; Jessica Holt
Cc: Bradley Mattarocci; George Lin; Denny Tsai
Subject: FW: PO#629044/ 8065BCC ████████Play yard

Hi Jeff,

Re: PO#629044 ████████play yard     original s/w:  1 / 2 - 1 / 8 / 2008     qty: 6240pcs.

**CONFIDENTIAL - For Counsel Only**

BT_GCP002434

**Exhibit 3**
**- 145 -**

We were told the ███████████████████████████This is the first shipment of ██████████play yard. Mfg will send the ████████however, they are unsure when are they able to make it since the play yard ███████████longer than other merchandises. Will keep you posted.

Regards,

*Irene Wang*
Baby Trend Inc.
www.babytrend.com
P (909) 773-0018 ext. 258
F (909) 673-0728

**From:** Irene Wang
**Sent:** Friday, December 28, 2007 5:12 PM
**To:** George Lin; Bradley Mattarocci
**Subject:** PO#629044/ 8065BCC ████████yard

Hi George & Brad,

Our ███████████████████We will need to extend the shipping window ███████████however, we are unsure when the products would be ready, we will need to discussion this issue before we talk to TRU.

Regards,

*Irene Wang*
Baby Trend Inc.
www.babytrend.com
P (909) 773-0018 ext. 258
F (909) 673-0728

CONFIDENTIAL - For Counsel Only

BT_GCP002435

Exhibit 3
- 146 -

| From: | Derek Conrad |
|-------|--------------|
| To: | Richard; BCO-Tom; BCO-Cindy |
| CC: | Max Kuo; Bradley Mattarocci; Dorothy Chin |
| Sent: | 1/29/2008 8:43:50 AM |
| Subject: | RE: photos |

Richard,

This isn't a pissing match, I said ████████████████████████████████ cover ██████ ████████████████████ . Order ████████████████ keep the cut squares in a box until production starts at ████

Derek

---

**From:** Richard [mailto:richard@babytrend.twmail.net]
**Sent:** Tuesday, January 29, 2008 8:30 AM
**To:** Derek Conrad; BCO-Tom; BCO-Cindy
**Cc:** Max Kuo; Bradley Mattarocci; Dorothy Chin
**Subject:** Re: photos

**Derek**

████████████████████████████████████████
████████████████████████████████████████

Richard
----- Original Message -----
**From:** Derek Conrad
**To:** Richard ; BCO-Tom ; BCO-Cindy
**Cc:** Max Kuo ; Bradley Mattarocci ; Dorothy Chin
**Sent:** Wednesday, January 30, 2008 12:22 AM
**Subject:** RE: photos

Richard,

Just ████████████████████████████████████████

Derek

---

**From:** Richard [mailto:richard@babytrend.twmail.net]
**Sent:** Tuesday, January 29, 2008 8:13 AM
**To:** Derek Conrad; BCO-Tom; BCO-Cindy
**Cc:** Max Kuo; Bradley Mattarocci; Dorothy Chin
**Subject:** Re: photos

**Derek**
**what we should print ? pls provide artwork**

Richard
----- Original Message -----
**From:** Derek Conrad
**To:** Richard ; BCO-Tom ; BCO-Cindy
**Cc:** Max Kuo ; Bradley Mattarocci ; Dorothy Chin
**Sent:** Wednesday, January 30, 2008 12:09 AM

CONFIDENTIAL - For Counsel Only

Exhibit 3
- 147 -

BT_GCP002499

**Subject:** RE: photos

Richard,

███████████████████████████████████████████████

Derek

---

**From:** Richard [mailto:richard@babytrend.twmail.net]
**Sent:** Monday, January 28, 2008 10:34 PM
**To:** Derek Conrad; BCO-Tom; BCO-Cindy
**Cc:** Max Kuo; Bradley Mattarocci
**Subject:** Re: photos

Derek

███████████████████████████████

Richard
███████████████████

----- Original Message -----
**From:** Derek Conrad
**To:** Richard ; BCO-Tom ; BCO-Cindy
**Cc:** Max Kuo ; Bradley Mattarocci
**Sent:** Friday, January 18, 2008 9:07 AM
**Subject:** FW: photos

Richard,

We need to ███████████████████

care of by all factories and samples are sent to you. Your approval
is fine as this is ███████████████████

Derek

-----Original Message-----
From: Tina Lu
Sent: Thursday, January 17, 2008 5:03 PM
To: Derek Conrad
Subject: photos

---

**CONFIDENTIAL - For Counsel Only**

| From: | Carolyn Pochatek |
|---|---|
| To: | 'Richard'; Julie Cheng; Jeff Meyer; 'Kristy' |
| CC: | Denny Tsai; Chip Whalen; 'BT tom'; 'BCO JoyceWang' |
| Sent: | 4/27/2005 5:24:32 AM |
| Subject: | RE: |

We should probably ███████████████████████████████████ Does anyone know how or can remember how they do it?

Richard:  Very good point to bring up, thank you.

Carolyn

-----Original Message-----
**From:** Richard [mailto:richard@babytrend.twmail.net]
**Sent:** Wednesday, April 27, 2005 12:15 AM
**To:** Carolyn Pochatek; Julie Cheng
**Cc:** Denny Tsai; Chip Whalen - Baby Trend; 'BT tom'; 'BCO JoyceWang'
**Subject:** ████████████████████
**Importance:** High

Carolyn / Julie

We must ████████████████████████████████

Please advice how to do

Best Regards,

Richard

████████████████████
China Office
Tel ███████████████
Fax ███████
----- Original Message -----
**From:** Julie Cheng
**To:** SHIRLEY WONG (wq202@163.com)
**Cc:** 'BCO JoyceWang' ; 'Richard' ; tom ; 'jacky@babytrend.twmail.net'
**Sent:** Wednesday, April 20, 2005 9:01 AM
**Subject:** comment ████████████████████

Dear Shirley,
Please send images to me for final approval.

Thanks,
Julie
(Richard, please trace and help, thank you.)

CONFIDENTIAL - For Counsel Only

BT_GCP002533

Exhibit 3
- 149 -

| | |
|---|---|
| **From:** | Carolyn Pochatek |
| **To:** | Denny Tsai; 'Richard'; Julie Cheng; 'Jeff Meyer'; 'Kristy' |
| **CC:** | Chip Whalen; 'BT tom'; 'BCO JoyceWang'; Julie Cheng |
| **Sent:** | 4/27/2005 6:38:08 PM |
| **Subject:** | RE: ██████████████ |

I checked ███████
evening. ██████████████████████████████
████████████████████████████
████████████████████████████████████████

This is the way we should proceed. As Denny has stated, MD should check the
sample they have in their factory. However, we must provide ████████████
████████████████████████████

Thanks,

Carolyn


-----Original Message-----
From: Denny Tsai [mailto:dennyt@babytrend.com]
Sent: Wednesday, April 27, 2005 6:08 PM
To: Carolyn Pochatek; Richard; Julie Cheng; Jeff Meyer; Kristy
Cc: Chip Whalen; BT tom; BCO JoyceWang; Julie Cheng
Subject: RE: ██████████████

I sent ████████████████████████████ we can
ask ████████████████████ also BT warehouse
and take care ████████ Chip and Trieu you can check this
Chip we need cf. ████████████
████████████████████ that why Julie ask them just
████████████████ I like you double check before we produce.
denny


─────
From: Carolyn Pochatek [mailto:cpochatek1@msn.com]
Sent: Wednesday, April 27, 2005 5:25 AM
To: 'Richard'; Julie Cheng; Jeff Meyer; 'Kristy'
Cc: Denny Tsai; Chip Whalen; 'BT tom'; 'BCO JoyceWang'
Subject: RE: ██████████████

We should probably ████████████████████████████████
████████████ anyone know how or can remember how they do it?


Richard: Very good point to bring up, thank you.


Carolyn


-----Original Message-----

**CONFIDENTIAL - For Counsel Only**

Exhibit 3
- 150 -

BT_GCP002534

From: Richard [mailto:richard@babytrend.twmail.net]
Sent: Wednesday, April 27, 2005 12:15 AM
To: Carolyn Pochatek; Julie Cheng
Cc: Denny Tsai; Chip Whalen - Baby Trend; 'BT tom'; 'BCO JoyceWang'
Subject:
Importance: High


Carolyn / Julie


We must

Please advice how to do

Best Regards,


Richard


Mobile
China Office
Tel :
Fax:

----- Original Message -----

From: Julie Cheng <mailto:JulieC@babytrend.com>

To: SHIRLEY WONG (wq202@163.com) <mailto:wq202@163.com)>

Cc: 'BCO JoyceWang' <mailto:Joyce@babytrend.twmail.net> ; 'Richard'
<mailto:richard@babytrend.twmail.net> ; tom
<mailto:tom@babytrend.twmail.net> ; 'jacky@babytrend.twmail.net'
<mailto:'jacky@babytrend.twmail.net'>

Sent: Wednesday, April 20, 2005 9:01 AM

Subject: comments


Dear Shirley,

Please send images to me for final approval.


Thanks,

Julie

(Richard, please trace and help, thank you.)


CONFIDENTIAL - For Counsel Only          BT_GCP002535

Exhibit 3
- 151 -

From: Richard
To: derekc; 'BCO---Tom'
CC: 'BUO Derek Conrad'
Sent: 7/10/2006 5:42:20 PM
Subject: Re: Ē¯˒į¼Æ¬

Derek

Engineer is processing the design , will show you when it completed
█████████████ , could you show us the photos for reference


Baby Trend China Office

Richard Lu

Tel:█████████████
Fax:████████████
Mobile:
████████████

----- Original Message -----
寄件者: derekc
收件者: 'Richard' : 'BCO---Tom'
副本: 'BUO Derek Conrad'
傳送日期: 2006年7月11日 上午 12:59
主旨: RE: Ē¯˒į¼Æ¬

    Richard,

        I really like the looks that's why I was asking were the status
    was at, other than ████████████████████████
        ██████ I asked Tom to adapt it like ███████████
    ████████████████████████████████

    Derek

    -----Original Message-----
    From: Richard [mailto:Richard@babytrend.twmail.net]
    Sent: Friday, July 07, 2006 5:15 PM
    To: derekc; 'BCO---Tom'
    Cc: 'BUO Derek Conrad'
    Subject: Re: Ē¯˒į¼Æ¬

    Derek

    Do you have any comment on this playard ?
    They need your advice


    Baby Trend China Office

    Richard Lu

Confidential - Outside Counsel Only

Exhibit 3
- 152 -

BT_GCP002980

Tel:
Fax:
Mobile:

----- Original Message -----
寄件者: derekc
收件者: 'BCO---Richard' ; 'BCO---Tom'
副本: 'BUO Derek Conrad'
傳送日期: 2006年7月7日 下午 11:29
主旨: RE: Ê¯²í¼Æ¬

Richard,

Can you ask Tom how this play yard is coming along ?

Thanks,

Derek

-----Original Message-----
**From:** BCO Tom [mailto:tom@babytrend.twmail.net]
**Sent:** Friday, April 21, 2006 2:12 AM
**To:** BUO George Lin; 'BUO Denny Tsai'; BUO Denny Tsai
**Cc:** BUO Derek Conrad; BCO Âí½¨ÊÊ; BCO Richard
**Subject:** Fw: 睡床图片

TO: DENNY        CC: George

如附是新的#84xx睡床的3D图 供参考如有其他須要修改的請告知 若確認可以我將會安排馬上去做手樣

TOM

----- Original Message -----
**From:** wanrhua
**To:** Tom
**Sent:** Thursday, April 20, 2006 7:40 AM
**Subject:** Fw: 睡床图片

----- Original Message -----
**From:** Rhino
**To:** wanrhua
**Sent:** Wednesday, April 19, 2006 7:56 PM
**Subject:** 睡床图片

Confidential - Outside Counsel Only

Exhibit 3
- 153 -

BT_GCP002981

**From:** derekc
**To:** 'Richard'
**Sent:** 7/11/2006 11:30:38 AM
**Subject:** FW: 84XX
**Attachments:** ▮▮▮ PÓ,'-1 5-4-06.doc ▮▮▮▮▮▮▮▮▮▮▮▮ P5050031.JPG

Richard,

This was the concept idea ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Derek

-----Original Message-----
**From:** RogerC [mailto:rogerc@babytrend.com]
**Sent:** Friday, May 05, 2006 4:29 PM
**To:** BCO-Tom, BOC-Tom
**Cc:** BCO-'Richard'; 'BCO JoyceWang'; Derek Conrad ; Denny T
**Subject:** ▮▮▮▮

Hi Tom,

This is the concept drawing ▮▮▮▮▮▮▮▮▮▮▮ Please see attached. Let me know if you have any questions.

基本上是把音樂盒的上半部結合方式加上 Graco 的二階方式連成一體、再用我們現在的扣合方式扣上。那個轉扭可能也都要重新開模,因要卡住兩層厚的膠料部份重疊了.

Thanks,

Roger

Confidential - Outside Counsel Only

Exhibit 3
- 154 -

BT_GCP003049

| | |
|---|---|
| **From:** | Denny Tsai |
| **To:** | Kongsheng Toys; richard@babytrend.tw... |
| **CC:** | Derek Conrad; tom; Ben Chen; Denny Tsai; Chip Whalen |
| **Sent:** | 3/22/2005 4:30:36 PM |
| **Subject:** | FW: Attached |
| **Attachments:** | |

Richard & Lawrence,

We received ███████████████ I been discussing with Mr. Wang and we found ████████████ sent to you few weeks ago.

We like ██████████████████████████████████████

Pls. make a sample for us cf. and let me know how much for ███████████████

Also we give Mr. Wang the ████████████████████ when we will have sample, we need this sample ASAP, pls. let me know.

Thanks
Denny

P.S. Richard follows up this.

-----Original Message-----
From: Richard [mailto:richard@babytrend.twmail.net]
Sent: Tuesday, March 22, 2005 3:36 AM
To: Chip Whalen
Cc: Derek Conrad; Denny Tsai; Chip Whalen - Baby Trend; 'BT tom'; 'BCO JoyceWang'; Baby Trend - Ben
Subject: Attached the new IC music design for your reference

Chip

See attached

Best Regards.

Richard

Mobile ███████████
China Office
Tel : ███████
Fax: ███████
----- Original Message -----
From: "Chip Whalen" <chip@babytrend.com>
To: "'Richard'" <richard@babytrend.twmail.net>
Sent: Monday, March 21, 2005 11:34 PM
Subject: RE: Fw:

Dear Richard,

I did not receive an attachment. Can you please re-send the attachment?

Confidential - Outside Counsel Only

BT_GCP004205

**Exhibit 3**
**- 155 -**

Thank you,

Chip


-----Original Message-----
From: Richard [mailto:richard@babytrend.twmail.net]
Sent: Friday, March 18, 2005 9:14 PM
To: BUO Derek Conrad: Tom
Cc: Derek Conrad; Chip Whalen; Denny Tsai; Ben Chen
Subject: Re: Fw:

All

Attached █████████████████████████████
Please advice

Best Regards,

Richard

Mobile:█████████████████
China Office
Tel :████████████████
Fax:███████████████
----- Original Message -----
From: "Tom" <tom@babytrend.twmail.net>
To: "BUO Derek Conrad" <Derek@babytrend.com>; "BCO-Richard"
<richard@babytrend.twmail.net>
Sent: Friday, March 18, 2005 6:09 PM
Subject: Fw: Fw:



>
> ----- Original Message -----
> From: "kongshengtoys" <kongsheng@public.qz.fj.cn>
> To: "Ben Chen" <ben@babytrend.com>; "tom" <tom@babytrend.twmail.net>;
"tom"
> <tom@babytrend.twmail.net>; "tom" <tom@babytrend.twmail.net>; "tom"
> <tom@babytrend.twmail.net>
> Sent: Friday, March 18, 2005 3:53 PM
> Subject: Fw:
>
>
>> denny, 您好！
>>
>>
>>
>>
>

Confidential - Outside Counsel Only

Exhibit 3
- 156 -

BT_GCP004206

| From: | Denny Tsai |
|---|---|
| To: | 'Kongsheng Toys'; 'richard@babytrend.tw...' |
| CC: | Derek Conrad; 'tom'; Ben Chen; Denny Tsai; Chip Whalen |
| Sent: | 3/22/2005 4:30:35 PM |
| Subject: | FW: █████████ |
| Attachments: | ███████████ |

Richard & Lawrence,

We received ██████████████████████████ with Mr. Wang and we found
████████████████████ that I sent to you few weeks ago.

████████████████████████████████████████████████████

Pls. make a sample for us cf. and let me know how much for ███████████████

Also we give Mr. Wang the ███████████████████ when we will have
sample, we need this sample ASAP, pls. let me know.

Thanks
Denny

P.S. Richard follows up this.


-----Original Message-----
From: Richard [mailto:richard@babytrend.twmail.net]
Sent: Tuesday, March 22, 2005 3:36 AM
To: Chip Whalen
Cc: Derek Conrad; Denny Tsai; Chip Whalen - Baby Trend; 'BT tom'; 'BCO JoyceWang'; Baby Trend
- Ben
Subject: Attached the ███████████████ your reference

Chip

See attached

Best Regards,

Richard

██████████████████

----- Original Message -----
From: "Chip Whalen" <chip@babytrend.com>
To: "'Richard'" <richard@babytrend.twmail.net>
Sent: Monday, March 21, 2005 11:34 PM
Subject: RE: Fw:

Dear Richard,

I did not receive an attachment. Can you please re-send the attachment?

Thank you,

Chip

Confidential - Outside Counsel Only

**Exhibit 3**
**- 157 -**

BT_GCP004698

-----Original Message-----
From: Richard [mailto:richard@babytrend.twmail.net]
Sent: Friday, March 18, 2005 9:14 PM
To: BUO Derek Conrad; Tom
Cc: Derek Conrad; Chip Whalen; Denny Tsai; Ben Chen
Subject: Re: Fw:

All

Attached the ███████████████ for your reference
Please advice

Best Regards,

Richard

Mobile ███████████
China Office
Tel :███████████
Fax: ███████████
----- Original Message -----
From: "Tom" <tom@babytrend.twmail.net>
To: "BUO Derek Conrad" <Derek@babytrend.com>; "BCO-Richard"
<richard@babytrend.twmail.net>
Sent: Friday, March 18, 2005 6:09 PM
Subject: Fw: Fw:


>
> ----- Original Message -----
> From: "kongshengtoys" <kongsheng@public.qz.fj.cn>
> To: "Ben Chen" <ben@babytrend.com>; "tom" <tom@babytrend.twmail.net>;
"tom"
> <tom@babytrend.twmail.net>; "tom" <tom@babytrend.twmail.net>; "tom"
> <tom@babytrend.twmail.net>
> Sent: Friday, March 18, 2005 3:53 PM
> Subject: Fw:
>
>
> > denny, 您好！
> >
> >
> >
> >
>

| From: | Derek Conrad |
|---|---|
| To: | Kristy Valentine |
| Sent: | 6/21/2007 10:06:50 AM |
| Subject: | FW: Play Yard ▓▓▓ |

FYI

**From:** Richard [mailto:richard@babytrend.twmail.net]
**Sent:** Wednesday, October 04, 2006 6:28 PM
**To:** Derek
**Subject:** Re: Play Yard ▓▓▓

Derek

Last time Denny saw them but not satisfy
Will let factory remake it

Richard
----- Original Message -----
**From:** Derek
**To:** 'Richard'
**Sent:** Thursday, October 05, 2006 7:12 AM
**Subject:** RE: Play Yard ▓▓▓

Richard,

Did you make the corrections to the PY ▓▓▓

Derek

**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Sunday, September 17, 2006 7:42 PM
**To:** derekc
**Cc:** george@babytrend.com; tom@babytrend.twmail.net; 'BCO JoyceWang'; 'BT-Denny'
**Subject:** Re: Play Yard ▓▓▓

Derek

See attached photos


Baby Trend China Office

Richard Lu

Tel ▓▓▓
Fax ▓▓▓
Mobile: ▓▓▓

----- Original Message -----
寄件者: derekc
收件者: 'Richard'
副本: george@babytrend.com ; tom@babytrend.twmail.net ; 'BCO JoyceWang' ; 'BT-Denny'

Confidential - Outside Counsel Only

BT_GCP005120

Exhibit 3
- 159 -

傳送日期: 2006年9月16日 上午 05:17
主旨: RE: Play Yard ███

Richard,

Denny wants you to make ███████████████████ the look. Please do it ASAP.

Derek

-----Original Message-----
**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Thursday, September 14, 2006 5:33 PM
**To:** derekc
**Cc:** george@babytrend.com; tom@babytrend.twmail.net; 'BCO JoyceWang'; 'BT-Denny'
**Subject:** Re: Play Yard ███

Derek

Right now we car taking about how to improve the mass production , we can use the currently ████
█████████
If we want to wait the █████████████ will waste time and cause lots of defect mass
production
Please CFM back what we should improve , not wait until the new version , coz it still need to open new tooling , it
will take more than 30 days


Baby Trend China Office

Richard Lu

Tel ███
Fax ███
Mobile ███
███████

----- Original Message -----
寄件者: derekc
收件者: 'Richard'
副本: george@babytrend.com ; tom@babytrend.twmail.net ; 'BCO JoyceWang' ; 'BT-Denny'
傳送日期: 2006年9月15日 上午 02:07
主旨: RE: Play Yard ███

Richard,

This looks good but I need █████████████████████
████████████████████████████████

so we can see it on the current model playards.

Derek

-----Original Message-----
**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Wednesday, September 13, 2006 11:57 PM
**To:** derekc
**Cc:** george@babytrend.com; tom@babytrend.twmail.net; 'BCO JoyceWang'; BT-Denny
**Subject:** Re: Play Yard ███

Confidential - Outside Counsel Only

Exhibit 3
- 160 -

BT_GCP005121

Derek

We will sent you the revised ███████████████████████
See attached photos
Please CFM if we can change it from mass prodcution

Baby Trend China Office

Richard Lu

Tel███████████
Fax███████████
Mobile:
████████████████

----- Original Message -----
寄件者: Richard
收件者: derekc
傳送日期: 2006年9月13日 下午 02:47
主旨: Re: Play Yard █████████

Derek

Right now we are produce the ██████ mass production , ██████████████████
photos
We need to change now in case more claim is coming
██████████████████████████████████████
We can't wait until new tooling is done
I think you have ████████████████ please CFM today

Baby Trend China Office

Richard Lu

Tel███████████
Fax███████████
Mobile:
████████████████

----- Original Message -----
寄件者: derekc
收件者: 'Richard'
傳送日期: 2006年9月12日 上午 01:34
主旨: RE: Play Yard ████████

Richard,

Use the ███████████████████████

Derek

-----Original Message-----

Confidential - Outside Counsel Only

**Exhibit 3**
**- 161 -**

BT_GCP005122

**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Monday, September 11, 2006 10:30 AM
**To:** derekc
**Subject:** Re: Play Yard ███████

Derek

It need to open new tooling , why can't we use the ███████████

Baby Trend China Office

Richard Lu

Tel █████████
Fax █████████
Mobile:

███████████

----- Original Message -----
寄件者: derekc
收件者: 'Richard'
傳送日期: 2006年9月11日下午 11:54
主旨: FW: Play Yard ████████

Richard,

Look at the ████████████████████████████████
Keep me posted on your progress.

Derek

-----Original Message-----
**From:** derekc [mailto:derekc@babytrend.com]
**Sent:** Thursday, August 31, 2006 11:01 AM
**To:** 'Jeff Meyer'
**Cc:** 'davidw@babytrend.com <davidw@babytrend.com>'
**Subject:** FW: ████████

FY!

-----Original Message-----
**From:** derekc [mailto:derekc@babytrend.com]
**Sent:** Wednesday, August 30, 2006 4:00 PM
**To:** 'Richard'; 'Baby Trend - Tom'; 'JoyceWang'
**Cc:** 'Denny Tsai'
**Subject:** FW: Play Yard ████████

Richard,

Any update on this ?

Derek

-----Original Message-----
**From:** derekc [mailto:derekc@babytrend.com]
**Sent:** Tuesday, August 08, 2006 9:49 AM
**To:** 'Richard'
**Subject:** FW: Play Yard ████████

Confidential - Outside Counsel Only

Exhibit 3
- 162 -

BT_GCP005123

Hi Richard, Tom & Joyce

Can you give me an update ?

Derek

-----Original Message-----
**From:** derekc [mailto:derekc@babytrend.com]
**Sent:** Wednesday, July 19, 2006 11:05 AM
**To:** 'Richard'; 'BCO Tom'
**Cc:** 'BT-Denny Tsai'
**Subject:** Play Yard

Hello Richard & Tom,

We really need ████████████████████ they look terrible against our competition. Here are some pictures from the BRU/TRU website that show what I mean. We need ████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████ So here is my thinking, can you have the factory make a sample play yard under the following criteria for me.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████ Let us know ASAP when can get us a sample ( pictures are Ok )

Thanks,

Derek

Confidential - Outside Counsel Only

Exhibit 3
- 163 -

BT_GCP005124

| | |
|---|---|
| **From:** | Derek Conrad |
| **To:** | Bradley Mattarocci |
| **Sent:** | 6/21/2007 12:44:03 PM |
| **Subject:** | FW: Play Yard ███ |
| **Attachments:** | DSC00001.JPG; DSC00002.JPG; DSC00003.JPG; DSC00004.JPG; DSC00005.JPG |

FYI

**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Sunday, September 17, 2006 7:42 PM
**To:** derekc
**Cc:** george@babytrend.com; tom@babytrend.twmail.net; 'BCO JoyceWang'; 'BT-Denny'
**Subject:** Re: Play Yard ███

Derek

See attached photos

Baby Trend China Office

Richard Lu

Tel ███
Fax ███
Mobile:
███

----- Original Message -----
寄件者: derekc
收件者: 'Richard'
副本: george@babytrend.com ; tom@babytrend.twmail.net ; 'BCO JoyceWang' ; 'BT-Denny'
傳送日期: 2006年9月16日 上午 05:17
主旨: RE: Play Yard ███

Richard,

Denny wants you to make ███████████████ Please do it ASAP.

Derek

-----Original Message-----
**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Thursday, September 14, 2006 5:33 PM
**To:** derekc
**Cc:** george@babytrend.com; tom@babytrend.twmail.net; 'BCO JoyceWang'; 'BT-Denny'
**Subject:** Re: Play Yard ███

Derek

Right now we car taking about how to improve the mass production , we can use the currently ███
███████████████████████████████

Please CFM back what we should improve , not wait until the new version , coz it still need to open new tooling , it

Confidential - Outside Counsel Only

Exhibit 3
- 164 -

BT_GCP005125

will take more than 30 days

Baby Trend China Office

Richard Lu

Tel: ███████
Fax ███████
Mobile:
███████

----- Original Message -----
寄件者: derekc
收件者: 'Richard'
副本: george@babytrend.com : tom@babytrend.twmail.net : 'BCO JoyceWang' : 'BT-Denny'
傳送日期: 2006年9月15日 上午 02:07
主旨: RE: Play Yard ████

Richard,

This looks good but ███████████████████████████
███████████████████████████████████████████████
██████████████

so we can see it on the current model playards.

Derek

-----Original Message-----
**From:** Richard [mailto:Richard@babytrend.twmail.net]
**Sent:** Wednesday, September 13, 2006 11:57 PM
**To:** derekc
**Cc:** george@babytrend.com; tom@babytrend.twmail.net; 'BCO JoyceWang'; BT-Denny
**Subject:** Re: Play Yard ████

Derek

We will sent you the revised canopy that use ████████████████
See attached photos
Please CFM if we can change it from mass prodcution

Baby Trend China Office

Richard Lu

Tel: ███████
Fax ███████
Mobile:
███████

----- Original Message -----
寄件者: Richard
收件者: derekc
傳送日期: 2006年9月13日 下午 02:47
主旨: Re: Play Yard ████
主:

Derek

Right now we are produce the ████████ production , but ██████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

We can't wait until new tooling is done ,
I think you have ████████████████ please CFM today

Baby Trend China Office

Richard Lu

Tel ████████████
Fax ████████
Mobile:

████████████████

----- Original Message -----
寄件者: derekc
收件者: 'Richard'
傳送日期: 2006年9月12日 上午 01:34
主旨: RE: Play Yard ████████

Richard,

███████████████████████████████████████████████████

Derek

-----Original Message-----
From: Richard [mailto:Richard@babytrend.twmail.net]
Sent: Monday, September 11, 2006 10:30 AM
To: derekc
Subject: Re: Play Yard ████████

Derek

It need to open new tooling , why can't we use ████████████████

Baby Trend China Office

Richard Lu

Tel ████████████
Fax ██
Mobile:

████████████

----- Original Message -----
寄件者: derekc

Confidential - Outside Counsel Only

Exhibit 3
- 166 -

BT_GCP005127

收件者: 'Richard'
傳送日期: 2006年9月11日下午 11:54
主旨: FW: Play Yard ████

Richard,

████████████████████████████████████████████████████

Keep me posted on your progress.

Derek

-----Original Message-----
**From:** derekc [mailto:derekc@babytrend.com]
**Sent:** Thursday, August 31, 2006 11:01 AM
**To:** 'Jeff Meyer'
**Cc:** 'davidw@babytrend.com <davidw@babytrend.com'
**Subject:** FW: Play Yard ████

FYI

-----Original Message-----
**From:** derekc [mailto:derekc@babytrend.com]
**Sent:** Wednesday, August 30, 2006 4:00 PM
**To:** 'Richard'; 'Baby Trend - Tom'; 'JoyceWang'
**Cc:** 'Denny Tsai'
**Subject:** FW: Play Yard ████

Richard,

Any update on this ?

Derek

-----Original Message-----
**From:** derekc [mailto:derekc@babytrend.com]
**Sent:** Tuesday, August 08, 2006 9:49 AM
**To:** 'Richard'
**Subject:** FW: Play Yard ████

Hi Richard, Tom & Joyce

Can you give me an update ?

Derek

-----Original Message-----
**From:** derekc [mailto:derekc@babytrend.com]
**Sent:** Wednesday, July 19, 2006 11:05 AM
**To:** 'Richard'; 'BCO Tom'
**Cc:** 'BT-Denny Tsai'
**Subject:** Play Yard ████

Hello Richard & Tom,

We really need ███████████████████ look terrible against our competition.
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

**Exhibit 3**
**- 167 -**

BT_GCP005128

Thanks,

Derek

Confidential - Outside Counsel Only

BT_GCP005129

Exhibit 3
- 168 -

Exhibit 4

# Exhibit 4

**Exhibit 4**
**- 169 -**

From:      SA2 ±ⱣÎ·sJohnny
To:      ChipW@babytrend.com
CC:      SA2 ³°·ç¼ýRichard; SA2ªÿÄRµ^ jane; DennyT@babytrend.com
Sent:      5/10/2003 6:40:55 PM
Subject:
Attachments:      ███████████████████████████████

Dear Chip,

Re:     ██████████████████████

According to Mark and Tony's discussion in Dallas regarding to the ████████ ████████████████████████████ please provide more relevant information for reference.

Please refer to the following email which we had forwarded to Denny in Chinese version before.

Thanks and remain best regards,
Johnny

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Product : ████████████████████
Patent number: ████
Inventor : ██████████████████████████████████████████
████████████████████████████
Date : ██████████████████████████████████
Approval date : ████████████████
Patent category : ████████████
Patent : see attached files
Analysis :

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

< ██████████ tif>> << █████████ tif>> < ██████████ tif>>
< tif>> << tif>> < tif>>
< tif>> << tif>> < jpg>>

CONFIDENTIAL - For Counsel Only

Exhibit 4
- 170 -

BT_GCP002722



CONFIDENTIAL - For Counsel Only

BT_GCP002723

Exhibit 4
- 171 -

US00D462532S

(12) **United States Design Patent**   (10) Patent No.:   **US D462,532 S**
Hartenstine et al.   (45) Date of Patent:   ** **Sep. 10, 2002**

(54) **PLAYARD**

(75) Inventors: **Curtis M. Hartenstine**, Birdsboro, PA (US); **Michael L. Longenecker**, Ephrata, PA (US)

(73) Assignee: **Graco Children's Products Inc.**, Elverson, PA (US)

(**) Term: **14 Years**

(21) Appl. No.: 29/141,547

(22) Filed: **May 9, 2001**

(51) LOC (7) Cl. .................................................. 06-01
(52) U.S. Cl. ................................................. D6/331; D6/391
(58) Field of Search ........................ D6/382, 390, 391, D6/331, 503; 5/93.1, 93.2, 98.1, 100, 101

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,739,527 A | | 4/1988 | Kohus et al. |
| D323,589 S | | 2/1992 | Mariol |
| D329,955 S | | 10/1992 | Brunner et al. |
| D335,057 S | | 4/1993 | Brunner et al. |
| D346,927 S | | 5/1994 | Brunner et al. |
| 5,339,470 A | * | 8/1994 | Shamie ......................... 5/98.1 |
| D353,274 S | | 12/1994 | Schwartzkopf |
| D353,725 S | | 12/1994 | Brunner et al. |
| D362,984 S | | 10/1995 | Brunner et al. |
| D364,754 S | | 12/1995 | Welsh, Jr. et al. |
| D369,490 S | | 5/1996 | Brunner et al. |
| D379,128 S | | 5/1997 | Brunner et al. |
| D380,918 S | | 7/1997 | Brunner et al. |
| D382,718 S | * | 8/1997 | Mariol ......................... D6/331 |

| | | | |
|---|---|---|---|
| 5,752,283 A | * | 5/1998 | Arens ......................... 5/99.1 |
| D394,768 S | | 6/1998 | Draheim |
| D395,565 S | | 6/1998 | Brunner et al. |
| D409,025 S | | 5/1999 | Draheim et al. |
| D410,161 S | | 5/1999 | Draheim et al. |
| D410,162 S | | 5/1999 | Draheim et al. |
| D434,914 S | * | 12/2000 | Wang ............... D6/331 |
| D448,218 S | * | 9/2001 | Celestina-Krevh ......... D6/495 |

* cited by examiner

*Primary Examiner*—Janice E. Seeger
(74) *Attorney, Agent, or Firm*—Foley & Lardner

(57) **CLAIM**

The ornamental design for a playard, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view showing the playard of our new design;
FIG. **2** is a top plan view thereof;
FIG. **3** is a bottom plan view thereof;
FIG. **4** is a left side elevation view thereof, the right side elevation being a mirror image of the left side elevation view;
FIG. **5** is a front elevation view thereof, the rear elevation view being a mirror image of the front elevation view;
FIG. **6** is a partial cross section thereof, taken along line 6—6 in FIG. 4, to more clearly show the inside thereof; and,
FIG. **7** is a partial cross section thereof, taken along line 7—7 in FIG. 5, to more clearly show the inside thereof.
The broken lines are for illustrative purposes only and do not form part of the claimed design.

**1 Claim, 7 Drawing Sheets**



**U.S. Patent**     Sep. 10, 2002     Sheet 1 of 7     US D462,532 S



FIG.1

CONFIDENTIAL - For Counsel Only

**U.S. Patent**     Sep. 10, 2002     **Sheet 2 of 7**          **US D462,532 S**



FIG.2

CONFIDENTIAL - For Counsel Only

**U.S. Patent**          Sep. 10, 2002          Sheet 3 of 7          US D462,532 S



FIG.3

CONFIDENTIAL - For Counsel Only



FIG.4

CONFIDENTIAL - For Counsel Only

BT_GCP002728

Exhibit 4
- 176 -

**U.S. Patent**      Sep. 10, 2002      Sheet 5 of 7      US D462,532 S



FIG.5

CONFIDENTIAL - For Counsel Only

Exhibit 4
- 177 -

BT_GCP002729



FIG.6

| From: | Denny Tsai |
| --- | --- |
| To: | SA2 ±ǸÍ·sJohnny |
| CC: | 'DENNY'; Chip Whalen; Frank Lin; BT 1.China office |
| Sent: | 5/7/2003 5:49:41 PM |
| Subject: | RE: Ââ±H：AP85 ²Õ¸Ê°·ˑN°¡¤Å---·Ó¤ù |
| Attachments: | ks playard.jpg |

Johnny,
Thank you for your playard picture.
We check ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
And the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Pls. let me know what is your solution?
Denny

-----Original Message-----
From: SA2 張用新Johnny [mailto:Johnny@mamalove.com.cn]
Sent: Wednesday, May 07, 2003 7:06 AM
To: DennyT@babytrend.com
Subject: 轉寄 ：AP85 組裝注意部分---照片

Dear Denny,
Please refer to the attached photos about ▮▮▮▮▮▮▮▮ installation.
Thanks and best regards,
Johnny
> -----原始郵件-----
> 寄件者: SA2 陸瑞璋Richard
> 傳送時間: 2003年5月7日 PM 03:20
> 收件者: SA2 唐孝琪 Tony; SA2 張用新Johnny
> 副本: SA2王麗琴 jane
> 主旨: 轉寄 ：▮▮▮▮ 組裝注意部分---照片
>
> FYI
>
> -----原始郵件-----
> 寄件者: EN 林其正top
> 傳送時間: 2003年5月7日 PM 02:21
> 收件者: SA2 陸瑞璋Richard
> 主旨: ▮▮▮▮ 組裝注意部分---照片
>
> <<DSC00955.JPG>> <<DSC00956.JPG>> <<DSC00958.JPG>> <<DSC00959.JPG>>
> <<DSC00960.JPG>> <<DSC00961.JPG>> <<DSC00962.JPG>> <<DSC00963.JPG>>
> <<DSC00964.JPG>> <<DSC00965.JPG>> <<DSC00966.JPG>> <<DSC00967.JPG>>
> <<AP85.JPG>>

Confidential - Outside Counsel Only

**Exhibit 4**
**- 179 -**

BT_GCP002883

| | |
|---|---|
| **From:** | Denny Tsai |
| **To:** | SA2 ±Ϻ̃·sJohnny; 'DENNY'; 'DENNY'; 'DENNY'; BT 1.China office |
| **Sent:** | 5/7/2003 5:47:00 PM |
| **Subject:** | RE: Âà±H : AP85 ²Õ¸É³'·Nª¡¤À---·Ò¤ù |
| **Attachments:** | ks playard.jpg |

Johnny,
Thank you for your playard picture.
We check ████████████████████████████████████████

Pls. let me know what is your solution?
Denny

-----Original Message-----
From: SA2 張用新Johnny [mailto:Johnny@mamalove.com.cn]
Sent: Wednesday, May 07, 2003 7:06 AM
To: DennyT@babytrend.com
Subject: 轉寄 : AP85 組裝注意部分---照片

Dear Denny,
Please refer to the attached photos about the ██████████ installation.
Thanks and best regards,
Johnny
> -----原始郵件-----
> 寄件者: SA2 陸瑞璋Richard
> 傳送時間: 2003年5月7日 PM 03:20
> 收件者: SA2 唐孝琪 Tony; SA2 張用新Johnny
> 副本: SA2王麗琴 jane
> 主旨: 轉寄 : ████ 組裝注意部分---照片
>
> FYI
>
> -----原始郵件-----
> 寄件者: EN 林其正top
> 傳送時間: 2003年5月7日 PM 02:21
> 收件者: SA2 陸瑞璋Richard
> 主旨: ████ 組裝注意部分---照片
>
> <<DSC00955.JPG>> <<DSC00956.JPG>> <<DSC00958.JPG>> <<DSC00959.JPG>>
> <<DSC00960.JPG>> <<DSC00961.JPG>> <<DSC00962.JPG>> <<DSC00963.JPG>>
> <<DSC00964.JPG>> <<DSC00965.JPG>> <<DSC00966.JPG>> <<DSC00967.JPG>>
> <<AP85.JPG>>

Confidential - Outside Counsel Only

**Exhibit 4**
**- 180 -**

BT_GCP003222

**From:**     SA2 ±M̂·sJohnny
**To:**       Denny Tsai
**CC:**       'DENNY'; Chip Whalen; Frank Lin; BT 1.China office
**Sent:**     5/7/2003 6:40:33 PM
**Subject:**  ████

Dear Denny,
Thanks for your advice.
████████████████████████████████████████████████████████
We will update the new situation to you soon.
Thanks and remain regards,
Johnny


> -----原始郵件-----
> 寄件者: Denny Tsai [SMTP:DennyT@babytrend.com]
> 傳送時間: 2003年5月8日 AM 08:50
> 收件者: SA2 張用新Johnny
> 副本: 'DENNY'; Chip Whalen; Frank Lin; BT 1.China office
> 主旨: RE: 轉寄：AP85 組裝注意部分---照片
>
> Johnny,
> Thank you for your playard picture.
> We check█████████████████████████████████████████
> █████████████████████████████████████████
> ████████████████████████████████████
> Pls. let me know what is your solution?
> Denny
>
> -----Original Message-----
> From: SA2 張用新Johnny [mailto:Johnny@mamalove.com.cn]
> Sent: Wednesday, May 07, 2003 7:06 AM
> To: DennyT@babytrend.com
> Subject: 轉寄：████ 組裝注意部分---照片
>
> Dear Denny,
> Please refer to the attached photos about the ██████████ installation.
> Thanks and best regards,
> Johnny
> > -----原始郵件-----
> > 寄件者: SA2 陸瑞璋Richard
> > 傳送時間: 2003年5月7日 PM 03:20
> > 收件者: SA2 唐孝琪 Tony; SA2 張用新Johnny
> > 副本: SA2王麗琴 jane
> > 主旨: 轉寄：████ 組裝注意部分---照片
> >
> > FYI
> >
> > -----原始郵件-----
> > 寄件者: EN 林其正top
> > 傳送時間: 2003年5月7日 PM 02:21
> > 收件者: SA2 陸瑞璋Richard
> > 主旨: ████組裝注意部分---照片
> >
> > <<DSC00955.JPG>> <<DSC00956.JPG>> <<DSC00958.JPG>> <<DSC00959.JPG>>
> >
> > <<DSC00960.JPG>> <<DSC00961.JPG>> <<DSC00962.JPG>> <<DSC00963.JPG>>
> > <<DSC00964.JPG>> <<DSC00965.JPG>> <<DSC00966.JPG>> <<DSC00967.JPG>>
> > <<AP85.JPG>>
> << 檔案: ks playard.jpg >>


Confidential - Outside Counsel Only

**Exhibit 4**
**- 181 -**

Exhibit 5

# Exhibit 5

Exhibit 5

- 182 -

PENNY M. COSTA, (SBN 110373)
costap@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 800
Los Angeles, California  90067-2909
Telephone: (424) 204-4331
Facsimile:  (424) 204-4350

LYNN E. RZONCA (*APPEARING PRO HAC VICE*)
rzoncal@ballardspahr.com
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103
Telephone: (215) 665-8500
Facsimile:  (215) 864-8990
KATRINA M. QUICKER (*APPEARING PRO HAC VICE*)
quickerk@ballardspahr.com
CECILIA M. ANDREWS (*APPEARING PRO HAC VICE*)
andrewsc@ballardspahr.com
**BALLARD SPAHR LLP**
999 Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309
Telephone: (678) 420-9300
Facsimile: (678) 420-9301

Attorneys for Plaintiff Graco Children's Products Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Graco Children's Products Inc., | Case No. 2:10-cv-05897-JST |
| Plaintiff, | **PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT** |
| vs. | |
| Baby Trend, Inc., | |
| Defendant. | |

PROPOUNDING PARTY:    Plaintiff Graco Children's Products Inc.

RESPONDING PARTY:    Defendant Baby Trend, Inc.

SET NUMBER:    One (1)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff, Graco Children's Products Inc., hereby requests that Defendant, Baby Trend, Inc., answer the following Interrogatories, separately and fully, in writing, and under oath, within thirty (30) days after service and in compliance with the Definitions and Instructions set forth below.

## DEFINITIONS

Unless otherwise clearly indicated by the context, the following definitions are applicable to the terms used herein:

1.   "Graco Children's Products Inc." or "Graco" or "Plaintiff" means the Plaintiff, Graco Children's Products Inc., its predecessors, successors in interest, subsidiaries, parents, affiliates, past or present directors, principals, officers, owners, employees, agents, representatives, consultants, attorneys, and all others acting, or who at any time acted or purported to act, on behalf of Plaintiff.

2.   "Baby Trend, Inc." or "Baby Trend" or "you" or "your" or "Defendant" means the Defendant, Baby Trend, Inc., its predecessors, successors in interest, subsidiaries, parents, affiliates, past or present directors, principals, officers, owners, employees, agents, representatives, consultants, attorneys, and all others acting, or who at any time acted or purported to act, on behalf of Defendant.

3.   The "Action" means the above-captioned case, *Graco Children's Products Inc. v. Baby Trend, Inc.*, in the United States District Court, Central District of California, Civil Action No. 2:10-cv-05897-JST.

4.   "Document" or "documents" shall encompass the meaning and scope of that term as used in Federal Rule of Civil Procedure 34, and includes, by way of example, any written, recorded, or graphic matter of any kind whatsoever, however produced or reproduced, whether transcribed by hand or by mechanical, electronic, magnetic, or other means.  The term "document" or "documents" also includes, but is not limited to, advertisements, agreements, assignments, bills of lading, books, brochures, bulletins, catalogs, CD-ROMs or DVDs, charges, circulars, contracts,

2

PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

**Exhibit 5**
**- 184 -**

correspondence, discs, displays, drafts, drawings, e-mail communication, films, instructions, intra-company communications, invoices, labels, letters, licenses memoranda, minutes, notebooks, notes, packaging, photographs, prints, purchase orders, records of discussions or oral communications, reports, sales slips, sketches, statements, studies, surveys, telegrams, tracings, work assignments, and worksheets. A draft or nonidentical copy is a separate document within the meaning of this term. A document bearing any notation not a part of the original text is to be considered a separate document.

5. "Person" or "persons" means both natural persons and legal entities, without limitation, including all groups, associations, partnerships, corporations, agencies, proprietorships, businesses, or any other legal, business, or governmental entity.

6. "Communication" means the transmission of information, in any form, via any medium.

7. "Patent-in-suit" or "'218 Patent" refers to U.S. Design Patent No. D448,218, entitled "Curved Legs for a Playard."

8. "Prior Art" is used in the same sense that it is used in 35 U.S.C. § 103, and includes any patent, printed publication, prior knowledge, prior use, prior sale or offer for sale, or other act or event defined in 35 U.S.C. § 102, taken alone or in combination.

9. "Accused Products" refers to any Baby Trend playard having curved or bent legs, including any and all of the following Baby Trend playards: PY90918 (Mini Nursery Center – Twilight), PY87983 (Deluxe Nursery Center – All Star), PY90973 (Mini Nursery Center – Cordova), PY88950 (Deluxe Nursery Center – Metropolitan), PY87029 (Deluxe Nursery Center – Gabriella), PY86428 (Deluxe Nursery Center – Mojito), PY86045 (Deluxe Nursery Center – Skylar), PY86091 (Deluxe Nursery Center – Mesa), PY86443 (Deluxe Nursery Center – Columbia),

3

1  PY86962 (Deluxe Nursery Center – Dakota), and 8065BCC (Deluxe Nursery Center
2  – Orange Oak).

3      10.    "Concern," "concerns," "concerning," or "concerned with," means
4  relating to, referring to, describing, evidencing, or constituting.

5      11.    The singular form of any word includes the plural and vice versa.

6      12.    The masculine form of any word includes the feminine and vice versa.

7      13.    The conjunctive "and" includes the disjunctive "or" and vice versa.

8      14.    The word "any" shall mean "any and all" and the word "each" shall
9  mean "each and every."

10     15.    The phrasing of these requests shall be construed so as to make your
11 response inclusive rather than exclusive, such that all documents and things are
12 included within the scope of the request that might otherwise be construed to be
13 outside the scope of the request. Thus, the word "including" is intended to be
14 comprehensive and means "including but not limited to."

15     16.    "Describe in detail" means to state and describe, with specificity, each
16 and every fact, circumstance, incident, act, omission, event, date, and/or legal
17 contention relating to the matters inquired of in said interrogatory.

18     17.    "Identify" shall mean to include in your answer the following:

19         a.  Identify a natural person:

20             i.   His or her name;

21             ii.  His or her last known home and business addresses and
22                  respective phone numbers;

23             iii. His or her current or last known employer;

24             iv.  His or her job or current or last known position title; and

25             v.   If applicable, his or her connection to the subject matter of the
26                  interrogatory.

27         b.  Identify an entity or organization:

28             i.   Its name;

4

    ii.  Its last known address and phone number for its principal place of business;

    iii.  Its type (e.g., corporation, partnership, trust, etc.);

    iv.  Its date and place of formation; and

    v.  Its registered agent.

c.  Identify a document:

    i.  Its type;

    ii.  Its date;

    iii.  A detailed description of its subject matter and contents;

    iv.  The identity of each author and recipient (including actual and designated recipients of copies); and

    v.  Its location and custodian.

d.  Identify a communication:

    i.  Its date and place;

    ii.  The person(s) who participated in it, were present during any part of it, or have knowledge about it; and

    iii.  Its substance.

e.  Identify other tangible things:

    i.  Its type (e.g., apparatus, device, system, computer system, software, etc.);

    ii.  Its established or proprietary name;

    iii.  Its model, catalog number, or part number;

    iv.  Its purchase date;

    v.  A detailed description of its subject matter;

    vi.  Who made it, if applicable; and

    vii.  Its current location and custodian, i.e., the person who had last knowledge, possession, custody, or control thereof.

f.  Identify an event:

PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

Exhibit 5

- 187 -

i.   Its type (*e.g.*, oral communication, telephone call, meeting or conference, teletype communication, purchase, sale, etc.);

ii.   Its date, time and place;

iii.   The identity of all persons participating, attending and observing;

iv.   A detailed description of the event and what transpired; and

v.   The identity of any documents referenced, referred to, relied upon, or created in connection with the event (including any record made of the event).

## INSTRUCTIONS

The following instructions are applicable to each specific interrogatory unless otherwise explicitly stated.

1.   If you cannot answer any interrogatory fully and completely after exercising due diligence to make the inquiry and secure the necessary information, please so state and answer each such interrogatory to the fullest extent you deem possible, specify the portion of each interrogatory that you claim to be unable to answer fully and completely, state the facts upon which you rely to support your contention that you are unable to answer the interrogatory fully and completely and state what knowledge, information or belief you have concerning the unanswered portion of each such interrogatory.

2.   As to any portion of any request that refers to documents that you are aware of which were at one time within your possession, custody or control, but which are not now within or subject to your possession, custody or control, you are directed to identify such documents in a manner sufficient to describe such documents for the purpose of preparing and serving a proper subpoena *duces tecum* and to give the name, telephone number, and address of the person last known by you to have been in possession, custody or control of such documents.

6
PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

Exhibit 5
- 188 -

3.      If possible, supply all annual data requested on a calendar basis. However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates. When information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year (*e.g.,* January 1, 2000 through [month] [day], 2000) is covered by such information.

4.      If any interrogatory requests information from you and your company, the response should be broken down for each of your related companies (*e.g.,* affiliates, subsidiaries, joint ventures, divisions, etc.).

5.      These requests shall be deemed continuing in nature so as to require supplementary answers between the time answers are served and the time of trial, in accordance with Fed. R. Civ. P. 26(e).

6.      If you find the meaning of any term in these requests to be unclear, you should assume a reasonable meaning, state the assumed meaning, and respond to the request on the basis of that assumed meaning.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each playard made, imported, used, offered for sale, sold, or distributed into the United States by Baby Trend since 2000.

**INTERROGATORY NO. 2:**

For each playard identified in response to Interrogatory Number 1 above, specifically identify the quantity of each playard manufactured, imported, sold, or distributed since 2000 by Baby Trend.

**INTERROGATORY NO. 3:**

For each playard identified in response to Interrogatory Number 1 above, identify each person who was responsible for the creation, design, redesign, consideration, selection, adoption, or development of the playard and each person

7

PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

**Exhibit 5**
**- 189 -**

1  who participated in the preparation of an application or request for approval by any

2  US or foreign regulatory agency for each such playard.

3  **INTERROGATORY NO. 4:**

4      Identify the first date of manufacture of each current and past playard

5  identified in response to Interrogatory Number 1 above.

6  **INTERROGATORY NO. 5:**

7      Identify each and every person or entity to whom Baby Trend sold or offered

8  for sale a playard, both current and past models, and including, but not limited to,

9  the Accused Products.

10  **INTERROGATORY NO. 6:**

11      Describe in detail each occasion wherein Baby Trend has investigated,

12  inspected, examined, studied, reviewed, analyzed, tested, evaluated, or worked on

13  any playard identified in your response to Interrogatory Number 1 above, or on any

14  playard manufactured by any other entity or person, including Graco, and for each

15  playard, identify each person who participated in such activities, and state in

16  particular the purpose of the activity, the date of the activity, and any conclusions, or

17  test results obtained as a result of such activity.

18  **INTERROGATORY NO. 7:**

19      Describe in detail the complete factual and legal basis for your contention that

20  the '218 Patent is unenforceable, identify with specificity all documents related to

21  such contention, and identify all persons with knowledge of facts related to such

22  contention.

23  **INTERROGATORY NO. 8:**

24      As to each Accused Product, describe in detail the complete factual and legal

25  basis for your contention that you do not infringe the '218 Patent, either literally or

26  under the doctrine of equivalents, and identify any documents you intend to rely on

27  in support of your contention.

28

8

PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

**Exhibit 5**

**- 190 -**

**INTERROGATORY NO. 9:**

Describe in detail the complete factual and legal basis for your contention that "Graco has engaged in patent misuse through its improper assertion of the '218 Patent, which it knows to be invalid and/or unenforceable," as you allege in Paragraph 17 of your Answer to Complaint for Patent Infringement and Counterclaims, the information you are aware of that supports such a contention including any prior art known to you, and the identity of all persons with information or knowledge of, and all documents concerning, this contention.

**INTERROGATORY NO. 10:**

Identify all persons who have or are believed to have knowledge of any fact alleged in Plaintiff's Complaint against you or your Answer to Complaint for Patent Infringement and Counterclaims (including any affirmative defenses and counterclaims), or any fact relevant to the claims or defenses of any party in this action, and state the subject matter of the knowledge possessed or believed to be possessed by each such person.

**INTERROGATORY NO. 11:**

Regardless of whether you intend to rely on any opinions of counsel in this action, identify the date of each opinion of counsel regarding the validity, enforceability, scope, or infringement of the '218 Patent that you have received or of which you are aware, describe the manner in which each such opinion was communicated (oral, written, electronic, etc.), identify the author(s) and recipient(s) of each such opinion, and identify any other person who requested, authorized, furnished any information relating to, prepared, approved, sent, had access to, or made or participated in any decision or recommendation based in whole or in part on each such opinion (specifying each activity in which the person was involved).

**INTERROGATORY NO. 12:**

Identify the date and circumstances on which you first became aware of the '218 Patent, all facts and documents that you contend corroborate said date, and the

9

**REQUEST NO. 37:**

All documents and things that relate to document retention policies of Baby Trend.

**REQUEST NO. 38:**

All documents referring or relating to agreements or licenses for a curved-leg playard to which Baby Trend is a party.

**REQUEST NO. 39:**

All documents identified in your answers to Plaintiff's First Set of Interrogatories to Defendant served herewith or consulted in preparing your answers thereto.

**REQUEST NO. 40:**

All documents and things pertaining to or supporting any of your Answer, Affirmative Defenses, and Counterclaims in this Action.

**REQUEST NO. 41:**

All Complaints and Answers filed in any other case in which Baby Trend was charged with infringing the patent, trademark, service mark, or other intellectual property rights of any third party.

DATED: January 31, 2011

PENNY M. COSTA
LYNN B. RZONCA (appearing *pro hac vice*)
KATRINA M. QUICKER (appearing *pro hac vice*)
CECILIA M. ANDREWS (appearing *pro hac vice*)
Ballard Spahr LLP
Attorneys for Plaintiff
Graco Children's Products Inc.

10
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT

**Exhibit 5**
**- 192 -**

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is BALLARD SPAHR LLP, 2029 Century Park East, Suite 800, Los Angeles, CA 90067-2909. On **January 31, 2011**, I served the within document:

### PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT

☒ **BY MAIL**: by placing the document listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below:

> J. RICK TACHÉ
> **Snell & Wilmer L.L.P.**
> Plaza Tower
> 600 Anton Blvd #1400
> Costa Mesa, CA 92626-7689

☒ **BY EMAIL**: I electronically served a true and correct copy of the document listed above as follows:

- **Deborah S Mallgrave**
  dmallgrave@swlaw.com, dmwilliams@swlaw.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on **January 31, 2011**, at Los Angeles, California.

_____
Monica Patanian

**Exhibit 5**
**- 193 -**

# Exhibit 6

**Exhibit 6**
**- 194 -**

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4

5  In re:                    )Bankruptcy Case No.
   BABY TREND, INC.,          )6:09-bk-34090 CB
6          Reorganized Debtor.)Chapter 11 Case
                              )
7  _____     )
                              )
8  GRACO CHILDREN'S PRODUCTS, )CASE NO. 2:10-CV-05897 JST
   INC.,                      )Hon. Josephine S. Tucker
9                             )Ctrm 10A
              Plaintiff,      )
10                            )
   vs.                        )
11                            )
   BABY TREND, INC.,          )
12                            )
              Defendant.      )
13 _____     )

14

15

16                 VOLUME II

17

18

19      DEPOSITION OF BRADLEY MATTAROCCI,

20      taken on behalf of the Plaintiff, at

21      2029 Century Park East, Suite 800,

22      Los Angeles, California, commencing at

23      9:35 a.m., Wednesday, October 5, 2011,

24      before Salvador Gutierrez, Certified

25      Shorthand Reporter No. 9825.

                    316

```
 1   APPEARANCES:

 2
     For Plaintiff:
 3
                        RICH MILLER, ESQ.
 4                      BALLARD SPAHR LLP
                        999 Peachtree Street
 5                      Suite 1000
                        Atlanta, Georgia 30309
 6                      (678) 420-9300
                        millerw@ballardspahr.com
 7

 8
     For Debtor BABY TREND, INC.:
 9
                        J. RICK TACHÉ, ESQ.
10                      SNELL & WILMER L.L.P.
                        600 Anton Boulevard
11                      Suite 1400
                        Costa Mesa, California 92626
12                      (714) 427-7000
                        rtache@swlaw.com
13

14

15

16
     ALSO PRESENT:      JOHN HANK, Videographer
17                      CARI CLAPPER

18

19

20

21

22

23

24

25


                        317
```

BARKLEY
Court Reporters

**Exhibit 6**
**- 196 -**

```
 1        Q    Okay.  Had you ever heard of Baby Trend before
 2   you joined the company?
 3        A    No.
 4        Q    Okay.  Have you ever heard the phrase "fast
 5   follower"?
 6        A    No.
 7        Q    Okay.  I believe you had said previously
 8   that -- that Baby Trend doesn't have a China office; is
 9   that correct?
10        A    Yes.
11             MR. TACHE:  Objection.  Asked and answered.
12        Q    BY MR. MILLER:  When Mr. Tsai goes to China,
13   does he work out of an office?
14        A    No.
15        Q    Okay.  Where does he work from?
16        A    Hotel.
17        Q    Okay.  Were you instructed by anyone to disavow
18   knowledge of a Baby Trend China office?
19             DEPOSITION OFFICER:  I'm sorry, were you
20   instructed by anyone to?
21             MR. MILLER:  Disavow knowledge of a Baby Trend
22   China office.
23             THE WITNESS:  No.
24        Q    BY MR. MILLER:  Okay.  Do you know anything
25   about the Joovy case?
```

10:41 (line 5)
10:42 (line 10)
10:42 (line 15)
10:42 (line 20)
10:42 (line 25)

364

BARKLEY
Court Reporters

```
 1      A     Yeah.
 2      Q     Tell me what you know about that -- what do you
 3   know about that case, just the general, you know, the
 4   general issues, do you know what they are?
10:42 5            MR. TACHE:  Objection.  Vague.
 6            THE WITNESS:  The -- the case started before I
 7   was at Baby Trend, and it was a lawsuit brought by an
 8   ex-sales rep's company.  We ended up winning the case,
 9   so.  It took four years or something like that.
10:43 10            What else?
11      Q     BY MR. MILLER:  Do you -- okay.  That's fine.
12            How did you find out you won the case?
13      A     Counsel texted me "we won."
14      Q     Okay.  When did you find that out?
10:43 15      A     A year ago, something like that.  Less than a
16   year ago.
17      Q     Okay.
18            MR. MILLER:  If you give me five minutes, I
19   think --
10:44 20            MR. TACHE:  I'm happy to.
21            MR. MILLER:  -- I think I'm done.
22            MR. TACHE:  Take as long as you need.
23            VIDEOGRAPHER:  We're off the record at 10:44.
24            (A recess was taken.)
10:44 25            VIDEOGRAPHER:  We're back on the record at
```

365

BARKLEY
Court Reporters

**Exhibit 6**
**- 198 -**

1              DEPOSITION OFFICER'S CERTIFICATE

2    STATE OF CALIFORNIA   )
                           ) ss.
3    COUNTY OF LOS ANGELES )

4

5

6         I, Salvador Gutierrez, hereby certify:

7         I am a duly qualified Certified Shorthand

8    Reporter in the State of California, holder of

9    Certificate Number CSR 9825 issued by the Court

10   Reporters Board of California and which is in full force

11   and effect.  (Fed. R. Civ. P. 28(a)).

12        I am authorized to administer oaths or

13   affirmations pursuant to California Code of Civil

14   Procedure, Section 2093(b) and prior to being examined,

15   the witness was first duly sworn by me.  (Fed. R. Civ.

16   P. 28(a), 30(f)(1)).

17        I am not a relative or employee or attorney or

18   counsel of any of the parties, nor am I a relative or

19   employee of such attorney or counsel, nor am I

20   financially interested in this action.  (Fed. R. Civ. P.

21   28).

22        I am the deposition officer that

23   stenographically recorded the testimony in the foregoing

24   deposition and the foregoing transcript is a true record

25                        / / /

                          371

BARKLEY
Court Reporters

1       Before completion of the deposition, review of
2   the transcript [ ] was [x] was not requested.   If
3   requested, any changes made by the deponent (and
4   provided to the reporter) during the period allowed, are
5   appended hereto.

6

7   Dated:   October 17, 2011

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

372

BARKLEY
Court Reporters

Exhibit 6
- 200 -

*Graco Children's Products, Inc. v. Baby Trend, Inc.*
US District Court, Central District of California, Case No. 2:10-cv-05897-JST

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, CA  92626-7689.

On October 31, 2011, I served, in the manner indicated below, the foregoing document described as **Baby Trend, Inc.'s Notice of Motion and *Motion in Limine* to Exclude Introduction of Evidence Relating to Allegations of Infringement Unrelated to this Case; Memorandum of Points and Authorities; Declaration of Deborah S. Mallgrave** on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, at Costa Mesa, addressed as follows:

See attached *Service List*

☒ BY REGULAR MAIL:  I caused such envelopes to be deposited in the United States mail at Costa Mesa, California, with postage thereon fully prepaid.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to.   (C.C.P. §1013(a)).

☐ BY FACSIMILE: (C.C.P. § 1013(e)(f)).

☐ BY OVERNIGHT DELIVERY:  I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressees. (C.C.P. §1013(c)(d)).

☐ BY PERSONAL SERVICE:  I caused such envelopes to be delivered by hand to the offices of the addressees. (C.C.P. §1011(a)(b)).

☒ BY ELECTRONIC MAIL:  I caused such document(s) to be delivered electronically to the following email address(es):  costap@ballardspahr.com; rzoncal@ballardspahr.com; quickerk@ballardspahr.com; andrewsc@ballardspahr.com

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 31, 2011, at Costa Mesa, California.

Antonia Martin

PROOF OF SERVICE

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

*Graco Children's Products, Inc. v. Baby Trend, Inc.*
US District Court, Central District of California, Case No. 2:10-cv-05897-JST

### Service List

Penny M. Costa
Ballard Spahr LLP
2029 Century Park East # 800
Los Angeles, CA  90067-2909

Attorneys for Plaintiff Graco Children's Products Inc.
Tel:   424-204-4331
Fax:   424-204-4350
costap@ballardspahr.com

Lynn E. Rzonca
Ballard Spahr LLP
1735 Market Street, 51st Fl
Philadelphia, PA  19103

Attorneys for Plaintiff Graco Children's Products Inc.
Tel:   215-665-8500
Fax:   215-864-8990

rzoncal@ballardspahr.com

Katrina Quicker
Cecilia Andrews
Ballard Spahr LLP
999 Peachtree St NE, #1000
Atlanta, GA  30309

Attorneys for Plaintiff Graco Children's Products Inc.
Tel:   678-420-9300
Fax:   678-420-9301
quickerk@ballardspahr.com
andrewsc@ballardspahr.com

12404899.1

- 2 -

PROOF OF SERVICE

*Graco Children's Products, Inc. v. Baby Trend, Inc.*
**US District Court, Central District of California, Case No. 2:10-cv-05897-JST**

### PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, CA 92626-7689.

On November 7, 2011, I served, in the manner indicated below, the foregoing document described as **Baby Trend, Inc.'s Notice of Motion and Motion *in Limine* to Exclude Introduction of Evidence Relating to Allegations of Infringement Unrelated to this Case; Memorandum of Points and Authorities; Declaration of Deborah S. Mallgrave** *[with further redactions to Exhibits 2, 3, and 4]* on the interested parties in this action by placing true copies thereof, enclosed in sealed envelopes, at Costa Mesa, addressed as follows:

See attached *Service List*

[X] BY REGULAR MAIL: I caused such envelopes to be deposited in the United States mail at Costa Mesa, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service herein attested to. (C.C.P. §1013(a)).

[ ] BY FACSIMILE: (C.C.P. § 1013(e)(f)).

[ ] BY OVERNIGHT DELIVERY: I caused such envelopes to be delivered by air courier, with next day service, to the offices of the addressees. (C.C.P. §1013(c)(d)).

[ ] BY PERSONAL SERVICE: I caused such envelopes to be delivered by hand to the offices of the addressees. (C.C.P. §1011(a)(b)).

[X] BY ELECTRONIC MAIL: I caused such document(s) to be delivered electronically to the following email address(es): costap@ballardspahr.com; rzoncal@ballardspahr.com; quickerk@ballardspahr.com; andrewsc@ballardspahr.com

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 7, 2011, at Costa Mesa, California.

Diane Williams

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12404899.1

PROOF OF SERVICE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Graco Children's Products, Inc. v. Baby Trend, Inc.*
**US District Court, Central District of California, Case No. 2:10-cv-05897-JST**

*Service List*

Penny M. Costa
Ballard Spahr LLP
2029 Century Park East # 800
Los Angeles, CA  90067-2909

Attorneys for Plaintiff Graco Children's Products Inc.
Tel:   424-204-4331
Fax:   424-204-4350
costap@ballardspahr.com

Lynn E. Rzonca
Ballard Spahr LLP
1735 Market Street, 51st Fl
Philadelphia, PA  19103

Attorneys for Plaintiff Graco Children's Products Inc.
Tel:   215-665-8500
Fax:   215-864-8990

rzoncal@ballardspahr.com

Katrina Quicker
Cecilia Andrews
Ballard Spahr LLP
999 Peachtree St NE, #1000
Atlanta, GA  30309

Attorneys for Plaintiff Graco Children's Products Inc.
Tel:   678-420-9300
Fax:   678-420-9301
quickerk@ballardspahr.com
andrewsc@ballardspahr.com

*Snell & Wilmer*
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12404899.1

- 2 -

PROOF OF SERVICE